*RECEIVED*
**By franciscastilla at 11:45 am, Jan 20, 2023**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **AARON GREENSPAN**, <br><br> Plaintiff, <br><br> v. <br><br> **DIEGO MASMARQUES, JR. a/k/a DIEGO MAS HOWARD a/k/a RICKY MAS MARQUES a/k/a JACK JONES**, **SERGEI IGOREVICH KUDRIAVTSEV**, and **MEDIOLEX, LTD.**, <br><br> Defendants. | Case No.: |

## COMPLAINT

Plaintiff Aaron Greenspan, by and for his complaint against Diego MasMarques, Jr. a/k/a Diego Mas Howard a/k/a Ricky Mas Marques a/k/a Jack Jones, Sergei Igorevich Kudriavtsev, and Mediolex Ltd., avers as follows:

## INTRODUCTION AND SUMMARY

1.  This action arises out of the decision of a convicted felon to flagrantly violate the spirit of multiple orders by this Court and the United States Court of Appeals for the First Circuit affirming public access to judicial records.

2.  Plaintiff is the founder and President of Think Computer Corporation, a software company based in California. Think Computer Corporation operates PlainSite, a website at https://www.plainsite.org that indexes and makes available millions of court documents and other government resources in the public domain. PlainSite provides access to public records to

thousands of users per day, including numerous government users, free of charge.  Plaintiff

personally and exclusively oversees the operations of PlainSite.

3.    "Gripe sites" are modern-day extortion schemes that attempt to exploit Section 230

of the Communications Decency Act ("CDA").  They are anonymous, frequently offshore

websites whose ownership information is shielded by proxies—often lawyers—with the primary

goal of attracting those interested in posting libelous, defamatory, and often sexually explicit

content about innocent victims, in the hope that the victims will seek removal of such content for

a fee that can be paid directly to the gripe sites or to the gripe sites' co-conspirators.

4.    Plaintiff was the primary source for a limited *New York Times* exposé of gripe sites

entitled "The Slander Industry" published on April 24, 2021.  *See*

https://www.nytimes.com/interactive/2021/04/24/technology/online-slander-websites.html.

5.    Generally speaking, PlainSite hosts true and accurate government records and

analysis of those records, while gripe sites host false and lewd material that is libelous and is

intended to cause harm.

6.    There exists an industry of "removal services" that claim to be able to remove posts

on *both* gripe sites and court record aggregators such as PlainSite.  In fact, these removal services

simply offer bribes, or are quietly operated by the same owners as gripe sites.  Some removal

services transmit payment to gripe sites via cryptocurrency, such as bitcoin, at agreed-upon rates.

7.    PlainSite and Plaintiff have never accepted payment from any removal service or any

other third party to remove or suppress content.

8.    Individuals frequently contact PlainSite directly wishing to have their court records

suppressed from search engine results or altogether removed from PlainSite, such as when a case

is ordered under seal.  Unlike gripe sites, PlainSite clearly identifies its owner and does not

charge any fee to suppress or remove public records from its site. PlainSite attempts to streamline privacy requests by encouraging such individuals to use a "Contact Us" form on its website that allows for efficient issue resolution.

9.   Privacy requests are granted or denied based on the principles stated in PlainSite's publicly posted Privacy Policy (*see* https://www.plainsite.org/legal/privacy.html). Most individuals respect PlainSite's decision on any given case, but a very small minority do not and are more vocal about their belief that their court case(s) should be exempt from public scrutiny.

10.   One individual, Defendant Diego MasMarques, Jr., was and remains so obsessively enraged about his criminal history being public that he engaged in a years-long crusade of libel and harassment against Plaintiff, using gripe sites as his main weapon. In addition to targeting Plaintiff, Defendant MasMarques has also targeted the owners of numerous other websites that host court records, and was partially responsible for one of them shutting down his website.

11.   Defendant MasMarques is a convicted murderer and alleged rapist with a documented history of mental illness and physical violence. He was also the subject of a now-expired civil restraining order (and several temporary restraining orders leading up to its issuance) obtained by Plaintiff in the Superior Court of Santa Clara County, California in 2019.

12.   Defendant MasMarques frequently uses the manipulative psychological tactic known as DARVO—an abbreviation for Deny And Reverse Victim and Offender. In other words, Defendant MasMarques projects his experiences and crimes onto his victims.

13.   Plaintiff's restraining order(s) had no effect on Defendant MasMarques's obsession with erasing his criminal past from the internet, and arguably made the situation worse. Defendant MasMarques also began harassing Plaintiff through third-party intermediaries once the restraining order(s) were in place, despite such activity also violating the restraining order(s).

14.  Defendant MasMarques's repeated violations of Plaintiff's restraining order(s) finally resulted in criminal proceedings against Defendant MasMarques in the Marlborough, Massachusetts District Court, Case No. 1821CR001157, for (1) violation of the restraining order(s) and (2) criminal harassment.  These proceedings were ultimately terminated—and due to false representations by Defendant MasMarques, expunged—because of compounded errors by the Marlborough, Massachusetts Police Department and the Middlesex County District Attorney's Office, which ignored critical information provided by Plaintiff.  The District Attorney assigned five different Assistant District Attorneys to the case before simply giving up.

15.  The end result has been an uninterrupted slew of *thousands* of false, libelous and defamatory postings about Plaintiff and Plaintiff's family members on gripe sites since 2017; telephone harassment; e-mail harassment; grievous abuse of process in the courts and other government agencies; and extortion attempts by the gripe sites and removal services when Plaintiff sought to have false postings removed.

16.  To remedy these myriad violations of law and put an immediate end to the ongoing harm caused by Defendant, Plaintiff seeks injunctive relief requiring the immediate removal of Defendants' libelous and defamatory posts; injunctive relief immediately restricting Defendants' ability to make further libelous and defamatory posts and/or statements regarding the same false and libelous themes; and monetary damages from Defendants for the significant investment of time spent protecting himself and his family from Defendants and for harm done to Plaintiff's reputation, career, and future earning potential.

## JURISDICTION

17.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy arises between citizens of different states and because the amount in controversy exceeds $75,000.

18.  This Court has personal jurisdiction over Defendants because Defendant MasMarques lives in this judicial District, and all Defendants have done business in this judicial District and have engaged in other persistent courses of conduct in this District and in this State.

## VENUE

19.  Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because: (i) Defendant MasMarques resides in this judicial District; and (ii) a substantial part of the events giving rise to the claims occurred in this judicial District.

## THE PARTIES

20.  Plaintiff Aaron Greenspan is an individual residing in the State of California. Plaintiff is a private citizen who does not hold public office and is not known to the vast majority of the general public.

21.  Defendant Diego MasMarques, Jr. ("MasMarques"), formerly known as "Diego Mas Howard" and also known as "Ricky MasMarques" or "Rick," as well as "Jack Jones" among hundreds of other aliases, is an individual with an extensive criminal record residing at 4512 Willow Trail, Marlborough, Massachusetts 01752.  Upon information and belief, Defendant MasMarques has used the IP addresses 76.24.132.152 (Comcast Cable Communications LLC, Marlborough, MA), 24.60.59.25 (Comcast Cable Communications LLC, Marlborough, MA) and 107.77.223.149 (AT&T Mobility LLC), among numerous others.  Defendant MasMarques has

also created numerous pseudonymous accounts on dozens of websites and has registered dozens of e-mail accounts to support them.

22.  Defendant Sergei Igorevich Kudriavtsev is a Russian-speaking Latvian national with a last known reported residence of Kaivas Iela 50/5 Unit 108, Vidzeme Suburb, Riga, LV-1021, Latvia, who owns Mediolex Ltd. and is, according to his prior sworn testimony, "the person who makes the decision" regarding the website https://www.complaintsboard.com ("ComplaintsBoard").  Defendant Kudriavtsev had admitted to frequent travel to the United States of America in sworn testimony and has in the past been an officer of at least two corporations incorporated in the United States.

23.  Defendant Mediolex Ltd. is a Seychelles-based shell corporation doing business in Latvia and the Russian Federation that owns and operates ComplaintsBoard, an English-language website targeted at United States residents and businesses.  Mediolex Ltd. earns advertising revenue from web-based banner advertisements displayed in this judicial District and throughout the United States.

