## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

**AARON GREENSPAN**,

     Plaintiff,

       v.

**DIEGO MASMARQUES, JR. a/k/a DIEGO MAS HOWARD a/k/ RICKY MAS MARQUES a/k/a JACK JONES**, **SERGEI IGOREVICH KUDRIAVTSEV**, **MEDIOLEX, LTD.**, and **ASTRAD, LTD.**,

     Defendants.

</td><td>

Case No.: 1:23-cv-10134-DJC

</td></tr>
</table>

## FIRST AMENDED COMPLAINT

Plaintiff Aaron Greenspan, by and for his complaint against Diego MasMarques, Jr. a/k/a Diego Mas Howard a/k/a Ricky Mas Marques a/k/a Jack Jones, Sergei Igorevich Kudriavtsev, Mediolex Ltd., and Astrad Ltd., avers as follows:

## INTRODUCTION AND SUMMARY

1.   This action arises out of the decision of a convicted felon to flagrantly violate the spirit of multiple orders by this Court and the United States Court of Appeals for the First Circuit affirming public access to judicial records.

2.   Plaintiff is the founder and President of Think Computer Corporation, a software company based in California.  Think Computer Corporation operates PlainSite, a website at https://www.plainsite.org that indexes and makes available millions of court documents and other government resources in the public domain.  PlainSite provides access to public records to

1

thousands of users per day, including numerous government users, free of charge.  Plaintiff personally and exclusively oversees the operations of PlainSite.

3.    "Gripe sites" are modern-day extortion schemes that attempt to exploit Section 230 of the Communications Decency Act ("CDA").  They are anonymous, frequently offshore websites whose ownership information is shielded by proxies—often lawyers—with the primary goal of attracting those interested in posting libelous, defamatory, and often sexually explicit content about innocent victims, in the hope that the victims will seek removal of such content for a fee that can be paid directly to the gripe sites or to the gripe sites' co-conspirators.

4.    Plaintiff was the primary source for a limited *New York Times* exposé of gripe sites entitled "The Slander Industry" published on April 24, 2021.  *See* https://www.nytimes.com/interactive/2021/04/24/technology/online-slander-websites.html.

5.    Generally speaking, PlainSite hosts true and accurate government records and analysis of those records, while gripe sites host false and lewd material that is libelous and is intended to cause harm.

6.    There exists an industry of "removal services" that claim to be able to remove posts on *both* gripe sites and court record aggregators such as PlainSite.  In fact, these removal services simply offer bribes, or are quietly operated by the same owners as gripe sites.  Some removal services transmit payment to gripe sites via cryptocurrency, such as bitcoin, at agreed-upon rates.

7.    PlainSite and Plaintiff have never accepted payment from any removal service or any other third party to remove or suppress content.

8.    Individuals frequently contact PlainSite directly wishing to have their court records suppressed from search engine results or altogether removed from PlainSite, such as when a case is ordered under seal.  Unlike gripe sites, PlainSite clearly identifies its owner and does not

charge any fee to suppress or remove public records from its site.  PlainSite attempts to streamline privacy requests by encouraging such individuals to use a "Contact Us" form on its website that allows for efficient issue resolution.

9.   Privacy requests are granted or denied based on the principles stated in PlainSite's publicly posted Privacy Policy (*see* https://www.plainsite.org/legal/privacy.html).  Most individuals respect PlainSite's decision on any given case, but a very small minority do not and are more vocal about their belief that their court case(s) should be exempt from public scrutiny.

10.   One individual, Defendant Diego MasMarques, Jr., was and remains so obsessively enraged about his criminal history being public that he engaged in a years-long crusade of libel and harassment against Plaintiff, using gripe sites as his main weapon.  In addition to targeting Plaintiff, Defendant MasMarques has also targeted the owners of numerous other websites that host court records, and was partially responsible for one of them shutting down his website.

11.   Defendant MasMarques is a convicted murderer and alleged rapist with a documented history of mental illness and physical violence.  He was also the subject of a now-expired civil restraining order (and several temporary restraining orders leading up to its issuance) obtained by Plaintiff in the Superior Court of Santa Clara County, California in 2019.

12.   Defendant MasMarques frequently uses the manipulative psychological tactic known as DARVO—an abbreviation for Deny And Reverse Victim and Offender.  In other words, Defendant MasMarques projects his experiences and crimes onto his victims.

13.   Plaintiff's restraining order(s) had no effect on Defendant MasMarques's obsession with erasing his criminal past from the internet, and arguably made the situation worse. Defendant MasMarques also began harassing Plaintiff through third-party intermediaries once the restraining order(s) were in place, despite such activity also violating the restraining order(s).

14.   Defendant MasMarques's repeated violations of Plaintiff's restraining order(s) finally resulted in criminal proceedings against Defendant MasMarques in the Marlborough, Massachusetts District Court, Case No. 1821CR001157, for (1) violation of the restraining order(s) and (2) criminal harassment.  These proceedings were ultimately terminated—and due to false representations by Defendant MasMarques, expunged—because of compounded errors by the Marlborough, Massachusetts Police Department and the Middlesex County District Attorney's Office, which ignored critical information provided by Plaintiff.  The District Attorney assigned five different Assistant District Attorneys to the case before simply giving up.

15.   The end result has been an uninterrupted slew of *thousands* of false, libelous and defamatory postings about Plaintiff and Plaintiff's family members on gripe sites since 2017; telephone harassment; e-mail harassment; grievous abuse of process in the courts and other government agencies; and extortion attempts by the gripe sites MasMarques posted on and various removal services when Plaintiff sought to have false postings removed.

16.   To remedy these myriad violations of law and put an immediate end to the ongoing harm caused by Defendant, Plaintiff seeks injunctive relief requiring the immediate removal of Defendants' libelous and defamatory posts; injunctive relief immediately restricting Defendants' ability to make further libelous and defamatory posts and/or statements regarding the same false and libelous themes; monetary damages from Defendants for the significant investment of time spent protecting himself and his family from Defendants; and monetary damages for harm done to Plaintiff's reputation, career, and future earning potential.  Defendants' willful actions have made it all but impossible for Plaintiff to raise money from Silicon Valley venture capital firms and other investors to finance creative endeavors.

## JURISDICTION

17.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy arises between citizens of different states and because the amount in controversy exceeds $75,000.

18.  This Court has personal jurisdiction over Defendants because Defendant MasMarques lives in this judicial District, and all Defendants have done business in this judicial District and have engaged in other persistent courses of conduct in this District and in this State.

## VENUE

19.  Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because: (i) Defendant MasMarques resides in this judicial District; and (ii) a substantial part of the events giving rise to the claims occurred in this judicial District.

## THE PARTIES

20.  Plaintiff Aaron Greenspan is an individual residing in the State of California. Plaintiff was a 2012-2013 CodeX Fellow at Stanford Law School.  Plaintiff is a private citizen who does not hold public office and is not known to the vast majority of the general public.

21. Defendant Diego MasMarques, Jr. ("MasMarques"), formerly known as "Diego Mas Howard" and also known as "Ricky MasMarques" or "Rick," as well as "Jack Jones" among hundreds of other aliases, is an individual with an extensive criminal record residing at 4512 Willow Trail, Marlborough, Massachusetts 01752.  Upon information and belief, Defendant MasMarques has used the IP addresses 76.24.132.152 (Comcast Cable Communications LLC, Marlborough, MA), 24.60.59.25 (Comcast Cable Communications LLC, Marlborough, MA) and 107.77.223.149 (AT&T Mobility LLC), among numerous others.  Defendant MasMarques has

also created numerous pseudonymous accounts on dozens of websites and has registered dozens of e-mail accounts, many with the Swiss "Proton Mail" e-mail service, to support them.

22.   Defendant Sergei Igorevich Kudriavtsev, born 1981, is a Russian-speaking Latvian national with a last known reported residence of Kaivas Iela 50/5 Unit 108, Vidzeme Suburb, Riga, LV-1021, Latvia.  Although Defendant Kudriavtsev is the likely ultimate beneficial owner of Mediolex Ltd. and Astrad Ltd. and is, according to his prior sworn testimony, "the person who makes the decision" regarding the website https://www.complaintsboard.com ("ComplaintsBoard"), his exact relationships to Mediolex Ltd., Astrad Ltd., and his various other as-yet-unidentified shell companies are unknown.  Defendant Kudriavtsev is the beneficiary of Mediolex Ltd.'s bank accounts.  Defendant Kudriavtsev has admitted in sworn testimony to frequent travel to the United States of America and has in the past been an officer of at least two corporations incorporated in the United States.  Defendant Kudriavtsev has in the past used the aliases "Mark Schultz," "Elizabeth Arden," "Ivonne Wainwright," "Denis Beltukov," "Dzianis Beltyukov," and possibly also "Daniel Shu."

