Stesha Emmanuel (Massachusetts Bar No. 682293)
McCarter & English LLP
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6500
Facsimile: (617) 607-9200
Email: semmanuel@mccarter.com
*Local Counsel for Defendants Kudriavtsev, Mediolex, and Astrad*

Christopher B. Ingle (Arizona Bar No. 025553)
Gillespie Shields & Taylor
7319 North 16th Street
Phoenix, Arizona 85020
Telephone (602) 870-9700
Facsimile (602) 870-9783
Email: cingle@gillaw.com
*Attorneys for Defendants Kudriavtsev, Mediolex, and Astrad*
*Pro Hac Vice Application Pending*

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| AARON GREENSPAN,<br><br>Plaintiff,<br><br>vs.<br><br>DIEGO MASMARQUES, JR. a/k/a DIEGO MAS HOWARD a/k/a RICKY MAS MARQUES a/k/a JACK JONES, SERGEI IGOREVICH KUDRIAVTSEV, MEDIOLEX, LTD., and ASTRAD, LTD.,<br><br>Defendants. | Case No. 1:23-cv-10134-DJC<br><br>**DEFENDANTS KUDRIAVTSEV, MEDIOLEX, AND ASTRAD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendants Sergey Igorevich Kudriavtsev, Mediolex Ltd., and Astrad Ltd. (the "Mediolex Defendants"), by and through undersigned counsel, and pursuant to Rules 8, 9, and 12, *Fed.R.Civ.P.*, Local Rule 83.5.3(j), and 42 U.S.C. § 230, hereby move to dismiss Plaintiff's First Amended Complaint.

1

Local Rule 83.5.3(j) permits an attorney who is not a member of the bar of this District to file a pleading reasonably necessary to prevent an entry of default provided that any such pleading is accompanied by a motion for admission filed not later than seven (7) days after such filing. In this case, undersigned counsel's motion for admission was filed on September 26, 2023, and is currently pending before the Court at Doc. 83. Counsel is filing this Motion to Dismiss to prevent the Mediolex Defendants from being defaulted before the Court has an opportunity to rule on counsel's application for admission.

### **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION.**

Plaintiff Aaron Greenspan is a California resident who operates a website that posts court and government documents on the internet. *First Amended Complaint* ("FAC") at ¶¶ 2, 5, 20. Defendant Diego MasMarques is allegedly a convicted felon who does not want his legal documents to appear on Plaintiff's website. Despite MasMarques's representations that those statements are false, Plaintiff refused to remove them from the website, so beginning in 2016 MasMarques allegedly began harassing Plaintiff by posting defamatory statements on the internet. *Id.* at ¶¶ 10-15, 35.

Defendant Kudriavtsev is an individual residing in Latvia. He is the principal of Defendant Mediolex, Ltd., a Seychellean company which operates several consumer review websites, including www.complaintsboard.com ("ComplaintsBoard"). Defendant Astrad, Ltd., is a defunct Seychellean company which used to handle financial transactions for Mediolex. *Id.* at ¶¶ 22-24. On several occasions MasMarques posted statements about Plaintiff on ComplaintsBoard. *Id.* at ¶ 99. Despite Plaintiff's representations that those statements are false, Mediolex refused to remove them from the website, so on January 20, 2023, Plaintiff filed this action against Mediolex to try to compel Mediolex to remove them. *Id.* at ¶ 164.

Notably, Plaintiff argues that while he is not legally obligated to remove content that MasMarques claims is defamatory, somehow Mediolex is legally obligated to remove content that Plaintiff claims is defamatory. Plaintiff does not explain why he thinks the law is different for him than it is for Defendants.

The Court should note that none of the Mediolex Defendants have any contacts with Massachusetts. None of them have ever been there. They have not negotiated any agreements in Massachusetts, accepted checks drawn on a Massachusetts bank, made purchases from Massachusetts companies, sent personnel to Massachusetts, filed taxes in Massachusetts, made sales in Massachusetts, solicited business from Massachusetts, engaged in business in Massachusetts, or held licenses in Massachusetts. They are not incorporated in Massachusetts, nor do they have a Massachusetts agent for service of process. They do not have any Massachusetts offices, employees, bank accounts, or property. Plaintiff has not alleged that any of the Mediolex Defendants have any such contacts with Massachusetts.

