**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AARON GREENSPAN, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Case No. 23-cv-10134-DJC |
| DIEGO MASMARQUES, SERGEI IGOREVICH KUDRIAVTSEV, MEDIOLEX, LTD., and ASTRAD LTD., | ) ) ) ) ) |
| Defendants. | ) ) ) |

<u>MEMORANDUM AND ORDER</u>

CASPER, J.                                                     March 25, 2024

I.      **Introduction**

Plaintiff Aaron Greenspan ("Greenspan"), who is proceeding *pro se*, has filed this lawsuit against Defendants Diego MasMarques ("MasMarques"), Sergei Igorevich Kudriavtsev ("Kudriavtsev"), Mediolex Ltd. ("Mediolex") and Astrad Ltd. ("Astrad") (collectively, "Defendants"). D. 1, 54. Against MasMarques, Greenspan alleges libel per se (Count I), civil harassment under Mass. Gen. L. c. 258E (Count II), tortious interference with prospective economic advantage (Count III), abuse of process (Count IV) and malicious prosecution (Count V). D. 54. Against Kudriavtsev, Mediolex, and Astrad (collectively, the "Complaints Board Defendants"), Greenspan alleges libel per se (Count VI), contribution (Count VII), negligent infliction of emotional distress (Count VIII), unfair or deceptive acts or practices under Mass. Gen. L. c. 93A § 2A (Counts IX, X and XI). <u>Id.</u> Finally, against all Defendants, Greenspan alleges civil conspiracy (XII), false light invasion of privacy (Count XIII) and intentional

1

infliction of emotional distress (Count XIV).  Id.  MasMarques has moved to dismiss.  D. 66.[1]

The Complaints Board Defendants have moved to dismiss all claims brought against them.  D.

95.  For the reasons stated below, the Court DENIES MasMarques's motion in part and

ALLOWS it in part, D. 66, and ALLOWS the Complaints Board Defendants' motion, D. 95.

The Court also DENIES Greenspan's motion for leave to file a second amended complaint, D.

102.

## II.    Standard of Review

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a defendant can move to dismiss an action in federal

court based upon a lack of subject matter jurisdiction.  "[T]he party invoking the jurisdiction of a

federal court carries the burden of proving its existence."  Murphy v. United States, 45 F.3d 520,

522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir.

1993)).  Once a defendant challenges the jurisdictional basis for a claim in federal court pursuant

to Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of proving that jurisdiction exists.

Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).  When considering a motion to

dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court

must construe the complaint liberally, treating all well-pleaded facts as true and indulging all

---

[1] Although his motion to dismiss is framed as a motion to dismiss all of the claims, MasMarques's motions papers, D. 66-67, do not address Count XII, the civil conspiracy claim. Although MasMarques clarified at the motion hearing that he was still seeking to dismiss this claim, the failure to address it in his motion papers effectively waived the issue and this claim shall proceed.  Moreover, even considering whether Greenspan plausibly alleged "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement," Fiorillo v. Winiker, 85 F. Supp. 3d 565, 576 (D. Mass. 2015) (quoting Aetna Casualty Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994)), the Court concludes that he has done so, accepting the allegations in the complaint as true, D. 54 ¶¶ 188, 192, as the Court must at this stage.

reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (citing Murphy, 45 F.3d at 522).   The Court also "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case."  Id. at 1210.

### B.   Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

When ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without an evidentiary hearing, a district court applies the *prima facie* standard of review.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citation omitted).  "Under this standard, it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  Id. (quoting United Elec., Radio & Mach. Workers of Am. V. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings, including affidavits.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995).  The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. Of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (citation omitted).  But it will "not credit conclusory allegations or draw farfetched inferences."  Ticketmaster-N.Y. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The Court will also consider facts offered "by the defendants, to the extent that they are uncontradicted."  Mass. Sch. Of L., 142 F.3d at 34.

### C.   Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st

Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted). "Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal quotation marks and citation omitted).

## III.  Factual Background

The Court draws the following factual allegations from the first amended complaint, D. 54, and accepts them as true for the purposes of resolving the pending motions.

Greenspan founded Think Computer Corporation, a software company based in California, which operates PlainSite, a website that provides free access to court documents and other public records. D. 54 ¶ 2. Greenspan oversees the operations of PlainSite. Id. An individual may contact PlainSite directly if he wishes to have his court records suppressed from search engine results or removed from PlainSite via a "Contact Us" form. Id. ¶ 8. PlainSite and Greenspan have never accepted payment nor charged any fee to remove or suppress content from its website. Id. ¶¶ 7-8.

On July 17, 2000, MasMarques was convicted of the murder in Spain. Id. ¶ 27. MasMarques's case was transferred to the United States on February 13, 2006, and he served his

sentence here.  Id. ¶¶ 27, 30.  Shortly after his release from prison, MasMarques turned himself

in to the police on December 24, 2008 because of outstanding warrants for his arrest on other

charges.  Id. ¶ 32.  In 2015, another session of this Court denied MasMarques's motion to seal

his criminal records pertaining to his convictions in Spain, id. ¶ 33, which the First Circuit

affirmed.  Id. ¶ 34.  Greenspan published information about MasMarques's criminal history on

his website.  Id. ¶ 36.

### 1.  PlainSite Form Submissions

On July 20, 2016, Greenspan received an email from an individual purporting to be

"Vincent Bellomo," a former boss of the Genovese crime family.  Id. ¶ 35.  The message

included threatening language and requested the removal of two dockets on PlainSite involving

an individual named Diego MasMarques, Sr., MasMarques's father.  Id.  On at least one other

occasion, Greenspan received an aggressive message also allegedly from MasMarques under

another "Bellomo" alias.  Id. ¶ 60.

On February 21, 2017, through the PlainSite Contact Us form, Greenspan received three

requests from "Diego MasMarques" concerning the removal of his criminal records from

PlainSite's website.  Id. ¶ 36.  Over the next few days, Greenspan continued to receive similar

correspondence allegedly from MasMarques using various email addresses and aliases.  Id. ¶¶

37-40.  On March 1, 2017, Greenspan reviewed MasMarques's case and denied his requests for

removal, notifying him of same.  Id. ¶ 41.  The denial prompted further requests from

MasMarques, again using various aliases, email addresses, and phone numbers.  Id. ¶¶ 42-45, 47.

MasMarques offered to provide a donation to have the entries removed, which Greenspan

declined.  Id. ¶ 44.  As alleged, many of MasMarques's emails were threatening.  See id. ¶¶ 47,

60.

###### 2.   Pattern of MasMarques's Alleged Harassment

After denial of MasMarques's requests to remove his criminal records from the PlainSite website, Greenspan alleges that MasMarques made defamatory posts regarding him and his family.  On September 13, 2017, a post appeared on the website "Blacklist Report," containing a photograph of Greenspan accompanied by "a long, rambling defamatory tirade" written in the same style as many of MasMarques's emails.  Id. ¶ 48.  Similar posts continued to appear on various websites concerning Greenspan and his family, reaching over 350 posts by June 2018. Id. ¶¶ 50-51.  These posts, among other things, falsely identified Greenspan as a defendant in a criminal case, falsely accused him of running an unregistered and/or fraudulent 501(c)(3) non-profit organization to evade taxes, falsely alleged that he owns or manages the website leagle.com and falsely suggested that he caused his brother's disability and deliberately harms him.  Id.  ¶ 51.  The posts contained modified images of Greenspan and his parents.  Id. ¶ 52. They also contained personal information that put Greenspan and his friends and family in physical danger, such as phone numbers and contact information, his family's home address, images of his parents' home, address and phone numbers to his father's workplace and the name of Greenspan's former synagogue.  Id. ¶¶ 52, 109.  Among other things, the posts encouraged viewers to reach out to Greenspan's father's workplace to complain about Greenspan's father. Id. ¶ 52.  Greenspan's father received numerous harassing calls and emails at work, several of which were also addressed to his colleagues.  Id. ¶ 53.

