# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AARON GREENSPAN,

                Plaintiff,

v.

DIEGO MASMARQUES JR., et. al.

                Defendants.

Case No.: 1:23-cv-10134-DJC

Leave to File Excess Pages Granted:
[Doc. No. 250]

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

---

[1] Defendant Diego MasMarques, Jr. has separately filed a statement of uncontested material facts ("DSOF") in accordance with Fed. R. Civ. P. Rule 56.1, and Local Rule 56. Unless otherwise indicated, capitalized terms have the meanings assigned in Defendant's Statement of Uncontested Material Facts.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

TABLE OF EXHIBITS ..................................................................... viii

I.  INTRODUCTION .................................................................... 1

II.  PROCEDURAL HISTORY ............................................................. 1

III.  STANDARD OF REVIEW ........................................................... 2

IV.  ARGUMENTS ..................................................................... 2

   A.  STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS. ................................... 2

   B.  PLAINTIFF'S CLAIMS ARE BASED ON PETITIONING ACTIVITY PROTECTED UNDER THE FIRST AMENDMENT AND MASSACHUSETTS LAW ................................ 5

   C.  PLAINTIFF FAILS TO OFFER SUFFICIENT EVIDENCE TO SUPPORT HIS DEFAMATION CLAIM ........................................................... 7

      1.  No Evidence Defendant Published Any Allegedly Defamatory Statement .................... 8

      2.  Plaintiff Is A Public Figure And Plainsite Is A Matter of Public Concern .................... 9

      3.  Plaintiff Provides No Evidence Of Falsity .................................. 10

      4.  No Proof That Challenged Statements Were Made With Actual Malice ..................... 13

   D.  ABUSE OF PROCESS CLAIM FAILS TO SHOW ANY ACT OF ABUSE OR ULTERIOR MOTIVE ........................................................... 15

   E.  PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS TO MEET "SEVERITY" THRESHOLD .......................................... 16

   F.  NO SHOWING OF INVASION OF PRIVACY BECAUSE FACTS ARE ALREADY IN THE PUBLIC DOMAIN. ............................................................ 18

   G.  NO SHOWING OF MALICE OR INITIATION OF AN ORIGINAL PROCEEDING FOR MALICIOUS PROSECUTION CLAIM ................................................. 20

   H.  CONSPIRACY CLAIM FAILS TO ESTABLISH AN AGREEMENT OR COMMON DESIGN ...................................................................... 21

   I.  TCC IS AN INDISPENSABLE AND NECESSARY PARTY. ..................................... 22

   J.  NO SHOWING OF COMPENSATORY DAMAGES. ............................................. 23

V.  CONCLUSION ...................................................................... 25

CERTIFICATE OF SERVICE ................................................................ 26

**Cases**

*Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546 (1st Cir. 1994) ....................................... 28

*Agis v. Howard Johnson C*o., 355 N.E.2d 315 (Mass. 1976) ................................................ 21, 23

*Augat, Inc. v. Aegis, Inc.*, 631 N.E.2d 995 (Mass. 1994)........................................................ 30, 32

*Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367 (2005)......................................................... 24

*Barnia v. Kaur*, No. 1:22-CV-10216-AK, 2022 U.S. Dist. LEXIS 218309, 2022 WL 17417616
    (D. Mass. Dec. 5, 2022); ...................................................................................................... 9

*Bazinet v. Thorpe*, 190 F. Supp. 3d 229 (D. Mass. 2016)............................................................ 22

*Beecy v. Pucciarelli*, 387 Mass. 589 (1982) ........................................................................... 26, 27

*Benoit v. Frederickson*, 454 Mass. 148 (2009) ........................................................................... 7

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984)........................................... 18

*Boston Herald, Inc. v. Sharpe*, 432 Mass. 593 (2000)................................................................. 25

*Burley v. Comets Cmty. Youth Ctr., Inc.,* 917 N.E.2d 250 (Mass. App. Ct. 2009)....................... 6

*Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 436 N.E.2d 431 (1982) ........................................... 27

*Cefalu v. Globe Newspaper Co.*, 8 Mass. App. Ct. 71, 391 N.E.2d 935 (1979).......................... 24

*Cherkaoui v. City of Quincy*, 877 F.3d 14 (1st Cir. 2017) ........................................................... 2

*Chervin v. Travelers Ins. Co.*, 448 Mass. 95 (2006)................................................................... 4

*Cole v. Westinghouse Broad. Co.*, 435 N.E.2d 1021 (Mass. 1982)....................................... 15, 16

*Correllas v. Viveiros,* 410 Mass. 314 (1991);...................................................................... 10, 26

*Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967).......................................................................... 12

*D.D.S. Indus., Inc. v. Leftfield LLC.*, 247 N.E.3d 870 (Mass. App. Ct. 2024) ............................ 7

*Damon v. Moore*, 520 F.3d 98 (1st Cir. 2008)............................................................................... 9

*Dasey v. Anderson*, 304 F.3d 148 (1st Cir. 2002)........................................................... 24, 25, 26

*DePiero v. Burke,* 873 N.E.2d 260 (Mass. App. Ct. 2007)............................................................7

*Dish Network, LLC v. Llinas*, 310 F. Supp. 3d 310 (D.P.R. 2018)..............................................20

*Doyle v. Hasbro, Inc*., 103 F.3d 186 (1st Cir. 1996) ...................................................................21

*Dulgarian v. Stone*, 420 Mass. 843 (1995) .................................................................................14

*Ehrlich v. Stern*, 908 N.E.2d 797 (Mass. App. Ct. 2009) .............................................................6

*Ellis v. Fid. Mgmt. Tr. Co*., 883 F.3d 1 (1st Cir. 2018) ................................................................3

*Feld v. Conway*, 16 F. Supp. 3d 1 (D. Mass. 2014).....................................................................15

*Flynn v. Associated Press*, 401 Mass. 776, 780 (1988) ................................................................3

*Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) .........................................................16

*Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974). .....................................................................25

*Harley-Davidson Credit Corp. v. Galvin*, 807 F.3d 407 (1st Cir. 2015) ......................................2

*Harte-Hanks Commc'n, Inc. v. Connaughton*, 491 U.S. 657 (1989) ....................................17, 18

*Hendricks & Assocs., Inc. v. Daewoo Corp*., 923 F.2d 209 (1st Cir. 1991) ...............................32

*Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co*., 788 N.E.2d 522 (Mass. 2003) ........................30

*Hidalgo v. Watch City Constr. Corp.*, 105 Mass. App. Ct. 148 (2024)..........................................6

*Humphrey v. Comoletti*, No. 1:15-CV-14170-ADB, 2017 WL 1224539 (D. Mass. Mar. 31, 2017) ....................................................................................................................................19

*Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988) ......................................................................21

*Iantosca v. Benistar Admin. Servs., Inc*., 738 F.Supp.2d 212 (D. Mass. 2010)......................5, 19

*Jones v. Taibbi*, 400 Mass. 786 (1987) .......................................................................................13

*Kennedy v. Town of Billerica*, 617 F.3d 520 (1st Cir. 2010). .......................................................23

*Keystone Freight Corp. v. Bartlett Consol., Inc*., 930 N.E.2d 744 (Mass. App. Ct. 2010) ............7

*King v. Globe Newspaper Co*., 400 Mass. 705 (1987) .................................................................15

*Kinzer v. Whole Foods Mkt., Inc*., 99 F.4th 105 (1st Cir. 2024)....................................................2

*Koe v. Mercer*, 450 Mass. 97, 876 N.E.2d 831 (2007) ..................................................................... 3

*Lemelson v. Bloomberg L.P.,* 903 F.3d 19 (1st Cir. 2018) ........................................................ 17

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122 (1st Cir. 1997)................................. 14, 15

*Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6 (1st Cir. 2011) ................................................. 12

*McCabe v. Rattiner*, 814 F.2d 839 (1st Cir. 1987) ....................................................................... 15

*Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627 (2010) .................................... 19

*Millennium Equity v. Mahlowitz*, 73 Mass. App. Ct. 29, 895 N.E.2d 33 (2008)......................... 26

*Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102 (D. Mass. 2020) .................................... 15

*Myers v. Boston Magazine Co.*, 380 Mass. 336 (1980) ................................................................ 15

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................................ 17

*Nieves v. McSweeney*, 241 F.3d 46 (1st Cir. 2001)......................................................................... 4