24.  Plaintiff believes that information obtained in discovery may lead to the identification of additional parties to be added to this action as defendants.

**FACTUAL BACKGROUND**

25.  On July 17, 2000, Defendant MasMarques was convicted in Spain of the December 5, 1999 homicide of his girlfriend, Tatiana Vasic.  He was sentenced by Spanish Judge Diego Gómez Reino to one year of imprisonment for Burglary (count one), two years of imprisonment for Burglary (count two), and twelve years in prison for Willful Homicide (count three): fifteen years total.

26.  The murder case was covered by media in Spain.  Shortly after the murder of Ms. Vasic, Ms. Vasic's parents reported to the news publication *Última Hora* that Defendant MasMarques then harassed them repeatedly, leaving them with an expensive international long-distance telephone bill in addition to the loss of their daughter.

27.  While living in Spain, Defendant MasMarques reportedly also attempted to murder the ex-boyfriend of a different girlfriend by running him over with his car.

28.  On February 13, 2006, Defendant MasMarques consented to his sentence being carried out in the United States, where the Willful Homicide count was determined by the United States Parole Commission to be "most similar to … (2) Voluntary Manslaughter" and the United States Department of Justice, Criminal Division, Office of Enforcement Operations determined the count to be equivalent to a violation of "Title 18, United States Code, Sec. 1111. - Murder." *See USA v. MasMarques*, Massachusetts District Court Case No. 1:09-cr-10304-MLW, ECF Nos. 1-2 at 2 and 1-3 at 6 (note that the docketed attachment numbers are off by one due to an apparent filing error that skipped attachment number 1).

29.  On August 20, 2008, Defendant MasMarques was released from federal prison, where he had been assigned Register No. 13537-007.

30.  On December 24, 2008, Defendant MasMarques turned himself into police on account of an outstanding warrant issued by the South Boston District Court for two counts of rape.  At the time, he was advised that there were three additional warrants for his arrest in Quincy, Brighton and Woburn, Massachusetts.  The Woburn warrant for Case No. 9153CR000456 pertained to a February 8, 1991 Assault charge under Massachusetts General Laws Chapter 265 § 13A against the woman he later married, Mary Bulman.

31. On September 22, 2015, District Judge Mark L. Wolf ruled against Defendant MasMarques's motion to seal his criminal records pertaining to his convictions in Spain.

32. On December 28, 2015, in both appellate Case Numbers 15-2360 and 15-2402, the United States Court of Appeals for the First Circuit affirmed Judge Wolf's decision denying Defendant MasMarques's motion to seal.

33. On July 20, 2016, Plaintiff received an unsigned e-mail addressed to domains@thinkcomputer.com from an individual purporting to be "Vincent Bellomo" with the e-mail address 8986431@gmail.com concerning the removal of two dockets on PlainSite (the "First Death Threat"), both involving an individual named Diego MasMarques, Sr., who is Defendant MasMarques's father.  The e-mail message, referencing the former boss of the murderous Genovese crime family as a form of intimidation, referred to Plaintiff as a "parasite," threatened to report Plaintiff to the FBI, and made use of profanity.  Plaintiff interpreted the use of the Bellomo name to mean that Defendant MasMarques intended to kill him.

34. On February 21, 2017, Plaintiff received three requests from "Diego MasMarques" with the e-mail address 87764a@gmail.com sent via the PlainSite Contact Us form.  All three requests concerned the aforementioned two appellate cases before the United States Court of Appeals for the First Circuit involving Defendant MasMarques's motion to seal records, which were posted on PlainSite among millions of other dockets.  One of the requests additionally and erroneously referred to Defendant's cases posted on a website similar to PlainSite, http://www.unitedstatescourts.org, over which Plaintiff had no control.

35. The following day, February 22, 2017, Plaintiff received an e-mail message sent to domains@thinkcomputer.com signed by "Diego MasMarques" but nominally from "David G"

with the e-mail address bronx1842@gmail.com, asking once again for two MasMarques cases to be removed from PlainSite.

36.  Also on February 22, 2017, Plaintiff received nine (9) more requests from "Diego MasMarques" via the PlainSite Contact Us form, but this time using the bronx1842@gmail.com e-mail address previously attributed to "David G."

37.  On February 27, 2017, Plaintiff received four (4) more requests from "Diego MasMarques" via the Contact Us form, from the 87764a@gmail.com e-mail address.

38.  On February 28, 2017, Plaintiff received two (2) more requests from "Diego MasMarques" via the Contact Us form, from the 87764a@gmail.com e-mail address.

39.  On March 1, 2017, after a careful examination of the cases in question, and further indexing of court cases involving Defendant MasMarques, Plaintiff denied Defendant MasMarques's requests, causing at least two e-mail messages to be sent to him in reply notifying him of the denials.

40.  On March 5, 2017, "Diego MasMarques" made two (2) further requests through the PlainSite Contact Us form.  The first request indicated a telephone number with the 917 area code and the prior the 87764a@gmail.com e-mail address.  The second request, several hours later, indicated a telephone number with the 617 area code and the e-mail address rickymas@msn.com.

41.  Defendant MasMarques continued to make frequent requests through the PlainSite Contact Us form throughout March 2017.

| Date | MasMarques Requests |
|------|---------------------|
| March 5, 2017 | 2 |
| March 11, 2017 | 6 |
| March 13, 2017 | 11 |
| March 14, 2017 | 1 |
| March 15, 2017 | 3 |
| March 16, 2017 | 1 |
| March 17, 2017 | 1 |
| March 18, 2017 | 2 |
| March 20, 2017 | 3 |
| **TOTAL** | **30** |

42.  On May 2, 2017, Plaintiff received an e-mail from "Rick" with the e-mail address rickymas@icloud.com offering to pay a bribe, styled as "a donation, in order to have these URL's removed."  Plaintiff immediately declined, but the reply e-mail bounced because the sender's e-mail account was "over quota."

43.  Throughout May and June, Defendant MasMarques sent five (5) additional e-mail messages to Plaintiff.  Some of these messages were respectful, and others threatening.  He also sent one message clearly intended for another recipient named Jeff, presumably referring to Jeff Steinport, an attorney and the proprietor of the website http://www.unitedstatescourts.org, which shut down in part due to Defendant MasMarques's harassment.

44.  On August 29, 2017, Defendant MasMarques filed a false complaint with the Internal Revenue Service concerning Plaintiff.

45.  On September 10, 2017, posing as "Jack Jones" with the e-mail address 986842a@gmail.com, Defendant MasMarques e-mailed Plaintiff a threatening e-mail containing the statement, "You little parasite have been relentless towards the public. Now you will get a taste of the Feds coming to investigate you with great details."  Defendant MasMarques later replied to his own e-mail thread writing, "We are going to catch you, you dirty Mother Fucker!"

46.  On September 13, 2017, a post appeared on a website entitled "Blacklist Report" at http://www.blacklistreport.com containing a still frame photograph of Plaintiff excerpted from a video on YouTube, and a long, rambling defamatory tirade written in the same style as many of the threatening e-mails by Defendant MasMarques.

47.  On September 18, 2017, Jeff Steinport contacted Plaintiff to make Plaintiff aware that they were both being targeted by Defendant MasMarques, and later, that he had reported Defendant MasMarques's harassment to the Federal Bureau of Investigation ("FBI").

48.  Further posts appeared concerning Plaintiff and his family members throughout the next several months, with over 350 posts concerning Plaintiff and his family appearing by the time the Blacklist Report website temporarily disappeared from the internet in June 2018.