23.   Defendant Mediolex Ltd., also known as "Mex Group," is a Seychelles-based shell corporation doing business in Latvia, the Russian Federation, and the United States.  Mediolex Ltd. advertises its mailing address on ComplaintsBoard as the entire apartment building at Darzauglu 1, Riga, LV-1012, Latvia.  Mediolex Ltd. is associated with a network of extortion websites employing Russian nationals which maintain funds in Swiss and Latvian bank accounts at Coutts & Co. Ltd., Swedbank AB (formerly AS Hansabanka), and Luminor Bank, and which all share the common theme of fake consumer reviews.  Among these are the Russian-language website ХУЖЕ.НЕТ (http://www.huzhe.net, the Russian word pronounced "HOO-zheh" meaning "worse"), the English-language website targeted at India,

http://www.consumercomplaints.in, and ComplaintsBoard, an English-language website targeted at United States residents and businesses. ComplaintsBoard specifically targets Massachusetts residents and features a page dedicated to the purported "Top 10 Worst Companies In Massachusetts" at http://www.complaintsboard.com/us/ma, with Dunkin' Donuts in the top slot. Mediolex Ltd. also earns advertising revenue from web-based banner advertisements displayed in this judicial District and throughout the United States. Mediolex Ltd. has volunteered itself to United States jurisdiction, and even submitted an amicus brief in *Federal Trade Commission v. Roca Labs, Inc.*, Case No. 8:15-cv-02231-MSS-TBM (M.D. Florida, October 20, 2015) signed by attorney Marc J. Randazza, who was suspended from the practice of law in Massachusetts for 12 months in 2019. Upon information and belief, Mediolex Ltd. is merely an alter-ego of Defendant Kudriavtsev.

24. Defendant Astrad Ltd. is likely a Seychelles-based shell corporation whose exact domicile is unknown (except that it is not the United Kingdom-based Astrad Ltd.) doing business in Latvia, the Russian Federation, and the United States. Astrad Ltd. is the owner of the 208.100.35.80/28 IP address block as listed with the American Registry for Internet Numbers. The 208.100.35.80/28 IP address block was previously used to host the ComplaintsBoard website at Steadfast Networks in Chicago, Illinois. Astrad Ltd. is also associated with ComplaintsBoard as its contact e-mail address is listed as legal@complaintsboard.com and its mailing address is listed as Darzauglu 1-303, Riga, LV-1012, Latvia. Upon information and belief, Astrad Ltd. is merely an alter-ego of Defendant Kudriavtsev.

25. The nature of the relationship between Sergei Igorevich Kudriavtsev, Mediolex Ltd., and Astrad Ltd. (together, the "ComplaintsBoard Defendants") and ComplaintsBoard is highly ambiguous. There is a confused intermingling of activity to the point where it is not clear

whether the ComplaintsBoard website or parts thereof are actually owned by any single entity or group of entities.

26.  Plaintiff believes that information obtained in discovery may lead to the identification of additional parties to be added to this action as defendants.

## FACTUAL BACKGROUND

27.  On July 17, 2000, Defendant MasMarques was convicted in Spain of the December 5, 1999 homicide of his girlfriend, Tatiana Vasic.  He was sentenced by Spanish Judge Diego Gómez Reino to one year of imprisonment for Burglary (count one), two years of imprisonment for Burglary (count two), and twelve years in prison for Willful Homicide (count three): fifteen years total.

28.  The murder case was covered by media in Spain.  Shortly after the murder of Ms. Vasic, Ms. Vasic's parents reported to the news publication *Última Hora* that Defendant MasMarques then harassed them repeatedly, leaving them with an expensive international long-distance telephone bill in addition to the loss of their daughter.

29.  While in Spain, Defendant MasMarques also attempted to murder "a man who was in the company of [his] former girlfriend" with his car, for which he was separately convicted.

30.  On February 13, 2006, Defendant MasMarques consented to his sentence being carried out in the United States, where the Willful Homicide count was determined by the United States Parole Commission to be "most similar to … (2) Voluntary Manslaughter" and the United States Department of Justice, Criminal Division, Office of Enforcement Operations determined the count to be equivalent to a violation of "Title 18, United States Code, Sec. 1111. - Murder." *See USA v. MasMarques*, Massachusetts District Court Case No. 1:09-cr-10304-MLW, ECF

Nos. 1-2 at 2 and 1-3 at 6 (note that the docketed attachment numbers are off by one due to an apparent filing error that skipped attachment number 1).

31.   On August 20, 2008, Defendant MasMarques was released from federal prison, where he had been assigned Register No. 13537-007.

32.   On December 24, 2008, Defendant MasMarques turned himself into police on account of an outstanding warrant issued by the South Boston District Court for two counts of rape.  At the time, he was advised that there were three additional warrants for his arrest in Quincy, Brighton and Woburn, Massachusetts.  The Woburn warrant for Case No. 9153CR000456 pertained to a February 8, 1991 Assault charge under Massachusetts General Laws Chapter 265 § 13A against the woman he later married, Mary Bulman.

33.   On September 22, 2015, District Judge Mark L. Wolf ruled against Defendant MasMarques's motion to seal his criminal records pertaining to his convictions in Spain.

34.   On December 28, 2015, in both appellate Case Numbers 15-2360 and 15-2402, the United States Court of Appeals for the First Circuit affirmed Judge Wolf's decision denying Defendant MasMarques's motion to seal.

35.   On July 20, 2016, Plaintiff received an unsigned e-mail addressed to domains@thinkcomputer.com from an individual purporting to be "Vincent Bellomo" with the e-mail address 8986431@gmail.com concerning the removal of two dockets on PlainSite (the "First Death Threat"), both involving an individual named Diego MasMarques, Sr., who is Defendant MasMarques's father.  The e-mail message, referencing the former boss of the murderous Genovese crime family as a form of intimidation, referred to Plaintiff as a "parasite," threatened to report Plaintiff to the FBI, and made use of profanity.  Plaintiff interpreted the use of the Bellomo name to mean that Defendant MasMarques intended to kill him.

36.  On February 21, 2017, Plaintiff received three requests from "Diego MasMarques" with the e-mail address 87764a@gmail.com sent via the PlainSite Contact Us form.  All three requests concerned the aforementioned two appellate cases before the United States Court of Appeals for the First Circuit involving Defendant MasMarques's motion to seal records, which were posted on PlainSite among millions of other dockets.  One of the requests additionally and erroneously referred to Defendant MasMarques's cases posted on a website similar to PlainSite, http://www.unitedstatescourts.org, over which Plaintiff had no control.

37.  The following day, February 22, 2017, Plaintiff received an e-mail message sent to domains@thinkcomputer.com signed by "Diego MasMarques" but nominally from "David G" with the e-mail address bronx1842@gmail.com, asking once again for two MasMarques cases to be removed from PlainSite.

38.  Also on February 22, 2017, Plaintiff received nine (9) more requests from "Diego MasMarques" via the PlainSite Contact Us form, but this time using the bronx1842@gmail.com e-mail address previously attributed to "David G."

39.  On February 27, 2017, Plaintiff received four (4) more requests from "Diego MasMarques" via the Contact Us form, from the 87764a@gmail.com e-mail address.

40.  On February 28, 2017, Plaintiff received two (2) more requests from "Diego MasMarques" via the Contact Us form, from the 87764a@gmail.com e-mail address.

41.  On March 1, 2017, after a careful examination of the cases in question, and further indexing of court cases involving Defendant MasMarques, Plaintiff denied Defendant MasMarques's requests, causing at least two automated e-mail messages to be sent to Defendant MasMarques in reply notifying him of the denials.

42.  On March 5, 2017, "Diego MasMarques" made two (2) further requests through the PlainSite Contact Us form.  The first request indicated a telephone number with the 917 area code and the prior the 87764a@gmail.com e-mail address.  The second request, several hours later, indicated a telephone number with the 617 area code and the e-mail address rickymas@msn.com.

43.  Defendant MasMarques continued to make frequent requests through the PlainSite Contact Us form throughout March 2017, as shown below:

| Date | MasMarques Requests |
|---|---|
| March 5, 2017 | 2 |
| March 11, 2017 | 6 |
| March 13, 2017 | 11 |
| March 14, 2017 | 1 |
| March 15, 2017 | 3 |
| March 16, 2017 | 1 |
| March 17, 2017 | 1 |
| March 18, 2017 | 2 |
| March 20, 2017 | 3 |
| **TOTAL** | **30** |

44.  On May 2, 2017, Plaintiff received an e-mail from "Rick" with the e-mail address rickymas@icloud.com offering to pay a bribe to delete MasMarques case information, styled as "a donation, in order to have these URL's removed."  Plaintiff immediately declined, but the reply e-mail bounced because the sender's e-mail account was "over quota."

45.  Throughout May and June, Defendant MasMarques sent five (5) additional e-mail messages to Plaintiff, one using the alias "Roger B," but signed "Diego."  Some of these messages were respectful and others threatening.  He also sent one message clearly intended for another recipient named Jeff, presumably referring to Jeff Steinport, an attorney and the proprietor of the former website http://www.unitedstatescourts.org, which shut down in part due to Defendant MasMarques's harassment.

46. On August 29, 2017, Defendant MasMarques filed a false complaint with the Internal Revenue Service concerning Plaintiff.

47. On September 10, 2017, posing as "Jack Jones" with the e-mail address 986842a@gmail.com, Defendant MasMarques e-mailed Plaintiff a threatening e-mail containing the statement, "You little parasite have been relentless towards the public. Now you will get a taste of the Feds coming to investigate you with great details." Defendant MasMarques later replied to his own e-mail thread writing, "We are going to catch you, you dirty Mother Fucker!"