## II.   LEGAL ANALYSIS.

### A.   The Mediolex Defendants are not subject to personal jurisdiction in Massachusetts.

*1.   The Mediolex Defendants are not subject to general jurisdiction because they do not have contacts approximating a physical presence.*

Constitutional due process demands that courts exercise personal jurisdiction over non-residents only where sufficient "minimum contacts" exist between the non-resident defendant and the forum state. A sufficient relationship between the defendant and the state must exist so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992), citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & n. 9, 104 S.Ct. 1868, 1872–73 & n. 9, 80 L.Ed.2d 404 (1984). In *Bancroft & Masters, Inc. v. Augusta Nat'l. Inc.*, the Ninth Circuit stated "[t]he standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's

3

contacts be of the sort that approximate physical presence." 223 F.3d 1082, 1086 (2000). *See also United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001) (citing with approval the *Bancroft & Masters* analysis of general jurisdiction requirements). Because of the high level of contacts required, courts are generally reluctant to assert general jurisdiction over foreign business entities, even when the contacts with the forum state are "extensive." *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (recognizing that federal courts "regularly . . . declined to find general jurisdiction even where the contacts were quite extensive," and noting that at the time of publication, the Supreme Court had upheld general jurisdiction over a non-resident defendant in only one case).

The United States Supreme Court has found that the exercise of general jurisdiction over a non-resident defendant does not always offend due process, but that such exercise demands extensive actual contacts. Thus, when the defendant corporation had an office in Ohio, kept its files in Ohio, sent business correspondence from Ohio, employed people in Ohio, maintained bank accounts in Ohio, drew and distributed checks on an Ohio bank, used an Ohio transfer agent, and held directors' meetings in Ohio, it would be constitutional. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952). In contrast, the Supreme Court rejected an assertion of general jurisdiction when the defendant's activities in Texas consisted of negotiating an agreement in Texas, accepting checks drawn on a Texas bank, buying helicopters, equipment, and training from a Texas company, and sending personnel to Texas for training. *Helicopteros*, 466 U.S. at 418-19. Factors that courts consider in determining whether a defendant's contacts with the forum state are "substantial, continuous and systematic" include "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license or is incorporated there." *Bancroft*, 233 F.3d at 1086. The court also looks at whether a defendant has offices, employees, bank accounts, property, or tax returns in the forum state. *E.g. Amoco*, 1 F.3d at 851.

Plaintiff bears the burden of proving by a preponderance of the evidence that sufficient minimum contacts exist. *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). To meet this burden, mere allegations in an unverified complaint are insufficient to

4

establish jurisdiction. Rather, Plaintiff must present actual evidence supporting the existence of minimum contacts sufficient to establish jurisdiction. *Id.*

In this case, the Mediolex Defendants do not have any of the contacts that would subject them to general jurisdiction in Massachusetts, nor has Plaintiff alleged or presented evidence of any such contacts. This Court does not have general jurisdiction over the Mediolex Defendants.

>  *2. The Mediolex Defendants are not subject to specific jurisdiction in Massachusetts because Plaintiff's causes of action do not arise out of the "Top Ten" list on ComplaintsBoard.*

Where a defendant's forum activities are not pervasive enough to justify the exercise of general jurisdiction, the existence of specific jurisdiction depends on the quality and nature of the defendant's individual forum activity in relation to the particular cause of action. *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958). Specific jurisdiction may be exercised over a non-resident defendant only if: (1) the defendant purposefully directs his activities to the forum; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999).

Purposeful availment requires the non-resident defendant to reach out beyond the borders of its own state and create a continuing relationship with a citizen of another. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). This requires more than that the defendant caused harm which is suffered in the forum, but "that the defendant committed an intentional act . . . expressly aimed at the forum state." *Bancroft*, 223 F.3d at 1087. A plaintiff's causes of action must stem from these purposeful contacts for a court to exercise specific jurisdiction. *Phillips Exeter*, 196 F.3d and 288.

The final requirement for specific jurisdiction is reasonableness. *Int'l Shoe Co.*, 326 U.S. at 316. For jurisdiction to be reasonable, it must comport with fair play and substantial justice. *Id.* Courts consider a number of factors in determining reasonableness, including: (1) the extent of defendant's purposeful interjection; (2) the relative burdens on the parties; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and efficient relief; and (7) the existence of an alternate forum. *See Burger King*, 471 U.S. at 476-77.