Since 2017, MasMarques allegedly has authored or published thousands of defamatory statements concerning Greenspan, Greenspan's family and friends and colleagues to a wide audience on numerous websites.  Id. ¶¶ 96, 99, 105.  MasMarques has created fake user accounts on various social media platforms and websites impersonating Greenspan, Greenspan's family

members and others who may know them.  Id. ¶ 107.  In addition to the persistent emails and posts, MasMarques also allegedly harassed Greenspan via phone calls.  Id. ¶¶ 56, 58-59, 81.

MasMarques filed false complaints about Greenspan with dozens of federal and state government agencies and officials and caused others to do the same.  Id. ¶¶ 115, 132-33, 46, 55, 71-73, 80.  For one instance, MasMarques filed a complaint with the California Department of Motor Vehicles ("DMV") alleging that Greenspan had used a false residential address to obtain a California Driver's License.  Id. ¶ 136.  An investigation ensued, ultimately finding no violations or wrongdoing.  Id.  As a result of this complaint, however, Greenspan was unable to renew his vehicle registration because the investigation put a "stop" on Greenspan's account, meaning that Greenspan could not drive his car until the investigation concluded.  Id. ¶¶ 137-138.

### 3. Restraining Order and Prior Litigation

On April 4, 2018, Greenspan applied for a restraining order against MasMarques in California and a temporary one was granted.  Id. ¶ 62.  MasMarques filed a cross-request for a temporary restraining order against Greenspan, which the court initially granted but eventually withdrew.  Id. ¶ 208.  On August 31, 2019, the California Superior Court granted a two-year restraining order against MasMarques, which expired on August 30, 2021.  Id. ¶ 87.

Greenspan alleges that MasMarques repeatedly violated the restraining order, resulting in criminal proceedings being filed against him in the Marlborough District Court for violation of the restraining order and criminal harassment.  Id. ¶ 14.  These proceedings were ultimately terminated and expunged.  Id.  On April 8, 2019, MasMarques filed an application for criminal charges against Greenspan in the same court, but the clerk found no probable cause for those charges to issue.  Id. ¶¶ 118, 139.  On July 29, 2019, MasMarques filed for a civil restraining order against Greenspan in Middlesex Superior Court, which was dismissed.  Id. ¶ 140.

4.       *Complaints Board Operated by the Complaints Board Defendants*

MasMarques has used a variety of websites to post about Greenspan, including Complaints Board, a Latvian and Russian-run website hosting English-language consumer reviews.  Id. ¶ 64.  Complaints Board is run by Kudriavtsev, id. ¶ 65, and the other Complaints Board Defendants operate an unknown number of websites.  Id. ¶ 150.

The Complaints Board Defendants can remove posts on the website, and they created a function for users to report posts that are abusive or clearly false.  Id. ¶¶ 159-60.  Greenspan reported dozens of such posts, id. ¶ 161, and Mediolex is aware of same because any attempt from Greenspan to report them again generates an error message that states, "you have already reported this post. Thank you."  Id. ¶ 163.  Despite Greenspan reporting the posts, the Complaints Board Defendants have allowed them to remain on the Complaints Board website. Id. ¶ 164.

Greenspan notified Kudriavtsev and Mediolex that MasMarques was using over 200 fake Complaints Board profiles to harass him.  Id. ¶ 191.  Despite this notice, the Complaints Board Defendants allowed MasMarques to continue using the hundreds of different Complaints Board accounts registered under email addresses that MasMarques had also used to communicate with Greenspan.  Id. ¶ 192.  Greenspan has repeatedly asked Mediolex to remove the posts about him on Complaints Board to no avail.  Id. ¶ 82.  Instead, the Complaints Board Defendants augmented the visibility of posts about Greenspan.  Id. ¶ 151.  The Complaints Board Defendants also chose to feature certain inflammatory posts about Greenspan as "the most valued customer feedback," without verifying that the feedback was posted by actual customers. Id.  Finally, the Complaints Board Defendants added links to share the posts.  Id.  Greenspan created an account on the Complaints Board website with the handle "thinkcomp," id. ¶ 169, and

tried to claim the PlainSite/Think Computer profile as the owner.  Id. ¶ 170.  The Complaints Board Defendants, however, refused to grant Greenspan access.  Id.

As alleged, MasMarques continues to author new posts about Greenspan on the Complaints Board as recently as March 2023, after the complaint in this action was filed.  Id. ¶ 67.

## IV.   Procedural History

Plaintiffs instituted this action on January 20, 2023.  D. 1.  Defendants have now moved to dismiss.  D. 66; D. 95.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 110.

## V.   Discussion

### A.   Subject Matter Jurisdiction

As an initial matter, MasMarques seeks to dismiss for lack of subject matter jurisdiction. D. 67 at 7.  Specifically, MasMarques contends that Greenspan has failed to allege that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.  D. 67 at 7, 9.  Diversity of citizenship for the purposes of federal subject matter jurisdiction may be satisfied "if the plaintiff is a 'citizen' of a different state than all of the defendants."  Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991) (citation omitted).  "[C]itizenship or domicile, not residence, is the basis of subject matter jurisdiction," and a person may only have one domicile.  Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992).  "[A]n adult person acquires a legal 'domicile' when he or she is physically present in a location and has the intent to remain there for the indefinite future." Bower v. EgyptAir Airlines Co., 731 F.3d 85, 90 (1st Cir. 2013) (citation omitted).  Relevant factors for the determination of domicile include "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located,

driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." Lundquist, 946 F.2d at 11-12 (internal citation and quotation marks omitted).

There is complete diversity here. Greenspan alleges that MasMarques resides in Marlborough, Massachusetts. D. 54 ¶¶ 21, 77. As an exhibit to the amended complaint, Greenspan attached various government complaints filed by MasMarques, and in at least two of these complaints, MasMarques provided his home address in Massachusetts or indicated that he was physically present in Massachusetts. D. 54-5 at 4, 19, 21. Greenspan alleges that he resides in California. D. 54 ¶¶ 20, 76. In some of the government complaints attached to the amended complaint, MasMarques himself identified Greenspan as a California resident. D. 54-5 at 5.[2] Greenspan also alleges that his vehicle is registered in California, D. 54 ¶¶ 136-137, and his Corporation, Think Computer Corporation, is based in California. Id. ¶ 2. Finally, in his affidavit filed in support of his opposition to the motion to dismiss, Greenspan indicates that he moved to the San Francisco Bay area in 2006. D. 68-1 at 1 ¶ 3. Greenspan has thus plausibly alleged that he is a citizen of California and MasMarques is a citizen of Massachusetts.

Greenspan also has alleged plausibly that none of the Complaints Board Defendants are citizens of the United States. D. 54 ¶¶ 22-24. A corporation is "'considered a citizen of the State where it has its principal place of business,' as well as a citizen of its state of incorporation." BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 696 (1st Cir. 2023) (quoting Americold Realty Tr. v. Conagra Foods, Inc., 577 U.S. 378, 381 (2016)). A corporation's principal place of business "is the particular location from which its 'officers direct, control, and coordinate the

---

[2] Regarding a motion to dismiss on Rule 12(b)(1) grounds, the Court "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." Aversa, 99 F.3d at 1210.

corporation's activities.'"   Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 40 (1st Cir. 2016)

(quoting Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010)).  Greenspan alleges that Kudriavtsev

resides in and is a national of Latvia, id. ¶ 22, which the Complaints Board Defendants confirm

in their motion to dismiss, D. 95 at 2.  Greenspan also alleges that Mediolex is a Seychelles-

based corporation, doing business in Latvia, Russia and the United States.  D. 54 ¶ 23.  The

Complaints Board Defendants confirm that Mediolex is a Seychellean company.  D. 95 at 2.