*O'Brien v. Pearson*, 449 Mass. 377 (2007) ................................................................................ 30

*O'Gara v. St. Germain*, 77 N.E.3d 870 (Mass. App. Ct. 2017)...................................................... 6

*Pan Am Sys., Inc. v. Atl. N.E. Rails & Ports, Inc.,* 804 F.3d 59 (1st Cir. 2015) .......................... 13

*Parker v. Landry*, 935 F.3d 9 (1st Cir. 2019) ............................................................................. 28

*Passatempo v. McMenimen*, 461 Mass. 279 (2012) ....................................................................... 5

*Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724 (1st Cir. 1992)........................... 14, 16

*Phelan v. May Dept. Stores Co*., 443 Mass. 52 (2004)................................................................. 31

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) .................................................. 13

*Pleasantdale Condos., LLC v. Wakefield*, 37 F.4th 728 (1st Cir. 2022)........................................ 2

*Pritchard v. Malm*, No. 13-P-732, 2014 Mass. App. Unpub. LEXIS 639, 85 Mass. App. Ct. 1120
   (2014)................................................................................................................................ 6, 33

*Prop. Rights Law Group, P.C. v. Lynch*, 2014 U.S. Dist. LEXIS 74259 (D.HI May 20, 2014) .. 10

*Psy-Ed Corp. v. Klein*, 459 Mass. 697 (2011) ........................................................................ 5, 20

*Quinn v. Walsh*, 732 N.E.2d 330 (Mass. App. Ct. 2000) ........................................................ 23

*Riley v. Harr*, 292 F.3d 282 (1st Cir. 2002) ........................................................................ 14

*Rogatkin v. Raleigh Am., Inc.*, 69 F. Supp. 3d 294 (D. Mass. 2014) ............................................ 13

*Roman v. Trustees of Tufts College*, 461 Mass. 707 (2012) .................................................... 22

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58 (1st Cir. 2000) ................................... 32

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 567 N.E.2d 912
   (1991) ............................................................................................................ 24

*Shay v. Walters*, 702 F.3d 76 (1st Cir. 2012) ..................................................................... 20

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) ......................................................... 17, 19

*Sneade v. Rojas*, No. 11-40061-TSH, 2014 WL 949635 (D. Mass. Mar. 10, 2014) ................... 21

*Sriberg v. Raymond*, 370 Mass. 105 (1976) ....................................................................... 10

*St. Amant v. Thompson*, 390 U.S. 727 (1968) .................................................................... 18

*Steiner v. eBay,* No. 21-cv-11181-PBS, 2025 U.S. Dist. LEXIS 155396 (D. Mass. Aug. 12,
   2025). ............................................................................................................ 15

*Stone v. Essex Cty. Newspapers, Inc.*, 367 Mass. 849, N.E.2d 161 (Mass. 1975) ...................... 31

*Taylor v. Swartwout*, 445 F. Supp. 2d 98 (D. Mass. 2006) ............................................... 24, 25

*Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456 (1997) .......................................... 22

*United States v. Velazquez-Fontanez,* 6 F.4th 205 (1st Cir. 2021) ........................................... 28

*Vittands v. Sudduth*, 730 N.E.2d 325 (Mass. App. Ct. 2000) ................................................. 22

*Wenger v. Aceto*, 451 Mass. 1 (2008) ............................................................................... 7

*White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64 (2004) .................................... 10

*Wolsfelt v. Gloucester Times*, 98 Mass. App. Ct. 321 (2020) .................................................. 4

**Statutes**

Mass. Gen. Laws c. 214 ................................................................................................ 18

Mass. Gen. Laws c. 260, § 2A ................................................................................... 3, 4

Mass. Gen. Laws. c. 231 § 93 ...................................................................................... 24

Mass. Gen. Laws. c. 231, § 59H .................................................................................5, 25

**Rules**

Fed. R. Civ. P. 17(a) .................................................................................................. 23

Fed. R. Civ. P. 19(a)(1)(A)–(B) ................................................................................ 23

Fed. R. Civ. P. 56(a) ................................................................................................... 2

## TABLE OF EXHIBITS TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. **Defendant's Motion for Summary Judgment**

II. **Memorandum in Support of Defendant's Motion for Summary Judgment**

III. **Defendant's Statement of Uncontested Material Facts**

IV. **Declaration of Defendant Diego MasMarques, Jr.**

    A. **Exhibit A**: Cybersecurity and Infrastructure Security Agency complaint dated December 2022

V. **Declaration of Ashley A Andrade, Esq.**

    A. **Exhibit 1**: Excerpts from the deposition transcript of Plaintiff Aaron Greenspan

    B. **Exhibit 2:** Plainsite docket page for *MasMarques v. Greenspan*, Marlborough District Court, Case No. 1921AC000120

    C. **Exhibit 3:** Plainsite docket page for *MasMarques v. Greenspan*, Middlesex County Superior Court, Case No. 1981CV02204

    D. **Exhibit 4:** Plainsite docket page for *Greenspan v. MasMarques*, Superior Court of California, County of Santa Clara, Case No. 18CH008067

    E. **Exhibit 5:** Twitter posts by @plainsite and @aarongreenspan from October 2018

    F. **Exhibit 6:** Plaintiff's Declaration dated December 6, 2018 (Santa Clara Superior Court), attaching the Marlborough District Court criminal complaint

    G. **Exhibit 7:** Plaintiff's Declaration dated May 13, 2019 (Santa Clara Superior Court)

    H. **Exhibit 8:** Plaintiff's Memorandum in Support of Motion for Sanctions and Reasonable Expenses Including Attorney's Fees (Santa Clara Superior Court), dated September 10, 2019

    I. **Exhibit 9:** Santa Clara Superior Court Order dated January 28, 2020

    J. **Exhibit 10:** Marlborough District Court Dismissal Notice dated November 24, 2020

    K. **Exhibit 11:** Marlborough District Court Expungement Order dated February 9, 2021

    L. **Exhibit 12:** Email exchange between Defendant and Plaintiff dated October 1, 2021

    M. **Exhibit 13:** Ripoff Report post submitted on December 17, 2015

N.  **Exhibit 14:** IRS website page showing revocation status of Think Computer Foundation

O.  **Exhibit 15:** Twitter posts by @aarongreenspan on or about September 24, 2021

P.  **Exhibit 16:** Twitter posts by @aarongreenspan on or about April 23, 2022

Q.  **Exhibit 17:** Selected pages (pp. 1, 10–11, 14, 17) of the complaint in *Greenspan v. Musk*, No. CGC-24-615352 (San Francisco County Superior Court)

R.  **Exhibit 18:** Plaintiff's Response to Defendant's Amended Notice of Deposition

S.  **Exhibit 19:** Think Computer Corporation common equity valuation as of December 31, 2011

T.  **Exhibit 20:** *A.I. Researchers Are Negotiating $250 Million Pay Packages. Just Like N.B.A. Stars.*, N.Y. Times (July 31, 2025)

U.  **Exhibit 21**: *What If You Spent Every Waking Moment Taking on Elon Musk?*, N.Y. Times (October 31, 2025)

# I.    <u>INTRODUCTION</u>

This is not a defamation case—it is the latest attempt by a vexatious litigant driven by a conspiratorial fixation to fabricate narratives and weaponize the judiciary to punish critics. Aaron Greenspan ("<u>Plaintiff</u>")—a self-anointed data journalist and legal transparency advocate who loudly touts his First Amendment and privacy rights while broadcasting and monetizing others' personal information and sensitive court records through his wholly owned website, plainsite.org— uses abusive tactics to target and silence critics such as Diego MasMarques, Jr. ("<u>Mr. MasMarques</u>" or "<u>Defendant</u>"). For eight years, Plaintiff has sought to punish Defendant not for any cognizable tort, but for engaging in protected petitioning. To discredit him, Plaintiff has weaponized court records—amplifying and misrepresenting the most damaging items, including a now-expunged foreign conviction—to maliciously smear Mr. MasMarques, while branding other critics as echoing "lies." Plaintiff then couples that smear campaign with admitted false reports to law enforcement and serial, meritless filings designed to bury Defendant financially and to exact further retribution for perceived wrongs—despite offering **no** competent evidence of any actionable misconduct beyond Defendant's protected petitioning. This is retaliation, not redress— conduct squarely barred by the anti-SLAPP doctrine. This Court should dismiss Plaintiff's claims, with prejudice, and award Mr. MasMarques his reasonable attorneys' fees and costs.