49.  Starting in September 2017, each of the "Blacklist Report" posts—and later, posts across multiple websites—was substantially similar.  The posts contained a mixture of personal insults and libel targeted at Plaintiff and his family members, including but not limited to:

a) Calling Plaintiff a "criminal;"

b) Calling Plaintiff a "parasite;"

c) Calling Plaintiff and his family a "sociopath" or "sociopaths;"

d) Suggesting that Plaintiff is mentally ill or belongs in a "psychiatric ward on medications;"

e) Falsely identifying Plaintiff as the defendant in a criminal case in Illinois, in which a *different* person named Aaron Greenspan was temporarily named as a defendant;

f) Falsely accusing Plaintiff of running an unregistered and/or fraudulent 501(c)(3) non-profit organization for the purpose of evading taxes and using the foundation as a personal "piggy bank";

11

g) Labeling Plaintiff a "failure" on account of his successful settlement of a legal dispute with Facebook, Inc. and Mark Zuckerberg in 2009 over Facebook's origins;

h) Falsely alleging that Plaintiff owns and/or manages the website leagle.com;

i) Falsely suggesting that Plaintiff deliberately harms his disabled brother;

j) Falsely suggesting that Plaintiff caused his brother's disability.

50. Many of the "Blacklist Report" posts also displayed a clear intent to threaten, harass and/or physically harm Plaintiff and his family members. Several posts contained modified images of Plaintiff and Plaintiff's parents. Some of these posts and/or the images contained therein, which appeared in multiple posts, also contained:

a) Plaintiff's disabled brother's cell phone number;

b) Photographs of Plaintiff's parents' home from Google Street View;

c) Multiple telephone numbers belonging to Plaintiff's father's workplace at Case Western Reserve University and at University Hospitals Cleveland Medical Center;

d) The physical address of a building near Plaintiff's father's workplace(s), Case Western Reserve University and University Hospitals Cleveland Medical Center.

e) Statements that viewers should harass Plaintiff's family, e.g. "Reach to https://case.edu and complain about Neil."

51. Plaintiff's father received numerous harassing telephone calls and e-mails at work, several of which were also addressed to his departmental colleagues based on these instructions.

52. On October 22, 2017, Defendant MasMarques wrote the following to Plaintiff:

"Wanted to ask you also about Stock Investing. Currently we make good money by trading Stocks but can't make tons of progress in making money. Noticed there is a program that lets a person reap the profit of 100th of a penny and to sell it right away but I guess we need a direct connection to the Stock market to do this. When we use our Broker the delays can make one loose money. I invested in Jazz Pharmaceuticals in May of 2009 when the Stock was only a couple of bucks and then sold it at $192 in 2014.

There are Stocks out there that nobody has hear of and I usually have good instincts in making money in the Stock Market and other investments. I can make a lot more money and quicker if I knew how to link up directly to the Stock Market bypass these third party Stock Traders and be able to buy and sell instantaneously without delay. At this point it makes not sense to buy a better computer that's faster etc., as I have to rely on a third party stock trading company anyway.
I do have a couple of Stock picks that are surging and will continue to surge and they are in Bio. What do you think? With your Computer skills and my Stock Trading skills we could make money.

We can pay you of course."

53.  On December 11, 2017, Defendant MasMarques filed a second false complaint with the Internal Revenue Service concerning Plaintiff.

54.  On December 20, 2017, Defendant MasMarques called Plaintiff from a blocked number and plainly identified himself as Diego MasMarques.  Plaintiff immediately informed Defendant that he had already reported Defendant to the police and had nothing further to say, and ended the call.

55.  On December 25, 2017, a post concerning Plaintiff entitled "AARON JACOB GREENSPAN AKA AARON GREENSSPAN [sic] PLAINSITE.ORG UNDER FRAUDULENT 501C THINK COMPUTER CORPORATION" appeared on the Blacklist Report website containing a modified photograph of Plaintiff with an added speech bubble reading, "Aaron Greenspan here! I ratted out Aaron Swartz as the MIT Hacker!"

56.  On January 20, 2018, a male individual called Plaintiff's family in Ohio fifteen (15) times in the span of one hour from the phone number +1 929 448 8094.  He reached Plaintiff's brother and proceeded to harass and upset him over the phone.

57.  On March 16, 2018, Defendant MasMarques called Plaintiff approximately twenty (20) times.

58.  On March 19, 2018 at 11:23 A.M. Pacific Time, under the alias "Liborio Bellomo," again referencing a murderous Genovese crime family boss, Defendant MasMarques submitted a

Contact Us form submission through the PlainSite website (the "Second Death Threat")
containing the statements, "You dirty Mother Fucker! Where are you in the Bat *[sic]* Area. You
Asshole! You cock sucker!" and "Shut this site down! It is not needed by the public. It's harmful
to the public. Go get a real job in a Burger King or something, instead of trying to freeload off of
people's information."  The form was submitted from a mobile device using DNS hostname
mobile-107-77-223-149.mobile.att.net with IP address 107.77.223.149.

59.  On or about March 30, 2018, Defendant MasMarques registered a Twitter account,
@badbadwebsites, and began posting false and defamatory messages on Twitter about Plaintiff
with content similar to the Blacklist Report posts.  Defendant MasMarques uploaded copyrighted
photographs of Plaintiff and Plaintiff's father to this account as well.

60.  On April 4, 2018, Plaintiff applied for a temporary restraining order against
Defendant in Santa Clara County, California which was assigned Case No. 18CH008067.

61.  Under cross-examination in court in Santa Clara County on February 28, 2019,
Defendant MasMarques admitted that the Mac OS username "tech" mistakenly included in one
of his Blacklist Report posts in place of an image he had attempted to upload matched his
username on his own personal computer.  In his telling, "[t]ech is from — it's not — well, the
computer was actually given to me from the Apple store.  The guy who fixes computers, that was
his name, and so it's on the computer now.  It's not my computer."

62.  Plaintiff was ultimately successful in shutting down the Blacklist Report website.  In
its place, Defendant MasMarques turned to a variety of other gripe sites, but especially
ComplaintsBoard, a Latvian and Russian-run website purporting to host English-language
"consumer reviews," but which is actually an extortion racket.  Its owner, Defendant
Kudriavtsev, who claims to own "six or seven real estate properties" financed with the proceeds

of his criminal enterprise, openly flouts United States law according to a deposition transcript from 2013.  *See Xcentric Ventures LLC v. Smith*, Case No. 2:17-cv-01686-DJH, Document 5-15 (D. Ariz. March 31, 2017).

63.   ComplaintsBoard is widely perceived to be an extortion racket.  Reviews of ComplaintsBoard on a legitimate consumer review site, SiteJabber, include the statements, "Online Bullying: This site should be illegal. Absolute lies posted about so many businesses. You can't even respond or it will rank higher in the search engines. Hopefully someday they go out of business. Read real reviews on Google, Facebook and the BBB where customers are actually verified!" and "Complaints Board is a complete online scam.  It is a forum for sociopaths, internet trolls and bullies to have a free space to degrade any business or person they choose.  Not only does the site attempt to extract money once the review is published, so does the poster.  Usually the poster hits all of the other sites too then demands money. Complaints Board allows people to assault people's sexuality, character, looks, anything these bullies can think of.  Then the company sends it out to other associated sites so that the person or business has this trash show up at the top in every search engine.  This is total blackmail and character assassination.  I cannot believe a class action suit has not yet been filed," and "This site has allowed a deranged lunatic to post false things about me and my family for years.  $30,000 is what we were quoted to have the lies removed.  Anyone can post any lie they want with no proof.  Its nothing but an extortion scam."

64.   While ComplaintsBoard claims not to ever remove posts on its site without a court order, some of the posts concerning Plaintiff have been removed over time.  Many, however, remain visible, and Defendant MasMarques continues to author new posts as recently as December 2022.

65.   After it became clear during the proceedings in Santa Clara County that Plaintiff knew Defendant MasMarques's home IP address, Defendant MasMarques began using local Xfinity WiFi and various Virtual Private Network connections to attempt to mask his IP address.

66.   Under cross-examination in court in Santa Clara County on May 5, 2019, Defendant MasMarques perjured himself when he denied under oath that he was responsible for many, if not most, of the ComplaintsBoard posts concerning Plaintiff.  In response to the question, "Can you explain why multiple e-mail addresses that you used to send PlainSite requests through the Contact Us form, why those e-mail addresses are already associated with ComplaintsBoard accounts?" Defendant MasMarques responded, "They're not associated with me.  Those are not my e-mail accounts."  This testimony was false.