48. On September 13, 2017, a post appeared on a website entitled "Blacklist Report" at http://www.blacklistreport.com containing a still frame photograph of Plaintiff excerpted from a video on YouTube, and a long, rambling defamatory tirade written in the same style as many of the threatening e-mails by Defendant MasMarques.

49. On September 18, 2017, Jeff Steinport contacted Plaintiff to make Plaintiff aware that they were both being targeted by Defendant MasMarques, and later, that he had reported Defendant MasMarques's harassment to the Federal Bureau of Investigation ("FBI").

50. Further posts appeared concerning Plaintiff and his family members throughout the next several months, with over 350 posts concerning Plaintiff and his family appearing by the time the Blacklist Report website temporarily disappeared from the internet in June 2018.

51. Starting in September 2017, each of the Blacklist Report posts—and later, posts across multiple websites—was substantially similar. The posts contained a mixture of personal insults and libel targeted at Plaintiff and his family members, including but not limited to:

a) Calling Plaintiff a "criminal;"

b) Calling Plaintiff a "parasite;"

c) Calling Plaintiff and his family a "sociopath" or "sociopaths;"

d)  Suggesting that Plaintiff is mentally ill or belongs in a "psychiatric ward on medications;"

e)  Falsely identifying Plaintiff as the defendant in a criminal case in Illinois, in which a *different* person named Aaron Greenspan was temporarily named as a defendant;

f)  Falsely accusing Plaintiff of running an unregistered and/or fraudulent 501(c)(3) non-profit organization for the purpose of evading taxes and using the foundation as a personal "piggy bank";

g)  Labeling Plaintiff a "failure" on account of his successful settlement of a legal dispute with Facebook, Inc. and Mark Zuckerberg in 2009 over Facebook's origins;

h)  Falsely alleging that Plaintiff owns and/or manages the website leagle.com;

i)  Falsely suggesting that Plaintiff deliberately harms his disabled brother;

j)  Falsely suggesting that Plaintiff caused his brother's [inherited] disability.

52.  Many of the Blacklist Report posts also displayed a clear intent to threaten, harass and/or physically harm Plaintiff and his family members.  Several posts contained modified images of Plaintiff and Plaintiff's parents.  Some of these posts and/or the images therein, which appeared in multiple posts, also contained:

a)  Plaintiff's disabled brother's cell phone number;

b)  Photographs of Plaintiff's parents' home from Google Street View;

c)  Multiple telephone numbers belonging to Plaintiff's father's workplace at Case Western Reserve University and at University Hospitals Cleveland Medical Center;

d)  The physical address of a building near Plaintiff's father's workplace(s), Case Western Reserve University and University Hospitals Cleveland Medical Center.

e) Statements that viewers should harass Plaintiff's family, e.g. "Reach

to https://case.edu and complain about Neil."

53. Plaintiff's father received numerous harassing telephone calls and e-mails at work,

several of which were also addressed to his departmental colleagues based on these instructions.

54. On October 22, 2017, Defendant MasMarques wrote the following to Plaintiff:

"Wanted to ask you also about Stock Investing. Currently we make good money by
trading Stocks but can't make tons of progress in making money. Noticed there is a
program that lets a person reap the profit of 100th of a penny and to sell it right away but
I guess we need a direct connection to the Stock market to do this. When we use our
Broker the delays can make one loose money. I invested in Jazz Pharmaceuticals in May
of 2009 when the Stock was only a couple of bucks and then sold it at $192 in 2014.
There are Stocks out there that nobody has hear of and I usually have good instincts in
making money in the Stock Market and other investments. I can make a lot more money
and quicker if I knew how to link up directly to the Stock Market bypass these third party
Stock Traders and be able to buy and sell instantaneously without delay. At this point it
makes not sense to buy a better computer that's faster etc., as I have to rely on a third
party stock trading company anyway.
I do have a couple of Stock picks that are surging and will continue to surge and they are
in Bio. What do you think? With your Computer skills and my Stock Trading skills we
could make money.

We can pay you of course."

55. On December 11, 2017, Defendant MasMarques filed a second false complaint with

the Internal Revenue Service concerning Plaintiff.

56. On December 20, 2017, Defendant MasMarques called Plaintiff from a blocked

number and plainly identified himself as Diego MasMarques.  Plaintiff immediately informed

Defendant that he had already reported Defendant to the police and had nothing further to say,

and ended the call.

57. On December 25, 2017, a post concerning Plaintiff entitled "AARON JACOB

GREENSPAN AKA AARON GREENSSPAN *[sic]* PLAINSITE.ORG UNDER

FRAUDULENT 501C THINK COMPUTER CORPORATION" appeared on the Blacklist

Report website containing a modified photograph of Plaintiff with an added speech bubble reading, "Aaron Greenspan here! I ratted out Aaron Swartz as the MIT Hacker!"

58.  On January 20, 2018, a male individual called Plaintiff's family in Ohio fifteen (15) times in the span of one hour from the phone number +1 929 448 8094.  He reached Plaintiff's brother and proceeded to harass and upset him over the phone.

59.  On March 16, 2018, Defendant MasMarques called Plaintiff approximately twenty (20) times.

60.  On March 19, 2018 at 11:23 A.M. Pacific Time, under the alias "Liborio Bellomo," again referencing a murderous Genovese crime family boss, Defendant MasMarques submitted a Contact Us form submission through the PlainSite website (the "Second Death Threat") containing the statements, "You dirty Mother Fucker! Where are you in the Bat *[sic]* Area. You Asshole! You cock sucker!" and "Shut this site down! It is not needed by the public. It's harmful to the public. Go get a real job in a Burger King or something, instead of trying to freeload off of people's information."  The form was submitted from a mobile device using DNS hostname mobile-107-77-223-149.mobile.att.net with IP address 107.77.223.149.

61.  On or about March 30, 2018, Defendant MasMarques registered a Twitter account, @badbadwebsites, and began posting false and defamatory messages on Twitter about Plaintiff with content similar to the Blacklist Report posts.  Defendant MasMarques uploaded copyrighted photographs of Plaintiff and Plaintiff's father to this account as well.

62.  On April 4, 2018, Plaintiff began the process of applying for a restraining order against Defendant MasMarques in Santa Clara County, California.  A temporary restraining order against Defendant MasMarques was granted and the docket was assigned Case No. 18CH008067.

63. Under cross-examination in court in Santa Clara County on February 28, 2019, Defendant MasMarques admitted that the Mac OS username "tech" mistakenly included as part of a file path in one of his Blacklist Report posts—in place of an image he had attempted to upload—matched his username on his own personal computer. In his telling, "[t]ech is from — it's not — well, the computer was actually given to me from the Apple store. The guy who fixes computers, that was his name, and so it's on the computer now. It's not my computer."

64. Plaintiff was ultimately successful in shutting down the Blacklist Report website. In its place, Defendant MasMarques turned to a variety of other gripe sites, but especially ComplaintsBoard, a Latvian and Russian-run website purporting to host English-language "consumer reviews."

65. ComplaintsBoard is actually an extortion racket, having quoted at least one victim "$1,920" plus "$199 per month" for a "filter" to block "new complaints." The person in charge, Defendant Kudriavtsev, who claims to own "six or seven real estate properties" financed with the proceeds of his criminal enterprise, openly flouts United States law according to a deposition transcript from 2013. *See Xcentric Ventures LLC v. Smith*, Case No. 2:17-cv-01686-DJH, Document 5-15 (D. Ariz. March 31, 2017).

66. ComplaintsBoard is widely perceived to be an extortion racket. Reviews of ComplaintsBoard on a legitimate consumer review site, SiteJabber, include the statements, "Online Bullying: This site should be illegal. Absolute lies posted about so many businesses. You can't even respond or it will rank higher in the search engines. Hopefully someday they go out of business. Read real reviews on Google, Facebook and the BBB where customers are actually verified!" and "Complaints Board is a complete online scam. It is a forum for sociopaths, internet trolls and bullies to have a free space to degrade any business or person they

choose.  Not only does the site attempt to extract money once the review is published, so does the poster.  Usually the poster hits all of the other sites too then demands money. Complaints Board allows people to assault people's sexuality, character, looks, anything these bullies can think of.  Then the company sends it out to other associated sites so that the person or business has this trash show up at the top in every search engine.  This is total blackmail and character assassination.  I cannot believe a class action suit has not yet been filed," and "This site has allowed a deranged lunatic to post false things about me and my family for years.  $30,000 is what we were quoted to have the lies removed.  Anyone can post any lie they want with no proof.  Its nothing but an extortion scam."

67.  While ComplaintsBoard claims not to ever remove posts on its site without a court order, some of the posts concerning Plaintiff have been removed over time.  Many, however, remain visible, and Defendant MasMarques continues to author new posts as recently as March 2023, after the initial Complaint in this action was filed.

68.  After it became clear during the proceedings in Santa Clara County that Plaintiff knew Defendant MasMarques's home IP address, Defendant MasMarques began using local Xfinity WiFi and various Virtual Private Network connections to attempt to mask his IP address.