In this case, the only link Plaintiff alleges between Mediolex and Massachusetts is the fact that it is possible to search ComplaintsBoard for the "Top Ten" worst Massachusetts companies, and it is possible to access the internet from Massachusetts, which a person can utilize to view advertisements for ComplaintBoard. There are no allegations that Kudriavtsev or Astrad have any connection to Massachusetts whatsoever. *FAC* at ¶¶ 22-24.

Simply having a webpage about Massachusetts companies does not subject a Seychellean company to jurisdiction in Massachusetts. If it were, any map of the United States would subject a cartographer to jurisdiction in all fifty states. Similarly, any website that displayed information about Massachusetts or could be accessed from Massachusetts would be subject to jurisdiction in Massachusetts as well. No court has ever held that anything that even mentions Massachusetts is automatically subject to jurisdiction in Massachusetts.

Mediolex did not purposefully direct its conduct at Massachusetts. If anything, MasMarques directed his conduct at Mediolex to post the content at issue, not the other way around. Moreover, Plaintiff's causes of action have nothing to do with the "Top Ten" page or advertisements for ComplaintsBoard. It is a substantial burden for the Mediolex Defendants to litigate in a foreign country halfway around the world, using Massachusetts laws that they have never seen or used before, in a foreign language. There is no reason why Massachusetts would have an interest in adjudicating Plaintiff's claims against any of the Mediolex Defendants. Plaintiff is not in Massachusetts and the harm was not experienced in Massachusetts. Should Plaintiff desire to pursue claims against Mediolex, there are perfectly good legal systems in Latvia and the Seychelles that Plaintiff can avail himself of, if he so chooses.

Plaintiff has no right to force the Mediolex Defendants to litigate in a foreign county, using an unfamiliar legal system in a foreign language, especially where Plaintiff is unwilling to do any of those exact same things himself. Because the Mediolex Defendants have not purposefully directed their activities towards Massachusetts and Plaintiff's claims do not arise out of the "Top

Ten" webpage or ComplaintsBoard advertisements, the Court cannot exercise specific jurisdiction over them. And because the Court cannot exercise either general or specific personal jurisdiction over the Mediolex Defendants, the Court must dismiss Plaintiff's claims against them pursuant to Rule 12(b)(2), *Fed.R.Civ.P.*

### B.     PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATION.

Plaintiff alleges nine causes of action against the Mediolex Defendants: libel *per se*, contribution, negligent infliction of emotional distress, three violations of Massachusetts state laws, conspiracy, false light, and intentional infliction of emotional distress. The applicable statute of limitations for libel is three years. MA G.L. Ch. 260, § 4. The statute of limitations for negligent infliction of emotional distress, conspiracy, false light, and intentional infliction of emotional distress is also three years. *Id.* at § 2A. The statute of limitations for the three state law claims is four years. *Id.* at § 5A. There is no recognized cause of action for "contribution," and therefore it does not have an applicable statute of limitations.

Plaintiff did not file his claims against the Mediolex Defendants within the applicable statute of limitations. Plaintiff's first involvement with Mediolex occurred on December 5, 2009, when he signed up for a ComplaintsBoard account, thereby subjecting himself to its Terms of Use. *FAC* at ¶ 169. To the extent Plaintiff alleges that the Mediolex Defendants violated Massachusetts statutes by operating an unfair or deceptive website, his claims accrued when Plaintiff began his relationship with the website in 2009, and the limitation period expired in 2013.

Plaintiff's tort claims against the Mediolex Defendants accrued on January 7, 2018. *Id.* at ¶ 99(g). Plaintiff indicated his awareness of these claims by contacting Mediolex about them on June 19, 2018. *Id.* at ¶ 82. He also questioned MasMarques about these claims on May 5, 2019. *Id.* at ¶ 69. Applying the statute of limitations, Plaintiff had until January 7, 2021, to file his tort claims. However, Plaintiff did not file this action until January 20, 2023, more than two years after the deadline expired, and Astrad was not added until September 5, 2023. Plaintiff does not allege that any of the Mediolex Defendants engaged in any unlawful activity within the applicable statutes of limitation, and therefore his claims against them must be dismissed with prejudice.