Finally, Greenspan alleges that Astrad is "likely a Seychelles-based" corporation, doing business

in Latvia, Russia and the United States.  D. 54 ¶ 24.  The Complaints Board Defendants confirm

that Astrad was a Seychellean company.  D. 95 at 2.

In addition to alleging complete diversity for the reasons stated above, Greenspan also

has sufficiently alleged the jurisdictional amount.  "A plaintiff's good faith allegation of

damages" that meets the required amount in controversy is "usually enough."  CE Design Ltd. v.

Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014).  When that amount is challenged, however,

the "party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity

facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional

amount."  Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 42 (1st Cir. 2012) (quoting Stewart

v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004)).

Greenspan has alleged the jurisdictional amount with "sufficient particularity."

Greenspan alleges that the defamatory posts injured his reputation and adversely affected his

businesses.  D. 54 ¶ 103.  Specifically, Greenspan alleges that MasMarques's actions have made

it impossible to raise money from venture capital firms and other investors to finance his

endeavors.  Id. ¶ 16.  Greenspan asserts that it is a routine practice of venture capital firms and

early investors who fund early-stage startup companies such as his own to conduct due diligence

on their investments before agreeing to provide funding.  D. 68-1 at 2 ¶ 4.  This due diligence would include internet searches and inquiries about any litigation.  D. 68-1 at 2 ¶¶ 5-6. Greenspan asserts that the defamatory posts allegedly authored by MasMarques would have appeared during due diligence and affected his ability to receive those investments.  D. 68-1 at 2 ¶ 7.  Greenspan contends the negative posts have cost him millions of dollars of funding, noting the average seed round money in the first quarter of 2023 and the average series A round money in the same time frame.  D. 68 at 10; D. 68-1 at 56-58.  Greenspan alleges that, with venture capital backing, the wages he would have earned in just one year would have exceeded the $75,000 threshold alone.  D. 68 at 10.  Greenspan further contends that the valuation of Think Computer Corporation, his company, has suffered by more than $75,000.  Id.

Just considering these facts, Greenspan has met his burden of alleging that the amount in controversy exceeds $75,000.  See Lifchits v. Integon Nat'l Ins. Co., No. 18-cv-12637-ADB, 2020 WL 4756272, at *4 (D. Mass. Aug. 17, 2020) (concluding that "[a]t this stage, as the bar is not high and Plaintiff is proceeding pro se, the Court finds that Plaintiff has met the [amount in controversy] requirement and the Court has subject matter jurisdiction").

Accordingly, the Court denies MasMarques's motion to dismiss for lack of subject matter jurisdiction.

**B.**     **Personal Jurisdiction over the Complaints Board Defendants**

The Complaints Board Defendants seek to dismiss for lack of personal jurisdiction.[3]  D. 95 at 3.  To exercise jurisdiction over the non-resident Complaints Board Defendants, this Court

---

[3] The Court allows Greenspan's motion for leave to file a request for judicial notice, D. 111, nunc pro tunc, and the portion of D. 114 in which he sought leave to file a notice of supplemental authority, D. 114, nunc pro tunc.  The Court has considered the cases and arguments raised in these papers in the resolution of Complaints Board Defendants' motion. Particularly as to Will Co. v. Lee, 47 F.4th 917, 922 (9th Cir. 2022) and Doe v. WebGroup Czech Republic, a.s., 93 F.4th 442, 450-51 (9th Cir. 2024), the Court notes that these cases were

must "find sufficient contacts between the defendant[s] and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause."  Sawtelle, 70 F.3d at 1387 (citations omitted).

### 1.   Massachusetts Long-Arm Statute

Greenspan asserts that the Complaints Board Defendants' contacts in Massachusetts satisfy Section 3(a) and Section 3(c) of the long-arm statute.  See D. 108 at 9-10, 13.  The Massachusetts long-arm statute provides for personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . . (c) causing tortious injury by an act or omission in this commonwealth."  Mass. Gen. L. c. 223A, § 3(a), (c).

### a)   Section 3(a)

To find jurisdiction pursuant to Section 3(a), "the facts must satisfy two requirements:  1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business."  Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001).  The "transacting business" clause is construed "broadly."  Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990); see Tatro v. Manor Care, Inc., 416 Mass. 763, 767; Lyle Richards Int'l, Ltd. V. Ashworth, Inc., 132 F.3d 111, 113 (1st Cir. 1997).  A defendant's "physical presence is not required to satisfy § 3(a)."  Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 933 (1st Cir. 1985).  Rather, the touchstone is "whether the defendant attempted to participate in the commonwealth's economic life."  United Elec., Radio & Mach. Workers of Am. V. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) (citation omitted).  "[I]solated transactions unaccompanied by purposeful intent on the part

---

considered under Fed. R. Civ. P. 4(k)(2), which is limited to a claim that "arises under federal law."  Here, all claims alleged are state law claims and, therefore, Rule 4(k)(2) does not apply.

of defendants and having only a slight effect on the commerce of the Commonwealth are not enough to support jurisdiction under subsection (a) of the long-arm statute." Sun Life Assurance Co. of Canada v. Sun Bancorp., Inc., 946 F. Supp. 2d 182, 188 (D. Mass. 2012) (internal quotation marks omitted) (quoting Intech, Inc. v. Triple "C" Marine Salvage, Inc., 444 Mass. 122, 126 (2005)).

The Complaints Board Defendants' conduct does not satisfy the "transacting business" requirement. Greenspan alleges that Complaints Board specifically targets Massachusetts residents because it "features a page dedicated to the purported 'Top 10 Worst Companies In Massachusetts.'"  D. 54 ¶ 23.  Maintaining this page, however, does not amount to transacting business in Massachusetts, as Complaints Board is not soliciting business from residents in Massachusetts by merely listing these companies on its website.  Comer v. Comer, 295 F. Supp. 2d 201, 210 (D. Mass. 2003) (concluding that defendant's passive website, which "only post[ed] information for those who are interested" and made "no mention of any ties to Massachusetts" did "not constitute 'transacting business in this commonwealth' under subsection (a)"); Mullane v. Zurich Am. Ins. Co., No. 18-cv-12412-DJC, 2019 WL 2193497, at *3 (D. Mass. May 21, 2019) (explaining that "the existence of a website accessible to Massachusetts residents, without more, is not sufficient to authorize personal jurisdiction over [defendant] under §3(a)"), aff'd, No. 19-1725, 2021 WL 531053 (1st Cir. Jan. 26, 2021).

Greenspan also alleges that the Complaints Board Defendants sell advertising space on their website to advertising networks in the United States, but he fails to allege any specific Massachusetts-based advertising companies or networks with which they contract.  Greenspan also asserts that the Complaints Board Defendants earn "advertising revenue from web-based banner advertisements displayed in this judicial District."  D. 54 ¶ 23.  General advertisements

on the website visible everywhere, however, are not sufficiently targeted to Massachusetts residents to qualify as commercial contact with the state.  See Power v. Connectweb Tech., Inc., 648 F. Supp. 3d 321, 332 (D. Mass. 2023) (ruling that defendant was not transacting business within the meaning of Section 3(a) where defendant did not carry out "any advertising or marketing efforts that 'specifically target Massachusetts residents,' as opposed to residents of other states").

Greenspan alleges that the Complaints Board Defendants "conduct trade and commerce in Massachusetts by targeting Massachusetts consumers," D. 54 ¶ 168; see D. 108 at 7.  He does not specify, however, what "trade and commerce" the Complaints Board Defendants engage in, how they target Massachusetts consumers nor what business they solicit.  See Power, 648 F. Supp. 3d at 333 (concluding that plaintiff's "conclusory allegation that [defendant] 'regularly and routinely does business in Massachusetts' is insufficient to establish that [defendant] acted with a purposeful intent to transact business in this forum").  Greenspan fails to allege with any specificity any instance where the Complaints Board Defendants transacted business in the state.  See Chase v. Gist, No. 12-40020-FDS, 2012 WL 1581682, at *3 (D. Mass. May 3, 2012) (concluding that the enrollment of a single student in an online program does not bring an out-of-state university within section (a) of the Massachusetts long arm statute where the university neither advertises in Massachusetts, targets Massachusetts residents nor has any evident intent to conduct business in Massachusetts).