# II.    <u>PROCEDURAL HISTORY</u>

On January 20, 2023, Plaintiff filed, *pro se,* the underlying action. Doc. No. 1. On July 25, 2023, he filed an amended complaint, asserting libel *per se* (Count I), civil harassment (Count II), tortious interference (Count III), abuse of process (Count IV), malicious prosecution (Count V), civil conspiracy (Count XII), false light invasion of privacy (Count XIII), and intentional infliction of emotional distress (Count XIV). Doc. No. 54 ("FAC"). On August 21, 2023, Mr. MasMarques filed, *pro se*, a motion to dismiss and, on March 28, 2024, the Court

dismissed Counts II and III but allowed the remaining counts to proceed. Doc. Nos. 67, 118. As of August 29, 2025, fact discovery is complete, and Mr. MasMarques now moves for summary judgment as no material facts are in dispute, and he is entitled to judgment as a matter of law.

### III.     <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one which 'a reasonable jury could resolve . . . in the favor of the non-moving party,' and a material issue is one with the 'potential to affect the outcome . . . under the applicable law.'" *Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 108 (1st Cir. 2024) (alterations in original) (*quoting Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017)). In determining whether to grant summary judgment, a court must construe "the facts in the light most favorable to the non-moving party" and "draw[] all reasonable inferences" in its favor. *Id*. (*quoting Harley-Davidson Credit Corp. v. Galvin*, 807 F.3d 407, 408 (1st Cir. 2015)).

The party seeking summary judgment "must [first] adumbrate an absence of evidence to support the nonmoving party's case." *Pleasantdale Condos., LLC v. Wakefield*, 37 F.4th 728, 733 (1st Cir. 2022) (alteration in original) (internal quotations removed). Once the movant does so, "[t]he burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact." *Id*. To satisfy this burden, the nonmovant "must present definite, competent evidence" demonstrating that a trial-worthy issue exists. *Id*. "[C]onclusory allegations, improbable inferences, and unsupported speculation" do not suffice. *Kinzer*, 99 F.4th at 108 (*quoting Ellis v. Fid. Mgmt. Tr. Co*., 883 F.3d 1, 7 (1st Cir. 2018)).

### IV.     <u>ARGUMENTS</u>

#### A.  <u>STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS.</u>

To survive summary judgment, Plaintiff must demonstrate a reasonable expectation of proving that the claims were timely filed. Mass. Gen. Laws c. 260, § 2A; *Koe v. Mercer*, 450 Mass. 97, 101, 876 N.E.2d 831 (2007). A three-year limitations period applies to all claims for defamation, IIED, malicious prosecution, abuse of process, civil conspiracy, and violation of the Massachusetts Privacy Act. M.G.L. c. 260, § 2A. Because the underlying action was filed on January 20, 2023, Plaintiff must demonstrate the cause of action accrued on or after January 20, 2020. *Id.*; Doc. No. 1. As shown below and as further addressed herein, he cannot.

As an initial matter, a defamation claim accrues upon the original dissemination of a defamatory statement. *Flynn v. Associated Press*, 401 Mass. 776 (1988); *Wolsfelt v. Gloucester Times*, 98 Mass. App. Ct. 321, 324 (2020) (holding publication accrues from the point at which the "original dissemination" occurred). FAC ¶ 99; DSOF ¶¶ 55–57, 60, 62. Applying the three-year limitations period here, Plaintiff identifies only thirteen statements within the actionable window (on or after January 20, 2020). FAC ¶ 99. Even then, Plaintiff concedes he cannot attribute any of the post-2019 statements to Defendant due to his use of a VPN, and offers no competent evidence that Mr. MasMarques even published any of the allegedly defamatory posts at issue (much less the ones post-2019). DSOF ¶¶ 55, 59. In fact, the only online post Plaintiff can identify as having been published by Defendant (and the only post Defendant admits to ever making) is an April 3, 2018, post on Complaints Board, sharing TCF's publicly available Ohio corporate records (which Defendant denies was defamatory) and well outside the three-year limitations period. *Id.* ¶ 61. Moreover, Plaintiff admits the "real problem" was third-party publication. *Id.* ¶¶ 62–63. In sum, Plaintiff cannot establish any timely publication by Defendant.

Second, a malicious-prosecution claim accrues upon the favorable termination of proceedings commenced without probable cause and with malice—elements that, as further

discussed herein, the record does not establish with sufficient evidence. *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 103 (2006); *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). Even assuming, *arguendo*, that any such proceeding existed (which Mr. MasMarques denies), Plaintiff pegs termination no later than May 15, 2019 (i.e., termination of Defendant's request for a TRO[2] under M.G.L. c. 209A in Marlborough District Court) or, at the latest, August 2019 (i.e., termination of Defendant's cross-TRO in Santa Clara Court). FAC ¶¶ 140, 147; DSOF ¶ 41. Accordingly, such cause of action had expired in August 2022 and, therefore, time barred. Doc. No. 1; M.G.L. c. 260, § 2A.

Third, an abuse-of-process claim accrues when process is used to achieve an alleged collateral objective, causing the plaintiff damage. *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713 (2011); *Iantosca v. Benistar Admin. Servs., Inc.*, 738 F.Supp.2d 212, 222 (D. Mass. 2010). Even assuming, *arguendo*, that any such process existed (which Defendant denies), the last asserted use would have been July 20, 2019 (i.e., the date Defendant sought a TRO under M.G.L. c. 258E), meaning such cause of action expired in July 2022. DSOF ¶ 41; M.G.L. c. 260, § 2A; FAC ¶ 140.

Lastly, Plaintiff's remaining claims—IIED, civil conspiracy, and Massachusetts Privacy Act—are governed by the same three-year limitations period and accrue no later than Defendant's alleged damages-causing publication, alleged misuse of process, or termination of any purported malicious proceeding. M.G.L. c. 260, § 2A; *Passatempo v. McMenimen*, 461 Mass. 279, 293–94 (2012). On Plaintiff's own timeline, the limitations period for this Action expired in August 2022. FAC ¶ 1.

---

[2] "TRO" as used herein refers broadly to any relevant temporary restraining order, harassment-prevention order, abuse-prevention order, or similar interim injunctive relief available under governing law.

4

**B. PLAINTIFF'S CLAIMS ARE BASED ON PETITIONING ACTIVITY PROTECTED UNDER THE FIRST AMENDMENT AND MASSACHUSETTS LAW [3]**

Defendant has a constitutional right to petition the government for a redress of grievances. *See* U.S. Const. amend. I. Massachusetts law defines petitioning broadly, covering "all statements made to influence, inform, or at the very least, reach governmental bodies—either directly or indirectly." M.G.L. c. 231, § 59H; *Ehrlich v. Stern*, 908 N.E.2d 797, 801 (Mass. App. Ct. 2009). This includes, *inter alia*, contacting law enforcement about suspected criminal activity or the procurement and transmittal of no-trespass orders. *See, e.g., O'Gara v. St. Germain*, 77 N.E.3d 870, 872 (Mass. App. Ct. 2017) (reporting to police violation of no-contact order); *Burley v. Comets Cmty. Youth Ctr., Inc.,* 917 N.E.2d 250, 254 (Mass. App. Ct. 2009) (transmitting "copies of the no-trespass letter to the police and the court... the complaint"). Social media postings may also qualify as petitioning activity under Massachusetts law. *D.D.S. Indus., Inc. v. Leftfield LLC.*, 247 N.E.3d 870 (Mass. App. Ct. 2024). The undisputed record shows that, from February 2017 through at least December 2022, Mr. MasMarques lodged various complaints with state and federal agencies about Plainsite's publication of his court records[4] and Plaintiff's (and his entities') business practices. DSOF ¶¶ 27, 30, 47. During the same period, he reported Plaintiff to law enforcement and sought TROs. *Id*. ¶¶ 35, 39, 40, 41, 49. All of which is textbook petitioning. *See, e.g.,* M.G.L. c. 231, § 59H.

---

[3] Massachusetts law provides that courts may resolve anti-SLAPP defenses at summary judgment. *See Pritchard v. Malm*, No. 13-P-732, 2014 Mass. App. Unpub. LEXIS 639, *7, 85 Mass. App. Ct. 1120 (2014) (holding summary judgment appropriate after discovery revealed that claims based on certain defamatory statements rested only on the petitioning activity of the party moving for summary judgment) (unpublished); M.G.L. c. 231, § 59H ("Nothing in this section shall affect or preclude the right of the moving party to any remedy otherwise authorized by law").