67.   Other gripe sites used by Defendant MasMarques—many now defunct due to Plaintiff's efforts, requiring hundreds of hours of work—include but are not limited to https://datingpsychos.com, http://www.stdregistry.com, http://www.badbizreport.is, http://incomplaints.com, http://www.cheatland.com, http://cheatersgalaxy.com, http://www.dirtycheater.org, http://reportbadbiz.com, http://www.scumbagged.com, and https://www.ripoffreport.com.

68.   On April 2, 2018, Defendant MasMarques attempted to file a false, anonymous complaint with the State of Delaware concerning Plaintiff using the e-mail address 8587@protonmail.com.

69.   On April 2, 2018, Defendant MasMarques filed a third false complaint with the Internal Revenue Service concerning Plaintiff.

70.   On May 29, 2018, Defendant MasMarques sent a letter to the Attorney General of the United States concerning Plaintiff, which was assigned ID number 4042028.

71.  On June 5, 2018, a pseudonymous user called "Expose 501(c)(3) Fraud" wrote the following false statements on the ComplaintsBoard website ("The Traceable Post"):

 

Aaron Jacob Greenspan owns and runs PDFSR.COM where he uploads documents to harass and stalk people.

Aaron Jacob Greenspan has one person working for him in Indonesia where supposedly PDFSR.COM is based with a fake address of course.

Aaron Jacob Greenspan is outsourcing employees in India to do his dirty work with his monetized websites under this fraudulent 501c Think Computer Corporation and Think Computer Foundation.

http://www.thinkcomputer.org/about/index.html

http://www.thinkcomputer.org/home/photo1.jpg



Although Plaintiff could not access server logs for ComplaintsBoard, he could and did access server logs for the specific URLs contained in the post, which pointed to a website for which Plaintiff was the server administrator.

72.  Server logs for the website formerly at http://www.thinkcomputer.org on June 5, 2018 showed that on the same day, the only IP address to access the two URLs in the Traceable Post (http://www.thinkcomputer.org/about/index.html and http://www.thinkcomputer.org/home/photo1.jpg) during the day was 24.60.59.25, at approximately 3:36 P.M. Eastern Time.

73.  Plaintiff reported Defendant MasMarques's harassment to the San Jose Police Department, where Plaintiff lived at the time.  The report was forwarded to the Marlborough, Massachusetts Police Department, which worked with the Middlesex County District Attorney's Office to issue a subpoena to Comcast Cable Communications, LLC ("Comcast") on July 12, 2018 covering the period June 5, 2018 through June 16, 2018 for the IP address 24.60.59.25.

74.  According to the July 30, 2018 subpoena response from Comcast, the IP address 24.60.59.25 was registered in the name of "Mary MasMarques" at 4512 Willow Trail, Marlborough, MA 01752, which is also Defendant MasMarques's home address.

75.  The substance of the Traceable Post by Defendant MasMarques was false.  Plaintiff does not own or run pdfsr.com and never did.  Plaintiff does not employ and has not ever employed anyone in Indonesia or India regarding PlainSite.  Think Computer Corporation is not a 501(c)(3) non-profit organization.  While it operated, Think Computer Foundation was a 501(c)(3) non-profit organization, but was not in any way "fraudulent."

76. The Traceable Post contained several of the false and libelous themes previously articulated by Defendant MasMarques: that Plaintiff is involved in "dirty work," that Plaintiff's business and/or non-profit organization are/is somehow "fraudulent," and that Plaintiff owns other websites, directly or indirectly, that he actually does not.

77.  On June 8, 2018, Plaintiff received a phone call and e-mail from Shawn J. Johnson, Senior Assistant Attorney General in the Office of Arkansas Attorney General.  Mr. Johnson informed Plaintiff that Defendant MasMarques had filed at least one consumer protection complaint with his office regarding the court record aggregator leagle.com (which like PlainSite, also covers Defendant MasMarques's cases).  In that complaint, Defendant MasMarques incorrectly asserted that Plaintiff secretly owns leagle.com, and began harassing the staff of Mr. Johnson's office about the matter.

78. On June 13, 2018, an unidentified male caller with a possible New York accent who insisted that his identity was "not important" called Plaintiff from a blocked number twice around 2:00 P.M. Pacific Time (the "Third Death Threat").  The caller first asked if Plaintiff ran leagle.com, which Plaintiff accurately denied.  Plaintiff refused to answer further questions

without knowing the identity of the caller, and ended the call.  A few minutes later, the same

caller called again, and wrongly insisted that Plaintiff was hiding behind "registered agents" to

secretly run leagle.com, told Plaintiff that he was "on very thin ice," and to "be careful" before

immediately hanging up.  Plaintiff reported the calls to the FBI as they were identical to false

allegations put forth previously by Defendant MasMarques.

79. Plaintiff repeatedly asked Defendant Mediolex Ltd. to remove the posts about him.

On June 19, 2018, in response to a Digital Millennium Copyright Act (DMCA) takedown

request, "Daniel Shu" of the "Complaints Board Legal Department" wrote to Plaintiff from the

e-mail address legal@complaintsboard.com:

> "Do not mistake our kindness for weakness. We suggest you do not take that tone
> or path. If another threat is received all complaints will be moved to tens of
> partner websites. And this is just the first part. We don't want to spend time on
> this, but we will dedicate our best employees if we have to. Get the court order
> and we will remove the posts."

80. Upon information and belief, Daniel Shu is a likely pseudonym for a Latvian or

Russian contractor of Defendant Mediolex Ltd., but the message to Plaintiff was authorized by,

if not written by, Defendant Kudriavtsev.

81. Similar false "complaints" regarding Plaintiff appeared on hundreds of websites after

the June 19, 2018 threat by Defendant Mediolex Ltd.

82. After the June 19, 2018 threat by Defendant Mediolex Ltd, PlainSite was the target of

a "negative Search Engine Optimization (SEO)" attack, in which the attacker posts hundreds of

links to the target website on websites considered low-quality by search engines, such as

pornographic web sites.  The goal of the attack is to convince search engine algorithms that the

target website is also a low-quality website, thereby decreasing its ranking in search engine

results.  Indeed, countless links to PlainSite began to appear on obscure, offshore websites that often hosted pornographic and/or unlawful content.  PlainSite's Google ranking also suffered.

83. On October 1, 2018, Defendant MasMarques created a Twitter account, @JohnFuenchem, impersonating a Canadian lawyer in an attempt to communicate with individuals who know Plaintiff.  Once Plaintiff realized that the @JohnFuenchem account was Defendant MasMarques and warned others, that account was deleted within hours.

84. After more than twelve hours of hearing testimony spread out over a period of sixteen months, on August 31, 2019, a Superior Court of Santa Clara County, California judge granted Plaintiff a two-year restraining order (the "MasMarques Restraining Order") against Defendant MasMarques.  The MasMarques Restraining Order expired at 11:59 P.M. on August 30, 2021.

85. Defendant MasMarques obsessively tracked and continues to track every publicly visible activity associated with Plaintiff.  When Plaintiff publicly discussed and later authored a report warning of risks associated with Tesla, Inc., Defendant MasMarques became an unbridled Tesla and Elon Musk enthusiast, and—despite the restraining order against him—began communicating with other Tesla fans, encouraging them to harass Plaintiff based on the same false claims about Plaintiff he had been peddling for years.  They did.  This led to litigation in the Northern District of California, Case No. 3:20-cv-03426-JD, currently on appeal in the United States Court of Appeals for the Ninth Circuit, Case No. 22-16110.

86. On November 11, 2019 at 9:21 P.M., Defendant MasMarques registered the Twitter account @BrightLightNewz in part to harass and libel Plaintiff.

87. On or around July 7, 2020, Defendant MasMarques retweeted a post by Tesla enthusiast and contractor Omar Qazi's @WholeMarsBlog account stating, "Aaron Greenspan is a criminal.  Pass it on."  In fact, Qazi had come to espouse this belief due to his interactions with

Defendant MasMarques and Defendant MasMarques's posts on various gripe sites including but not limited to ComplaintsBoard.