69.  Under cross-examination in court in Santa Clara County on May 5, 2019, Defendant MasMarques perjured himself when he denied under oath that he was responsible for many, if not most, of the ComplaintsBoard posts concerning Plaintiff.  In response to the question, "Can you explain why multiple e-mail addresses that you used to send PlainSite requests through the Contact Us form, why those e-mail addresses are already associated with ComplaintsBoard accounts?" Defendant MasMarques responded, "They're not associated with me.  Those are not

my e-mail accounts."  This testimony was false—one of several dozen times Defendant

MasMarques perjured himself.

70.  Defendant MasMarques did not limit himself to Blacklist Report, ComplaintsBoard,

and Twitter.  He posted false and libelous material about Plaintiff on dozens of websites—not

only gripe sites—across the internet.

71.  On April 2, 2018, Defendant MasMarques attempted to file a false, anonymous

complaint with the State of Delaware concerning Plaintiff using the e-mail address

8587@protonmail.com.

72.  On April 2, 2018, Defendant MasMarques filed a third false complaint with the

Internal Revenue Service concerning Plaintiff.

73.  On May 29, 2018, Defendant MasMarques sent a letter to the Attorney General of

the United States concerning Plaintiff, which was assigned ID number 4042028.

74.  On June 5, 2018, a pseudonymous user called "Expose 501(c)(3) Fraud" wrote the

following false statements on the ComplaintsBoard website ("The Traceable Post"):



Although Plaintiff could not access server logs for ComplaintsBoard, he could and did access

server logs for the two specific URLs contained at the end of the post, which pointed to a website

for which Plaintiff was the server administrator.

75. Server logs for the website formerly at http://www.thinkcomputer.org on June 5, 2018 showed that on the same day, the only IP address to access the two URLs in the Traceable Post (http://www.thinkcomputer.org/about/index.html and http://www.thinkcomputer.org/home/photo1.jpg) during the day was 24.60.59.25, at approximately 3:36 P.M. Eastern Time.

76. Plaintiff reported Defendant MasMarques's harassment to the San Jose Police Department, where Plaintiff lived at the time. The report was forwarded to the Marlborough, Massachusetts Police Department, which worked with the Middlesex County District Attorney's Office to issue a subpoena to Comcast Cable Communications, LLC ("Comcast") on July 12, 2018 covering the period June 5, 2018 through June 16, 2018 for the IP address 24.60.59.25.

77. According to the July 30, 2018 subpoena response from Comcast, the IP address 24.60.59.25 was registered in the name of "Mary MasMarques" at 4512 Willow Trail, Marlborough, MA 01752, which is also Defendant MasMarques's home address.

78. The substance of the Traceable Post by Defendant MasMarques was false. Plaintiff does not own or run pdfsr.com and never did. Plaintiff does not employ and has not ever employed anyone in Indonesia or India regarding PlainSite. Think Computer Corporation is not a 501(c)(3) non-profit organization. While it operated, Think Computer Foundation was a 501(c)(3) non-profit organization, but was not in any way "fraudulent."

79. The Traceable Post contained several of the false and libelous themes previously articulated by Defendant MasMarques: that Plaintiff is involved in "dirty work," that Plaintiff's business and/or non-profit organization are/is somehow "fraudulent," and that Plaintiff owns other websites, directly or indirectly, that he actually does not.

80. On June 8, 2018, Plaintiff received a phone call and e-mail from Shawn J. Johnson, Senior Assistant Attorney General in the Office of Arkansas Attorney General.  Mr. Johnson informed Plaintiff that Defendant MasMarques had filed at least one consumer protection complaint with his office regarding the court record aggregator leagle.com (which like PlainSite, also covers portions of Defendant MasMarques's cases).  In that complaint, Defendant MasMarques incorrectly asserted that Plaintiff secretly owns leagle.com, and began harassing the staff of Mr. Johnson's office about the matter.

81. On June 13, 2018, an unidentified male caller with a possible New York accent who insisted that his identity was "not important" called Plaintiff from a blocked number twice around 2:00 P.M. Pacific Time (the "Third Death Threat").  The caller first asked if Plaintiff ran leagle.com, which Plaintiff accurately denied.  Plaintiff refused to answer further questions without knowing the identity of the caller, and ended the call.  A few minutes later, the same caller called again, and wrongly insisted that Plaintiff was hiding behind "registered agents" to secretly run leagle.com, told Plaintiff that he was "on very thin ice," and to "be careful" before immediately hanging up.  Plaintiff reported the calls to the FBI as they were identical to false allegations put forth previously by Defendant MasMarques.

82. Plaintiff repeatedly asked Defendant Mediolex Ltd. to remove the posts about him. On June 19, 2018, in response to a Digital Millennium Copyright Act (DMCA) takedown request, "Daniel Shu" of the "Complaints Board Legal Department" wrote to Plaintiff from the e-mail address legal@complaintsboard.com:

> "Do not mistake our kindness for weakness. We suggest you do not take that tone or path. If another threat is received all complaints will be moved to tens of partner websites. And this is just the first part. We don't want to spend time on this, but we will dedicate our best employees if we have to. Get the court order and we will remove the posts."

83. In its June 19, 2018 e-mail message, Defendant Mediolex Ltd. recognized the authority of the United States judiciary and agreed to be bound by a United States court order.

84. Similar false "complaints" regarding Plaintiff appeared on hundreds of websites after the June 19, 2018 threat by Defendant Mediolex Ltd.

85. After the June 19, 2018 threat by Defendant Mediolex Ltd., PlainSite was the target of a "negative Search Engine Optimization (SEO)" attack, in which the attacker posts hundreds of links to the target website on websites considered low-quality by search engines, such as pornographic web sites. The goal of the attack is to convince search engine algorithms that the target website is also a low-quality website, thereby decreasing its ranking in search engine results. Indeed, countless links to PlainSite began to appear on obscure, offshore websites that often hosted pornographic and/or unlawful content. PlainSite's Google ranking also suffered.

86. On October 1, 2018, Defendant MasMarques created a Twitter account, @JohnFuenchem, impersonating a Canadian lawyer in an attempt to communicate with individuals who know Plaintiff. Once Plaintiff realized that the @JohnFuenchem account was Defendant MasMarques and warned others, that account was deleted within hours.

87. After more than twelve hours of hearing testimony spread out over a period of sixteen months, on August 31, 2019, a Superior Court of Santa Clara County, California judge granted Plaintiff a two-year restraining order (the "MasMarques Restraining Order") against Defendant MasMarques. The MasMarques Restraining Order expired at 11:59 P.M. on August 30, 2021.

88. Defendant MasMarques obsessively tracked and continues to track every publicly visible activity associated with Plaintiff. When Plaintiff publicly discussed and later authored a report warning of risks associated with Tesla, Inc., Defendant MasMarques became an unbridled Tesla and Elon Musk enthusiast, and—despite the restraining order against him—began

communicating with other Tesla fans, encouraging them to harass Plaintiff based on the same false claims about Plaintiff he had been peddling for years.  They did.  This led to litigation in the Northern District of California, Case No. 3:20-cv-03426-JD, currently on appeal in the United States Court of Appeals for the Ninth Circuit, Case No. 22-16110.

89. On November 11, 2019 at 9:21 P.M., Defendant MasMarques registered the Twitter account @BrightLightNewz in part to harass and libel Plaintiff.

90. On or around July 7, 2020, Defendant MasMarques retweeted a post by Tesla enthusiast and contractor Omar Qazi's @WholeMarsBlog account stating, "Aaron Greenspan is a criminal.  Pass it on."  In fact, Qazi had come to espouse this belief due to his interactions with Defendant MasMarques and Defendant MasMarques's posts on various gripe sites including but not limited to ComplaintsBoard.

91. On February 23, 2021, Defendant MasMarques registered the Twitter account @Giza299792458N in part to harass and libel Plaintiff.

92. On September 23, 2021, Defendant MasMarques registered the Twitter account @witchestoday in part to harass and libel Plaintiff.

93. On October 26, 2021, Defendant MasMarques impersonated a woman claiming to be a victim of Plaintiff by posting the following on his @Giza299792458N Twitter account:



A reverse image search revealed that Defendant MasMarques had appropriated the image of the woman, who is unknown to Plaintiff, from a pornographic website.

94. On April 13, 2022, Defendant MasMarques registered the Twitter account @diegomasmarque5 in part to harass and libel Plaintiff.

## CLAIMS FOR RELIEF

## FIRST CLAIM
### Libel Per Se Against Defendant MasMarques

95. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

96. Defendant MasMarques authored and/or published thousands of defamatory statements concerning Plaintiff, Plaintiff's family, Plaintiff's friends, and at least one of Plaintiff's professional colleagues to a wide audience on numerous websites.

97. The defamatory statements were authored and published with knowledge of the falsity and criminally harassing nature of the statements, and with reckless and negligent disregard for the truth.