**C.     THE MEDIOLEX DEFENDANTS ARE NOT SUBJECT TO MASSACHUSETTS STATE LAW CLAIMS.**

The specific jurisdiction analysis is also used to determine whether a given plaintiff has standing to bring state law claims against a non-resident defendant. In order for a court to exercise jurisdiction over a state law claim, there must be an ""an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017), quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846 (2011). In light of *Bristol-Myers*, three options now exist for a court to exercise jurisdiction over state law claims: in the defendant's place of incorporation, in the defendant's principal place of business, or in the place where the conduct occurred.

In this case, Plaintiff is not a Massachusetts resident, nor was he in Massachusetts when the conduct occurred, nor was the alleged harm suffered in Massachusetts. He is not within the class of persons protected by Massachusetts state laws. Similarly, the Mediolex Defendants are not Massachusetts residents, nor were they in Massachusetts when the conduct occurred, nor did they cause harm in Massachusetts. They do not do business in Massachusetts and, as residents of Latvia and the Seychelles, they are not required to comply with Massachusetts state laws. In other words, there are no allegations that would give Plaintiff standing to utilize Massachusetts state law claims, nor are there allegations that would subject the Mediolex Defendants to liability under Massachusetts state laws. To hold otherwise would require every website operator to follow every law in every state in every country in the entire world, solely because it is possible to access websites from anywhere in the world. That is clearly overbroad and, as a practical matter, it would be impossible to do.

Because Plaintiff does not have standing to bring state law claims, and because the Mediolex Defendants are not subject to Massachusetts law, Plaintiff's state law claims against the Mediolex Defendants fail as a matter of law and must be dismissed with prejudice.

**D.     PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

> 1. *Plaintiff failed to state a claim against the Mediolex Defendants because he did not allege facts sufficient for the Mediolex Defendants to understand what he is accusing them of doing.*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), *Fed.R.Civ.P.* A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Even though when considering a motion to dismiss the court generally takes all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Heightened pleading standards apply when the claims contain averments of fraud or mistake. Rule 9(b), *Fed.R.Civ.P.* This applies to "all averments of fraud or mistake," regardless of whether the claim is denominated as fraud, and regardless of whether liability is based on statutory, tort, or contract law. *Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 236 (D. Mass. 1979). Rule 9(b) requires "specification of the time, place and content of an alleged false representation…." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985), quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980) (superseded by statute). "One of the main purposes of the rule is to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim." *Hayduk*, 775 F.2d at 443. "Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint." *Id.* at 444, citing *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13–14 (1st Cir. 1984). "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Id.*, citing *Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir. 1972)

Rule 9(b)'s heightened pleading standards apply to Plaintiff's state law claims for unfair and deceptive business practices because those claims involve false or misleading statements. *See*

9

*Wayne*, 739 F.2d at 14; *McGinty*, 633 F.3d at 228. As such, "the time, place, and content of an alleged false representation" must be pled with specificity. *Id.* However, Plaintiff did not include any such allegations.

Plaintiff also alleged "on information and belief, the ComplaintsBoard Defendants authored and/or caused to be authored false and libelous posts on various websites concerning Plaintiff." *FAC* at ¶ 153. However, Plaintiff did not specify which of the Mediolex Defendants allegedly posted such content, what it said, when this happened, where it was posted, how it was false, whether it caused harm, or whether it had anything to do with MasMarques. Plaintiff did not allege sufficient facts to state a claim because the Mediolex Defendants cannot discern who Plaintiff is accusing of doing what, nor can they determine whether the statute of limitations has expired, nor can they determine if these are the same statements Plaintiff attributed to MasMaques, nor can they even investigate the claim sufficiently to respond to it.

    *2. Plaintiff's conclusory conspiracy allegations are insufficient as a matter of law because they do not plausibly suggest a conspiracy.*

To survive a motion to dismiss, a complaint must state a plausible claim for relief. *Twombly*, 550 U.S. at 556. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

In the context of a Rule 12 motion, while the Court may presume the truth of Plaintiff's factual allegations, it cannot presume the same about its legal conclusions. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 678–79. However, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint that offers labels and conclusions, or formulaic recitation of elements of cause of

action, does not survive a motion to dismiss. Rule 8(a)(2), *Fed.R.Civ.P.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor does a "complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*