Greenspan also argues that Complaints Board Defendants rely on at least three vendors that conduct business in and have offices located in Massachusetts, including Cloudflare, Google and Amazon.  D. 108 at 7.  None of these companies, however, are Massachusetts companies, and Greenspan cites no cases that suggest that this Court may exercise personal jurisdiction over

a defendant that contracts with an out-of-state company that happens to maintain an office in Massachusetts nor that such contractual relationship amounts to transacting business in Massachusetts under Section 3(a) of the long-arm statute.  Even if these vendors were Massachusetts companies, "[t]he execution of a typical bilateral contract between in-state and out-of-state parties, without more, is 'viewed as ancillary activity without substantial commercial consequence in the forum' and does not generally trigger personal jurisdiction."  Stag Williamsport, LLC v. BHN Assoc., LLC, 610 F. Supp. 3d 389, 395 (D. Mass. 2022) (quoting Little, Brown and Co. v. Bourne, 493 F. Supp. 544, 547 (D. Mass. 1980)).

For all of these reasons, Greenspan has failed to show that Section 3(a) of the Massachusetts long-arm statute provides a basis for personal jurisdiction over the Complaints Board Defendants.

b)      Section 3(c)

Alternatively, the Court has considered whether Greenspan has shown personal jurisdiction over the Complaints Board Defendants under Section 3(c).  "[W]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has for jurisdictional purposes, acted within that state."  The Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 320 (D. Mass. 2008) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)) (addressing Section 3(c) of the Massachusetts long-arm statute).  To determine whether the injury arose from that act, the Court must ask whether "defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury."  Ching-Yi Lin v. TipRanks, Ltd., No. 19-cv-11517-ADB, 2019 WL 6211246, at *2 (D. Mass. Nov. 21, 2019) (alteration in original) (citation omitted).

Greenspan has not shown that the allegedly tortious act was purposefully directed at Massachusetts with the intent to cause injury in Massachusetts.  Abiomed, Inc. v. Turnbull noted that "the posting of tortious material on the internet which is directed toward a state resident by an out-of-state defendant has been held to constitute an in-forum act for purposes of the statute," Abiomed, Inc. v. Turnbull, 379 F. Supp. 2d 90, 94 (D. Mass. 2005); see Ching-Yi Lin, 2019 WL 6211246 (concluding that Section 3(c) was satisfied where the out-of-state's defendant's erroneous ranking, "which was available in Massachusetts, allegedly deterred Massachusetts employers from hiring [in-state plaintiff], which caused economic loss and damaged her reputation"), does not warrant a different outcome.  As alleged here, the tortious material posted was directed towards Greenspan, a non-Massachusetts resident, and posted by a Massachusetts resident on the Complaints Board Defendants' platform.

Moreover, to establish jurisdiction under Section 3(c), Greenspan must demonstrate that the alleged tortious injury occurred in Massachusetts. "Greenspan attempts to assert that, in 2018, he was injured in Massachusetts as a result of the Complaints Board Defendants' inaction as to MasMarques's defamatory posts on their website.  D. 108 at 13.  Greenspan, however, is a California resident, D. 54 ¶ 20, and, in his complaint, he does not allege having been present in Massachusetts.  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 959 F. Supp. 36, 39-40 (D. Mass. 1997) (failing to establish jurisdiction under Section 3(c) where the complaint fails to demonstrate that the alleged tortious injury occurred in Massachusetts), aff'd, 142 F.3d 26 (1st Cir. 1998). Greenspan does not point to any facts around the circumstances of the injury he claims to have suffered while present in Massachusetts.

For these reasons, Greenspan has failed to show that Section 3(c) of the Massachusetts long-arm statute provides a basis for personal jurisdiction over the Complaints Board Defendants.

### 2.    *Constitutional Due Process*

Although Greenspan failed to establish jurisdiction under the Massachusetts long-arm statute, the Court nonetheless turns to the due process analysis in the interest of completeness. For a court to assert personal jurisdiction over a nonresident defendant, constitutional due process demands that the defendant must "possess[] sufficient contacts with the forum state so that subjecting him, her, or it to the forum's jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" United Elec., 960 F.2d at 1087 (quoting Int'l Shoe Co., 326 U.S. at 316).

There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Because Greenspan does not suggest general jurisdiction exists, see D. 108 at 9-10, the Court's analysis focuses on specific jurisdiction. The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The plaintiff bears the burden of proof on all three elements. See Rodriguez v. Samsung Elec. Co., Ltd., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

### a)    Relatedness

The relatedness inquiry focuses on whether "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting United Elec., 960 F.2d at 1088-89). This test "requires an 'arising from' analysis distinct from the 'but for' analysis undertaken under the Massachusetts long-arm statute."

18

Sigros, 129 F. Supp. 2d at 67.  This constitutional test is a "flexible, relaxed standard," id. at 66 (quoting Pritzker, 42 F.3d at 60-61), but still requires a causal relationship between the plaintiff's claim and defendant's forum-related conduct, Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005).  Although not precisely proximate cause, "due process demands something like a 'proximate cause' nexus."  Id. (quoting Cambridge Literary Prop., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)).  "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Id. at 61 (alteration in original and internal citation and quotation marks omitted).

Greenspan argues that the action arises out of or relates to the Complaints Board Defendants' forum-based contacts because MasMarques, a Massachusetts resident, published defamatory posts about Greenspan on the Complaints Board Defendants' website, and these posts are the basis of this action.  D. 108 at 11.  The Complaints Board Defendants cannot be said to have contacts with this state because MasMarques accessed and interacted with their website.  See Alves v. Goodyear Tire & Rubber Co., No. 22-11820-WGY, 2023 WL 4706585, at *6 (D. Mass. July 24, 2023) (concluding that "the only intentional contact between [defendant] and Massachusetts that 'relates to' the claims at issue is the accessibility of [defendant's website] from Massachusetts," and "[t]he mere availability of a generally accessible website operated out-of-state" is not enough to establish personal jurisdiction) (emphasis in original) and cases cited.  Accordingly, Greenspan has not sustained his burden in showing that the current action arises out of or relates to the Complaints Board Defendants' contacts with Massachusetts.

b)      Purposeful Availment

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state."  Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 245 (D. Mass. 2012) (internal citation and quotation marks

omitted).  The inquiry focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citation omitted).  "The two key focal points of this concept are voluntariness and foreseeability."  Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007).  The defendant's conduct must be "voluntary and not based on the unilateral actions of another party" so that the defendant could "reasonably anticipate being haled into court there."  Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)); see Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008).

Greenspan argues that the Complaints Board Defendants have "attempted to avail themselves of the immunity provided . . . by 47 U.S.C. § 230," a statute whose protections "are available in Massachusetts."  D. 108 at 11.  This argument is unavailing since this federal statute is not limited to Massachusetts citizens and applies broadly.  A defendant cannot reasonably anticipate being haled to court in Massachusetts for invoking protections under a federal statute that applies everywhere.  To hold otherwise would be contrary to the constitutional due process interest of protecting individuals from being "subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  Burger King Corp., 471 U.S. at 471-72 (internal citation and quotation marks omitted).