[4] More specifically, Mr. MasMarques sought redress for Plainsite's indexing and dissemination of Defendant's treaty-transfer records, which misrepresented Mr. MasMarques's now-expunged foreign conviction. DSOF ¶¶ 21–23, 26–27.

The undisputed record establishes that Defendant's petitioning activity was not "devoid of any reasonable factual support or any arguable basis in law."[5] *Benoit v. Frederickson*, 454 Mass. 148, 152 (2009); *Wenger v. Aceto*, 451 Mass. 1 (2008).[6] Fatal to Plaintiff's claims is the timeline of events: he sought his April 2018 TRO in California (which he failed to properly serve Defendant in Massachusetts)[7]—and filed this action—**after** Mr. MasMarques had lodged complaints with various government agencies concerning Plaintiff, TCF and TCC; complaints Plaintiff admitted during his August 19, 2025 deposition that he *first* learned of **in 2017**. *Id.* ¶¶ 27–29, 30, 40, 47. Confronted with many of the same accusations raised by Plaintiff in this Action, the Santa Clara Court found that Mr. MasMarques's cross-TRO was "not frivolous or baseless" and "not devoid of factual basis/evidentiary support." *Id.* ¶ 44. Plaintiff's own testimony confirms Defendant's complaints had merit: the Ohio Attorney General investigated TCC's and TCF's joint partnership, found issues with TCF's financials, and then required TCF, an Ohio entity, to either dissolve or to reincorporate in another state. *Id.* ¶¶ 4, 27, 30, 51–52. The IRS also audited Plaintiff and his entities and recently revoked TCF's 501(c)(3) status. *Id.* ¶ 53.

Notably, the Marlborough District Court dismissed and expunged the criminal complaint initiated against Defendant after finding that Plaintiff had falsely identified him as the publisher

---

[5] "[T]he Massachusetts Supreme Judicial Court has emphasized that proving that particular petitioning activity is 'devoid" of any reasonable factual support or any arguable basis in law is a difficult task.'" *Hidalgo v. Watch City Constr. Corp.*, 105 Mass. App. Ct. 148, 153 (2024).

[6] Plaintiff's speculation about an extortive motive and his conclusory claims that Mr. MasMarques's agency complaints were "false," irrational, or lacked probable cause are not evidence of any improper action. DSOF ¶¶ 46, 66. *See DePiero v. Burke,* 873 N.E.2d 260, 264 (Mass. App. Ct. 2007) (finding unsuccessful or ill-motivated petitioning is not "devoid" absent proof it lacked any factual/legal basis); *Keystone Freight Corp. v. Bartlett Consol., Inc.*, 930 N.E.2d 744, 752 (Mass. App. Ct. 2010) (reasoning "'evidence of improper action, separate and distinct from the exercise of petitioning activity, is necessary'") (citation omitted)).

[7] The undisputed record shows that Plaintiff repeatedly targeted Mr. MasMarques by name on social media—even after obtaining his TRO and after being served with Defendant's cross-TRO. DSOF ¶¶ 29, 31, 34–37, 39, 41, 66. In response, Mr. MasMarques reported Plaintiff to law enforcement, sought TROs, and retained private security to accompany him in-person hearings at the Santa Clara Court. *Id.* ¶¶ 35, 39–41, 49.

of the alleged harassing posts. *Id.* ¶¶ 38, 45. The Court specifically found there was no "good faith basis" for the charges, that it was not "prove[n] the D[efendant] was behind the posts [at] issue," and that he had been "false[ly] identif[ied]." *Id.* These findings demonstrate that Defendant's efforts to seek redress from government agencies and his pursuit of TRO relief were reasonable, protective responses to Plaintiff's bad faith and retaliatory conduct. *Id.* ¶¶ 42, 45.

In sum, Mr. MasMarques's petitioning had clear legal and factual merit. *Wenger*, 451 Mass. at 7. Plaintiff's claims, however, rest entirely on that petitioning. *See, e.g.*, FAC ¶ 99 (s-u) (libel *per se* claim is based on Defendant's statements to the Ohio Attorney General);[8] *id.* at ¶¶ 130–32, 136, 139–40 (abuse of process based on Defendant's cross-TRO in Santa Clara Court and complaints to government agencies); *id.* at ¶¶145–48 (malicious prosecution based on Defendant's application for criminal charges); *id.* at ¶¶ 188, 190–91 (civil conspiracy claim based on Defendant's purported "libelous" activity); *id.* at ¶ 200 (invasion of privacy claim based on "defamatory statements"); *id.* at ¶¶ 205, 207–10, 215–217 (intentional infliction of emotional distress claim based on Defendant's cross-TRO and contacting "[government] agencies to arrest, incarcerate…investigate, prosecute, and/or audit Plaintiff…").

## C. <u>PLAINTIFF FAILS TO OFFER SUFFICIENT EVIDENCE TO SUPPORT HIS DEFAMATION CLAIM</u>

To maintain cause of action for defamation, Plaintiff must establish that: (1) Mr. MasMarques published a defamatory statement of and concerning the plaintiff; (2) the statement was a false statement of fact; (3) Mr. MasMarques was at fault for making the statement, and any privilege that may have attached to the statement was abused; and (4) Plaintiff suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss.

---

[8] Plaintiff's deposition testimony confirms that the only challenged statements he can directly attribute to Defendant are the complaints Defendant made to government agencies. *See* Andrade Decl. Ex. 1 (Pl. Dep. 150:23–152:2).

*Barnia v. Kaur*, No. 1:22-CV-10216-AK, 2022 U.S. Dist. LEXIS 218309, 2022 WL 17417616, at *9 (D. Mass. Dec. 5, 2022); *Damon v. Moore*, 520 F.3d 98, 103 (1st Cir. 2008) (reasoning "[a] communication is susceptible to defamatory meaning if it would tend to injure the plaintiff's reputation, or hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community") (internal quotations omitted). Massachusetts law also recognizes an absolute privilege for statements made by parties in the institution of, during, or as part of a judicial proceeding, even if uttered maliciously or in bad faith. *See, e.g., Correllas v. Viveiros,* 410 Mass. 314, 319–21 (1991); *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976).

## 1.  <u>No Evidence Defendant Published Any Allegedly Defamatory Statement</u>

The undisputed record contains no competent evidence that Mr. MasMarques authored or was otherwise at fault for the publication of any allegedly defamatory statement. *White v. Blue Cross & Blue Shield of Mass., Inc*., 442 Mass. 64, 66 (2004) (explaining a plaintiff "must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community…").[9]

Plaintiff concedes he has no direct evidence linking Mr. MasMarques to any of the online posts at issue in this case and that any "conclusive evidence" would be in the possession of third parties. DSOF ¶ 57. Defendant's IP address is not tied to the authorship or publication of any allegedly defamatory statements, and none of these posts identifies him as the author. *Id.* ¶¶ 55, 60. Mr. MasMarques has also consistently maintained that he does not have or use Twitter/X or other social-media accounts. *Id.* ¶ 56. Plaintiff, by contrast, acknowledges that he is not

---

[9] *See Prop. Rights Law Group, P.C. v. Lynch*, 2014 U.S. Dist. LEXIS 74259, *44 (D.HI May 20, 2014) (finding no evidence defendants played any part in publication of Facebook post and finding summary judgment on the portion of the defamation claim relating to the Facebook post).

8

well-liked: he admits he has "more than [his] fair share of enemies" and that there is an "army" of "pseudonymous posters" attacking him online. *Id*. ¶¶ 10, 66. Plaintiff further admits rejecting roughly 50–75% of the 25,000 Plainsite takedown requests he has received—leaving people upset. *Id*. ¶¶ 15–16. In effect, there are potentially 12,500–18,750 aggrieved individuals who could be responsible for the challenged statements. *Id*. Even more fatal to his claims, Plaintiff admits Defendant is not the publisher of the alleged damages-causing statements: by Plaintiff's own account, Omar Qazi—a social-media influencer with "hundreds of thousands of followers" and someone with whom Plaintiff has been publicly feuding since December 2018— reposted and "amplified" modified Santa Clara Court filings (including Defendant's TRO) and reposted "gripe site hyperlinks" which Plaintiff concedes was the "real problem." *Id*. ¶¶ 63–64. Plaintiff further concedes that *his* own posts about Defendant on social media could have drawn Mr. Qazi's attention to Plaintiff's and Defendant's ongoing legal battle. *Id*. ¶¶ 65–66. On this record, no reasonable jury could find Mr. MasMarques is at fault for the challenged statements here.