88. On February 23, 2021, Defendant MasMarques registered the Twitter account @Giza299792458N in part to harass and libel Plaintiff.

89. On September 23, 2021, Defendant MasMarques registered the Twitter account @witchestoday in part to harass and libel Plaintiff.

90. On October 26, 2021, Defendant MasMarques impersonated a woman claiming to be a victim of Plaintiff by posting the following on his @Giza299792458N Twitter account:



A reverse image search revealed that Defendant MasMarques had appropriated the image of the woman, who is unknown to Plaintiff, from a pornographic website.

91. On April 13, 2022, Defendant MasMarques registered the Twitter account @diegomasmarque5 in part to harass and libel Plaintiff.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Libel Per Se Against Defendant MasMarques

92. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

93. Defendant MasMarques authored and/or published thousands of defamatory statements concerning Plaintiff, Plaintiff's family, Plaintiff's friends, and at least one of Plaintiff's professional colleagues to a wide audience on numerous websites.

94. The defamatory statements were authored and published with knowledge of the falsity and criminally harassing nature of the statements, and with reckless and negligent disregard for the truth.

95. The defamatory statements were published with malice, and without any lawful privilege or basis.

96. The false and defamatory statements are so numerous as to be impossible to list fully, but touch on a number of general themes, represented by the following examples:

| Example Quote | Example Date | Example Source |
|---|---|---|
| "aaron jacob greenspan is a low life parasite" | December 7, 2017 | Blacklist Report |
| "enjoys ruining people's careers and reputations at his whim so this lazy narcissistic asshole can make some easy money by uploading people's personal and private information on to the web" | December 7, 2017 | Blacklist Report |
| "This asshole aaron greenspan who is jewish" | December 7, 2017 | Blacklist Report |
| "Aaron Greenspan here! I ratted out Aaron Swartz as the MIT Hacker!" | December 25, 2017 | Blacklist Report |
| "Aaron Greenspan aka Aaron Jacob Greenspan aka Aaron J Greenspan created and runs plainsite.org under a fraudulent 501c non-profit" | December 27, 2017 | Blacklist Report |
| "Aaron Jacob Greenspan and his Sociopath father Neil S Greenspan both receive the medication called Haldol for their Sociopathy" | January 7, 2018 | ComplaintsBoard |

| | | |
|---|---|---|
| "Aaron Greenspan is an insane Sociopath" | January 7, 2018 | ComplaintsBoard |
| "Aaron Greenspan belongs locked up in a Psychiatric Hospital where he was locked up in Cleveland, Ohio" | January 7, 2018 | ComplaintsBoard |
| "Aaron Greenspan aka Aaron Jacob Greenspan creator and owner of leagle.com" | January 15, 2018 | Blacklist Report |
| "this entire family…all have Psychiatric issues and should not even be allowed to roam the streets without being monitored and definitely not be allowed to go near a computer" | January 15, 2018 | Blacklist Report |
| "we will continue to expose this slimy, sneaky little coward who is genetically demented" | January 15, 2018 | Blacklist Report |
| "he was not allowed to go ahead with FaceaCash because the Judges realized that this Sociopath is a serious danger and menace to society" | January 25, 2018 | Blacklist Report |
| "Aaron Greenspan loses all his cases in US Courts" | January 31, 2018 | Blacklist Report |
| "There's another Greenspan located in the California SEX OFFENDER REGISTRY. He was found guilty of RAPE BY FORCE" | April 1, 2018 | ComplaintsBoard |
| "My ex found me and children in our home were harmed and I was beat up to a bloody pulp after he found me on Aaron's website www.plainsite.org" | April 8, 2018 | ComplaintsBoard |
| "Aaron Greenspan doesn't care about hurting children. He posts the locations of children whose mothers are hiding from abusive relationships" | April 8, 2018 | ComplaintsBoard |
| "Aaron has collectved donations from his friends and colleagues, myself included in the amount of $100,000, and to date we have not seen a single dime used in the manner described to us when he requested the donation." | April 8, 2018 | ComplaintsBoard |
| "Aaron was charged in connection with a criminal complaint for False Claims Violations and Fraud in United States v. Yurygrenadyor, Case No. 09-CV-7891" | April 8, 2018 | ComplaintsBoard |
| "Aaron Greenspan has never done real work in his entire life" | April 28, 2018 | Reddit |
| "They operate leagle.com using "Agents", in order to hide their identities from the public and have used a fake name and address that they have posted to ICANN WHOS." | June 24, 2018 | Ohio Attorney General Complaint No. 1409784 |
| "As I see it this is a major Tax Fraud Crime | June 24, 2018 | Ohio Attorney General |

| | | |
|---|---|---|
| that Dr. Neil S Greenspan and his son Aaron Jacob Greenspan has concocted to rip off the US Government and States where they reside." | | Complaint No. 1409784 |
| "on April 4, 2018 Aaron Jacob Greenspan went to the Santa Clara Superior Court in California and has lied under Oath and committed perjury in order to obtain a Temporary Restraining Order against me and to further Harass, Stalk, Shame, Defame and Bully me online" | June 24, 2018 | Ohio Attorney General Complaint No. 1409784 |
| "Let us start off by saying that Aaron Greenspan is a HACKER! That's right! Aaron Jacob Greenspan is a Hacker! He illegally access and unlocks data sites in the State Courts and the online Federal Court database system Pacer. Then Aaron Greenspan uploads documents that are SEALED onto his monetized website plainsite.org, so that he can attract the most attention and traffic to his monetized website plainsite.org, in order to make the most amount of Money. Aaron Greenspan loves that money!" | July, 2018 | CheatLand |
| "Aaron Greenspan is a pathological liar. Aaron Greenspan compulsively lies or fabricates information out of habit." | July 13, 2018 | BadBizReport |
| "Aaron Greenspan is damaging us Hispanics. Also black and other minorities from lower middle class to poverty." | July 13, 2018 | BadBizReport |
| "Aaron Greenspan is an accomplished extortionist" | April 8, 2019 | CheaterDirectory |
| "Aaron Greenspan harassed Mike Lissner at Free Law Project using an alias John Fuenchem where he was using a Yahoo email account that was traced to Toronto, Canada and was the only individual who did not want to speak with Mike Lissner by phone. Aaron Greenspan was using his real email account and the John Fuenchem email account at the same time sending messages to the Free Law Project and harassing their followers on Twitter." | November 22, 2019 | ComplaintsBoard |
| "A padded cell with 4 point restraints is what he needs. Never again any Internet." | August 20, 2021 | Twitter |
| "He harasses his targeted victims to no end. He signs people up with porno co.'s like Pleasure Dome, who is based where? San Francisco. He | October 20, 2021 | Twitter |

| | | |
|---|---|---|
| hacks in to Social Media & email accounts. Files false police reports, lies to Judge's, Police, Court Clerk's nothing happens? He continues" | | |
| "He is a vexatious litigant, well known to many Attorneys in the Bay area, he files vexatious complaints with insane ramblings to get people to give up and just pay him some money. Never give up! Fight back and don't ever give him one penny. Why hasn't he been criminally charged?" | October 20, 2021 | Twitter |
| "Aaron Greenspan owes his victims millions of dollars" | October 26, 2021 | Twitter |
| "@POTUS45 Aaron Jacob Greenspan & his partner Eric Steven Teasley who supposedly became an MD from @Stanford in 2018 & now works at @Google made a death threat towards President Trump on @plainsite Reported this to Twitter nothing was done? Reported this to @SecretService" | December 11, 2022 | Twitter |
| "@TwitterSafety Hello! Can you look at the Twitter accounts @LegaleBriefs @aarongreenspan and @plainsite and permanently shut down these vicious doxing, cyber stalking and harassing Twitter accounts" | December 14, 2022 | Twitter |
| "Aaron Jacob Greenspan & his partner Eric Steven Teasley together run @aarongreenspan & @plainsite to promote their datamining monetized website plainsite.org since 2011 and being used daily for cyberstalking, doxing & harassment purposes of @elonmusk & many others" | December 17, 2022 | Twitter |

97. Defendant MasMarques repeatedly impersonated other people—both men and women who do not actually exist—to make false and defamatory claims concerning Plaintiff.