98. The defamatory statements were published with malice, and without any lawful privilege or basis.

99. The false and defamatory statements are so numerous as to be impossible to list fully, but touch on a number of general themes, represented by the following examples:

| Ex. | Quote | Date | Source |
|---|---|---|---|
| a | "aaron jacob greenspan is a low life parasite" | December 7, 2017 | Blacklist Report |
| b | "enjoys ruining people's careers and reputations at his whim so this lazy narcissistic asshole can make some easy money by uploading people's personal and private information on to the web" | December 7, 2017 | Blacklist Report |
| c | "This asshole aaron greenspan who is jewish" | December 7, 2017 | Blacklist Report |

| | | | |
|---|---|---|---|
| d | "Aaron Greenspan here! I ratted out Aaron Swartz as the MIT Hacker!" | December 25, 2017 | Blacklist Report |
| e | "Aaron Greenspan aka Aaron Jacob Greenspan aka Aaron J Greenspan created and runs plainsite.org under a fraudulent 501c non-profit" | December 27, 2017 | Blacklist Report |
| f | "Aaron Jacob Greenspan and his Sociopath father Neil S Greenspan both receive the medication called Haldol for their Sociopathy" | January 7, 2018 | ComplaintsBoard |
| g | "Aaron Greenspan is an insane Sociopath" | January 7, 2018 | ComplaintsBoard |
| h | "Aaron Greenspan belongs locked up in a Psychiatric Hospital where he was locked up in Cleveland, Ohio" | January 7, 2018 | ComplaintsBoard |
| i | "Aaron Greenspan aka Aaron Jacob Greenspan creator and owner of leagle.com" | January 15, 2018 | Blacklist Report |
| j | "…this entire family…all have Psychiatric issues and should not even be allowed to roam the streets without being monitored and definitely not be allowed to go near a computer" | January 15, 2018 | Blacklist Report |
| k | "we will continue to expose this slimy, sneaky little coward who is genetically demented" | January 15, 2018 | Blacklist Report |
| l | "…he was not allowed to go ahead with FaceaCash because the Judges realized that this Sociopath is a serious danger and menace to society" | January 25, 2018 | Blacklist Report |
| m | "Aaron Greenspan loses all his cases in US Courts" | January 31, 2018 | Blacklist Report |
| n | "My ex found me and children in our home were harmed and I was beat up to a bloody pulp after he found me on Aaron's website www.plainsite.org" | April 8, 2018 | ComplaintsBoard |
| o | "Aaron Greenspan doesn't care about hurting children. He posts the locations of children whose mothers are hiding from abusive relationships" | April 8, 2018 | ComplaintsBoard |
| p | "Aaron has collectved donations from his friends and colleagues, myself included in the amount of $100,000, and to date we have not seen a single dime used in the manner described to us when he requested the donation." | April 8, 2018 | ComplaintsBoard |
| q | "Aaron was charged in connection with a criminal complaint for False Claims | April 8, 2018 | ComplaintsBoard |

24

| | Violations and Fraud in United States v. Yurygrenadyor, Case No. 09-CV-7891" | | |
|---|---|---|---|
| | "Aaron Greenspan has never done real work in his entire life" | April 28, 2018 | Reddit |
| r | "Aaron J Greenspan of plainsite.org/ Think Corporation claims no earnings. Don't feel pressured. I'm not going to donate $4,500 to get my personal data removed." | June 6, 2018 | ComplaintsBoard |
| s | "They operate leagle.com using 'Agents', in order to hide their identities from the public and have used a fake name and address that they have posted to ICANN WHOS." | June 24, 2018 | Ohio Attorney General Complaint No. 1409784 |
| t | "As I see it this is a major Tax Fraud Crime that Dr. Neil S Greenspan and his son Aaron Jacob Greenspan has concocted to rip off the US Government and States where they reside." | June 24, 2018 | Ohio Attorney General Complaint No. 1409784 |
| u | "on April 4, 2018 Aaron Jacob Greenspan went to the Santa Clara Superior Court in California and has lied under Oath and committed perjury in order to obtain a Temporary Restraining Order against me and to further Harass, Stalk, Shame, Defame and Bully me online" | June 24, 2018 | Ohio Attorney General Complaint No. 1409784 |
| v | "Aaron Greenspan is a pathological liar. Aaron Greenspan compulsively lies or fabricates information out of habit." | July 13, 2018 | BadBizReport |
| w | "Aaron Greenspan is damaging us Hispanics. Also black and other minorities from lower middle class to poverty." | July 13, 2018 | BadBizReport |
| x | "Aaron Greenspan is an accomplished extortionist" | April 8, 2019 | CheaterDirectory |
| y | "Aaron Greenspan harassed Mike Lissner at Free Law Project using an alias John Fuenchem where he was using a Yahoo email account that was traced to Toronto, Canada and was the only individual who did not want to speak with Mike Lissner by phone. Aaron Greenspan was using his real email account and the John Fuenchem email account at the same time sending messages to the Free Law Project and harassing their followers on Twitter." | November 22, 2019 | ComplaintsBoard |
| z | "Our entire family had to pack up and sell our house on Shelburne Road, Ohio because of this sick family of bullies and harassers Neil | January 29, 2020 | ComplaintsBoard |

| | Greenspan, Judith Greenspan, Aaron Greenspan and Simon Greenspan. The parents Neil and Judith Greenspan allow their two son's Aaron and Simon Greenspan to harass all the neighbors without any mercy." | | |
|---|---|---|---|
| aa | "I know for a fact Aaron Greenspan #plainsite is a fraud and extortionist parasite." | February 22, 2020 | ComplaintsBoard |
| bb | "Aaron Greenspan is a liar, fraudster, unfit to be in charge or employed anywhere. He is a dangerous cyber stalker who is well known malicious hacker." | March 6, 2020 | ComplaintsBoard |
| cc | "…it has been establish that Aaron Greenspan is trying to hide his assets from the IRS… Aaron Greenspan is writing off way too many deductions on his tax returns… He is writing off all of deductions for his car, rent, travel, food, clothes and so much more. All of which is pure tax evasion and fraud." | March 6, 2020 | ComplaintsBoard |
| dd | "Aaron Greenspan should be court ordered to a mental health facility in California: '5150 is the number of the section of the Welfare and Institutions Code, which allows an adult who is experiencing a mental health crisis to be involuntarily detained for a 72- hour psychiatric hospitalization…" | July 26, 2020 | ComplaintsBoard |
| ee | "A padded cell with 4 point restraints is what he needs. Never again any Internet." | August 20, 2021 | Twitter |
| ff | "He harasses his targeted victims to no end. He signs people up with porno co.'s like Pleasure Dome, who is based where? San Francisco. He hacks in to Social Media & email accounts. Files false police reports, lies to Judge's, Police, Court Clerk's nothing happens? He continues" | October 20, 2021 | Twitter |
| gg | "He is a vexatious litigant, well known to many Attorneys in the Bay area, he files vexatious complaints with insane ramblings to get people to give up and just pay him some money. Never give up! Fight back and don't ever give him one penny. Why hasn't he been criminally charged?" | October 20, 2021 | Twitter |
| hh | "Aaron Greenspan owes his victims millions of dollars" | October 26, 2021 | Twitter |
| ii | "@POTUS45 Aaron Jacob Greenspan & his partner Eric Steven Teasley who supposedly became an MD from @Stanford in 2018 & | December 11, 2022 | Twitter |

| | | | |
|---|---|---|---|
| | now works at @Google made a death threat towards President Trump on @plainsite Reported this to Twitter nothing was done? Reported this to @SecretService" | | |
| jj | "@TwitterSafety Hello! Can you look at the Twitter accounts @LegaleBriefs @aarongreenspan and @plainsite and permanently shut down these vicious doxing, cyber stalking and harassing Twitter accounts" | December 14, 2022 | Twitter |
| ll | "Aaron Jacob Greenspan & his partner Eric Steven Teasley together run @aarongreenspan & @plainsite to promote their datamining monetized website plainsite.org since 2011 and being used daily for cyberstalking, doxing & harassment purposes of @elonmusk & many others" | December 17, 2022 | Twitter |
| mm | "Begging Law Enforcement take action against Aaron Jacob Greenspan for a wide variety of serious crimes, cyberstalking, doxxing, harassment, hacking, extortion, blackmail, threats & much more. Aaron Greenspan ordered vile magazines to be shipped to Diego Mas Marques' home address" | March 4, 2023 | Twitter |

100.    Defendant MasMarques has a notable tendency to improperly capitalize words, e.g. "further Harass, Stalk, Shame, Defame and Bully me online."

101.    Defendant MasMarques repeatedly impersonated other people—both men and women who do not actually exist—to make false and defamatory claims concerning Plaintiff.

102.    Defendant MasMarques continues to broadcast and publish these and similar defamatory statements and have made such statements available to readers worldwide, some of whom have contacted Plaintiff and Plaintiff's family, believing those statements to be true.

103.    The defamatory statements are defamatory *per se* in that, on their face, they reflect upon Plaintiff's reputation and character in a manner that: (1) injures Plaintiff's reputation and attempts to subject Plaintiff to public hatred, ridicule, shame, or disgrace; and (2) adversely

affects Plaintiff's trades and/or businesses.  In the alternative, the defamatory statements are defamatory *per quod* in that they are capable of being interpreted as reflecting upon Plaintiff's reputation and/or character in a manner that: (1) injures Plaintiff's reputation and attempts to subject Plaintiff to public hatred, ridicule, shame, or disgrace; and (2) adversely affects Plaintiff's trades and/or businesses.