In this case, Plaintiff's conspiracy allegation merely states "Defendants MasMarques and the ComplaintsBoard Defendants worked with one another to amplify false information on ComplaintsBoard about Plaintiff." *FAC* at ¶ 188. However, Plaintiff does not allege who acted on behalf of the Mediolex Defendants; when the Mediolex Defendants supposedly communicated with MasMarques; where those communications allegedly happened; what they talked about; what they agreed to do; whether the Mediolex Defendants were aware that MasMarques intended tortious conduct; how the alleged "amplification" occurred – i.e. whether Plaintiff is alleging that software made the content viewable, whether one of the Mediolex Defendants did something specifically to increase the harm to Plaintiff, or something else entirely; or what the Mediolex Defendants actually did to further an illegal plan. Plaintiff merely offered the legal conclusion that they engaged in "a conspiracy," which is insufficient as a matter of law. As the U.S. Supreme Court stated in *Iqbal*:

> The plaintiffs in *Twombly* flatly pleaded that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry ... and ha[d] agreed not to compete with one another." The complaint also alleged that the defendants' "parallel course of conduct ... to prevent competition" and inflate prices was indicative of the unlawful agreement alleged. The Court held the plaintiffs' complaint deficient under Rule 8. In doing so it first noted that the plaintiffs' assertion of an unlawful agreement was a "'legal conclusion'" and, as such, was not entitled to the assumption of truth. Had the Court simply credited the allegation of a conspiracy, the plaintiffs would have stated a claim for relief and been entitled to proceed perforce. The Court next addressed the "nub" of the plaintiffs' complaint—the well-pleaded, nonconclusory factual allegation of parallel behavior—to determine whether it gave rise to a "plausible suggestion of conspiracy." Acknowledging that parallel conduct was consistent with an unlawful agreement, the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior. Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiffs' complaint must be dismissed.

11

*Iqbal*, 556 U.S. at 679–80 (internal citations omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiff's Complaint suffers from the same deficiencies as the *Twombly* complaint, in that it attempts to disguise legal conclusions as facts. For example, Plaintiff alleged that Defendants worked with each other, but fails to explain what they did, who did what, when this work was done, where it was done, or whether it had any connection to the reports that Plaintiff complains about. Plaintiff alleges that Mediolex is liable for refusing to remove false reports about him, but fails to explain how Mediolex should have known those reports were false, other than Plaintiff's apparent say-so, which is contradicted by MasMarques. The Mediolex Defendants are not required to investigate whether everything posted on ComplaintsBoard is true, nor are they required to adjudicate the validity of Plaintiff's dispute with MasMarques. In the same manner that Plaintiff is permitted by law to host content that MasMarques claims to be defamatory, Mediolex is permitted by law to host content that Plaintiff claims is defamatory.

To allege a plausible claim against the Mediolex Defendants, Plaintiff must allege something more than Defendants must have entered into some sort of conspiracy. *Hayduk*, 775 F.2d at 444. Plaintiff would have to allege facts that plausibly suggest a conspiracy, and because Plaintiff has not done so, the Court must grant this Motion to Dismiss. *See Iqbal*, 556 U.S. at 678.

### 3. *Plaintiff did not state any claim against Kudriavtsev or Astrad.*

Plaintiff's allegations against Kudriavtsev and Astrad are insufficient to state a claim. With respect to Kudriavtsev, Plaintiff alleges that he is "likely" the beneficiary of Mediolex's bank accounts. Plaintiff alleges that Astrad owns an "IP address block" that formerly hosted ComplaintsBoard. Plaintiff also alleges that Kudriavtsev is the alter ego of both Mediolex and Astrad, but as with his conspiracy claim, Plaintiff did not allege any facts that would support such a legal conclusion. *FAC* at ¶¶ 22-24.

The only other section of the FAC that pertains to either defendant is Plaintiff's allegation (again without factual support) that he sent emails to Kudriavtsev and Astrad, *id.* at ¶ 176, except Plaintiff immediately contradicted himself in that same paragraph by admitting that in reality, he

emailed only Mediolex. In fact, it would have been impossible for Plaintiff to have emailed Astrad because the entity is defunct.