Greenspan also argues that the word Massachusetts is "represented in the source code for every single page of the Complaints Board website" because "numerous JavaScript components employed by the website . . . are licensed under the Massachusetts Institute of Technology."  D. 108 at 7.  The mere mention of Massachusetts on the website's source code is not sufficient to create a contact between the Complaints Board Defendants and the state.  See Cossaboon, 600 F.3d at 35-36 (concluding that a website was not "designed to reach and appeal to [the state's]

residents specifically" where a keyword search of the state on the website "yield[ed] four web pages that mention the state" because "[t]hese four stray references to [the state] . . . do not indicate that [defendant] intentionally uses its website to target" residents from that state). Greenspan does not cite any legal support to suggest that using software originally developed in Massachusetts to create a website would establish a contact with the forum sufficient to subject them to personal jurisdiction within said state.

Greenspan claims that, by contracting with Cloudflare, the Complaints Board Defendants "have designated Cloudflare as their primary and secondary [Domain Name System] hosts in order to allow the Cloudflare service to function. Depending upon the requestor's estimated location, Cloudflare provides the user with an IP address for one of its data centers, including one in Boston." D. 108 at 14. Greenspan concedes that there is a possibility that the Boston data center may not be used actively in relation to the Complaints Board website, id. n.6, but argues that the Complaints Board Defendants are nonetheless paying for its availability as a backup. Id. Greenspan is arguing that by contracting with Cloudflare, the Complaints Board Defendants purposefully availed themselves to all states, including Massachusetts, where Cloudflare hosts data centers regardless of whether the Complaints Board Defendants knew of those locations or whether Cloudflare uses the Massachusetts data center to route or store requests or data specific to the Complaints Board Defendants' website. Greenspan, however, cites no case "in which a court exercised personal jurisdiction on such a theory." BGDG Enter., LLC v. Barley & Swine, No. A-13-CA-719-SS, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014).

BGDG Enterprises, LLC is instructive. Id. at *7. There, the plaintiff argued that the defendants had "purposely directed their activities toward Texas" because the defendants' website was "physically hosted on servers located in Texas." Id. at *3. These servers were

"owned or leased" by a separate entity, id., and the defendants were not aware that they hosted their website on servers physically located in Austin.  Id. at *4.  The court observed that the parties did "not cite any cases indicating the owner of a website submits to jurisdiction anywhere there is a server which might host the domain name for the website."  Id.  Since the defendants did not own or maintain the server located in Texas and "merely owned a website which happened to be hosted by this server," the court declined to conclude that this set of circumstances provided a basis for personal jurisdiction.  Id.  Likewise here, the mere possibility that the Complaints Board Defendants may be providing users with IP addresses through a data center in Boston is not the sort of specific and purposeful targeting that would amount to purposefully availing themselves to Massachusetts.

Accordingly, Greenspan has not shown that the Complaints Board Defendants purposefully availed themselves of this forum.  Because Greenspan has not established either relatedness or purposeful availment, the Court will not conduct a reasonableness inquiry.

Accordingly, the Court allows the Complaints Board Defendants' motion to dismiss for lack of personal jurisdiction.[4]

### C.   MasMarques's Motion to Dismiss for Failure to State a Claim

#### *1.   Libel (Count I)*

"Under Massachusetts law, a libel plaintiff must establish that the defendant published 'a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss.'"  Zeigler v. Rater, 939 F.3d 385, 392 (1st Cir. 2019) (quoting White v. Blue Cross & Blue

---

[4] Finding no personal jurisdiction over the Complaints Board Defendants, the Court does not reach the Complaints Board Defendants' alternative bases for dismissal and denies as moot the portion of D. 114 in which Greenspan moves for leave to file a motion for sanctions against the Complaints Board Defendants.

Shield of Mass., Inc., 442 Mass. 64, 66 (2004)).   A statement is actionable without proof of economic loss when it:   (1) constitutes libel, (2) charges the plaintiff with a crime, (3) alleges that the plaintiff has certain diseases, or (4) prejudices the plaintiff's profession or business. Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003).   "A publication is defamatory when it tends to injure one's reputation in the community and to expose him to hatred, ridicule, and contempt."   Harnois v. Univ. of Mass. at Dartmouth, No. 19-10705-RGS, 2019 WL 5551743, at *10 (D. Mass. Oct. 28, 2019) (quoting Brauer v. Globe Newspaper Co., 351 Mass. 53, 55-56 (1966).   "An expression of pure opinion may not for[m] the basis of a defamation claim." Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 311 (D. Mass. 2017).

Greenspan has plausibly alleged that MasMarques published false statements about him. Greenspan alleges that, in the published posts, MasMarques falsely identified him as a criminal, falsely accused him of running a fraudulent nonprofit organization and made other false statements about him.  D. 54 ¶¶ 51, 105.  Although MasMarques argues that Greenspan "has not established" that it was in fact he who made the posts, D. 67 at 4, Greenspan has plausibly alleged that MasMarques published the false statements.   Greenspan asserts that MasMarques has revealed himself as the author of the posts in several ways, including by linking URLs in a post that traced the post to MasMarques's home IP address, and by inadvertently including his Mac OS username in one of the posts, which he admitted under oath in court.  D. 54-3; D. 54 ¶¶ 63, 74-77; D. 54-4.

Greenspan also has plausibly alleged that the published content is capable of damaging his reputation in the community.  He asserts that the defamatory statements injure his reputation and subject him "to public hatred, ridicule, shame, or disgrace."  Id. ¶ 103.  Specifically, Greenspan alleges that the defamatory statements "impute dishonesty and immorality regarding

his personal and professional character," id. ¶ 105, and may damage his reputation by falsely suggesting that he "engages in illegal, unethical, immoral and/or criminal business practices." Id. ¶ 106; see Arsenault v. Allegheny Airlines, Inc., 485 F. Supp. 1373, 1378 (D. Mass. 1980) (concluding that a statement accusing plaintiff of participating in a scheme to misappropriate company funds would damage plaintiff's reputation because it would "expose him to hatred, ridicule and contempt in the minds of a considerable and respectable class of people").

In addition, Greenspan has plausibly alleged that the published statements are actionable without proof of economic loss.   Greenspan identifies various published statements that charge him with a crime and prejudice his profession or business.   On multiple occasions, MasMarques's posts have alleged that Greenspan is a criminal or involved in criminal activity. D. 54 ¶¶ 51(a), 51I, 99(q), 99(mm), 105; D. 54-2 at 4, 15, 21, 24, 26-27, 39-41, 47-48. MasMarques's allegations that Greenspan was engaged in fraud, extortion, and other crimes are actionable without proof of economic loss.   See Shafir v. Steele, 431 Mass. 365, 373 (2000). MasMarques has also published posts accusing Greenspan of fraudulently operating his business and nonprofit.   D. 54 ¶¶ 51(f), 57, 74, 99(e), 99(aa)-(cc); D. 54-2; see Ravnikar, 438 Mass. at 631-32 (concluding that a false allegation that a physician is terminally ill would prejudice that physician's practice because such a claim creates an inference that the physician lacks the ability to offer stable and reliable care for his patients).

Finally, Greenspan has plausibly alleged that he has suffered economic loss a result of these posts.   Specifically, Greenspan alleges that he has missed out on funding opportunities from investors, spent significant time defending himself and experienced a loss in future earning potential.   D. 54 ¶ 16.   Although MasMarques argues that Greenspan has failed to disclose any purported defamatory statements, Greenspan identified dozens of defamatory statements in his

complaint, id. ¶¶ 99(a)-(mm), and in the attached exhibit, D. 54-2. Therefore, Greenspan has plausibly alleged a claim of libel.

Accordingly, the Court denies the motion to dismiss as to Count I.