## 2.  Plaintiff Is A Public Figure And Plainsite Is A Matter of Public Concern

The First Amendment bars public figures from recovering damages for defamatory statements unless they can prove "that the statement[s] [were] made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967) (applying that standard to public figures). Public figures can be either "general-purpose public figure[s]"—those who have achieved "such pervasive fame or notoriety" that they are public figures "for all purposes and in all contexts" or "limited-purpose public figure[s]"—those who "voluntarily inject[]" themselves or are "drawn into a particular public controversy" and thereby become public figures "for a

limited range of issues" defined by their "participation in the particular controversy giving rise to the defamation." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 (1st Cir. 2011).

Here, the record establishes that Plaintiff is a public figure or, at the very least, a limited-purpose public figure. *See Lluberes*, 663 F.3d at 13.

- Describes himself as data journalist (DSOF ¶ 6);

- Has authored and published books and articles, hosts a podcast, maintains a personal website, and has been a speaker on panels (*Id.* ¶¶ 6–8);

- Has been interviewed 50 to 100 times by major outlets, including by the *New York Time*s, *Wall Street Journal,* CNBC, and Reuters—with a *New York Times* profile published as recently as October 31, 2025 (*Id.* ¶ 8; *see also* Andrade Decl., Ex. 21);

- Has provided testimony to a U.S. and foreign congressional committee (*Id.* ¶ 9);

- Created and operates Plainsite.org (Plainsite) which indexes and makes available more than 17 million case dockets and other public records to thousands of daily users, which has resulted in 25,000 consumer takedown requests and complaints to governmental agencies over said denials (*Id.* ¶¶ 11, 13, 15–16);

- Reports on government policy, corporate wrongdoing, macroeconomics, and the justice system, and publishes investigative reports concerning government transparency and corporate accountability (*Id.* ¶ 6);

- Publicly criticizes government officials (*Id.* ¶ 1);

- Engages in public disputes and litigation with high–profile figures, including billionaires, Mark Zuckerberg and Elon Musk, and has been a party to at least 40 personal legal actions—including against government agencies—as well as roughly 40 additional legal actions through his wholly-owned entity, TCC (*Id.* ¶¶ 8, 10).

### 3. <u>Plaintiff Provides No Evidence Of Falsity</u>

Plaintiff bears the burden to prove falsity, which he has not met. *Yohe v. Nugent*, 321 F.3d 35, 40 (1st Cir. 2003); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (holding that, where the speech at issue is a matter of public concern, there is a "constitutional requirement that the plaintiff bear the burden of showing falsity"). "[D]efamatory statements are

not punishable unless they are capable of being proved true or false." *Pan Am Sys., Inc. v. Atl. N.E. Rails & Ports, Inc.*, 804 F.3d 59, 65 (1st Cir. 2015).

As an initial matter, truth or substantial truth is a complete defense to defamation.[10] *Jones v. Taibbi*, 400 Mass. 786, 792 (1987) (holding "[t]he law does not require that statements be literally true if the substance, the gist, the sting of the libelous charge be justified"). As discussed, *supra*, the Ohio's Attorney General investigated TCF, found balance-sheet issues, and was a factor in its dissolution, while the IRS recently revoked TCF's 501(c)(3) nonprofit status. DSOF ¶¶ 4, 51–53. On this record, statements labeling Plaintiff a "fraud," TCF as "fraudulent," or implying tax impropriety are, at minimum, substantially true. FAC ¶ 99.

The remaining allegedly defamatory statements do not "present[] or impl[y] the existence of facts which are capable of being proven true or false." *See, e.g., Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 127 (1st Cir. 1997); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (reasoning "statements that cannot reasonably be interpreted as stating actual facts about an individual are protected, thus assuring that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation."); *Dulgarian v. Stone*, 420 Mass. 843, 850-851 (1995). Even if an opinion implies a provably false assertion of fact, that statement will not be actionable if "it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002). The critical question is whether the challenged statement "reasonably would be understood to declare or imply provable assertions of fact." *Phantom Touring, Inc. v.*

---

[10]Even the publication of true but historical facts (even if outdated) about a person cannot be defamatory. *Rogatkin v. Raleigh Am., Inc*., 69 F. Supp. 3d 294, 298 (D. Mass. 2014).

11

*Affiliated Publ'ns*, 953 F.2d 724, 727 (1st Cir. 1992). Applied here, several of the challenged statements—such as those referring to Plaintiff as a "low life parasite," an "extortionist parasite," "lazy narcissistic asshole," "insane Sociopath," "slimy, sneaky little coward who is genetically demented," "pathological liar," needs "[a] padded cell with 4 point restraints," "files vexatious complaints with insane ramblings", "unfit to be in charge or employed"—are nonactionable opinion or rhetorical hyperbole that "are insufficiently fact-based" to ground a defamation claim. FAC ¶ 99; *King v. Globe Newspaper Co*., 400 Mass. 705, 720 (1987). Massachusetts courts have consistently held that subjective insults, rhetorical hyperbole, and non-verifiable statements of opinion are not actionable. *Id.*; *Phantom Touring, Inc*, 953 F.2d at 728 (describing theater production as "a rip-off, a fraud, a scandal, a snake oil job" was not actionable defamation); *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 107 (D. Mass. 2020) (finding "rude," "dumb," "unethical," a "little entitled ponce," or a "dauphin" are "insufficiently fact-based").[11]

This Court's recent decision in *Steiner v. eBay, Inc.*[12] is particularly instructive here:

> "[C]onsider[ing] all the words used, not merely a particular phrase, the tweets used such excessive language, including "BITCH," informal slang, and all-caps formatting, that a reasonable reader could not fairly identify the opinion as one rooted in fact."

Viewing the allegedly defamatory statements claimed by Plaintiff as a whole, no reasonable reader would infer that the author of the purported posts at issue possessed further

---

[11] *See, e.g., Feld v. Conway*, 16 F. Supp. 3d 1, 4 (D. Mass. 2014) (finding tweet that called the plaintiff "fucking crazy" nonactionable when viewed in context; *McCabe v. Rattiner*, 814 F.2d 839, 842-43 (1st Cir. 1987) (finding "scam" as nonactionable); *Levinsky's, Inc.*, 127 F.3d at 130-31 (holding "trashy" as nonactionable);*Cole v. Westinghouse Broad. Co*., 435 N.E.2d 1021, 1026 (Mass. 1982) (concluding "sloppy and irresponsible reporting" and "history of bad reporting techniques" were nonactionable*); Myers v. Boston Magazine Co.*, 380 Mass. 336, 344 (1980) (finding sports announcer was "worst" in Boston and was "enrolled in a course for remedial speaking as nonactionable opinion").
[12] No. 21-cv-11181-PBS, 2025 U.S. Dist. LEXIS 155396, *24-25 (D. Mass. Aug. 12, 2025).

information not accessible to others.[13] *Phantom Touring, Inc.*, 953 F.2d at 730-31. The platforms at issue—Twitter (now X), Complaints Board, Blacklist Report, and Reddit—are informal, freewheeling forums where readers expect opinion and rhetoric, not factual revelations. *See, e.g., Phantom Touring, Inc.*, 953 F.2d at 727; *Cole*, 435 N.E.2d at 1025 (considering the medium by which the statement is disseminated when deciding whether a statement constitutes fact or opinion); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 552–553 (S.D.N.Y. 2020) ("[T]he fact that [the] allegedly defamatory statement…appeared on Twitter conveys a strong signal to a reasonable reader that this was [d]efendant's opinion."). Plaintiff's complaint about "improperly capitalize[d] words" underscores the informality. FAC ¶ 100. Even the Twitter handles Plaintiff speculates belong to Defendant—@giza299792458N and @witchestoday, which Defendant denies—do not suggest the challenged posts conveyed objectively verifiable facts. *Riley*, 292 F.3d at 289; FAC ¶¶ 91–92. Summary judgment should therefore enter for Mr. MasMarques.