98. Defendant MasMarques continues to broadcast and publish these and similar defamatory statements and have made the defamatory statements available to readers around the world, some of whom have contacted Plaintiff and Plaintiff's family, believing those statements to be true.

99. The defamatory statements are defamatory *per se* in that, on their face, they reflect upon Plaintiff's reputation and character in a manner that: (1) injures Plaintiff's reputation and attempts to subject Plaintiff to public hatred, ridicule, shame, or disgrace; and (2) adversely affects Plaintiff's trades and/or businesses.  In the alternative, the defamatory statements are defamatory *per quod* in that they are capable of being interpreted as reflecting upon Plaintiff's reputation and/or character in a manner that: (1) injures Plaintiff's reputation and attempts to subject Plaintiff to public hatred, ridicule, shame, or disgrace; and (2) adversely affects Plaintiff's trades and/or businesses.

100.    Publication of the defamatory statements has caused and will continue to cause Plaintiff and members of Plaintiff's family and Plaintiff's targeted colleague(s) to suffer great mental anguish and emotional distress.

101.    Plaintiff has been damaged by the authorship and publication of the defamatory statements because they impute dishonesty and immorality regarding his personal and professional character, for example, by falsely stating that Plaintiff has a criminal record, by falsely suggesting that Plaintiff never graduated from college, by falsely stating that Plaintiff's former non-profit organization existed for the primary purpose of cheating the Internal Revenue Service.

102.    Plaintiff has been damaged by the authorship and publication of the defamatory statements because they falsely suggest that Plaintiff engages in illegal, unethical, immoral and/or criminal business practices.

103.    Plaintiff has been damaged by Defendant MasMarques's creation of fake user accounts on various social media platforms and websites designed to impersonate Plaintiff,

impersonate Plaintiff's family members, and impersonate others who might know plaintiff or his family members.

104.    Plaintiff has been damaged by the authorship and publication of the defamatory statements in his professional career due to the misapprehensions of those who read the statements and assume them to be true.

105.    The defamatory statements, many of which contain Plaintiff's and Plaintiff's family's home address and contact information, have put Plaintiff and Plaintiff's family in physical danger.

**SECOND CLAIM**
**Civil Harassment Against Defendant MasMarques**
**(Massachusetts General Laws Chapter 258E)**

106.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

107.    Defendant MasMarques engaged in three or more distinct acts of harassing conduct toward Plaintiff over a period of over five years.

108.    By invoking the name of "Liborio Bellomo," a Genovese crime family boss who ordered the murder of at least two individuals, as well as the name "Vicente Bellomo," presumably a reference to Vicente Gigante who was Bellomo's predecessor, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

109.    By repeatedly using profanity and demanding to know Plaintiff's location, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

110.    By hiring numerous private investigators to track Plaintiff and submit false declarations in court regarding Plaintiff, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

111.    By filing false complaints with dozens of federal and state government agencies and officials, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

112.    By deliberately exposing Plaintiff's family and friends to public scorn on false pretenses, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

113.    Defendant MasMarques's harassment has been continuous since 2017.

114.    Defendant MasMarques's harassment was not reciprocated and was directed specifically at Plaintiff.  A judge of the Superior Court of Santa Clara County, California found cause to issue a two-year restraining order against Defendant MasMarques due to his harassing conduct, and no cause to issue a counter-restraining order against Plaintiff.  A judge of the Marlborough, Massachusetts District Court found no probable cause for criminal harassment charges to issue against Plaintiff on Defendant MasMarques's request.  Similarly, a judge of the Superior Court of Middlesex County, Massachusetts dismissed Defendant MasMarques's baseless claims against Plaintiff.

## THIRD CLAIM
### Tortious Interference with Prospective Economic Advantage Against Defendant MasMarques

115.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

116.    Up through October 2022, Plaintiff was a user of the Twitter social network and agreed to Twitter, Inc.'s terms of service.

117.    Defendant MasMarques repeatedly sought to have Plaintiff's personal and business Twitter accounts permanently suspended based on false pretenses.

118.    Defendant MasMarques falsely reported Plaintiff's accounts to Twitter on a number of occasions for purported "violations" of its terms of service.

119.    On at least one occasion, Defendant MasMarques was successful at having one or more of Plaintiff's accounts temporarily suspended.

120.    Defendant MasMarques intentionally interfered with the contract between Plaintiff and Twitter, Inc. in the hopes that doing so would improve his own employment prospects and increase his income by eliminating true information about him on the internet.

**FOURTH CLAIM**
**Abuse of Process Against Defendant MasMarques**

121.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

122.    Defendant MasMarques engaged in a years-long campaign to have Plaintiff incarcerated, involuntarily committed, fined, penalized, and/or investigated, not because Plaintiff had done anything wrong, but as leverage in his never-ending attempt to extort a favorable ruling from Plaintiff on Defendant MasMarques's PlainSite privacy requests.

123.    On July 3, 2018, Defendant MasMarques filed a cross-request for a temporary restraining order against Plaintiff in the Superior Court of Santa Clara County based on objectively false information.

124.    Defendant MasMarques filed false, misleading, and fabricated claims involving Plaintiff with the following government agencies and/or offices, in an attempt to extort compliance from Plaintiff:

    1)  The San Francisco, California Police Department;

    2)  The San Jose, California Police Department;

    3)  The Shaker Heights, Ohio Police Department;

    4)  The Delaware Secretary of State;

    5)  The Ohio Attorney General's Office;

6) The Arkansas Attorney General's Office;

7) The California Attorney General's Office;

8) The California Department of Motor Vehicles;

9) The United States Department of the Treasury, Internal Revenue Service;

10) The United States Securities and Exchange Commission;

11) The Attorney General of the United States;

12) The Federal Bureau of Investigation;

13) The United States Secret Service;

14) The United States Attorney's Office for the Northern District of California;

15) The Office of Senator Dianne Feinstein;

16) The Office of Senator John Kennedy;

17) The Office of Senator Christopher Coons;

18) The Office of Senator Tom Carper;

19) The Office of Senator Ed Markey.

125.   In some of these false claims, Defendant MasMarques sought to have Plaintiff involuntarily committed to a psychiatric institution.

126.   Defendant MasMarques caused other individuals to file false, misleading, and fabricated claims against Plaintiff with:

20) The Pennsylvania Attorney General's Office;

21) The United States Department of Health and Human Services Office of Civil Rights (nominally pertaining to Plaintiff's father, who is a physician);

22) Case Western Reserve University (nominally pertaining to Plaintiff's father);

23) University Hospitals Cleveland (nominally pertaining to Plaintiff's father).

127.    Defendant MasMarques reported at least one of Plaintiff's attorneys to the State Bar of California, which found Defendant MasMarques's claims to be baseless.

128.    On August 23, 2018, a private investigator hired by Defendant MasMarques, John X. Haro, attempted to locate Plaintiff at an address where Plaintiff no longer lived, finding instead "a female of Indian descent and…a male of Indian descent seated on the couch" according to a declaration that was filed in court on August 27, 2018.  On this basis, Defendant MasMarques falsely alleged that "Aaron Greenspan has been committing fraud on this court by stating in legal documents that his address is [redacted] when in fact this individual does not live at this address."  In fact, Plaintiff had moved from that address at the end of June 2018.

129.    Approximately one month later, on or about October 4, 2018, Defendant MasMarques filed a complaint with the California Department of Motor Vehicles ("CADMV") which was assigned to the Investigations Division as Case No. 18B3D30150.  According to CADMV, "The complainant alleged that Mr. Greenspan has used residence addresses where he has never resided in order to obtain a California Driver's License, and has therefore committed fraud against the State of California and against any insurance companies that have insured Mr. Greenspan's vehicle.  DMV Investigations, Milpitas District Office, began investigating the matter in October 2018.  In October 2019, DMV Investigations concluded the matter and found no violations or wrongdoing."

130.    CADMV only "concluded the matter" in "October 2019"—more than a year after the investigation in Case No. 18B3D30150 was opened, because Plaintiff realized that he was unable to renew his vehicle registration and made inquiries with CADMV as to why.  According to CADMV, the bogus investigation caused by Defendant MasMarques's fraudulent complaint put a "stop" on Plaintiff's CADMV records without Plaintiff ever being notified.