104.    Publication of the defamatory statements has caused and will continue to cause Plaintiff and members of Plaintiff's family and Plaintiff's targeted colleague(s) to suffer great mental anguish and emotional distress.

105.    Plaintiff has been damaged by the authorship and publication of the defamatory statements because they impute dishonesty and immorality regarding his personal and professional character.  For example, the defamatory statements falsely state that Plaintiff has a criminal record, that Plaintiff never graduated from college, that Plaintiff's former non-profit organization existed for the primary purpose of cheating the Internal Revenue Service, and that Plaintiff has received psychiatric care in a mental institution.

106.    Plaintiff has been damaged by the authorship and publication of the defamatory statements because they falsely suggest that Plaintiff engages in illegal, unethical, immoral and/or criminal business practices.

107.    Plaintiff has been damaged by Defendant MasMarques's creation of fake user accounts on various social media platforms and websites designed to impersonate Plaintiff, impersonate Plaintiff's family members, and impersonate others who might know plaintiff or his family members.

108.    Plaintiff has been damaged by the authorship and publication of the defamatory statements in his professional career due to the misapprehensions of those who read the statements and assume them to be true.

109.    The defamatory statements, many of which contain Plaintiff's and Plaintiff's family's home address, former synagogue's name, and contact information, have put Plaintiff, Plaintiff's family, and Plaintiff's friends in physical danger.

### SECOND CLAIM
**Civil Harassment Against Defendant MasMarques**
**(Massachusetts General Laws Chapter 258E)**

110.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

111.    Defendant MasMarques engaged in three or more distinct acts of harassing conduct toward Plaintiff over a period of over five years.

112.    By invoking the name of "Liborio Bellomo," a Genovese crime family boss who ordered the murder of at least two individuals, as well as the name "Vicente Bellomo," presumably a reference to Vicente Gigante (who was Bellomo's predecessor), Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

113.    By repeatedly using profanity and demanding to know Plaintiff's location, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

114.    By hiring numerous private investigators to track Plaintiff and submit false declarations in court regarding Plaintiff, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

115.    By filing false complaints with dozens of federal and state government agencies and officials, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

116.    By deliberately exposing Plaintiff's family and friends to public scorn on false pretenses, Defendant MasMarques intended to, and did, instill fear in and intimidate Plaintiff.

117.    Defendant MasMarques's harassment has been continuous since 2017.

118.    Defendant MasMarques's harassment was not reciprocated and was directed specifically at Plaintiff.  A judge of the Superior Court of Santa Clara County, California found cause to issue a two-year restraining order against Defendant MasMarques due to his harassing conduct, and no cause to issue a counter-restraining order against Plaintiff.  A judge of the Marlborough, Massachusetts District Court found no probable cause for criminal harassment charges to issue against Plaintiff on Defendant MasMarques's request.  Similarly, a judge of the Superior Court of Middlesex County, Massachusetts dismissed Defendant MasMarques's baseless claims against Plaintiff.

### THIRD CLAIM
### Tortious Interference with Prospective Economic Advantage Against Defendant MasMarques

119.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

120.    From February 21, 2009 until its acquisition by Elon Musk, Plaintiff was an active user of the Twitter social network and agreed to Twitter, Inc.'s Terms of Service.

121.    Plaintiff's initial personal Twitter account handle was @thinkcomp, which he later switched to @AaronGreenspan on or about October 7, 2013.

122.    Plaintiff's agreement to the Twitter, Inc. Terms of Service formed a binding contractual relationship between Plaintiff and Twitter, Inc.

123.    Defendant MasMarques repeatedly sought to have Plaintiff's personal and business Twitter accounts permanently suspended based on false pretenses.

124.     Defendant MasMarques falsely reported Plaintiff's accounts to Twitter on a number of occasions for purported "violations" of its terms of service.

125.     On at least one occasion, Defendant MasMarques was successful at having one or more of Plaintiff's accounts temporarily suspended.  Twitter later admitted that at least one of these decisions was made in error.

126.     Plaintiff was harmed by the inability to communicate, the inability to access the record of his past posts, the false public impression that Plaintiff had somehow violated the Twitter Terms of Service, and the addition of a "strike" to Plaintiff's account within Twitter's internal database which could have future repercussions.

127.     Defendant MasMarques intentionally interfered with the contract between Plaintiff and Twitter, Inc. in the hopes that doing so would improve his own employment prospects and increase his income by eliminating true information about him on the internet.

128.     On June 13, 2023, Plaintiff's personal and business Twitter accounts, both of which Defendant MasMarques had falsely reported as having violated the Twitter Rules, were suspended simultaneously for unspecified reasons.

**FOURTH CLAIM**
**Abuse of Process Against Defendant MasMarques**

129.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

130.     Defendant MasMarques engaged in a years-long campaign to have Plaintiff incarcerated, involuntarily committed, fined, penalized, investigated, and/or audited, not because Plaintiff had done anything wrong, but as leverage in his never-ending attempt to extort a favorable ruling from Plaintiff on Defendant MasMarques's PlainSite privacy requests.

131.    On July 3, 2018, Defendant MasMarques filed a cross-request for a temporary restraining order against Plaintiff in Superior Court of Santa Clara County, California Case No. 18CH008067 based on objectively false information.

132.    Defendant MasMarques filed false, misleading, and fabricated claims involving Plaintiff with the following government agencies and/or offices, in an attempt to extort compliance from Plaintiff:

1)  The San Francisco, California Police Department;

2)  The San Jose, California Police Department;

3)  The Shaker Heights, Ohio Police Department;

4)  The Delaware Secretary of State;

5)  The Ohio Attorney General's Office;

6)  The Arkansas Attorney General's Office;

7)  The California Attorney General's Office;

8)  The California Department of Motor Vehicles;

9)  The United States Department of the Treasury, Internal Revenue Service;

10) The United States Securities and Exchange Commission;

11) The Attorney General of the United States;

12) The Federal Bureau of Investigation;

13) The United States Secret Service;

14) The United States Attorney's Office for the Northern District of California;

15) The Office of Senator Dianne Feinstein;

16) The Office of Senator John Kennedy;

17) The Office of Senator Christopher Coons;

18) The Office of Senator Tom Carper;

19) The Office of Senator Ed Markey.

133.    Defendant MasMarques caused other individuals to file false, misleading, and fabricated claims against Plaintiff with:

20) The Pennsylvania Attorney General's Office;

21) The United States Department of Health and Human Services Office of Civil Rights (nominally pertaining to Plaintiff's father, who is a physician);

22) Case Western Reserve University (nominally pertaining to Plaintiff's father);

23) University Hospitals Cleveland (nominally pertaining to Plaintiff's father).

134.    Defendant MasMarques reported at least one of Plaintiff's attorneys to the State Bar of California, which found Defendant MasMarques's claims to be baseless.

135.    On August 23, 2018, a private investigator hired by Defendant MasMarques, John X. Haro, attempted to locate Plaintiff at an address where Plaintiff no longer lived, finding instead "a female of Indian descent and…a male of Indian descent seated on the couch" according to a declaration that was filed in court on August 27, 2018.  On this basis, Defendant MasMarques falsely alleged that "Aaron Greenspan has been committing fraud on this court by stating in legal documents that his address is [redacted] when in fact this individual does not live at this address."  In fact, Plaintiff had moved from that address at the end of June 2018.

136.    Approximately one month later, on or about October 4, 2018, Defendant MasMarques filed a complaint with the California Department of Motor Vehicles ("CADMV") which was assigned to the Investigations Division as Case No. 18B3D30150.  According to CADMV, "The complainant alleged that Mr. Greenspan has used residence addresses where he has never resided in order to obtain a California Driver's License, and has therefore committed

fraud against the State of California and against any insurance companies that have insured Mr. Greenspan's vehicle.  DMV Investigations, Milpitas District Office, began investigating the matter in October 2018.  In October 2019, DMV Investigations concluded the matter and found no violations or wrongdoing."

137.    CADMV only "concluded the matter" in "October 2019"—more than a year after the investigation in Case No. 18B3D30150 was opened, because Plaintiff realized that he was unable to renew his vehicle registration and made inquiries with CADMV as to why.  According to CADMV, the bogus investigation caused by Defendant MasMarques's fraudulent complaint put a "stop" on Plaintiff's CADMV records without Plaintiff ever being notified.

138.    Plaintiff could not legally drive his car while his vehicle registration was expired and he was prevented from renewing it by the "stop" caused by Defendant MasMarques.

139.    On April 8, 2019, Defendant MasMarques filed an application for criminal charges against Plaintiff in the Marlborough, Massachusetts District Court, Case No. 1921AC000120, *MasMarques v. Greenspan*.  That court found no probable cause for charges to issue and the matter was closed.

140.    On July 29, 2019, Defendant MasMarques filed for a civil restraining order against Plaintiff in the Middlesex County, Massachusetts Superior Court (without ever serving Plaintiff), Case No. 1981CV02204.  Upon learning of the matter, Plaintiff filed a motion to strike the complaint in that case for fraud on the court, after which the case was promptly dismissed.