Apart from those allegations the FAC is silent as to what Plaintiff believes Kudriavtsev or Astrad may have done to warrant liability in this case. Even if Kudriavtsev earned money from Mediolex, that fact alone is insufficient to "pierce the corporate veil" so as to allow personal liability. Similarly, even if Astrad owned an IP address block that used to host ComplaintsBoard at some unpecified point in the past, that fact alone would not be unlawful. Because Plaintiff did not allege any facts that would result in liability if proven, the Court must dismiss Kudriavtsev and Astrad pursuant to Rule 12(b)(6), *Fed.R.Civ.P.*

It also bears noting that as of the time of this filing, Plaintiff has not served Astrad with the FAC, thereby permitting Astrad to seek dismissal pursuant to Rule 12(b)(5), *Fed.R.Civ.P.*, for insufficient service of process. Although Plaintiff filed a Certificate of Service upon Astrad, Doc 92, it is clear from the filing that Plaintiff served only Mediolex and did not utilize the email addresses he had previously stated he would use to serve Astrad. *Compare Motion to Amend and for Alternative Service*, Doc. 27, at p. 3 (requesting permission to serve Astrad via email to legal@complaintsboard.com and ivestules@gmail.com) with *Certificate of Service*, Doc. 92 (averring that Plaintiff did not send any emails to ivestules@gmail.com).

**E.     The Mediolex Defendants are immune under 47 U.S.C. § 230 because they did not post the content at issue on ComplaintsBoard.**

Stated simply, Section 230 of the Communications Decency Act of 1996 (the "CDA") immunizes providers of "interactive computer services" such as website operators from liability arising from content created by third parties. 47 U.S.C. § 230. With limited exceptions not applicable here, the persons who post such content are responsible what they post, not the websites upon which that content was posted.

More specifically, section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." This provision has been held to "establish broad federal immunity to any cause of action that would make service providers liable for information originating with a

13

third-party user of the service." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *accord Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418–19 (1st Cir. 2007). Section 230(e)(3) provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." At its core, Section 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran v. AOL*, 129 F.3d 327, 330 (4th Cir. 1997).

In *Jones v. Dirty World Entertainment Recordings LLC*, the court stated:

> By barring publisher-liability and notice-liability defamation claims against interactive computer service providers, Section 230 serves three main purposes. First, it "maintain[s] the robust nature of Internet communication and, accordingly, ... keep[s] government interference in the medium to a minimum." Second, the immunity provided by Section 230 protects against the "heckler's veto" that would chill free speech. <u>Without Section 230, persons who perceive themselves as the objects of unwelcome speech on the internet could threaten litigation against interactive computer service providers, who would then face a choice: remove the content or face litigation costs and potential liability. Immunity shields service providers from this choice</u>. Third, Section 230 encourages interactive computer service providers to self-regulate. An early internet case, *Stratton Oakmont*, held that at common law the provider of an electronic message-board service was potentially liable for its user's defamatory message because it had engaged in voluntary self-policing of the third-party content made available through its service. Section 230 set out to abrogate this precedent.

755 F.3d 398, 407-08 (9th Cir. 2014) (internal citations omitted, emphasis added). *See also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (Section 230 "is an immunity from suit rather than a mere defense to liability and ... is effectively lost if a case is erroneously permitted to go to trial.").

"Courts have construed the immunity provisions in Section 230 broadly." *Jones*, 755 F.3d at 408, citing *Nemet*, 591 F.3d at 254 (collecting cases). Furthermore, "close cases ... must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly

assented to—the illegality of third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc).

In sum, Section 230 bars a claim if (1) the defendant asserting immunity is an interactive computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information. *Jones*, 755 F.3d at 409, citing *Universal Commc'n Sys.*, 478 F.3d at 418.

In this case, Plaintiff alleges that MasMarques posted the content at issue. *FAC* at ¶ 99. As such, the Mediolex Defendants are not liable for that content. 42 U.S.C. 230(c). Plaintiff occasionally suggests that the Mediolex Defendants should be held liable because they redact content such as personal contact information, *FAC* at ¶ 156, but in fact *Zeran* specifically held that website operators like Mediolex do not incur liability for engaging in "traditional editorial functions," including "alter[ing] content." 129 F.3d at 330. Similarly, Plaintiff occasionally suggests the Mediolex Defendants should be held liable for allowing MasMarques to post defamatory content on ComplaintsBoard, *FAC* at ¶ 192, which claim is barred by the CDA and which the Ninth Circuit held, en banc, is not actionable under the CDA. *Roommates.com*, 521 F.3d at 1174. Plaintiff also suggests the Mediolex Defendants should be held liable for refusing to remove content that Plaintiff believes to be defamatory, which runs contrary to the second purpose of the CDA, as set forth by *Jones*. 755 F.3d at 407-08 (second purpose of CDA immunity is to prevent website operators from having to defend lawsuits alleging that they display or encouraged the display of defamatory content).