### 2.    Civil Harassment (Count II)

Greenspan alleges civil harassment in violation of Mass. Gen. L. c. 258E. MasMarques argues that the Court cannot review this claim because the section governing jurisdiction under the statute mandates that such "[p]roceedings . . . be filed, heard and determined" in state court. Mass. Gen. L. c. 258E, § 2. In addition to this express, statutory language, the only federal court to address this matter has found the defendant's argument persuasive. In re Fustolo, No. 13-12692-JNF, 2015 WL 1399045, at *13 (Bkrtcy. Ct. Mar. 24, 2015) (concluding that because, among other reasons, the statute provides for the "governing jurisdiction" to be state court for such claims, plaintiff had failed to state a plausible claim); see Manning v. Whole Foods Mkt. Grp., Inc., No. 21-cv-10833-ADB, 2022 WL 194999, at *7 (D. Mass. Jan. 21, 2022) ("[s]etting aside whether this is the proper court in which to raise a claim under Chapter 258E" where the Court was otherwise dismissing a civil harassment claim for failure to state a claim). Given the failure to overcome this initial hurdle, the Court dismisses this claim, Count II, on this ground.

### 3.    Tortious Interference with Prospective Economic Advantage (Count III)

To prevail on a claim for tortious interference with advantageous business relations, the plaintiff must prove: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with the relationship through improper motive or means; and (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct." Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 47 (1st Cir. 2002).

Greenspan argues that by signing up for a Twitter account and agreeing to its Terms of Service, he had a contractual agreement with Twitter, Inc. to use the Twitter social networking service, which provided him with economic benefit.  D. 68 at 11.  At this stage, the Court must accept as true Greenspan's allegation that he had a contractual agreement with Twitter by nature of having an account.  D. 54 ¶ 122.  Greenspan, however, does not allege with specificity any economic losses arising directly from his inability to access his Twitter account.  See Insurative Premium Fin. (Jersey) Ltd. v. Deutsche Bank Sec., Inc., No. 12-10642-NMG, 2012 WL 7802432, at *8 (D. Mass. Dec. 18, 2012) (stating that in a claim for tortious interference with advantageous business relations, "[i]f the plaintiff does not suffer any pecuniary loss as a result of the defendant's actions, there can be no recovery"); Riverdale Mills Corp. v. Cavatorta N. Am., Inc., 189 F. Supp. 3d 317, 323 (D. Mass. 2016) (dismissing tortious interference claim where there were "no specific allegations of harm," such as a loss of customers or a drop in sales).

Greenspan only alleges that he was harmed "by the inability to communicate, the inability to access the record of his past posts, the false public impression that [he] had somehow violated the Twitter Terms of Service, and the addition of a 'strike' to [his] account within Twitter's internal database."  Id. ¶ 126.  Moreover, the Court has considered Greenspan's argument that he could expect a financial benefit from his relationship with Twitter because he used his Twitter account to promote his book and to publicize PlainSite, D. 68 at 17, and the allegations regarding same in the proposed second amendment regarding same.  D. 108-6 ¶ 141. While Greenspan claims that traffic to his website decreased following the Twitter suspension affecting his ability to market his book, id., he does not allege that his website saw a decline in paid subscriptions or that he lost out on any anticipated book sales due to any alleged

interference with his Twitter account.  See Koppel v. Moses, No. 20-11479-LTS, 2020 WL 6292871, at *8 (D. Mass. Oct. 27, 2020) (dismissing tortious interference claim where, among other things, plaintiff's "conclusory" allegation that defendant had "damaged 'present and future advantageous relations" was not sufficient).  Accordingly, the Court allows the motion to dismiss as to Count III.

### 4. *Abuse of Process (Count IV)*

MasMarques argues that Greenspan's abuse of process claim should be dismissed because Greenspan failed to allege any facts that suggest that MasMarques "initiated any abusive process against him."  D. 67 at 5.  To state a claim for abuse of process, Greenspan must allege that (1) process was used (2) for an "ulterior or illegitimate purpose," (3) resulting in damage. Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011) (internal citation and quotation marks omitted).  Process means "causing papers to issue by a court 'to bring a party or property within its jurisdiction.'"  Silvia v. Bldg. Inspector of W. Bridgewater, 35 Mass. App. Ct. 451, 453 n.4 (1993) (quoting Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 390 (1975)).  Abuse of process involves the "malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed."  La Frenier v. Kinirey, 478 F. Supp. 2d 126, 142 (D. Mass. 2007) (internal citation and quotation marks omitted).  The ulterior motive must be "more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit."  Broadway Mgmt. Serv., Ltd. v. Cullinet Software, Inc., 652 F. Supp. 1501, 1503 (D. Mass. 1987).

Greenspan alleges that MasMarques filed an application for criminal charges against him, D. 54 ¶ 139, filed a civil restraining order against him in the Middlesex Superior Court, id. ¶ 140, and filed a cross-request for a temporary restraining order against him in the Santa Clara

Superior Court, id. ¶ 131; see Jones, 369 Mass. at 389-90 (noting that Massachusetts courts have limited abuse of process claims to three types of processes: writs of attachment, the process used to institute a civil action, and the process related to the bringing of criminal charges).

Greenspan also alleges that MasMarques filed the criminal charges and the restraining orders for an ulterior purpose. MasMarques's contact with Greenspan initiated from MasMarques's persistent requests to have his criminal court records removed from PlainSite. D. 54 ¶¶ 35-40. Greenspan denied MasMarques's requests, id. ¶ 41, and, as alleged, many of the posts, communications and complaints that ensued negatively commented on Greenspan's website, the need for its removal or Greenspan's refusal to remove MasMarques's court records. Id. ¶¶ 44, 60, 74, 99; D. 54-2. Greenspan alleges that through the filing of criminal charges and the restraining orders, MasMarques was attempting to extort compliance from Greenspan to remove MasMarques's criminal court records from PlainSite. D. 54 ¶¶ 130, 132, 213. Greenspan has thus plausibly alleged ulterior purpose. See Stromberg v. Costello, 456 F. Supp. 848, 850 (D. Mass. 1978) (noting that "[t]he usual case of abuse of process is one of some form of extortion, [u]sing the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it") (internal citation omitted); Carroll v. Gillespie, 14 Mass. App. Ct. 12, 26 (1982) (upholding abuse of process claim where automobile repair shop owner and dealership filed criminal complaint against customer to pressure her to pay repair bill).

Finally, Greenspan has sufficiently alleged damage resulting from MasMarques's alleged abuse of process. Greenspan alleges that the Santa Clara Superior Court initially granted MasMarques's temporary restraining order against Greenspan. D. 54 ¶ 208. Although now expired, Greenspan asserts that that temporary restraining order has interfered with his ability to

re-enter the United States due to automated checks triggered at passport control.  Id. ¶ 209; see Kaiser v. Kirchick, No. 21-10590-MBB, 2021 WL 5964618, at *16 (D. Mass. Dec. 16, 2021) (ruling that damage was sufficiently alleged where no-trespass orders "ruined plaintiffs' reputations, subjected them to public humiliation, and 'curtail[ed] the use and enjoyment of their property'") (alteration in original); cf. Gouin v. Gouin, No. 03-11895-MLW, 2007 WL 9797503, at *9 (D. Mass. Sept. 30, 2007) (concluding that there was no damage where there was no showing of mental suffering, distress, harassment, or inconvenience beyond having to appear at hearings).

Accordingly, the Court denies the motion to dismiss as to Count IV.

### 5.    Malicious Prosecution (Count V)

MasMarques argues that Greenspan failed to state a claim for malicious prosecution. D. 67 at 5.  To state a claim for malicious prosecution, a plaintiff must allege "that [the defendant] instituted criminal proceedings against [him] with malice and without probable cause and that those proceedings terminated in favor of [the plaintiff]."  Correllas v. Viveiros, 410 Mass. 314, 318 (1991).  A defendant "institutes" an action if he "cause[s] those proceedings to be initiated," such as "formally swear[ing] out a criminal complaint."  Limone v. United States, 579 F.3d 79, 89 (1st Cir. 2009) (citations omitted).  An individual may be held to have instituted criminal proceedings if he "induces another person (say, a police officer or prosecutor) to lodge formal criminal charges."  Limone, 579 F.3d at 89.