### 4. <u>No Proof That Challenged Statements Were Made With Actual Malice</u>

Even if a challenged statement conveys or implies verifiable facts, Plaintiff—as a public figure (at least a limited-purpose one)—must prove actual malice by clear and convincing evidence. *Levinsky's, Inc.*, 127 F.3d at 127; *Sindi v. El-Moslimany*, 896 F.3d 1, 14 (1st Cir. 2018). He has not, and that failure warrants dismissal on this ground alone. *Id.* Actual malice is "knowledge of the statement's falsity or reckless disregard for its truth." *Lemelson*, 903 F.3d at 23. Acting with "actual malice," in these circumstances, means "with knowledge that [the challenged statement] was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). It is not enough to show "ill will or

---

[13] Plaintiff fails to identify or provide the specific Twitter handles associated with each of the alleged defamatory posts at issue. FAC ¶ 90.

'malice' in the ordinary sense of the term." *Harte-Hanks Commc'n, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). A plaintiff must demonstrate that the defendant "realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511, n.30 (1984).

The undisputed record negates any finding of actual malice: there were no ties between Mr. MasMarques and Plaintiff (or his family, friends, or colleagues), and, at all relevant times, they lived roughly 3,000 miles apart. DSOF ¶¶1–2, 5. By Plaintiff's own admission, Mr. MasMarques would have had no reason to contact Plaintiff but for Plainsite. *Id.* ¶ 5. Plaintiff also offers no evidence of motive, despite alleging a purported extortion scheme. FAC ¶ 130; *see Bose Corp.*, 692 F.2d at 196 (listing "motive" as one of the facts on which a complaint "should provide evidence" to allow an inference of actual malice). Even when asked about Defendant's purported motive for his agency complaints, Plaintiff testified only that Defendant was a "sick person" and that his complaints were not rational—assertions that do not satisfy actual malice. DSOF ¶ 49; *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 666. Plaintiff's own testimony further confirms he has upset thousands of people by denying takedown requests for Plainsite and is aware of roughly twenty agency complaints against him—complaints he says mirror criticisms found on Complaints Board. DSOF ¶¶ 14–17. He also admits that allegations concerning tax fraud and TCF's fraudulent 501(c)(3) status were in the public domain as early as 2015, before he even knew of Mr. MasMarques. *Id.* ¶ 50. Even assuming Defendant published the statements (which he denies), there is no basis from which a jury could reasonably infer that he seriously doubted their truth. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Because Plaintiff fails to make any showing of actual malice, his defamation claim fails outright. *Sindi,* 896 F.3d at 14.

**D. ABUSE OF PROCESS CLAIM FAILS TO SHOW ANY ACT OF ABUSE OR ULTERIOR MOTIVE**

To maintain a claim for abuse of process, Plaintiff must establish (1) process was used, (2) for an ulterior or illegitimate purpose, and (3) resulting in damage. *Iantosca*, 738 F.Supp.2d at 222. "[I]t is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them." *Humphrey v. Comoletti*, No. 1:15-CV-14170-ADB, 2017 WL 1224539, at *4 (D. Mass. Mar. 31, 2017) (internal quotation omitted). A plaintiff must show an **ulterior motive and an act of abuse**. *Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995). An ulterior purpose is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly. *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 640 (2010); *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 408-409 (2002) (finding evidence police encouraged criminal prosecution to preempt tort and civil rights claims sufficient to put abuse of process claim to jury). The mere filing or maintenance of a complaint— even if motivated by hostility—does not constitute abuse; there must be a misuse of process after issuance to achieve a collateral end. *Dish Network, LLC v. Llinas*, 310 F. Supp. 3d 310, 312 (D.P.R. 2018).

While Plaintiff alleges that Mr. MasMarques engaged in a campaign to purportedly extort Plaintiff into removing Defendant's court records from Plainsite, the record contains no evidence that Mr. MasMarques used agency complaints or TRO filings as leverage to coerce takedowns— or for any other improper purpose. DSOF ¶¶ 49, 66; FAC ¶ 130. The takedown requests Plaintiff attributes to Defendant do not reflect such extortionary demands. DSOF ¶ 66. When asked about motive, Plaintiff offered only that Defendant is "a sick person" and that his complaints were not rational—which is not evidence of an ulterior purpose. DSOF ¶ 66. *Simon,* 71 F.3d at 16. Rather,

the only conduct resembling coercive use of process in this record is Plaintiff's own.[14] DSOF ¶ 46. Lastly, as discussed, *supra*, the record reflects Mr. MasMarques's agency complaints and TRO filings had a factual and legal basis. *Id.* ¶¶ 4, 44, 51–53. On this record, no reasonable jury could find that Mr. MasMarques used process for an objective for which it was not designed. *See Psy-Ed*, 459 Mass. at 715.

### E. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS TO MEET "SEVERITY" THRESHOLD

As an initial matter, Plaintiff's IIED claim against Mr. MasMarques stems from the same set of facts as his defamation claims and necessarily fails for this reason alone. *Shay v. Walters*, 702 F.3d 76, 83 (1st Cir. 2012) (*citing Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56–57 (1988)) (holding "plaintiff's claim for negligent infliction of emotional distress grows out of the same nucleus of operative facts that spawn her defamation claim…are premised upon the same conduct and harm…[and] seek the same relief…[and so] the failure of the plaintiff's defamation claim pretermits continued prosecution of her…negligent infliction of emotional distress").

Even on its own terms, Plaintiff's IIED claim fails under Massachusetts law. *Agis v. Howard Johnson C*o., 355 N.E.2d 315, 318–19 (Mass. 1976). Plaintiff must show that (1) Mr. MasMarques intended to inflict emotional distress or knew that emotional distress was the likely result of the conduct; (2) his conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of Mr. MasMarques were the cause of Plaintiff's distress; and (4) the emotional distress sustained by

---

[14] On October 1, 2021, Defendant emailed Plaintiff asking whether he was "willing" to remove Defendant's court records from Plainsite and resolve their differences; Plaintiff replied that Defendant must first satisfy twelve conditions, including, *inter alia*, admitting to making "false reports" about Plaintiff, his family, TCC, and TCF to various government agencies, and admitting to "commit[ing] perjury" to the Santa Clara Court—all of which are false. *Id.* ¶ 46.

Plaintiff was severe and of a nature that no reasonable person could be expected to endure. Massachusetts law therefore imposes "an extremely high hurdle…to maintain" an IIED claim. *Sneade v. Rojas*, No. 11-40061-TSH, 2014 WL 949635, at *8 (D. Mass. Mar. 10, 2014). "[S]ituations where only bad manners and mere hurt feelings are involved" do not suffice. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (citations omitted). Conduct is only considered extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Roman v. Trustees of Tufts College*, 461 Mass. 707, 718 (2012) (citations omitted). Bringing a meritless civil action or instigating criminal investigations can be categorized as extreme and outrageous conduct only if these actions are taken without any basis in law or fact. *Vittands v. Sudduth*, 730 N.E.2d 325, 336 (Mass. App. Ct. 2000); *Cf. Bazinet v. Thorpe*, 190 F. Supp. 3d 229, 240 (D. Mass. 2016) (finding police officers fabricating evidence to obtain criminal charges against an innocent citizen was sufficient to meet intentional infliction of emotional distress standard). "Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities…" *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997) (internal quotations omitted).

Plaintiff's IIED claim collapses under his own testimony. DSOF ¶ 80. He identifies no act by Mr. MasMarques that could permit a reasonable jury to infer any "extreme and outrageous" conduct. *Id*. The only conduct Plaintiff can directly attribute to Mr. MasMarques are his petitioning activities, including TRO filings and agency complaints—actions that, as discussed *supra*, had legal and factual bases and cannot be "extreme and outrageous." *Vittands*, 730 N.E.2d at 333–36; DSOF ¶¶ 4, 27, 44, 51–53, 79, 80.

Plaintiff fails to adduce evidence that the emotional distress he suffered was "severe." DSOF ¶ 80; *Kennedy v. Town of Billerica*, 617 F.3d 520, 530 (1st Cir. 2010). Plaintiff must show that he suffered the "kind of distress 'that no reasonable man could be expected to endure.'" *Id.* (*quoting Agis*, 355 N.E.2d at 319). He does not. DSOF ¶ 80. And mere "emotional responses including anger, sadness, anxiety, and distress" are insufficient. *Quinn v. Walsh*, 732 N.E.2d 330, 338 (Mass. App. Ct. 2000).