131.    Plaintiff could not legally drive his car while his vehicle registration was expired and he was prevented from renewing it by the "stop" caused by Defendant MasMarques.

132.    On April 8, 2019, Defendant MasMarques filed an application for criminal charges against Plaintiff in the Marlborough, Massachusetts District Court, Case No. 1921AC000120, *MasMarques v. Greenspan*.  That court found no probable cause for charges to issue and the matter was closed.

133.    On July 29, 2019, Defendant MasMarques filed for a restraining order against Plaintiff in the Middlesex County, Massachusetts Superior Court (without ever serving Plaintiff), Case No. 1981CV02204.  Plaintiff filed a motion to strike the complaint in that case for fraud on the court, after which the case was promptly dismissed.

134.    On September 10, 2019, after obtaining a two-year restraining order against Defendant MasMarques in the Superior Court of Santa Clara County, California, Plaintiff filed a motion requesting attorney's fees and court costs of $9,276.72.  The motion was denied without any explanation or citation to precedent in an order containing numerous typographical errors that denied Plaintiff due process.

135.    Defendant MasMarques repeatedly committed the crime of perjury throughout his testimony before the Superior Court of Santa Clara County, California.

### FIFTH CLAIM
**Malicious Prosecution Against Defendant MasMarques**

136.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

137.    On April 8, 2019, Defendant MasMarques submitted a false application for criminal charges against Plaintiff to the Marlborough, Massachusetts District Court.  The matter was assigned Case No. 1921AC000120.

138.    Plaintiff was forced to defend himself against Defendant MasMarques's false application.

139.    On May 15, 2019, after a hearing, the Marlborough, Massachusetts District Court found no probable cause and the matter was closed.

140.    Defendant MasMarques acted with malice as it should have been obvious to any reasonable person that there was no probable cause for criminal charges to issue against Plaintiff for posting public records and/or discussing public records on the internet.

## SIXTH CLAIM
### Libel Per Se Against Defendants Kudriavtsev and Mediolex Ltd.

141.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

142.    Defendants Kudriavtsev and Mediolex Ltd. operate an unknown number of websites, including but not limited to ComplaintsBoard and https://www.consumercomplaints.in.

143.    On June 19, 2018, "Daniel Shu," writing from legal@complaintsboard.com to Plaintiff, stated:

> "Do not mistake our kindness for weakness. We suggest you do not take that tone or path. If another threat is received all complaints will be moved to tens of partner websites. And this is just the first part. We don't want to spend time on this, but we will dedicate our best employees if we have to. Get the court order and we will remove the posts."

144.    On information and belief, Defendants Kudriavtsev and Mediolex Ltd. authored and/or caused to be authored false and libelous posts on various websites concerning Plaintiff.

145.    In so doing, Defendants Mediolex Ltd. and Kudriavtsev waived any protection from liability under Section 230 of the Communications Decency Act.

**SEVENTH CLAIM**
**Contribution Against Defendants Kudriavtsev and Mediolex Ltd.**

146.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

147.     Defendant Mediolex Ltd., with the authorization of Defendant Kudriavtsev, stated its explicit intention to amplify the false and libelous information about Plaintiff on its website.

148.     In so doing, Defendants Mediolex Ltd. and Kudriavtsev waived any protection from liability under Section 230 of the Communications Decency Act.

149.     Defendants Kudriavtsev and Mediolex Ltd. routinely edit posts on the ComplaintsBoard website, for example, replacing certain words and numbers (typically as part of contact information) with "[censor]" according to an unknown policy.

150.     Upon information and belief, Defendants Mediolex Ltd. and/or Kudriavtsev did actually contribute additional false information about Plaintiff on various websites including but not limited to ComplaintsBoard, based upon false and libelous posts by Defendant MasMarques.

**EIGHTH CLAIM**
**Negligent Infliction of Emotional Distress Against Defendants Kudriavtsev and Mediolex Ltd.**

151.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

152.     Defendants Kudriavtsev and Mediolex Ltd. routinely edit posts on the ComplaintsBoard website, for example, replacing certain words and numbers (typically as part of contact information) with "[censor]" according to an unknown policy.

153.     Defendants Kudriavtsev and Mediolex Ltd. have the ability to remove posts on the ComplaintsBoard website that are abusive or clearly false.

154.    Defendants Kudriavtsev and Mediolex Ltd. created a purported function for users to "report" posts on the ComplaintsBoard website that are abusive or clearly false.

155.    Plaintiff reported dozens of abusive and false posts, including posts with headlines such as, "aaron greenspan was arrested in california with child porn on his computer!"

156.    Plaintiff has never been arrested anywhere, let alone for possessing child pornography.  Any post suggesting otherwise is completely false.

157.    Defendant Mediolex Ltd. is aware that such posts have been reported because any attempt to report them again on the ComplaintsBoard website generates the error, "You have already reported this post. Thank you."

158.    Despite such false and libelous posts being reported, Defendants Kudriavtsev and Mediolex Ltd. have deliberately allowed them to remain on the ComplaintsBoard website.

159.    Defendants Kudriavtsev and Mediolex Ltd.'s negligence has harmed Plaintiff.

## NINTH CLAIM
**Violation of Massachusetts General Laws Chapter 93A § 2 (Unfair Acts or Practices) Against Defendants Kudriavtsev and Mediolex Ltd.**

160.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

161.    Massachusetts General Laws c. 93A, § 2(a) declares unlawful "unfair or deceptive acts or practices in the conduct of trade or commerce[.]"

162.    Defendants Kudriavtsev and Mediolex Ltd. conduct trade and commerce in Massachusetts and with Massachusetts consumers.

163.    As a corporation, Mediolex Ltd. is a "person" under G.L. c. 93A, § 1(a).

164.    The ComplaintsBoard website, controlled and operated by Defendants Kudriavtsev and Mediolex Ltd., earns revenue from banner advertisements provided by Google,

LLC and various other advertising networks, including advertising networks based in the Russian Federation.

165.    For those victims that Defendants Kudriavtsev and Mediolex Ltd. are not successful at extorting, their criminal enterprise still generates revenue due to the presence of such banner advertisements.

166.    Plaintiff spent at least $9,276.72 on attorney's fees and court costs on a restraining order intended to prohibit Defendant MasMarques from harassing Plaintiff on ComplaintsBoard because of the unlawful, unfair and deceptive conduct of Defendants Kudriavtsev and Mediolex Ltd, as well as recurring monthly fees for a mail forwarding address.

167.    It was unfair of Defendants Kudriavtsev and Mediolex Ltd. to refuse to remove the libelous and false posts concerning Plaintiff from ComplaintsBoard.

168.    It was unfair of Defendants Kudriavtsev and Mediolex Ltd. to knowingly profit from disinformation on ComplaintsBoard by optimizing the website for search engines.

169.    It was unfair of Defendants Kudriavtsev and Mediolex Ltd. to threaten to contribute additional libelous and false posts concerning Plaintiff to ComplaintsBoard and/or other websites.

170.    Plaintiff sent Chapter 93A 30-day notice to Defendants Kudriavtsev and Mediolex Ltd. via e-mail on December 18, 2022.  Both messages were successfully received according to SMTP server logs.  Defendants Kudriavtsev and Mediolex Ltd. did not respond.

## TENTH CLAIM
### Violation of Massachusetts General Laws Chapter 93A § 2 (Deceptive Acts or Practices) Against Defendants Kudriavtsev and Mediolex Ltd.

171.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

172.    It was deceptive of Defendant Mediolex Ltd. to create fake ComplaintsBoard functions, such as to "report" posts or "claim" a business profile, in order to promote the illusion that ComplaintsBoard is a legitimate consumer review website.

173.    Defendants Kudriavtsev and Mediolex Ltd. purport to allow business owners to "claim" their company profiles on ComplaintsBoard, advertising, "Is this your company? Claim it and get a lot of features. [https://www.complaintsboard.com/faq#what-is-a-claimed-account]." Plaintiff completed the steps to claim the "Plainsite.org / Think Computer" profile but was prohibited from doing so.  Consequently, the profile still displays outdated contact information.