141.    On September 10, 2019, after obtaining the MasMarques Restraining Order, Plaintiff filed a motion requesting attorney's fees and court costs of $9,276.72.  The motion was denied without any explanation or citation to precedent in an order containing numerous typographical errors that denied Plaintiff due process.

142.     Defendant MasMarques repeatedly committed the crime of perjury throughout his testimony before the Superior Court of Santa Clara County, California.

143.     Defendant MasMarques repeatedly committed the crime of perjury upon first filing in this action.

## FIFTH CLAIM
### Malicious Prosecution Against Defendant MasMarques

144.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

145.     On April 8, 2019, Defendant MasMarques submitted a false application for criminal charges against Plaintiff to the Marlborough, Massachusetts District Court.  The matter was assigned Case No. 1921AC000120.

146.     Plaintiff was forced to defend himself as a defendant in Case No. 1921AC000120.

147.     On May 15, 2019, after a hearing, the Marlborough, Massachusetts District Court found no probable cause and the matter was closed.

148.     Defendant MasMarques acted with malice as it should have been obvious to any reasonable person that there was no probable cause for criminal charges to issue against Plaintiff for posting public records and/or discussing public records on the internet.

## SIXTH CLAIM
### Libel Per Se Against Defendants Kudriavtsev, Mediolex Ltd., and Astrad Ltd.

149.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

150.     The ComplaintsBoard Defendants operate an unknown number of websites, including but not limited to ComplaintsBoard, http://www.huzhe.net and http://www.consumercomplaints.in.

35

151.   The ComplaintsBoard Defendants augmented "reviews" discussing Plaintiff by:

a)   purportedly tabulating and posting purported counts of purported users who purportedly found the reviews "[h]elpful" when in fact those counts were and are pseudo-random numbers with no basis in fact;

b)   purporting to have "algorithmically chosen" and more prominently posted certain inflammatory reviews as "the most valued customer feedback" without ever having verified that they were feedback posted by actual customers;

c)   adding links to "[s]hare" libelous content widely across the internet.



152.   On June 19, 2018, "Daniel Shu," writing from legal@complaintsboard.com to Plaintiff, expressed the explicit intent of the ComplaintsBoard Defendants to have their "best employees" copy and/or augment ComplaintsBoard content about Plaintiff on "tens of partner websites."

153.     On information and belief, the ComplaintsBoard Defendants authored and/or caused to be authored false and libelous posts on various websites concerning Plaintiff.

154.     In so doing, the ComplaintsBoard Defendants waived any protection from liability under Section 230 of the Communications Decency Act.

## SEVENTH CLAIM
### Contribution Against Defendants Kudriavtsev, Mediolex Ltd., and Astrad Ltd.

155.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

156.     The ComplaintsBoard Defendants routinely edit posts on the ComplaintsBoard website, for example, replacing certain words and numbers (typically as part of contact information) with "[censor]" according to an unknown policy.

157.     Upon information and belief, the ComplaintsBoard Defendants did actually contribute additional false information about Plaintiff on various websites including but not limited to ComplaintsBoard, based upon false and libelous posts by Defendant MasMarques.

## EIGHTH CLAIM
### Negligent Infliction of Emotional Distress Against Defendants Kudriavtsev, Mediolex Ltd., and Astrad Ltd.

158.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

159.     The ComplaintsBoard Defendants have the ability to remove posts on the ComplaintsBoard website that are abusive or clearly false.

160.     The ComplaintsBoard Defendants created a purported function for users to "report" posts on the ComplaintsBoard website that are abusive or clearly false.

161.     Plaintiff reported dozens of abusive and false posts, including posts with headlines such as, "aaron greenspan was arrested in california with child porn on his computer!"

162.     Plaintiff has never been arrested anywhere, let alone for possessing child pornography.  Any post suggesting otherwise is completely false.

163.     Defendant Mediolex Ltd. is aware that such posts have been reported because any attempt to report them again on the ComplaintsBoard website generates the error, "You have already reported this post. Thank you."

164.     Despite such false and libelous posts being reported, the ComplaintsBoard Defendants have deliberately allowed them to remain on the ComplaintsBoard website.

165.     The ComplaintsBoard Defendants' negligence has harmed Plaintiff.

**NINTH CLAIM**
**Violation of Massachusetts General Laws Chapter 93A § 2 (Unfair Acts or Practices)**
**Against Defendants Kudriavtsev, Mediolex Ltd., and Astrad Ltd.**

166.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

167.     Massachusetts General Laws c. 93A, § 2(a) declares unlawful "unfair or deceptive acts or practices in the conduct of trade or commerce[.]"

168.     In addition to their illicit extortion activities, ComplaintsBoard Defendants conduct trade and commerce in Massachusetts by targeting Massachusetts consumers and selling advertising space on ComplaintsBoard to numerous advertising networks in the United States and the Russian Federation.  Like most websites, ComplaintsBoard identifies such relationships in an ads.txt file in the website's root directory.  *See* https://www.complaintsboard.com/ads.txt.

169.     Plaintiff established a business relationship with ComplaintsBoard Defendants by signing up for the ComplaintsBoard website on December 5, 2009 in his personal capacity with the handle "thinkcomp" and thereby subjecting himself to the ComplaintsBoard Terms of Service.

170.    In 2022, Plaintiff further attempted to establish a business relationship with ComplaintsBoard by "claiming" the profile of "Plainsite.org / Think Computer" as the 100% owner of Think Computer Corporation, but ComplaintsBoard Defendants refused to grant Plaintiff access to the extent that such a feature is even real.

171.    As corporations, Mediolex Ltd. and Astrad Ltd. are each a "person" under G.L. c. 93A, § 1(a), notwithstanding their ambiguous relationship with Defendant Kudriavtsev.

172.    Due to the unlawful, unfair and deceptive conduct of the ComplaintsBoard Defendants, Plaintiff spent at least $9,276.72 on attorney's fees and court costs to obtain a restraining order intended to prohibit Defendant MasMarques from harassing Plaintiff on ComplaintsBoard, as well as recurring monthly fees for a mail forwarding address.

173.    It was unfair of ComplaintsBoard Defendants to actively refuse to remove the libelous and false posts concerning Plaintiff from ComplaintsBoard.

174.    It was unfair of ComplaintsBoard Defendants to knowingly profit from disinformation on ComplaintsBoard by optimizing the website for search engines.

175.    It was unfair of ComplaintsBoard Defendants to threaten to contribute additional libelous and false posts concerning Plaintiff to ComplaintsBoard and/or other websites.

176.    Plaintiff sent Chapter 93A 30-day notice to Defendants Kudriavtsev and Mediolex Ltd. via e-mail on December 18, 2022.  By virtue of its shared e-mail address of legal@complaintsboard.com, Defendant Astrad Ltd. received the same 30-day notice at the same time.  Both messages were successfully received according to SMTP server logs.  None of the ComplaintsBoard Defendants responded.

## TENTH CLAIM
**Violation of Massachusetts General Laws Chapter 93A § 2 (Deceptive Acts or Practices)
Against Defendants Kudriavtsev, Mediolex Ltd., and Astrad Ltd.**

177.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

178.    It was deceptive of Defendant Mediolex Ltd. to create fake ComplaintsBoard functions, such as to "report" posts, "claim" a business profile, or highlight "helpful" votes, in order to promote the illusion that ComplaintsBoard is a legitimate consumer review website.

179.    Defendants Kudriavtsev and Mediolex Ltd. purport to allow business owners to "claim" their company profiles on ComplaintsBoard, advertising, "Is this your company? Claim it and get a lot of features. [https://www.complaintsboard.com/faq#what-is-a-claimed-account]." Plaintiff completed the steps to claim the "Plainsite.org / Think Computer" profile but was prohibited from doing so.  Consequently, the profile still displays outdated contact information.

180.    It was deceptive of Defendant Mediolex Ltd. to provide fake names and false contact information for ComplaintsBoard, including under oath, employing a variety of aliases over years for Defendant Kudriavtsev and his staff, including but not limited to "Mark Schultz," "Elizabeth Arden," "Ivonne Wainwright," "Daniel Shu," and "Dzianis Beltyukov."

181.    It was deceptive of Defendant Mediolex Ltd. to use a fake ticketing system for support issues, which never led to any actual resolution of problems.

182.    It was deceptive of Defendant Mediolex Ltd. to use the following graphical badge on ComplaintsBoard (shown in the red box below above a false and libelous headline) to denote "verified" "customers," thereby suggesting that readers should trust them, when in fact individuals associated with the badge were neither verified nor customers of Plaintiff's company:



## ELEVENTH CLAIM
### Violation of Massachusetts General Laws Chapter 93A § 2 (Unfair or Deceptive Trade Practices) Against Defendants Kudriavtsev, Mediolex Ltd., and Astrad Ltd.

183.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

184.    The ComplaintsBoard Defendants engaged in an unfair and deceptive trade practice by, as a matter of purported "policy," refusing to remove false and/or libelous posts on ComplaintsBoard by third parties.

185.    The ComplaintsBoard Defendants engaged in an unfair and deceptive trade practice by assigning the copyright for third parties' posts to themselves pursuant to the ComplaintsBoard Terms of Service posted at posted at https://www.complaintsboard.com/terms-conditions so that they could repeat those posts on "tens of partner websites" in order to threaten victims.