Although Plaintiff attempts to avoid the application of the CDA by alleging "[o]n information and belief, the ComplaintsBoard Defendants authored and/or caused to be authored false and libelous posts on various websites concerning Plaintiff [and] [i]n so doing, the ComplaintsBoard Defendants waived any protection from liability under Section 230 of the Communications Decency Act," *FAC* at ¶¶ 154-55, as discussed above, Plaintiff's bare-bones allegation lacks specific allegations as to who posted what content on what website, when this happened, or how it is false, thereby depriving the Mediolex Defendants of sufficient information to respond to the allegation. *See Hayduk*, 775 F.2d at 443-44. Again, Plaintiff's formulaic recitation

of the elements of a cause of action followed by his legal conclusion that the Mediolex Defendants waived their immunity fails as a matter of law. *See Iqbal*, 556 U.S. at 678. It appears Plaintiff included the allegation, which he presumably knows to be unfounded, solely to try to prevent the Mediolex Defendants from invoking the Section 230 immunity to which they are entitled. Notably, Plaintiff's claims do not pertain to that alleged content, and that the other 217 paragraphs of his Complaint pertain to content posted by MasMarques. A "complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* In such cases the complaint must be dismissed. Rules 8(a)(2), 9(b), and 12(b)(6), *Fed.R.Civ.P.*

### F. Plaintiff's claims are barred by consent, waiver, release, failure to mitigate damages, and laches.

When a person creates an account on a website they typically will be required to check a box indicating that they consent to the website's terms of service. Courts routinely hold that checking that box forms an enforceable contract between the user and the website. *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 7-8 (1st Cir. 2021) (enforceable contract exists where user clicks box signaling assent to terms of use), citing *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 573, 159 N.E.3d 1033, 1049-1050 (2021).

In this case, Plaintiff entered into a contract with Mediolex in 2009. *FAC* at ¶ 169. In so doing, he agreed to be bound by the ComplaintsBoard Terms of Use. *Id. See also* Exhibit A. The Terms of Use contain numerous provisions that bar Plaintiff from making the claims in this case, including:

- ComplaintsBoard.com is not responsible for helping consumers resolve their complaints.
- ComplaintsBoard.com does not censor posted consumer, or business replies, or investigate them for accuracy.
- Posted messages may be indexed by internet search engines.
- When posted to ComplaintsBoard.com messages are exposed to public view, and are made available for indexing and reproduction by third-party search engines and directories. ComplaintsBoard.com has no control over the content taken from ComplaintsBoard.com by third-party sites.

- ComplaintsBoard.com is not responsible for the validity of the consumer complaints posted to the ComplaintsBoard.com site.
- You will defend, indemnify, and hold harmless ComplaintsBoard.com, its officers, directors, employees, agents, and third parties, for any losses, costs, liabilities, and expenses (including reasonable attorneys' fees) relating to or arising out of your use of ComplaintsBoard.com, including, but not limited to, any breach by you of the terms of use.
- Opinions, advice, statements, offers, or other information or content made available through ComplaintsBoard.com are those of their respective authors and not of ComplaintsBoard.com, and should not necessarily be relied upon. Such authors are solely responsible for the accuracy of such content. ComplaintsBoard.com does not guarantee the accuracy, completeness, or usefulness of any information posted on ComplaintsBoard.com and neither adopts nor endorses nor is responsible for the accuracy or reliability of any opinion, advice, or statement made. Under no circumstances will ComplaintsBoard.com be responsible for any loss or damage resulting from anyone's reliance on information or other content posted on ComplaintsBoard.com.
- You shall remain solely responsible for the content of your postings on ComplaintsBoard.com. While we do not and cannot review every message posted by users of the Service, and are not responsible for any content of these messages, we reserve the right but are not obligated, to delete or remove profanity, obscenities, threats of physical violence, or damage to property, and private financial information such as social security numbers and credit card information.