Greenspan alleges that MasMarques filed an application for a criminal complaint in the Marlborough District Court, which the clerk refused to issue for lack of probable cause.  D. 54 ¶¶ 118, 139, 145; D. 54-5 at 24-26.  "Courts in this district disagree about whether the filing of an application for a criminal complaint, without the issuance of the complaint, suffices to initiate a criminal proceeding for the purposes of a claim of malicious prosecution."  El Khoury v.

Goulding, No. 21-cv-11036-LTS, 2023 WL 2384083, at *16 (D. Mass. Feb. 10, 2023), report and recommendation adopted, No. 21-cv-11036-LTS, 2023 WL 2384106 (D. Mass. Feb. 28, 2023); compare Fletcher v. Wagner, 221 F. Supp. 2d 153, 155 (D. Mass. 2002) (holding that an application for a criminal complaint is insufficient, and a "claim for malicious prosecution will only lie if a criminal complaint actually issues"), with Damon v. Hukowicz, 964 F. Supp. 2d 120, 137 (D. Mass. 2013) (holding that filing the application for a criminal complaint was enough to institute criminal proceedings).   The court in El Khoury opted to follow "the Damon court's more inclusive view."  El Khoury, 2023 WL 2384083, at *16.  This Court will do the same.  As such, Greenspan has pled the first element.

Greenspan has plausibly alleged that MasMarques instituted the criminal proceeding with malice.  Malice is defined as "any wrong or unjustifiable motive," and may be inferred from a lack of probable cause.  Campbell v. Casey, 166 F. Supp. 3d 144, 153 (D. Mass. 2016) (citation omitted).   Malice may be found where the proceedings were initiated for an "improper purpose." Chervin v. Travelers Ins. Co., 448 Mass. 95, 109-10 (2006); Mackey v. Town of Tewksbury, 433 F. Supp. 3d 116, 168-69 (D. Mass. 2020).   Greenspan alleges that MasMarques filed the application for criminal charges against him in an effort to extort compliance from Greenspan to remove MasMarques's criminal court records from PlainSite.  D. 54 ¶¶ 130, 132, 213; Mackey, 433 F. Supp. 3d at 169 (concluding that a jury could reasonably find malice where defendants subjected plaintiff to meritless charges as retaliation for filing a complaint or for the purpose of harassing plaintiff).  Greenspan has thus pled that MasMarques acted with malice in initiating the criminal proceeding.

Greenspan has sufficiently alleged that defendants instituted the criminal proceeding without probable cause.  "The absence of probable cause is an essential element" of a malicious

prosecution claim.  <u>Wilson v. Fairhaven</u>, No. 18-11099-PBS, 2021 WL 1387778, at *12 (D.

Mass. Mar. 8, 2021).  Probable cause is defined as "'such a state of facts in the mind of the . . .

(defendant) as would lead a man of ordinary caution and prudence to believe, or entertain an

honest and strong suspicion,' that the plaintiff had committed a crime." <u>Carroll</u>, 14 Mass. App.

Ct. at 19 (alterations in original) (citation omitted).  "In the context of applying for a criminal

complaint, the issue 'is whether the defendant acted reasonably in swearing out a complaint

against the plaintiff on the basis of the information and knowledge which he possessed at that

time.'" <u>Wilson</u>, 2021 WL 1387778, at *12 (quoting <u>Lincoln v. Shea</u>, 361 Mass. 1, 4 (1972)).

MasMarques's criminal complaint application sought to bring charges against Greenspan for

harassment, stalking, and violation of a restraining order.   D. 54-5 at 24.   Specifically,

MasMarques stated that Greenspan harassed MasMarques and his family on Twitter by posting

vile comments and uploading MasMarques's home address.  <u>Id.</u>  Greenspan alleges that the

content of the application for the criminal complaint filed by MasMarques was false.  D. 54 ¶

145.  Greenspan asserts that a reasonable person should know that "posting public records and/or

discussing public records on the internet" would not subject him to criminal charges.  <u>Id.</u> ¶ 148.

Upon review of the application, the clerk magistrate found no probable cause to issue the

complaint.  D. 54-5 at 26; <u>cf.</u> <u>El Khoury</u>, 2023 WL 2384083, at *17 (finding that defendants did

not act without probable cause for malicious prosecution purposes where the clerk-magistrate

found probable cause existed).  Given these allegations, Greenspan has thus sufficiently alleged

that MasMarques commenced the proceeding without probable cause.

 As to the final element, Greenspan has plausibly pled that the proceeding terminated in

his favor since the clerk magistrate ultimately did not issue the criminal complaint.  Accordingly,

the Court denies the motion to dismiss as to Count V.

6.    *False Light Invasion of Privacy Claim (Count XIII)*

As pled, Greenspan brings a claim for false light invasion of privacy, alleging that MasMarques's defamatory statements subjected him to "unreasonable and highly objectionable publicity by attributing to [Greenspan] characteristics, conduct or beliefs that are false, thereby placing them in a false light before the public."   D. 54 ¶ 198.   MasMarques argues that Greenspan failed to state a claim upon which relief can be granted because Massachusetts does not recognize the false light invasion of privacy tort.   D. 67 at 6.   The case law supports this position.  See Dasey v. Anderson, 304 F.3d 148, 154 (1st Cir. 2022) (stating that "Massachusetts does not recognize a cause of action for false light invasion of privacy"); Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 382 n.16 (2005) (noting that Massachusetts courts "have not adopted an interpretation of G. L. c. 214, § 1B, that would give rise to claim of false light invasion of privacy").

"Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category . . . They may do so in order to avoid unnecessary dismissal . . . to avoid inappropriately stringent application of formal labeling requirements . . . or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis."  Castro v. United States, 540 U.S. 375, 381-82 (2003) (internal citations omitted).  Although Greenspan did not raise a privacy claim under the Massachusetts privacy statute in his complaint, because Greenspan is acting *pro se*, the Court construes the false light invasion of privacy claim as a right of privacy claim under Mass. Gen. L. c. 214, § 1B.  See, e.g., Lam v. PNC Mortg., 130 F. Supp. 3d 429, 437-38 (D. Mass. 2015) (construing *pro se* plaintiff's claim for misrepresentation into a negligent misrepresentation claim).

The Massachusetts Privacy Act provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. L. c. 214, § 1B. To prevail on an invasion of privacy claim, Greenspan must allege "that there was 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." Branyan v. Sw. Airlines Co., 105 F. Supp. 3d 120, 126 (D. Mass. 2015). "To fall under the protection of the statute, the disclosed facts must be of a 'highly personal or intimate nature.'" Taylor v. Swartwout, 445 F. Supp. 2d 98, 103 (D. Mass. 2006) (quoting Bratt v. Int'l Bus. Mach. Corp., 392 Mass. 508, 518 (1984)). Matters that have been determined to be intimate details of a highly personal nature include "marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcohol consumption, family fights, and reputation." Georgiou v. Comm'r of the Dep't of Indus. Accidents, 67 Mass. App. Ct. 428, 433 (2006).

Greenspan alleges that MasMarques publicly disclosed facts of a highly personal nature about him online, including but not limited to photographs of him and his father, his synagogue, and the names and contact information of his friends, relatives and landlord, D. 54 ¶¶ 52 (a)-(b), 57, 61, 109, 213, which are, at least arguably, of highly personal nature given that the "circumstances" alleged here may require "a somewhat more nuanced examination" of what was disclosed. Georgiou, 67 Mass. App. Ct. at 434.

Accordingly, the Court denies the motion as to Count XIII.

### 7.    *Intentional Infliction of Emotional Distress (Count XIV)*

Greenspan brings a claim for intentional infliction of emotional distress ("IIED"). To state a claim for IIED, a plaintiff must allege "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible

bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure." Limone, 579 F.3d at 93-94 (alteration in original) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976)). "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citation omitted).