In *Kennedy*—involving the wrongful arrest of a fourteen-year-old—the First Circuit held that fear of going to court, generalized "nervous[ness]," fear of police sirens, and nightmares with sweating and a racing pulse did not meet the "severe" distress threshold. 617 F.3d 520, 531. Here, Plaintiff offers even less, claiming: lost sleep from choosing to "research" online posts he speculates Defendant "authored or inspired;" a "potentially worsened" preexisting ███████ condition; enduring stressful family conversations; episodic anxiety with a racing heart and elevated blood pressure; fear that the FBI might believe Defendant's purported "lies" and arrive at his home "with guns drawn and kill [him]." DSOF ¶ 80. He has not sought therapy and even admits he is "generally able to handle stress fairly well." *Id.* That is *not Agis*-level severity. 355 N.E.2d at 319. Summary judgment should therefore enter on the IIED cause of action.

## F.  <u>NO SHOWING OF INVASION OF PRIVACY BECAUSE FACTS ARE ALREADY IN THE PUBLIC DOMAIN.</u>

To prevail on a claim for invasion of privacy under Massachusetts law, Plaintiff must establish "that the disclosure was both unreasonable and either substantial or serious."  Mass. Gen. Laws c. 214, § 1B; *Ayash v. Dana-Farber Cancer Inst*., 443 Mass. 367, 382 (2005).  The Massachusetts Privacy Act ("<u>Privacy Act</u>") protects individuals from "disclosure of facts…that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest." *Dasey v. Anderson*, 304 F.3d 148, 153–54 (1st Cir. 2002). Generally, the statute is

concerned with the dissemination of information that is actually private. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 409 Mass. 514, 517 n.4, 567 N.E.2d 912 (1991); *Cefalu v. Globe Newspaper Co*., 8 Mass. App. Ct. 71, 77-78, 391 N.E.2d 935 (1979). This right, however, does not extend to matters that are a part of the public domain or to matters of public concern. *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 103 (D. Mass. 2006) (finding "no invasion of privacy where the facts, though highly personal, are already in the public domain"); *Boston Herald, Inc. v. Sharpe*, 432 Mass. 593, 612 (2000) (holding no privacy invasion "[w]hen the subject matter of [the] publicity is of legitimate public concern").

Plaintiff is a public figure—or, at minimum, a limited-purpose public figure. *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 351 (1974). He broadcast the parties' disputes on his and Plainsite's social media accounts, used inflammatory (and false) epithets—"murderer," "rapist," "stalker"—to draw attention, and shared links to court filings (including Defendant's TRO) to his and Plainsite's followers. DSOF ¶¶ 34, 36–37, 44, 65–66. While not denying he posted these materials, Plaintiff claims doing it to "defend" himself and so "people [could] access the truth." *Id*. ¶ 66. He further concedes these posts could have drawn third-party attention *Id.* ¶ 63. Having knowingly sought that attention and placed the filings into the public domain, he cannot now recast the ensuing discourse as a privacy tort. *Taylor*, 445 F. Supp. 2d at 103 (finding no invasion of privacy where the facts are already in the public domain"). Nor do the posts Plaintiff (incorrectly) attributes to Defendant disclose the kind of highly personal or intimate information protected by the Privacy Act. *See Dasey*, 304 F.3d at 153-54; FAC ¶ 109 (alleging postings contained Plaintiff's and his family's home address and contact information, and the name of

their former synagogue).[15] Accordingly, neither the allegedly defamatory statements, nor Mr. MasMarques's agency complaints support a triable claim under the Privacy Act.

### G. <u>NO SHOWING OF MALICE OR INITIATION OF AN ORIGINAL PROCEEDING FOR MALICIOUS PROSECUTION CLAIM</u>

To prevail on a claim of malicious prosecution, Plaintiff must show that he was damaged because Defendant initiated an "original action without probable cause and with malice, and that the original action terminated in [Plaintiff's] favor." *Millennium Equity v. Mahlowitz*, 73 Mass. App. Ct. 29, 35–36, 895 N.E.2d 33 (2008). A showing of malice requires that the accuser knew there was no probable cause for the commencement of the action, and that the accuser acted with an improper motive. *Beecy v. Pucciarelli*, 387 Mass. 589, 593-94, n.9 (1982) (reasoning the malice standard here "is not necessarily revenge or other base and malignant passion…[w]hatever is done willfully and purposely, if it be at the same time wrong and unlawful, and that known to the [accuser], is in legal contemplation malicious") (internal citations removed).

Here, Plaintiff has not been subject to any criminal action or the unjustifiable initiation of any civil action involving Defendant. DSOF ¶ 41; *Millennium Equity*, 73 Mass. App. Ct. at 35–36. Nor was Plaintiff ever arrested, charged, or prosecuted as a result of Defendant's cross-TRO or TRO applications, or as a result of complaints to law enforcement or government agencies. DSOF ¶ 48; *Correllas*, 410 Mass. at 318 (holding the "mere transmission of information to a police officer" is insufficient to support an action for malicious prosecution"). Plaintiff provides

---

[15] And to the extent the claim hinges on allegations of falsity, it fails as a matter of law: Massachusetts does not recognize a "false light" cause of action, and the Privacy Act provides no cause of action for disclosure of information alleged to be false. *Dasey*, 304 F.3d at 153.

no evidence that Defendant acted with malice.[16] To the contrary, the Santa Clara Court found

Defendant's case was "not devoid" of factual or evidentiary support. DSOF ¶ 44. That finding

alone forecloses any triable issue on malice. DSOF ¶ 44; 387 Mass. 589. The record likewise

shows no wrongful or unlawful acts by Mr. MasMarques. *See Beecy*, 387 Mass. at 594 n.9. For

instance, in October 2018, after three months of attempting to serve a TRO at Plaintiff's

California address of record and learning he no longer lived there, Defendant contacted the

California Department of Motor Vehicles and correctly reported that Plaintiff was no longer

residing at that address—a fact Plaintiff has confirmed, testifying that he temporarily relocated to

Ohio from June through September 2018. DSOF ¶¶ 2, 33. In sum, Plaintiff cannot establish that

Mr. MasMarques instituted any proceeding against him—let alone did so with malice and

without probable cause—and his malicious prosecution claim therefore fails as a matter of law

under Massachusetts law. *See Millennium Equity*, 73 Mass. App. Ct. at 35—36.

## H. CONSPIRACY CLAIM FAILS TO ESTABLISH AN AGREEMENT OR COMMON DESIGN

Plaintiff's conspiracy count rests on conjecture, not evidence. To establish a claim for

civil conspiracy, Plaintiff must provide evidence that there existed "(1) 'a common design or an

agreement…between two or more persons to do a wrongful act' and (2) 'proof of some tortious

act in furtherance of the agreement.'" *Bassett v. Jensen*, 459 F. Supp. 3d 293, 312 (D. Mass.

2020) (*quoting Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994),

---

[16] Rather, the record points to Plaintiff's malicious prosecution of Defendant. DSOF ¶¶ 38, 42. By May 2019, Plaintiff knew that multiple posts he had supplied to the Marlborough Police in November 2018—which became the basis for the criminal case against Mr. MasMarques—were authored by another individual, yet Plaintiff made no effort to correct his report and allowed this criminal prosecution to continue for 18 more months based on false information. *Id*. *See Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 21, 436 N.E.2d 431 (1982) (reasoning Massachusetts law imposes a duty on an accuser to determine if there is "reasonable and probable cause for a prosecution").

abrogated on other grounds by *United States v. Velazquez-Fontanez,* 6 F.4th 205 (1st Cir. 2021))

(alteration in original) (reasoning "plaintiff must provide evidence that the defendants agreed

together to commit an underlying tort." *Id*. (internal quotations and citations omitted).

Nothing in the record proves Mr. MasMarques entered into an agreement with a party to

orchestrate or advance any purported campaign of defamation, abuse of process, or malicious

prosecution against Plaintiff. DSOF ¶ 64. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019)

(reasoning "plaintiff must demonstrate that the participants acted pursuant to an agreement" to

establish civil conspiracy). Defendant denies he encouraged any third party to publish

defamatory statements about Plaintiff. DSOF ¶ 64. And Plaintiff admits to having no knowledge

of any specific agreement between Mr. MasMarques and any purported tortfeasor to post

defamatory content about Plaintiff. *Id*. Plaintiff proffers only a "belie[f]" that Defendant and

certain individuals agreed that he "needed to be…held to account." *Id*. Plaintiff's conspiracy

theories, however, do not constitute a viable civil conspiracy claim; dismissal of this baseless

count is, therefore, warranted. *Id.*; *Parker*, 935 F.3d at 18.