174.    It was deceptive of Defendant Mediolex Ltd. to provide fake names and false contact information for ComplaintsBoard, employing a variety of aliases over years for Defendant Kudriavtsev and his staff, including but not limited to "Mark Schultz," "Elizabeth Arden," "Ivonne Wainwright," "Daniel Shu," and "Dzianis Beltyukov."

175.    It was deceptive of Defendant Mediolex Ltd. to use a fake ticketing system for support issues, which never led to any actual resolution of problems.

176.    It was deceptive of Defendant Mediolex Ltd. to use the following graphical badge on ComplaintsBoard (shown in the red box below above a false and libelous headline) to denote "verified" "customers," thereby suggesting that readers should trust them, when in fact individuals associated with the badge were neither verified nor customers of Plaintiff's company:



**user2135716** of US
Mar 16, 2020 | 7:52 pm EDT | 🛡 Verified customer

## aaron greenspan was arrested in california with child porn on his computer!

**ELEVENTH CLAIM**
**Violation of Massachusetts General Laws Chapter 93A § 2 (Unfair or Deceptive Trade Practices) Against Defendants Kudriavtsev and Mediolex Ltd.**

177.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

178.    Defendants Kudriavtsev and Mediolex Ltd. engaged in an unfair and deceptive trade practice by, as a matter of purported "policy," refusing to remove false and/or libelous posts on ComplaintsBoard by third parties.

**TWELFTH CLAIM**
**Civil Conspiracy Against All Defendants**

179.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

180.    Defendants MasMarques, Kudriavtsev and Mediolex Ltd. worked with one another to amplify false information on ComplaintsBoard about Plaintiff.

181.    Defendants Kudriavtsev and Mediolex Ltd. knowingly allowed Defendant MasMarques to use ComplaintsBoard under dozens if not hundreds of different accounts with different pseudonyms, many registered with e-mail addresses that Defendant MasMarques also used to communicate with Plaintiff.

182.    Defendants Kudriavtsev and Mediolex Ltd. knowingly refused to comply with a subpoena issued by the District Court of the Northern District of California in Case No. 3:19-mc-80265-TSH which demanded that Defendant Mediolex Ltd. identity the authors of numerous posts written in the same style as others by Defendant MasMarques.

183.    Defendants Kudriavtsev and Mediolex Ltd. adopted the same language used by Defendant MasMarques, including but not limited to use of the word "parasite," in communicating with Plaintiff.

184.    Defendant MasMarques has specifically sought to use ComplaintsBoard, operated by Defendants Kudriavtsev and Mediolex Ltd., because it is a website that advertises itself as being outside of the jurisdiction of the United States of America.

185.    But for the unique combination of Defendants Kudriavtsev and Mediolex Ltd. operating from a headquarters outside of the United States and Defendant MasMarques exploiting their policies to post false and libelous content on ComplaintsBoard, Plaintiff would likely have been successful in having the unlawful content removed under United States laws.

## THIRTEENTH CLAIM
### False Light Invasion of Privacy Against All Defendants

186.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

187.    The defamatory statements constitute false light invasion of privacy in that they have subjected Plaintiff to unreasonable and highly objectionable publicity by attributing to Plaintiff characteristics, conduct or beliefs that are false, thereby placing them in a false light before the public.

188.    The false light in which Plaintiff has been placed due to publication of the defamatory statements would be highly offensive to a reasonable person.

189.    Defendants had knowledge of the falsity and criminally harassing nature of the defamatory statements or acted in reckless disregard as to the falsity of the defamatory statements and the false light in which Plaintiff would be placed.

## FOURTEENTH CLAIM
### Intentional Infliction of Emotional Distress Against All Defendants

190.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

191.    Defendant MasMarques sent and/or caused to be sent the First Death Threat, the Second Death Threat, and the Third Death Threat, all directed at Plaintiff because Plaintiff refused to agree to erase public records concerning Defendant MasMarques's murder conviction which multiple federal judges had already refused to seal.

192.    Defendant MasMarques made dozens of harassing telephone calls to Plaintiff because Plaintiff refused to agree to erase public records concerning Defendant MasMarques's murder conviction which multiple federal judges had already refused to seal.

193.    On July 3, 2018, Defendant MasMarques filed a cross-request for a temporary restraining order against Plaintiff based on objectively false information.

194.    Plaintiff does not own and has never owned a gun.

195.    In response to the question "Did the person in (2) use or threaten to use a gun or any other weapon" on Judicial Council of California Form CH-100 i.e. a gun, Defendant MasMarques checked "Yes" and wrote, "THIS INDIVIDUAL'S WEAPON IS HIS COMPUTER AND HACKING SKILLS THAT HE USES IN A MALICIOUS MANNER, IN ORDER TO HARASS, STALK, TERRORIZE, SHAME AND DEFAME ANYONE AT HIS WHIM."

196.    On this basis, Defendant MasMarques's cross-request was granted and series of baseless counter-temporary restraining orders were issued against Plaintiff in 2018 and 2019, until the Superior Court of Santa Clara County, California finally ruled in Plaintiff's favor nearly fourteen months later.

197.    The record of these baseless and expired counter-temporary restraining orders has repeatedly interfered with Plaintiff's ability to re-enter the United States of America due to automated checks by the United States Department of Homeland Security at passport control.

198.    Defendants Kudriavtsev and Mediolex Ltd. chose to host, promote, duplicate, and optimize for search engines Defendant MasMarques's false and libelous rants about Plaintiff even knowing that they were false and libelous.

199.    When Plaintiff requested assistance from ComplaintsBoard staff and ultimately served a subpoena on Defendant Mediolex Ltd., Defendant Mediolex Ltd. responded by stating,

> "You are a parasite posting falsified information about other people, ruining their lives. We know that you've been behind another 'web project' that has been recently shut down. But we'll bring all the evidence up if needed. We could've been very helpful and supportive, but you've been a complete asshole from the very beginning. Now, get the court order and we'll remove the postings!"

200.    Defendants attacked Plaintiff, Plaintiff's business, Plaintiff's former non-profit organization, Plaintiff's parents, Plaintiff's disabled brother, Plaintiff's maternal uncle, Plaintiff's maternal uncle's business, Plaintiff's aunt, Plaintiff's cousins, Plaintiff's friends, and at least one of Plaintiff's work colleagues, all in an effort to extort compliance from Plaintiff.

201.    Plaintiff's maternal uncle and related cousins live or lived in Massachusetts.

202.    Defendant MasMarques made it impossible for Plaintiff to drive legally for a brief period of time in 2019.

203.    For a time from 2018-2022, Defendant MasMarques made it impossible for Plaintiff to travel internationally without pointless interference and delays from federal agents.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    A permanent injunction prohibiting Defendants from posting, propagating, copying, or otherwise promoting libelous and defamatory content concerning Plaintiff, Plaintiff's family members, or Plaintiff's friends or colleagues, and/or their business activities,

consistent with the specific libelous themes enumerated in this complaint, directly or via any third party;

B.    A permanent injunction ordering the immediate removal of existing libelous and defamatory content concerning Plaintiff, Plaintiff's family members, or Plaintiff's friends or colleagues, and/or their business activities, from any and all websites used by Defendants, including but not limited to ComplaintsBoard;

C.    Judgment against Defendants on all counts of the Complaint;

D.    A criminal referral to the United States Attorney's Office for the District of Massachusetts concerning all Defendants;

E.    An award in favor of Plaintiff for compensatory damages in an amount of not less than $750,000.00, to be determined at trial;

F.    An award in favor of Plaintiff for general and special damages in an amount to be determined at trial;

G.    An award in favor of Plaintiff for punitive damages in an amount to be determined at trial for Defendants' reprehensible and outrageous conduct, and to deter future reprehensible and outrageous conduct;

H.    An award of treble damages on Plaintiff's Massachusetts General Laws Chapter 93A claims;

I.    Plaintiff's reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

J.    Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated: January 18, 2023

Aaron Greenspan, *pro se*
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org