186.    The ComplaintsBoard Defendants engaged in an unfair and deceptive trade practice by inviting the issuance of a "court order" from the United States and agreeing to honor it while simultaneously ignoring a subpoena issued by a United States court.

## TWELFTH CLAIM
### Civil Conspiracy Against All Defendants

187.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

188.     Defendants MasMarques and the ComplaintsBoard Defendants worked with one another to amplify false information on ComplaintsBoard about Plaintiff.

189.     By using the ComplaintsBoard website, pursuant to the ComplaintsBoard Terms of Service posted at https://www.complaintsboard.com/terms-conditions, Defendant MasMarques "knowingly and intentionally" granted Defendant "Mediolex Ltd. a Mediolex Ltd. an exclusive, irrevocable, perpetual, royalty-free, and worldwide copyright license to exercise the legal rights to 1) publicly and privately display, use, reproduce, perform, translate, transmit, modify, adapt, archive, and distribute the report; 2) create and reproduce derivative works from the report; 3) incorporate the report into one or more collective works and to reproduce the report as incorporated into the collective works, and 4) grant sublicenses of the report. The above rights may be exercised in all media and formats whether now known or hereafter devised."

190.     Plaintiff put Defendant Mediolex Ltd. on notice of Defendant MasMarques's libelous and unlawful activity as least as early as March 24, 2019 through an abuse report to Cloudflare, a technology vendor abused by ComplaintsBoard Defendants to attempt to anonymize the location of the servers used to host ComplaintsBoard.  This abuse report was forwarded by Cloudflare to at least one of ComplaintsBoard Defendants.

191.     Plaintiff again put Defendants Kudriavtsev and Mediolex Ltd. on notice of Defendant MasMarques's libelous and unlawful activity on October 20, 2019 through an e-mail noting Defendant MasMarques's link to over 200 fake ComplaintsBoard profiles used to libel and harass Plaintiff.

192.     Despite these warnings, the ComplaintsBoard Defendants knowingly allowed Defendant MasMarques to use ComplaintsBoard under hundreds of different accounts with

different pseudonyms, many registered with e-mail addresses that Defendant MasMarques also used to communicate with Plaintiff.

193.    The ComplaintsBoard Defendants knowingly refused to comply with a subpoena issued by the District Court of the Northern District of California in Case No. 3:19-mc-80265-TSH which demanded that Defendant Mediolex Ltd. identify the authors of numerous posts.

194.    The ComplaintsBoard Defendants adopted the same language used by Defendant MasMarques, including but not limited to use of the word "parasite," in communicating with Plaintiff.

195.    Defendant MasMarques has specifically sought to use ComplaintsBoard because of its history of flagrantly violating United States laws.

196.    But for the unique combination of ComplaintsBoard Defendants operating from outside of the United States and Defendant MasMarques exploiting their policies to post false and libelous content on ComplaintsBoard, Plaintiff would have been successful in having the unlawful content removed under United States laws.

## THIRTEENTH CLAIM
### False Light Invasion of Privacy Against All Defendants

197.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

198.    The defamatory statements constitute false light invasion of privacy in that they have subjected Plaintiff to unreasonable and highly objectionable publicity by attributing to Plaintiff characteristics, conduct or beliefs that are false, thereby placing them in a false light before the public.

199.    The false light in which Plaintiff has been placed due to publication of the defamatory statements would be highly offensive to a reasonable person.

200.    Defendants had knowledge of the falsity and criminally harassing nature of the defamatory statements or acted in reckless disregard as to the falsity of the defamatory statements and the false light in which Plaintiff would be placed.

### FOURTEENTH CLAIM
**Intentional Infliction of Emotional Distress Against All Defendants**

201.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint and incorporates them herein by reference.

202.    Defendant MasMarques is a convicted murderer.

203.    Defendant MasMarques sent and/or caused to be sent the First Death Threat, the Second Death Threat, and the Third Death Threat, all directed at Plaintiff because Plaintiff refused to agree to erase public records concerning Defendant MasMarques's murder conviction which multiple federal judges had already refused to seal.

204.    Defendant MasMarques made numerous harassing telephone calls to Plaintiff because Plaintiff refused to agree to erase public records concerning Defendant MasMarques's murder conviction which multiple federal judges had already denied his requests to seal.

205.    On July 3, 2018, Defendant MasMarques filed a cross-request for a temporary restraining order against Plaintiff based on objectively false information.

206.    Plaintiff does not own and has never owned a gun.

207.    In response to the question "Did the person in (2) use or threaten to use a gun or any other weapon" on Judicial Council of California Form CH-100 i.e. a gun, Defendant MasMarques checked "Yes" and wrote, "THIS INDIVIDUAL'S WEAPON IS HIS COMPUTER AND HACKING SKILLS THAT HE USES IN A MALICIOUS MANNER, IN ORDER TO HARASS, STALK, TERRORIZE, SHAME AND DEFAME ANYONE AT HIS WHIM."

208.    On this basis, Defendant MasMarques's cross-request was granted and series of
baseless counter-temporary restraining orders were issued against Plaintiff in 2018 and 2019,
until the Superior Court of Santa Clara County, California finally ruled in Plaintiff's favor nearly
fourteen months later.

209.    The record of these baseless and expired counter-temporary restraining orders has
repeatedly interfered with Plaintiff's ability to re-enter the United States of America due to
automated checks by the United States Department of Homeland Security at passport control.

210.    Defendant MasMarques hired private investigator John X. Haro of Najar
Investigations to purportedly research and follow Plaintiff.  At Defendant MasMarques's behest,
Mr. Haro perjured himself before the Santa Clara County Superior Court in order to suggest that
Plaintiff posed a physical danger to Defendant MasMarques.

211.    The ComplaintsBoard Defendants chose to host, promote, duplicate, and optimize
for search engines Defendant MasMarques's false and libelous rants about Plaintiff even
knowing that they were false and libelous.

212.    When Plaintiff requested assistance from ComplaintsBoard staff and ultimately
served a subpoena on Defendant Mediolex Ltd., Defendant Mediolex Ltd. responded by stating,

> "You are a parasite posting falsified information about other people, ruining their
> lives. We know that you've been behind another 'web project' that has been
> recently shut down. But we'll bring all the evidence up if needed. We could've
> been very helpful and supportive, but you've been a complete asshole from the
> very beginning. Now, get the court order and we'll remove the postings!"

213.    Defendants targeted Plaintiff, Plaintiff's business, Plaintiff's former non-profit
organization, Plaintiff's parents, both of Plaintiff's parents' employers, Plaintiff's disabled
brother, Plaintiff's maternal uncle, Plaintiff's maternal uncle's business, Plaintiff's aunt,

Plaintiff's cousins, Plaintiff's friends, Plaintiff's landlord, and at least one of Plaintiff's work colleagues, all in an effort to extort compliance from Plaintiff.

214.    Plaintiff's maternal uncle and related cousins live or lived in Massachusetts.

215.    For years, Defendant MasMarques, with the support of the other Defendants, has publicly sought to convince numerous state and federal law enforcement agencies to arrest, incarcerate, involuntarily commit, investigate, prosecute, and/or audit Plaintiff on false pretenses.

216.    For a brief period of time in 2019, Defendant MasMarques made it impossible for Plaintiff to drive legally.

217.    For a time from 2018-2022, Defendant MasMarques made it impossible for Plaintiff to travel internationally without pointless interference and delays from federal agents.

218.    Since 2017, Defendants' actions have caused Plaintiff virtually constant stress and worry to a degree that no reasonable person could be expected to endure and that many individuals would require medication and extensive therapy to overcome.

219.    Plaintiff repeatedly reported Defendants to law enforcement, to no avail.  Since Plaintiff received absolutely no assistance from authorities, Plaintiff has spent approximately 1,250 hours of his valuable time or more since 2017 researching and handling this matter.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    A permanent injunction prohibiting Defendants from posting, propagating, copying, or otherwise promoting libelous and defamatory content concerning Plaintiff, Plaintiff's family members, or Plaintiff's friends, colleagues, and contacts, and/or their business activities, consistent with the specific libelous themes enumerated in this complaint, directly or via any third party;

B.      A permanent injunction ordering the immediate removal of existing libelous and defamatory content concerning Plaintiff, Plaintiff's family members, or Plaintiff's friends, colleagues, and contacts, and/or their business activities, from any and all websites used by Defendants, including but not limited to ComplaintsBoard;

C.      Judgment against Defendants on all counts of this First Amended Complaint;

D.      A criminal referral to the United States Attorney's Office for the District of Massachusetts concerning all Defendants;

E.      An award in favor of Plaintiff for compensatory damages in an amount of not less than $1.625 million, to be determined at trial;

F.      An award in favor of Plaintiff for general and special damages in an amount to be determined at trial;

G.      An award in favor of Plaintiff for punitive damages in an amount to be determined at trial for Defendants' reprehensible and outrageous conduct, and to deter future reprehensible and outrageous conduct;

H.      An award of treble damages on Plaintiff's Massachusetts G.L. Chapter 93A claims;

I.      Plaintiff's reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

J.      Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated: July 25, 2023

Aaron Greenspan, *pro se*
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org