Despite agreeing to be bound by these Terms of Use, Plaintiff now seeks to hold the Mediolex Defendants liable for acts and omissions that he consented to when he entered into the Terms of Use contract. Plaintiff contractually agreed that he would not hold the Mediolex Defendants responsible for determining whether MasMarques's statements are accurate, nor are they obligated to remove content that Plaintiff says is defamatory. Plaintiff contractually agreed that MasMarques' comments could be indexed by search engines and could appear on third-party sites.

Plaintiff contractually agreed that the Mediolex Defendants would not be liable for MasMarques' comments on ComplaintsBoard. Importantly, Plaintiff agreed that "[u]nder no circumstances will ComplaintsBoard.com be responsible for any loss or damage resulting from anyone's reliance on information or other content posted on ComplaintsBoard.com."

Moreover, Plaintiff agreed to "defend, indemnify, and hold harmless ComplaintsBoard.com, its officers, directors, employees, agents, and third parties, for any losses, costs, liabilities, and expenses (including reasonable attorneys' fees) relating to or arising out of your use of ComplaintsBoard.com." Plaintiff admitted that he used ComplaintsBoard to view the content at issue in this case, and despite his agreement that the Mediolex Defendants would not be liable for such use, in this lawsuit he seeks to hold the Mediolex Defendants liable for harm he allegedly suffered through his use of ComplaintsBoard. The Court must dismiss this action because Plaintiff consented to the complained-of acts and omissions, waived his claims for the same, and released the Mediolex Defendants from any liability they could have incurred. Plaintiff even agreed to indemnify the Mediolex Defendants for any such liability, which renders his claims against them moot, as he would be responsible for satisfying his own judgment.

Additionally, Plaintiff waited at least six years before filing suit, during which time Plaintiff alleges that his harms grew worse. Clearly Plaintiff could have mitigated his damages by filing suit earlier, but he chose not to do so. Plaintiff cannot now pursue the Mediolex Defendants for harms caused by his own inaction. His claims are barred by laches, and his damages claim is barred by his failure to mitigate.

## III. CONCLUSION.

The Mediolex Defendants are not subject to personal jurisdiction in Massachusetts. The statute of limitations has run on all of Plaintiff's claims. Plaintiff does not have standing to bring Massachusetts state law claims because he is a resident of California and the Mediolex Defendants did not engage in any acts or omissions in Massachusetts. Similarly, the Mediolex Defendants are based in Europe and Asia, and are not subject to Massachusetts state law. Plaintiff failed to state a claim upon which relief could be granted by failing to include factual allegations which, if proven, would result in liability. His conspiracy claim fails as a matter of law because the facts alleged,

even if proven, do not plausibly suggest a conspiracy. The Mediolex Defendants are also immune from suit under Section 230 of the CDA. Plaintiff consented to many of the acts and omissions he now complains of, contractually waived his claims against the Mediolex Defendants, and contractually released the Mediolex Defendants from liability. Finally, Plaintiff's claims are disallowed because he failed to mitigate his damages and engaged in laches by unreasonably delaying legal action.

    For all the foregoing reasons, the Court must grant this Motion to Dismiss Plaintiff's First Amended Complaint.

    **RESPECTFULLY SUBMITTED** this 3rd day of October, 2023.

                                **GILLESPIE, SHIELDS & TAYLOR**

                                By: */s/ Christopher B. Ingle*
                                    Christopher B. Ingle
                                    *Attorneys for Defendants Kudriavtsev, Mediolex, and Astrad*

**CERTIFICATE OF SERVICE**

I, Christopher B. Ingle, hereby certify that on the 3rd day of October, 2023, a true and correct copy of the foregoing document was filed with the Court and served electronically through the CM-ECF (Case Management - Electronic Case Filing) system to those registered to receive a Notice of Electronic Filing for this case and paper copies will be sent to those indicated as non-registered participants:

Aaron Greenspan
956 Carolina Street
San Francisco, California 94107-3337
Email: aaron.greenspan@plainsite.org
*Plaintiff pro se*

Diego MasMarques, II
P.O. Box 301
Marlborough, Massachusetts 01752
Email: dmas5@protonmail.com
*Defendant pro se*

Stesha Emmanuel
McCarter & English LLP
265 Franklin Street
Boston, Massachusetts 02110
Email: semmanuel@mccarter.com
*Local Counsel for Defendants Kudriavtsev, Mediolex, and Astrad*

By: /s/ *Christopher B. Ingle*