Greenspan plausibly alleges that MasMarques knew or should have known that his conduct would cause Greenspan emotional distress. As alleged, MasMarques used the name of the "former boss of the murderous Genovese crime family as a form of intimidation" to get Greenspan to remove MasMarques's criminal records from PlainSite. Id. Greenspan alleges that he received a second aggressive message from MasMarques under this alias. Id. ¶ 60. At least as alleged, MasMarques's use of this alias was an intentional tactic used to intimidate and coerce Greenspan into removing the criminal records from PlainSite, so MasMarques should have known that impersonating a notorious crime family would inflict emotional distress.

Greenspan alleges that MasMarques harassed him via phone calls, calling him and his family excessively, upwards of twenty times, on multiple occasions from blocked numbers. Id. ¶¶ 56, 58, 81. Greenspan alleges that MasMarques authored and published thousands of defamatory statements concerning Greenspan, Greenspan's family and friends and colleagues to a wide audience on numerous websites. Id. ¶¶ 96, 99; D. 54-2. Greenspan alleges that this harassment has been continuous since 2017. D. 54 ¶ 117. MasMarques should have known that this campaign of incessant harassment and intimidation over a six-year period against not only Greenspan but also his friends and relatives would cause emotional distress and fear.

Finally, Greenspan also asserts that MasMarques filed false complaints against him with dozens of federal and state government agencies and officials.  Id. ¶¶ 115, 132; D. 54-5.  As alleged, MasMarques "engaged in a years-long campaign to have Plaintiff incarcerated, involuntarily committed, fined, penalized, investigated, and/or audited."  D. 54 ¶ 130.

Greenspan also sufficiently alleges that MasMarques's conduct did, in fact, cause his emotional distress, id. ¶¶ 112-116, and that it was severe and of a nature that no reasonable man could be expected to endure, causing him constant stress and worry and mental anguish over a period of several years.  Id. ¶¶ 104, 218.  Finally, Greenspan has sufficiently alleged that MasMarques's conduct was extreme and outrageous.  When considered in their totality, the allegations of MasMarques's repeated and consistent harassment, which, as previously described, "compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress."  Boyle v. Wenk, 378 Mass. 592, 595 (1979) (citations omitted).   At this stage, and "[b]ecause reasonable men could differ on these issues," Greenspan has "alleged facts and circumstances which reasonably could lead the trier of fact to conclude that defendant's conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility."  Agis, 371 Mass. at 145 (quoting Alcorn v. Anbro Eng'r, Inc., 2 Cal. 3d 493, 498 (1970)).

Accordingly, the Court denies the motion to dismiss as to Count XIV.

### D.    MasMarques's Motion to Dismiss on Alternate Grounds

#### 1.    Filing of First Amended Complaint

MasMarques appears to seek denial of Greenspan's first amended complaint because Greenspan did not seek leave to amend his complaint.  Greenspan did, however, seek leave to amend his complaint, D. 27, which the Court has allowed.  D. 71.  Accordingly, this is not an appropriate ground for dismissal.

2.      *Frivolous and Malicious Action under 28 U.S.C. § 1915(e)(2)(B)(i)*

MasMarques seeks to dismiss the action as frivolous and malicious under 28 U.S.C. § 1915(e)(2)(B)(i).  D. 67 at 7.  28 U.S.C. § 1915 governs proceedings in *forma pauperis* and allows a court to "authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal" for individuals who are unable to pay the fees associated with such action.  28 U.S.C. § 1915(a).  Because the action before the Court is not proceeding *in forma pauperis*, the Court denies dismissal on this basis.

3.      *Vexatious Litigant*

MasMarques requests that the Court deem Greenspan a vexatious litigant and enjoin him from filing any future pleadings related to this case.   "Federal Courts plainly possess discretionary powers to regulate the conduct of abusive litigants," Cok v. Fam. Ct. of Rhode Island, 985 F.2d 32, 34 (1st Cir. 1993), which includes "enjoin[ing] litigants who abuse the court system by filing groundless and vexatious litigation."   Langadinos v. Bd. of Tr. of Univ. of Mass., No. 12-11159-GAO, 2013 WL 5513796, at *6 (D. Mass. Sept. 30, 2013) (citation omitted).  "Where a litigant has demonstrated a 'propensity to file repeated suits involving the same or similar claims' of a 'frivolous or vexatious nature,' a bar on further filings is appropriate."  Id. (quoting Castro v. United States, 775 F.2d 399, 409 (1st Cir. 1986)).

As it stands now, the Court declines to deem Greenspan a vexatious litigant.  Cf. Kalincheva v. Neubarth, No. 13-40110-TSH, 2013 WL 5524815, at *3 (D. Mass. Oct. 2, 2013).  As alleged, Greenspan filed for a restraining order against MasMarques in California, D. 54 ¶ 62, sought criminal charges against MasMarques for violation of that restraining order and criminal harassment, id. ¶ 14, and now brings this action for other civil relief based on claims against MasMarques.  The Court denies dismissal on this basis.

E.        **Motion for Leave to Amend**

Greenspan requests leave to amend the first amended complaint.  D. 68 at 23; D. 108 at 25; 108-2; 108-6.  Rule 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'"  <u>Steir v. Girl Scouts of the USA</u>, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)(2) and <u>Resolution Trust Corp. v. Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994)).  Rule 15(a)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases."  <u>Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.</u>, 156 F.3d 49, 51 (1st Cir. 1998) (citation omitted).  "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend."  <u>Bos. & Me. Corp. v. Town of Hampton</u>, 987 F.2d 855, 868 (1st Cir. 1993), <u>overruled on other grounds</u>, <u>Educadores Puertorriqueños en Acción v. Hernandez</u>, 367 F.3d 61 (1st Cir. 2004).

Upon review of the proposed second amended complaint, D. 108-2, 108-6, the Court determines that the proposed amendments would not change the Court's analysis.  The proposed amendments focus mostly on factual allegations regarding personal jurisdiction and factual allegations regarding the claims against the Complaints Board Defendants.   The Court considered the proposed facts regarding personal jurisdiction in rendering its decision, as these facts were referenced in Greenspan's opposition to the motion to dismiss.  The second amended complaint also seeks to add a new count seeking declaratory judgment "clarifying that criminal extortion enterprises such as the Complaints Board Defendants are not immune from civil suit under 47 U.S.C. § 230."  D. 108-2 at 61-63.  Although Greenspan asserts this claim against all defendants, it appears to only be related to the facts and claims related to the Complaints Board Defendants' actions.  Because the Court dismisses all claims against the Complaints Board Defendants due to lack of personal jurisdiction, any amendment pertaining to the individual

claims against the Complaints Board Defendants or any new claim asserted against the Complaints Board Defendants would be futile.  Finally, the proposed amendments do not allege new facts that would change the Court's analysis as to the two claims against MasMarques that the Court is dismissing in this Memorandum and Order.

Accordingly, the Court denies Greenspan's request for leave to file an amended complaint, D. 102.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES MasMarques's motion to dismiss, D. 66, as to Counts I (libel), IV (abuse of process), V (malicious prosecution), XIII (false light invasion of privacy) and XIV (intentional infliction of emotional distress).  As noted above, Count XII (civil conspiracy) also survives against MasMarques.  The Court ALLOWS MasMarques's motion to dismiss, D. 66, as to Count II (civil harassment under the state statute) and Count III (tortious interference).  The Court further ALLOWS the Complaints Board Defendants' motion to dismiss, D. 95, as to all counts.[5]  Finally, the Court DENIES Greenspan's motion for leave to file a second amended complaint.  D. 102.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[5] Given this Court's ruling on the Complaints Board Defendants' motion to dismiss, D. 95, the Court denies as moot their counsel's motion to withdraw, D. 115.