## I. TCC IS AN INDISPENSABLE AND NECESSARY PARTY.

Plaintiff claims the purported defamatory posts hurt his businesses and chilled venture capital

interest because the venture firm's due diligence searches would uncover these posts. *See* FAC

¶¶ 16, 103; Doc. 68-1 at 2 ¶¶ 4–7. In substance, he seeks to recover TCC's alleged losses while

leaving TCC out of the case.[17] DSOF ¶¶ 4, 69, 73, 75, 78. The record further confirms it:

- Plaintiff's contact information in this Action is his Plainsite email. *Id.* ¶ 5.

- Plaintiff's purported "loss of assets" rests on TCC's 2012 common-equity valuation of
  $509,400. *Id.* ¶ 75.

---

[17] Plaintiff already knows the real party in interest: he personally applied "*Failed Lawsuits
Against Plainsite*" and "*First Amendment*" tags to three case dockets involving himself and
Defendant on Plainsite. DSOF ¶ 76.

- Plaintiff's purported 1,375 "lost" hours include time spent on TCC work (e.g., Plainsite takedown responses; time diverted from programming for Plainsite/"Think" products, fundraising). *Id.* ¶ 78.

- His purported costs include invoices incurred or paid by TCC or by TCF during the time TCC and TCF were in a joint partnership. *Id.* ¶¶ 4, 73.

- Prior to filing his amended Rule 26 disclosures (outside the Scheduling Order deadline), Plaintiff's original initial disclosures claimed "direct security realized losses" of at least $812,500 in compensatory damages. *Id.* ¶ 69.

Plaintiff's claimed damages put TCC squarely at issue in this litigation. *Id.* ¶¶ 4, 69, 73, 75, 78. A shareholder, however, cannot recover corporate injuries in his personal capacity when the real party in interest is the corporation. Fed. R. Civ. P. 17(a). In the event this case is not dismissed, TCC's joinder is necessary because complete relief cannot be afforded without it, and adjudicating damages attributable to TCC's valuation, goodwill, and operations in TCC's absence would impair its interests and risk further possible legal exposure to Mr. MasMarques; if joinder is not feasible, Rule 19(b) factors make TCC indispensable. *Id.* at 19(a)(1)(A)–(B). Accordingly, TCC must be joined or those damages/claims dismissed. *Id.*; Fed. R. Civ. P. 17(a).

## J.  NO SHOWING OF COMPENSATORY DAMAGES.

Even setting aside that Plaintiff cannot stand in the shoes of a separate legal entity to recover that entity's damages, "compensatory damages[] requires a showing that the claimed losses were proximately caused by the wrongful conduct of the [D]efendant." *O'Brien v. Pearson*, 449 Mass. 377, 387 (2007). Plaintiff makes no such showing, and that failure alone warrants dismissal on summary judgment. *Id.* Even Plaintiff's shifting damages claims only confirm their unreliability.[18] *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 788 N.E.2d 522,

---

[18] After initially disclosing "direct security realized losses" of at least $812,500 in compensatory damages plus $11,000 in costs, Plaintiff amended his Rule 26 disclosures—after the Scheduling Order deadline—to seek at least $1,000,000 (and as much as $6,782,250 in total compensatory

543 (Mass. 2003) (holding damages must be established "to a reasonable degree of certainty") (internal quotations and citations removed). In fact, Plaintiff's damages are "remote, speculative, hypothetical, and not within the realm of reasonable certainty." *Augat, Inc. v. Aegis, Inc*., 631 N.E.2d 995, 998 n.4 (Mass. 1994). For instance:

- Plaintiff's purported lost profit rests on (1) a touted 1,375 of "wasted" hours[19] that are largely TCC's corporate tasks, which he has inconsistently reported; and (2) a purported hourly rate of $750/hour (but also offers "$450" as an alternative) despite not billing hourly or at either rate. DSOF ¶¶ 77–78.

- He admits suffering no damages due to a loss of standing with any agency. *Id*. ¶ 76.

- He identifies no lost contract, investor, or client, and admits that venture capital interest was minimal even before 2018 due to his public rift with Meta founder, Mark Zuckerberg. *Id.* ¶ 74.

- His "costs" include items the Santa Clara Court rejected, <u>twice</u>. *Id.* ¶ 72.

- He voluntarily reduced a roughly $1 million salary in 2018 "for tax purposes." *Id.* ¶ 79.

- Plaintiff offers no expert testimony or tax or wage documents to support his claimed damages. *Id.* ¶ 71. The only expert documentation provided by Plaintiff is TCC's 2012 common-equity valuation of about $509,400. *Id.* ¶ 75.

- Plaintiff provides no medical expenses to support his emotional distress. *Id.* ¶ 80.

Plaintiff's belief that Defendant's purported conduct caused him damages—without competent proof of said losses—is not evidence.[20] *Phelan v. May Dept. Stores Co*., 443 Mass. 52, 55-56 (2004). His numbers underscore the point: Plaintiff claims $5,000,000 in "reputational" damages based on a Crunchbase article reporting the average U.S. Series A round size in Q1 2023, and values his time at $750/hour based on a *New York Times* article discussing

---

damages) under new categories of damages ("Loss of Time," "Loss of Asset Value," "Loss of Reputation," "Loss of Good Standing," "Emotional Distress"). DSOF ¶¶ 69–70.

[19] Plaintiff's claimed "loss of time" for prior years has increased retroactively: between August 29, 2023, and August 3, 2025, his figures rose from 33.75 to 50 hours for 2017 and from 175 to 250 hours for 2019. *See, e.g.,* Doc. No. 68-1 at 5; Doc. No. 226, Ex. C; DSOF ¶¶ 77–78.

[20] Massachusetts law also bars recovery of punitive damages for defamation. M.G.L. c. 231 § 93; *Stone v. Essex Cty. Newspapers, Inc*., 367 Mass. 849, 330 N.E.2d 161, 169 (1975).

high salaries for AI experts. DSOF ¶¶ 74, 77. That is apples-to-oranges speculation: generalized market commentary about startup financing and tech salaries does not quantify Plaintiff's lost-profit damages to any "reasonable degree of certainty." *Hendricks & Assocs., Inc. v. Daewoo Corp.*, 923 F.2d 209, 217 (1st Cir. 1991) (holding "damages for loss of prospective profits must be 'capable of ascertainment upon some definite standard, either of market value, established experience, or direct inference from known circumstances,'" and a plaintiff must "demonstrate[] 'with a fair degree of certainty what the profits would have been'") (citations omitted); *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 67-68 (1st Cir. 2000) (reasoning goodwill losses must be "adequately supported," typically through "data concerning the reduced value of businesses"). Conjecture, hypothetical numbers, and self-valorizing valuations are not evidence. *Augat*, 631 N.E.2d at 998, n.4. Summary judgment is warranted on every claim.

## V. CONCLUSION

For over eight years—three consumed by this very Action—Mr. MasMarques has spent over $140,000 having to defend himself against vexatious and abusive filings and manufactured, false accusations that have tarnished his reputation, cost him job opportunities, eroded his peace of mind, and—most painfully—stolen the little time he had left with his wife and father. MasMarques Decl. ¶¶ 75–77. As shown above, Plaintiff's claims are frivolous and malicious, driven by personal animus, a retaliatory and abusive *modus operandi*, and an apophenic obsession rather than competent proof. For these reasons, Mr. MasMarques respectfully asks the Court to grant summary judgment on all counts, dismiss the action with prejudice, and—pursuant to M.G.L. c. 231, § 59H and *Pritchard*, 85 Mass. App. Ct. 1120— award his reasonable attorneys' fees and costs, together with such other and further relief this Honorable Court deems just and proper.

Respectfully submitted,

DEFENDANT, DIEGO MASMARQUES, JR.,

By his Attorney,

*/s/ Ashley A. Andrade*
_____

Ashley A. Andrade, Esq.
ANDRADE LEGAL, LLC
867 Boylston Street, 5th Floor #1119
Boston, MA 02116
BBO# 697189
Phone: 617.206.1822
Email: ashley@andrade-legal.com

Dated: November 6, 2025

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was filed electronically on November 6, 2025, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Ashley A. Andrade*
_____

Ashley A. Andrade
BBO # 697189