## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**AARON GREENSPAN**,

     Plaintiff,

  v.

**DIEGO MASMARQUES, JR. a/k/a DIEGO MAS HOWARD a/k/a RICKY MAS MARQUES a/k/a JACK JONES**, **SERGEI IGOREVICH KUDRIAVTSEV**, **MEDIOLEX, LTD.**, and **ASTRAD, LTD.**,

     Defendants.

Case No.: 1:23-cv-10134-DJC

## PLAINTIFF'S OPPOSITION TO DEFENDANT DIEGO MASMARQUES, JR.'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

OBJECTION ............................................................................................................. 1

MEMORANDUM OF LAW ..................................................................................... 1

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND ....................................................................... 4

III.   ARGUMENT ................................................................................................ 4

    A.     Legal Standard ................................................................................... 4

    B.     This Court's Prior Rulings Preclude Defendant MasMarques's Already-Decided, Untimely and Irrelevant Arguments ................................................... 5

        1.     Statute of Limitations ............................................................. 5

        2.     The Massachusetts Anti-SLAPP Statute ................................. 6

        3.     The First Amendment ............................................................. 6

        4.     Think Computer Corporation ................................................. 7

        5.     "Vexatious Litigant" Designation ........................................... 7

    C.     Count I: A Jury Could Find Defendant MasMarques Liable for Libel Per Se ....... 8

        1.     Diego MasMarques, Jr. Is Connected To The Statements At Issue By His Own Admissions, His IP Address, His Mac OS Username, His E-Mail Addresses, and More Than a Dozen Other Factors ................................... 8

        2.     Plaintiff Is Not a Public Figure ............................................. 10

        3.     The Statements At Issue Were Made With Actual Malice ...... 11

        4.     Plaintiff Has Proven Falsity .................................................. 13

    D.     Count IV: A Jury Could Find Defendant MasMarques Liable for Abuse of Process ............................................................................................ 15

    E.     Count V: A Jury Could Find Defendant MasMarques Liable for Malicious Prosecution ...................................................................................... 18

    F.     Count XII: A Jury Could Find Defendant MasMarques Liable for Conspiracy ... 20

    G.     Count XIII: A Jury Could Find Defendant MasMarques Liable for False Light Invasion of Privacy ........................................................................... 21

    H.     Count XIV: A Jury Could Find Defendant MasMarques Liable for Intentional Infliction of Emotional Distress ....................................................... 21

    I.     Plaintiff Is Not Required To Prove Economic Damages and Punitive Damages Are Appropriate .............................................................................. 23

IV.    CONCLUSION .......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Agis v. Howard Johnson Co.*,
　371 Mass. 140, 144-45 (1976) .................................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242, 249-50, 106 S.Ct. at 2511 (1986) ...................................... 5

*Bresnahan v. McAuliffe*,
　47 Mass.App.Ct. 278, 282-283, 712 N.E.2d 1173, 1178 (1999) ............ 21

*Calero-Cerezo v. U.S. Dep't. of Justice*,
　355 F.3d 6, 19 (1st Cir. 2004) .................................................................. 4

*Carroll v. Xerox Corp.*,
　294 F.3d 231, 236 (1st Cir. 2002) ............................................................ 4

*Cocroft v. Smith*,
　Case No. 4:10-cv-40257-TSH (D. Mass. March 29, 2013) ...................... 4

*DeNovellis v. Shalala*,
　124 F. 3d 298, 306 (1st Cir. 1997) ........................................................... 5

*Diego Mas Marques v. Aaron Jacob Greenspan*,
　Case No. 1981CV02204 ............................................................................ 19

*Diego MasMarques v. Aaron J. Greenspan*,
　Case No. 1921AC000120 ............................................................................ 19

*Doe v. Hopkinton Public Schools*,
　19 F. 4th 493, 509 (1st Cir. 2021) ........................................................... 7

*Dubois v. U.S. Dept. of Agriculture*,
　102 F.3d 1273, 1284 (1996) ..................................................................... 4

*Dyer v. Steward Carney Hospital, Inc., et al*,
　Case No. 17-cv-11452-DJC (D. Mass. October 5, 2021) ........................ 22

*Gertz v. Robert Welch, Inc.*,
　418 U.S. 323, 345, 94 S.Ct. 2997 (1974) ................................................ 10

*Godette v. Stanley*,
　490 F. Supp. 2d 72, 81 (D. Mass. 2007) .................................................. 21

*Gonzalez v. United States*,
　284 F.3d 281, 292 (1st Cir. 2002) ........................................................... 6

*Gutierrez v. Mass. Bay Transp. Auth.*,
　437 Mass. 396, 412 (2002) ....................................................................... 21

*Haddad v. Wal-Mart Stores, Inc.*,
　455 Mass. 91, 111, 914 N.E.2d 59 (2009) ............................................... 24

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657, 665, 667-68, 109 S.Ct. 2678 (1989) ................................................... 11

*Iantosca v. Benistar Admin. Servs., Inc.*,
  738 F.Supp.2d 212 (D. Mass. 2010) ..................................................................... 15

*Levesque v. Doocy*,
  560 F.3d 82, 90 (1st Cir. 2009) ........................................................................... 11

*Maggio v. Gerard Freezer & Ice Co.*,
  824 F.2d 123, 127 (1st Cir.1987) ........................................................................... 6

*Nadeau v. State*,
  395 A.2d 107, 116 (Me.1978) ............................................................................... 18

*Pendleton v. City of Haverhill*,
  156 F. 3d 57, 67 (1st Cir. 1998) ........................................................................... 10

*Psy-Ed Corp. v. Klein*,
  459 Mass. 697, 713 (2011) ................................................................................. 16

*Salois v. Dime Sav. Bank, FSB*,
  128 F.3d 20, 25 (1st Cir. 1997) ............................................................................. 6

*Scott v. Harris*,
  550 U.S. 372, 127 S.Ct. 1769, 1776 (2007) ............................................................. 5

*Sensing v. Outback Steakhouse of Florida, LLC*,
  575 F.3d 145, 152 (1st Cir. 2009) .......................................................................... 4

*Simon v. Navon*,
  71 F. 3d 9, 15 (1st Cir. 1995) .............................................................................. 15

*Sindi v. El-Moslimany*,
  896 F. 3d 1, 16 (1st Cir. 2018) ............................................................................ 11

*United States of America et al v. Ukrainian Village Pharmacy, Inc. et al*,
  Case No. 1:09-cv-07891 (N.D. Illinois *filed* December 21, 2009) .......................... 15

*USA v. Jahanrakhshan*,
  Case No. 3:17-cr-00414-N (N.D. Tex. *filed* August 8, 2017) ................................. 16

*USA v. MasMarques*,
  Case No. 1:09-cr-10304-MLW (D. Mass. *filed* October 15, 2009) ......................... 16

*USA v. MasMarques*,
  Case No. 1:09-cv-10304-MLW (D. Mass. September 22, 2015) .............................. 17

*Vascular Solutions, Inc. v. Marine Polymer Tech., Inc.*,
  590 F.3d 56, 61 (1st Cir. 2009) ........................................................................... 11

**Statutes**

18 U.S.C. § 1111 ....................................................................................................... 2

California Code of Civil Procedure § 391 ................................................................... 8

California Code of Civil Procedure § 527.6(y) ........................................................... 17

Massachusetts Anti-SLAPP Statute ................................................................................. 5, 6

Massachusetts General Laws Chapter 260 § 2A ............................................................... 6

**<u>Rules</u>**

Federal Rule of Civil Procedure 56(c) .............................................................................. 4

Federal Rule of Civil Procedure 72(a) .............................................................................. 1

**OBJECTION**

Plaintiff objects to the Court's failure to rule on his motion for leave to file a motion for an extension of time to oppose the instant motion, ECF No. 261, filed November 8, 2025, and the need to file such motions for leave at all. First, the Court granted Defendant MasMarques numerous explicit and implicit extensions of time that added years of litigation to this case, and Plaintiff has not previously requested any extension of time. Second, as ECF No. 261 points out, there are outstanding discovery issues that remain unresolved due to the Court's inability to rule thus far on Plaintiff's four timely Objections filed pursuant to Federal Rule of Civil Procedure 72(a). Thus, Plaintiff has been forced to file this opposition brief without all of the evidence that should be available to him. Plaintiff's due process rights have been violated throughout this litigation and Plaintiff reserves the right to raise this issue on appeal if necessary.

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

This is a lawsuit about the right to be forgotten—a concept that has gained some traction in Europe, but not the United States of America. One reason for the discrepancy in legal doctrines is the American fear of the worst-case scenario: the hypothetical murderer who wants to be "forgotten" and is thus enabled to keep committing crimes that might have been prevented.

In this action, the most terrifying hypothetical case is made real. Diego MasMarques, Jr., a brilliant American citizen with dual citizenship in Germany and a Spanish passport, committed a rash of violent crimes against numerous women in the Boston area and in Miami, Florida in the late 1980s. He thus skipped town to evade an appearance at a criminal trial, moving to Germany where his eponymous father lived and worked. From Germany, he moved to Spain, where he almost killed a man he saw dating one of his ex-girlfriends with his car and was accordingly

1

charged with and convicted of a misdemeanor.  Undeterred, he embarked on a new relationship

with a Yugoslavian woman named Tatiana Vasic who was so concerned by his erratic behavior

shortly after they began dating that she recommended he see a psychologist, broke up with him,

changed her locks, and filed multiple complaints with law enforcement in Spain because she

feared for her and her unborn child's life.  With a knack for bureaucracy, possibly on account of

having a mother who worked for the federal government for decades (including but not limited

to working in Naval intelligence), Defendant MasMarques attempted to get the police in Spain to

expunge the reports about him.  They did not.  So he hired a locksmith to change the locks back,

broke into his ex-girlfriend's home, and during a fight, injured her so seriously that she fell into a

coma and died.  Despite chalking up her death to an accident, MasMarques was convicted of

"homocidio" and a breaking-and-entering crime by a jury in Spain pursuant to Spanish law,

which he says is not "murder" to anyone who will listen.  Yet the United States Department of

Justice disagreed, and in the process of handling the paperwork when MasMarques wanted to

serve his time here instead, they equated his most serious crime to 18 U.S.C. § 1111: "Murder".

It thus follows that Diego MasMarques, Jr. is fairly characterized as a convicted murderer.

He does not see it that way.  Since being let out of federal prison and enduring a traffic

stop that dredged up his criminal record, Defendant MasMarques has been on an obsessive quest

to erase all records of his countless crimes from the physical and the digital world, displaying not

an ounce of remorse.  To the contrary, he has threatened to kill again over the very fact that it is

public record that he killed someone in the past.  In response, criminal law enforcement agencies

on the state and federal levels, very much aware of the situation, have done nothing.

This civil action is thus the result of one private party attempting to defend himself

against Defendant Diego MasMarques, Jr.'s sustained libel and harassment campaign toward

*numerous* proprietors of websites that maintain court records, at least one of whom gave up on account of MasMarques's determined, multi-modal harassment.  Plaintiff Aaron Greenspan operates PlainSite (https://www.plainsite.org), a website that maintains a database of approximately 18 million federal and state dockets, several of which correspond to Defendant MasMarques's criminal records.  When Plaintiff refused to remove MasMarques's public records on PlainSite in the process of handling one of the roughly 25,000 privacy requests that have been submitted to PlainSite over 15 years, Defendant MasMarques expanded his multi-year quest to hide evidence of his conviction and related criminal history across the entire internet to target Plaintiff *personally*.  Defendant MasMarques is unparalleled in his drive and willingness to threaten violence to attempt to undo centuries of jurisprudence surrounding public records.

In his interactions with Plaintiff, Defendant MasMarques has consistently employed a tactic referred to as DARVO: Deny And Reverse Victim and Offender.  This strategy has been somewhat, but not entirely, effective at confusing prosecutors and judges in multiple jurisdictions, who have prolonged what should have been an open-and-shut case that never should have extended beyond 2018.  When Plaintiff applied for a restraining order against Defendant MasMarques because MasMarques sent him death threats in the names of murderous mob bosses, MasMarques responded by filing for a *counter*-restraining order and attending court hearings with a pointless one-man security detail, as though it were Plaintiff who had been convicted of a violent crime and making threats all along.  When Plaintiff filed for criminal charges against MasMarques for violating the restraining order that was ultimately granted, MasMarques applied for criminal charges against Plaintiff, with no legal basis whatsoever.

Nearly eight years after this dispute began, and now on his at least eighth attorney (and at least thirteenth since 1999), Defendant MasMarques has presented this Court with a purported

"Statement of Uncontested Material Facts" that includes in the mix false statements, deliberate mischaracterizations, weasel words intended to mislead the Court, immaterial nonsense, obvious errors by counsel, contested statements, and a few cherry-picked actual facts that together transform Defendant MasMarques from a dangerous criminal who has harmed Plaintiff and refuses to admit liability to a purportedly innocent party. The Court should not fall for his latest deception. The motion must be denied.

## II.     FACTUAL BACKGROUND

*See* Plaintiff's contemporaneously-filed Statement of Material Facts As To Which There Is A Genuine Issue To Be Tried.

## III.     ARGUMENT

### A.     Legal Standard

"Summary Judgment is appropriate where, 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). 'A `genuine` issue is one that could be resolved in favor of either party, and a `material fact` is one that has the potential of affecting the outcome of the case.' *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004))." *Cocroft v. Smith*, Case No. 4:10-cv-40257-TSH (D. Mass. March 29, 2013) (quotation marks corrected).

"Like the district court, in deciding a summary judgment motion we are obliged to view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Dubois*, 102 F.3d at 1284. The test is whether, as to each essential element,

there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party.  If the evidence is merely colorable or is not significantly probative, summary judgment

may be granted.'  *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citation omitted)."

*DeNovellis v. Shalala*, 124 F. 3d 298, 306 (1st Cir. 1997).

"When opposing parties tell two different stories, one of which is blatantly contradicted

by the record, so that no reasonable jury could believe it, a court should not adopt that version of

the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S.

372, 127 S.Ct. 1769, 1776 (2007).

### B.    This Court's Prior Rulings Preclude Defendant MasMarques's Already-Decided, Untimely and Irrelevant Arguments

Defendant MasMarques improperly raises arguments in his motion for summary

judgment about the statute of limitations, the First Amendment, the Massachusetts Anti-SLAPP

Statute, the propriety of joining Think Computer Corporation to this lawsuit as a necessary party,

and Plaintiff himself.  All of these have been raised previously and dismissed by the Court.

### 1.    Statute of Limitations

On October 26, 2023, this Court held a motion hearing on all defendants' motions to

dismiss.  Prior Defendant Mediolex, Ltd., represented by counsel Christopher Ingle, raised the

issue of the statute of limitations regarding claims that overlapped with the claims against

Defendant MasMarques.  The Court correctly understood that, "part of Mr. Greenspan's

response to that was what I took to be sort of an allegation of continuous, you know -- continuing

plans and harm because he references some actions that took place or postings that took place in

2022."  ECF No. 116-1 at 27-28.  Then, on March 25, 2024, the Court ruled on the motions to

dismiss, noting that "Greenspan alleges that this harassment has been continuous since 2017. D.

54 ¶ 117."  ECF No. 118 at 34.  Undeterred, counsel for Defendant MasMarques raised the issue

again, filing a Motion For Leave To File…Rule 12 Motions on June 12, 2025, two and a half years after the initial Complaint was filed. ECF No. 184. In that motion, Defendant MasMarques argued that "All of Plaintiff's remaining claims are time-barred under Massachusetts' three-(3)-year limitation period. G.L. c. 260, § 2A." ECF No. 184 at 5. The motion was denied. Now Defendant MasMarques makes the same argument for a third time, misstating the timeline of events yet again to substantiate the repetitive argument.

In addition, it is clear that Defendant MasMarques has been concealing evidence and continues to conceal evidence. Plaintiff has been forced to prematurely respond to this motion without the benefit of evidence to which he is entitled. "The doctrine of fraudulent concealment tolls the statute of limitations 'where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part.' *Salois*, 128 F.3d at 25 (citations and internal quotations omitted); *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 127 (1st Cir.1987)." *Gonzalez v. United States*, 284 F.3d 281, 292 (1st Cir. 2002).

### 2.    The Massachusetts Anti-SLAPP Statute

Summary judgment is not the appropriate phase of litigation to invoke *any* anti-SLAPP statute, as the purpose of such laws is to promote *early* resolution of claims. This case has been pending for three years and Defendant MasMarques complains of having spent "over $140,000" in legal fees, undermining his own suggestion that now is the time to utilize anti-SLAPP law. ECF No. 257-1 at 25. In fact, the Court already denied such relief. On July 14, 2025, the Court ruled, "Here, the sixty-day window has long passed." ECF No. 207 at 4. It is now December, some 150 days later. The arithmetic does not work in Defendant MasMarques's favor.

### 3.    The First Amendment

Defendant MasMarques, already convicted of the killing of Ms. Vasic, sent Plaintiff

death threats using the name of notorious murderers and further made thousands of harassing posts that resulted in even further harassment and bullying by third parties in the form of threatening telephone calls and fake composite pornographic images involving Plaintiff and his family members, images of Plaintiff dressed in Nazi uniforms, and more. "Speech or conduct that actively and pervasively encourages bullying by others or fosters an environment in which bullying is acceptable and actually occurs — as in this case — is not protected under the First Amendment." *Doe v. Hopkinton Public Schools*, 19 F. 4th 493, 509 (1st Cir. 2021). Defendant MasMarques, who openly sympathizes with Donald Trump and the government of the Russian Federation, also made dozens of false complaints to federal and state government agencies nationwide because he intended to impede Plaintiff from exercising *Plaintiff's* First Amendment right to publish public records. One such agency, the Office of the Ohio Attorney General, opened an investigation into Plaintiff's non-profit organization, which found no actionable wrongdoing and no evidence of any of the crimes Defendant MasMarques complained of, rendering MasMarques's complaint false. Not only was MasMarques's speech and conduct unprotected under the First Amendment, but it was specifically designed to infringe upon the First Amendment rights of others.

### 4.    Think Computer Corporation

Think Computer Corporation is not a party to this case. Its role is not central and this Court has already denied Defendant MasMarques's frivolous request for joinder. ECF No. 207.

### 5.    "Vexatious Litigant" Designation

It is odd that a licensed attorney would knowingly insist that Plaintiff is a "vexatious litigant" when this Court has already denied her client's motion to label Plaintiff one, this Court is not the first court to deny such a motion brought by Defendant MasMarques, and when

Plaintiff obviously fails to meet the criteria of California Code of Civil Procedure § 391, which defines the term where Plaintiff resides.  In addition to being a violation of Massachusetts Rule of Professional Conduct 3.3, the strategy is additionally questionable because it provides additional evidence linking various social media accounts in Declaration of Aaron Greenspan ("Greenspan Declaration") Exhibit H—which incessantly and falsely label Plaintiff a "vexatious litigant"— to Defendant MasMarques.

### C.    Count I: A Jury Could Find Defendant MasMarques Liable for Libel Per Se

Defendant MasMarques authored thousands of posts about Plaintiff over a period of years, only some of which are cited in the FAC as examples, since an exhaustive enumeration of his false statements would be impractical and unnecessary.  Plaintiff disclosed over 6,000 pages of painstakingly-assembled documents to Defendant MasMarques's counsel, most of which were posts on various gripe sites and social media platforms.  A jury could find Defendant MasMarques liable for libel.

### 1.    Diego MasMarques, Jr. Is Connected To The Statements At Issue By His Own Admissions, His IP Address, His Mac OS Username, His E-Mail Addresses, and More Than a Dozen Other Factors

The undisputed record contains overwhelming "competent" evidence that Defendant MasMarques is directly responsible for the publication of thousands of posts libeling Plaintiff. Plaintiff contests two-thirds of Defendant MasMarques's purported "Statement of Uncontested Facts" ¶ 57, rendering the statement, "Plaintiff concedes he has no direct evidence linking Mr. MasMarques to any of the online posts at issue in this case and that any 'conclusive evidence' would be in the possession of third parties" false.  ECF No. 257-1 at 8.

Defendant MasMarques's attempt to cast doubt on the ironclad link between his home IP address and numerous posts is unavailing.  Defendant MasMarques only began using a VPN in

2019, only after Plaintiff made clear in court in California, and via a police report leading to the issuance of a criminal complaint in Massachusetts, that he was capable of tracking Defendant MasMarques's posts using his IP address.  Defendant MasMarques does not and cannot deny that Comcast's subpoena response identified his home IP address at the time, 24.60.59.25, in connection with a June 5, 2018 ComplaintsBoard post that referenced the Think Computer Foundation website, hosted on Think Computer Corporation's server, to which Plaintiff had access.  He further does not and cannot deny that on January 15, 2018, a computer assigned the same home IP address, 24.60.59.25, retrieved an essay published by Plaintiff on Plaintiff's personal website, also hosted on Think Computer Corporation's server, which appeared that same day in a libelous post about Plaintiff on Blacklist Report, a gripe site.  He further does not and cannot deny that the same IP address was recorded in connection with a PlainSite Contact Us Form submission he sent using his own name, PlainSite Request 5XPKXMS, dated March 30, 2018.

Much of Defendant MasMarques's motion is devoted to making false claims about what Plaintiff "conceded" or "admitted."  A glance at the actual August 19, 2025 deposition transcript reveals that these characterizations are all false and in some cases would require time travel.

Although not all of the libel alleged took place on social media, some of it did. Defendant MasMarques and his eighth lawyer in this long-running dispute began by insisting that he has never used social media, but now, that denial has been walked back considerably. Defendant MasMarques no longer denies that he has *ever* used social media, including but not limited to Twitter.  Defendant MasMarques merely "maintains" that he does not *now*, at the very moment his declaration was signed, use social media.  Even this is false, and provably so.  In addition, Defendant MasMarques changed his story on his use of ComplaintsBoard.  First, he

claimed to have only used it to read posts.  Then, he "remembered" that he *had* posted on

ComplaintsBoard, but supposedly just once.  In fact, he posted routinely using a variety of

different accounts, some of them registered to e-mail addresses that he has admitted belong to

him.

### 2.    Plaintiff Is Not a Public Figure

Plaintiff is not a public figure and was not a public figure at all relevant times.  Whether

or not the designation applies to Plaintiff is moot, however, because the evidence that Defendant

MasMarques acted with "reckless disregard for the truth," or malice, is so overwhelming.

Public figure analysis is subjective and complex.  Historically, the Supreme Court has

employed a

> "defamation model that ties the constitutionally required showing in a defamation
> action to the plaintiff's status.  It contemplated that 'public figure' status usually
> would arise in one of two ways: (1) when persons 'assume[] roles of especial
> prominence in the affairs of society,' perhaps by occupying positions of 'persuasive
> power and influence,' or (2) when persons 'thrust themselves to the forefront of
> particular public controversies in order to influence the resolution of the issues
> involved.' *Gertz*, 418 U.S. at 345, 94 S.Ct. 2997.  The Court noted, however, that
> not all public figures are equal: an individual who achieves 'pervasive fame or
> notoriety,' or otherwise comes within the first category, is deemed a public figure
> for all purposes, whereas an individual who dives headfirst into troubled waters, or
> otherwise comes within the second category, 'becomes a public figure only for a
> limited range of issues.' *Id*. at 351, 94 S.Ct. 2997.  That range is identified 'by
> looking to the nature and extent of an individual's participation in the particular
> controversy giving rise to the defamation.' *Id*. at 352, 94 S.Ct. 2997" (footnotes
> omitted).

*Pendleton v. City of Haverhill*, 156 F. 3d 57, 67 (1st Cir. 1998).  Plaintiff has no "especial

prominence in the affairs of society" and occupies no position of "persuasive power and

influence."  When this lawsuit was filed, the average American had never heard of Plaintiff and

even today, most still have not.  Thus, at most, Plaintiff would be a limited-purpose public

figure, but not for any purpose associated with this action.  Oddly, there is no "particular

controversy" giving rise to the defamation here as it is widely accepted, Defendant

MasMarques's beliefs aside, that public records are public.  It is therefore difficult to argue that

Plaintiff "thrust [himself] to the forefront of [a] particular public controvers[y] in order to

influence the resolution of the issues involved," because those issues were resolved hundreds of

years ago.  Thus, Plaintiff does not need to show malice, but nonetheless, he can.

### 3.    The Statements At Issue Were Made With Actual Malice

"The question reduces, then, to whether the statements were made with actual malice,

that is, either with knowledge of their falsity or with a reckless disregard for the truth."  *Sindi v.*

*El-Moslimany*, 896 F. 3d 1, 16 (1st Cir. 2018).  Defendant MasMarques has consistently acted

with reckless disregard for the truth.  "[A]ctual malice 'may be found where a publisher

fabricates an account, makes inherently improbable allegations, relies on a source where there is

an obvious reason to doubt its veracity, or deliberately ignores evidence that calls into question

his published statements.'  *Levesque*, 560 F.3d at 90.  Although motive alone cannot suffice to

prove actual malice, it is a highly relevant consideration.  *See Connaughton*, 491 U.S. at 665,

667-68, 109 S.Ct. 2678; *Vascular Sols.*, 590 F.3d at 61."  *Id*.

Defendant MasMarques repeatedly fabricated accounts, made inherently improbable

allegations, and consistently ignored evidence that called into question his published statements.

Even in Defendant MasMarques's Declaration in support of the instant motion, there are

fabrications.  For example, ¶ 23 of his Declaration states, "On or about March 28, 2018, I

contacted Plaintiff directly through the phone number listed on plainsite.org and told him that if

he did not stop the harassment, I will have no choice but to take legal action and Plaintiff hung

up."  Yet Plaintiff received no such call on March 28, 2018, or ever.  The only call Plaintiff

received from Defendant MasMarques where Defendant MasMarques actually identified himself

took place on December 20, 2017 at 4:31 P.M. Pacific Standard Time, and that call did not involve any request by Defendant MasMarques because as soon as he stated his name Plaintiff responded by saying that he had reported him to the police, that his conduct was unacceptable, and that he was ending the conversation—at which point Plaintiff hung up.  Moreover, Defendant MasMarques could not have contacted Plaintiff directly "through the phone number listed on plainsite.org" Contact Us page because as of March 2018, no such "phone number" was "listed" on the page, specifically due to individuals like him.  Defendant MasMarques had the opportunity to provide the existence of this supposed March 28, 2018 telephonic warning in discovery, yet zero documents validate that the call he fabricated ever took place.

Defendant MasMarques repeatedly accused Plaintiff and Plaintiff's family members of running a "fraudulent charity" and accused Plaintiff of "fraud."  ECF No. 54-5.  Yet in 2019, the Internal Revenue Service conducted an in-depth audit of Think Computer Foundation and found no wrongdoing.  Even the partisan, January 6, 2021-insurrection-supporting Office of the Ohio Attorney General investigated Think Computer Foundation for years as PlainSite criticized Donald Trump openly on its home page and filed no civil or criminal charges as a result, simply suggesting to Plaintiff that the non-profit would be best incorporated elsewhere.  This is not "tax fraud."  Despite knowing his allegations were investigated and found baseless, MasMarques continued making them.  This is knowledge of falsity.

Defendant MasMarques also repeatedly claimed that Plaintiff owns or created the legal records website leagle.com—another one of MasMarques's targets for relentless harassment.  Before the Superior Court of California for Santa Clara County, Plaintiff told Defendant MasMarques whom he believed owned that site.  ECF 1-6 at 112:11-13.  In 2021, Defendant MasMarques then admitted in an e-mail to his former probation officer that he only believed that

there was a "high possibility" that Plaintiff owned leagle.com.  ECF No. 237-10 at 15.  Yet MasMarques continued making the false claim on social media and to government agencies regardless, again recklessly disregarding the truth to falsely accuse Plaintiff of some sort of wrongdoing.

Reckless disregard for the truth is also evident from Defendant MasMarques's constantly-shifting story in his limited responses to Plaintiff's discovery requests.  Again and again, Defendant MasMarques was forced to amend his responses because they conflicted with each other and with his earlier testimony in California.  When Plaintiff asked if he had ever posted on ComplaintsBoard, Defendant MasMarques initially denied it.  Then, after Plaintiff filed a motion to compel, he "remembered" that he had posted just once, but refused to identify the account he used to make the post.  Similarly, for months, Attorney Andrade insisted that her client had never used social media.  Now, her declaration and the Statement of Uncontested Facts based thereupon is far more careful, noting that Defendant MasMarques merely "maintains" that he does not use social media.  Most recently, Attorney Andrade confidently and smugly insisted that Defendant MasMarques never had a landline telephone number at his house, which he why he did not disclose it in discovery after being ordered to by the Court.  The only problem is that his landline telephone number, "774-843-2996," is part of the operative complaint.  ECF No. 54-3 at 2.  Reckless disregard for the truth has pervaded this litigation.

### 4.     Plaintiff Has Proven Falsity

On May 11, 2021, the Twitter account @Giza299792458N posted, "I too am a victim for many years of Aaron Greenspan."  FAC ¶ 93 depicts a Twitter thread from the same on October 26, 2021 containing an image of woman captioned by the text, as though she is speaking,

> "Aaron Greenspan is a complete meddling little be***h.  This creep uploaded my
> employer's address, phone number, other personal identifying info online.  Can a

doctor plead *[sic]* put this creep exactly where he belongs! In a Psychiatric Facility. The sooner the better for all of humanity[.]"

The following paragraph, FAC ¶ 94, points out that the image of the woman is not the account owner, but an actress in a pornographic video. On July 5, 2022, the same @Giza299792458N Twitter account published a post stating with regard to Plaintiff, "FOIA requests have also been sent out and there is lots of great information." In fact, seventeen days prior, according to Freedom of Information Act ("FOIA") request logs from the United States Securities and Exchange Commission, as well as the request itself, "Mr Diego Mas Marques" filed FOIA Request No. 22-02308-FOIA dated June 19, 2022 on the subject of "Aaron Jacob Greenspan/Think Computer Corporation/Think Computer Foundation" (*see* ECF No. 54-5 at 35-36). No other individual filed any FOIA request about Plaintiff during 2022 or even 2021. Moreover, no other individual would have known about the request because as of July 6, 2022 when the @Giza299792458N post was published, the SEC's FOIA log for June 2022 was not yet public or visible on the SEC website. *See* Declaration of Aaron Greenspan Exhibit K. Thus, the owner of the @Giza299792458N Twitter account was, in fact, Defendant MasMarques. It is false that the owner of the account was the pornographic actress, it is false that Plaintiff ever took *any* action related to her, and it is false that Plaintiff ever intentionally posted Defendant MasMarques's "employer's address."[1]

Most of the example statements in the table in FAC ¶ 99 are statements capable of being proven true or false, and they are false. Plaintiff identified the person he believed to be the creator of leagle.com to Defendant MasMarques (*see* ECF No. 1-6 at 112:11-13) and a list of

---

[1] To this day, Plaintiff has no idea where Defendant MasMarques works, if he is employed at all. Defendant MasMarques is the rare unemployed individual who can afford $140,000 in legal fees and half a dozen cell phone numbers registered to a variety of mobile carriers.

domain names in Plaintiff's control does not include leagle.com; therefore "Aaron Greenspan aka Aaron Jacob Greenspan creator and owner of leagle.com" is a provably false characterization.  No judicial ruling in existence anywhere in the world—and such rulings are searchable—states that Plaintiff "is a serious danger and menace to society," rendering the statement "the Judges realized that this Sociopath is a serious danger and menace to society" provably false.  Plaintiff has provably won and/or settled several court cases, rendering "Aaron Greenspan loses all his cases in US Courts" false.  Neither Plaintiff nor Think Computer Foundation has ever received donations from any person other than Plaintiff himself in an amount greater than $1,000, rendering "Aaron has collectved *[sic]* donations from his friends and colleagues, myself included in the amount of $100,000, and to date we have not seen a single dime used in the manner described to us when he requested the donation" false.  A search of PACER is not even necessary to ascertain that the letters "CV" in the quote "Aaron was charged in connection with a criminal complaint for False Claims Violations and Fraud in United States v. Yurygrenadyor, Case No. 09-CV-7891" stands for *civil*, rendering the suggestion that Plaintiff was charged with a crime in that proceeding false; moreover, Plaintiff was not a named party at all.

### D.    Count IV: A Jury Could Find Defendant MasMarques Liable for Abuse of Process

"The two basic elements of abuse of process are a bad motive, and the use of a legal process for an improper, collateral objective."  *Simon v. Navon*, 71 F. 3d 9, 15 (1st Cir. 1995).  Defendant MasMarques cites a district court case, *Iantosca v. Benistar Admin. Servs., Inc.*, 738 F.Supp.2d 212 (D. Mass. 2010), to add a third element: resulting damage.  ECF No. 257-1 at 15.  Whether there are two elements or three, Plaintiff's pleading easily satisfies all of them.

First, Defendant MasMarques made his motive quite clear on July 16, 2013, when he

filed a motion to seal records detailing his criminal conviction before this court in Case No. 1:09-cr-10304-MLW, and clearer still on March 19, 2018, when posing as a murderous mafia don, he stated, "Shut this site down!"  ECF No. 237-9 at 13.  Shutting down PlainSite or any public records website is not a valid motive, and not good cause to issue violent threats or instantiate sham legal proceedings.  In fact, it is the kind of motive that when paired with this type of fact pattern typically leads to an indictment.  *USA v. Jahanrakhshan*, Case No. 3:17-cr-00414-N (N.D. Tex. *filed* August 8, 2017).

Defendant MasMarques admits in his purported "Statement of Uncontested Facts" that he used the legal process repeatedly, via a rejected application for a restraining order against Plaintiff, multiple dismissed civil and criminal complaints, multiple administrative complaints, and public records requests.  ECF No. 257-2 at ¶ 27.  The only question is whether he used these processes properly.  "To sustain the claim, 'the fact finder must find that process was used `to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'"  *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713 (2011).  Yet these "multiple written complaints to state and/or federal agencies" were not all actually "regarding the publication of his court records."  It is difficult to fathom, for example, how filing a complaint with the California Department of Motor Vehicles ("CAMDV") over Plaintiff's mailing address, even if based in fact—which Defendant MasMarques's complaint was not—could have anything to do with "the publication of his court records."  Rather, Defendant MasMarques was able to prevent Plaintiff from being able to drive legally or renew his driver's license for a short time.

Similarly, filing a FOIA request with the United States Securities and Exchange Commission, or a complaint with the Attorney General of Arkansas—a state where Plaintiff has

never lived, never done business in, *and never even set foot in*—or false complaints with the

Internal Revenue Service regarding Plaintiff's non-profit organization, or a complaint with the

State Bar of California about Plaintiff's attorney, could not possibly have any kind of impact on

the publication of Defendant MasMarques's records, unless the goal was to extort Plaintiff using

the machinery of the state, or simply crush him under its bureaucratic weight. This is entirely

consistent with the translated description of Defendant MasMarques from December 1999 by

those who knew his prior victims: "Both Tatiana's father and friends describe the man

responsible for this tragedy as 'intelligent and cultured, but insatiable and vindictive.'"

Greenspan Declaration Exhibit A at 6. It is not at all consistent with the behavior of someone

who simply wanted to take reasonable, legal actions that would result in his 2013 motion to seal

being granted.

Nor did Defendant MasMarques use California Code of Civil Procedure properly.

California Code of Civil Procedure § 527.6(y) waives the filing fee when a petition for a civil

restraining order "alleges that a person has inflicted or threatened violence against the petitioner,

stalked the petitioner, or acted or spoken in any other manner that has placed the petitioner in

reasonable fear of violence." Plaintiff did none of these things, despite Defendant

MasMarques's incessant and false refrain that publishing public records amounts to "stalking."

Of course, this is nonsense, and Defendant MasMarques knows it because this Court told him so

in no uncertain terms **ten years ago**: "The public availability of the records of MasMarques's

conviction under the PACER, CORI, and NCIS system is not a 'punishment' in violation

of the Double Jeopardy Clause." *USA v. MasMarques*, Case No. 1:09-cv-10304-MLW (D.

Mass. September 22, 2015). Knowing all of this, he nonetheless answered the question "Did the

person in (2) use or threaten to use *a gun or any other weapon*?" on Judicial Council of

California Form CH-100 by checking the "Yes" box, which exempted him from the filing fee and resulted in the automatic, rolling grant of *nine* void, unconstitutional, purported temporary restraining orders, all seeking and purporting to enforce an unconstitutional prior restraint on Plaintiff's speech that Plaintiff spent approximately $10,000 to defend against as he simultaneously pursued and was ultimately granted a legitimate restraining order against Defendant MasMarques.[2]  Thus, not only was Defendant MasMarques able to evade the filing fee which he owed, but he was further able to inflict financial damage and emotional distress on Plaintiff by weaponizing California law through his lies.  He then repeated this general dynamic in Massachusetts by abusing Massachusetts law, in Ohio by abusing Ohio law, and on the federal level by abusing the Internal Revenue Code, which led to legal expenses for Think Computer Foundation and Plaintiff's ultimate decision to dissolve the non-profit organization he founded rather than continue to be continuously subject to such abuse.  There can be no question that Plaintiff was damaged by Defendant MasMarques's abuse of process.

E.    **Count V: A Jury Could Find Defendant MasMarques Liable for Malicious Prosecution**

"To establish a claim for malicious prosecution, a party must show that the challenged litigation was initiated without probable cause and with malice, and that it terminated in the plaintiff's favor.  *See*, *e.g.*, *Nadeau v. State*, 395 A.2d 107, 116 (Me.1978)."  *Simon*, *supra*, at 15. These requirements are clearly met.

---

[2] In the Superior Court of California for Santa Clara County, Judge Carol Overton issued new Temporary Restraining Orders against each side as she proceeded with evidentiary hearings from July 2018 through August 2019.  Each TRO expired at the next hearing until she made her final decision.  Thus, Plaintiff was subject to nine serial unconstitutional TROs obtained under false pretenses on July 3, 2018; October 9, 2018; December 12, 2018; February 28, 2019; May 2, 2019; July 1, 2019; July 22, 2019; August 7, 2019; and August 22, 2019, after which Defendant MasMarques's fraudulent cross-request was finally denied by Judge Overton.

Spanish records show Ms. Vasic filed four (4) complaints with the Civil Guard in Spain against MasMarques and changed her locks four (4) times before he finally killed her as she feared he might—and all were "ineffective" at stopping him.  Greenspan Declaration Exhibit A at 6-7.  Thereafter, MasMarques learned a new tactic: reverse the dynamic.  Rather than simply ignoring complaints (as with Vasic), he now files *counter*-complaints to paint himself as the victim.  This DARVO strategy—one of many examples over the course of nearly a decade—shows consciousness of wrongdoing and establishes malice.

ECF No. 54-5, Exhibit E to the First Amended Complaint, states on page 26 regarding *Diego MasMarques v. Aaron J. Greenspan*, Case No. 1921AC000120 before the Marlborough District Court in Massachusetts, "After complete review of the above matter, I find there is No Probable Cause for the complaint to issue."  Similarly, in *Diego Mas Marques v. Aaron Jacob Greenspan*, Case No. 1981CV02204 before the Middlesex County Superior Court in Massachusetts, Justice Michael D. Ricciuti dismissed Defendant MasMarques's claims immediately after holding a hearing in which Defendant MasMarques was unable to identify a single fact supporting his claims.  *Id.* at 32.  Both of these proceedings were "initiated without probable cause and with malice," and both "terminated in the plaintiff's favor."

Similarly, Defendant MasMarques's failed attempt to secure a restraining order against Plaintiff in California was initiated without probable cause, as there was no threat to him whatsoever, and it terminated in Plaintiff's favor.  Opposing counsel suggests that the non-binding, factually erroneous, citationless, two-paragraph January 28, 2020 Order of the Superior Court of California for the County of Santa Clara forecloses any possibility of liability, but this is nonsense.  In addition to failing to cite any legal authority whatsoever, that Order also fails to cite a single piece of evidence that would suggest that Plaintiff threatened Defendant

MasMarques with violence, or that Defendant MasMarques was reasonably placed in fear of violence. That is because such events never transpired. The argument that "[t]he record likewise shows no wrongful or unlawful acts by Mr. MasMarques" is belied by Defendant MasMarques's false representation that Plaintiff had used a "gun or other weapon" against him. Taking Defendant MasMarques's explanation that "THIS INDIVIDUAL'S WEAPON IS HIS COMPUTER" literally, Plaintiff would have had to physically beat Defendant MasMarques with his laptop's aluminum frame for this to be true. Yet that also never took place, because Plaintiff was thousands of miles away from Defendant MasMarques at all relevant times and had never met him before. Nor are Plaintiff's purported "HACKING SKILLS" Defendant MasMarques also complained of on Form CH-100 tantamount to a "gun or other weapon."

Since Defendant MasMarques has refused to turn over his exact complaint to the CADMV in discovery, Plaintiff cannot properly respond to his attorney's argument about its propriety, but at all relevant times Plaintiff's mail was properly forwarded and he properly updated his mailing address with the CADMV within ten days of arriving in California at his new address, as required. The CADMV dismissed that proceeding, too, in Plaintiff's favor.

F.    **Count XII: A Jury Could Find Defendant MasMarques Liable for Conspiracy**

The FAC alleges that Defendant MasMarques conspired with Mediolex, Ltd., the Seychelles-domiciled and Latvia-based shell corporation that does business in the United States (and Massachusetts in particular) as the English-language website "ComplaintsBoard," to defame Plaintiff. Defendant MasMarques denies these allegations by pointing exclusively to ¶ 64 of his purported Statement of Undisputed Facts, which in turn depends on a non-denial of Plaintiff's allegations. Thus, Defendant MasMarques concedes that Plaintiff's allegations are true, and that he did conspire with the ComplaintsBoard Defendants to defame Plaintiff.

20

### G. Count XIII: A Jury Could Find Defendant MasMarques Liable for False Light Invasion of Privacy

This claim is derivative of Plaintiff's libel claim and thus turns upon whether Plaintiff has

adequately alleged facts to support libel. Since he has, Defendant MasMarques's motion fails as

to this Count. In addition, Defendant MasMarques has attempted for years to █████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

### H. Count XIV: A Jury Could Find Defendant MasMarques Liable for Intentional Infliction of Emotional Distress

Plaintiff has shown that Defendant MasMarques's conduct—a convicted killer

threatening to kill again by using the names of murderous mafia bosses as well as hundreds if not

thousands of fake on-line accounts and dozens of false government complaints to libel and harass

someone for nearly a decade—is "extreme and outrageous" and "goes beyond all possible

bounds of decency." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). Plaintiff's

distress does even not have to manifest in a physical form to be actionable.

> "Dr. Reily argues that Dyer has 'provided no evidence of any physical injury or symptom as a result of emotional distress.' *Id*. at 4. The 'scope of physical harm required to sustain a negligent infliction of emotional distress claim has `expanded [to a] range of symptoms that may provide the type of objective evidence to prove physical harm [including] symptoms that could be classified as more mental than physical.`` *Godette v. Stanley*, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) (alterations in original) (quoting *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 412 (2002)); *see Bresnahan*, 47 Mass. App. Ct. 278 at 282-83 (denying summary judgment where plaintiff alleged that her emotional distress manifested as uncontrollable crying spells, stomach pain, severe headaches, loss of concentration, depression, anger, anxiety, loss of sexual relationship and attendance at grief-counseling sessions)."

*Dyer v. Steward Carney Hospital, Inc., et al*, Case No. 17-cv-11452-DJC (D. Mass. October 5, 2021).

Despite these relaxed standards, Plaintiff's harm has undoubtedly been physical.  The additional years-long stress caused by Defendant MasMarques's relentless abuse and unlawful actions have been, in Plaintiff's view, a major contributing factor to these physical symptoms. So, although Plaintiff has not suffered from crying spells or depression, there is copious evidence of emotional distress in physical form. Plaintiff has also been required to document Defendant MasMarques's misconduct—a *monumental* task that should have been handled by criminal law enforcement. It is not an exaggeration to say that Defendant MasMarques has stolen nearly a decade of Plaintiff's life.

Plaintiff's fear of Defendant MasMarques and stress from worrying about his behavior is quite reasonable. Defendant MasMarques killed one of his last harassment victims, who reportedly filed multiple police reports about Defendant MasMarques before he broke into her house and caused her death. Plaintiff similarly filed multiple police reports in multiple jurisdictions, to no avail. He added an extra bolt to his front door. He began using a mail forwarding service to mask his home address. Plaintiff has further testified to a racing heart and elevated blood pressure when discovering posts (Transcript at 134:23-135:6), a credible fear that

FBI might arrive "with guns drawn" based on MasMarques's false complaints,[3] which MasMarques admits to having made to the FBI on more than one occasion, and loss of sleep due to the need to document MasMarques's unending posts for litigation purposes. *Id.* at 137. A jury could award substantial damages based on the objective reasonableness of Plaintiff's fear of a convicted, obsessed, and deranged killer.

## I.    Plaintiff Is Not Required To Prove Economic Damages and Punitive Damages Are Appropriate

Defendant MasMarques's libelous statements constitute libel per se under Massachusetts law because they accuse Plaintiff of criminal conduct, *e.g.* "fraudulent charity," "fraud," "extortion," etc. and injure Plaintiff in his profession. For libel per se, damages are presumed and no expert testimony or economic proof is required. The jury may award damages based on the nature and extent of publication.

To the extent that Plaintiff may be required to show damages for other claims, he has done so. Plaintiff has estimated that he spent approximately 1,375 hours defending himself from and responding to MasMarques's years-long campaign. ECF No. 216. At this point, Plaintiff has spent considerably more time just handling summary judgment alone. Plaintiff testified to a reasonable hourly rate of $750.00 per hour given his extensive experience as a software developer with legal knowledge that rivals or surpasses that of attorneys charging twice as much who do not have any computer skills. This is sufficient for a jury to calculate damages, and no damages expert is required given that Plaintiff's IRS Form W-2 shows that he paid himself a salary of nearly $1 million in 2018, equivalent to an hourly rate in the $450/hour range at

---

[3] One of Defendant MasMarques's obsessions of which Plaintiff is aware is the idea that Plaintiff should be involuntarily committed to a psychiatric institution, which is apparently something that Defendant MasMarques actually tried to make happen.

minimum.

In addition, Plaintiff incurred approximately $10,000 in attorney's fees and costs defending against Defendant MasMarques's application for a restraining order in California and the resulting nine frivolous and unconstitutional cross-Temporary Restraining Orders. The California court denied Plaintiff's request for these fees and costs based upon an incorrect factual and legal analysis that lacked citation to any precedent at all.

Punitive damages are appropriate here to deter future conduct and punish past conduct.

"'In determining whether the defendant's conduct was so outrageous or egregious that punitive damages [in a discrimination claim] are warranted, the fact finder should consider all of the factors surrounding the wrongful conduct' including: (1) whether there was a conscious or purposeful effort to demean or diminish the class of which the plaintiff is a part; (2) whether the defendant recklessly disregarded the likelihood of serious harm; (3) the nature of the defendant's conduct after learning that the initial conduct would likely cause harm; (4) the actual harm to the plaintiff; and (5) the duration of the wrongful conduct and any concealment of that conduct by the defendant. *Haddad*, 455 Mass. at 111."

*Santos v. United Network for Organ Sharing, et al*, Case No. 1:24-cv-11692-IT (D. Mass. September 15, 2025). Though this is not a discrimination case, there can be no question as to the fact that Defendant MasMarques's conduct, about which he has repeatedly lied to this Court under oath, is "outrageous."

## IV.    CONCLUSION

Out of Defendant MasMarques's 80 supposed uncontested facts, Plaintiff disputes 53, or roughly two out of every three statements. Not only does Plaintiff vehemently disagree that Defendant MasMarques's recounting of the facts of this case is accurate, but Plaintiff can point to specific, direct, documentary evidence of a different version of events. Defendant MasMarques asks this Court to ignore his conviction in Spain for the killing of Tatiana Vasic after harassing her and breaking into her home, not to mention his prior criminal history; twenty

categories of evidence linking him to thousands of defamatory posts; his repeated demonstrably false sworn statements, *e.g.* that he was never convicted of murder, that he has no social media accounts, that he published only one post, etc.; his death threats to Plaintiff via e-mail; his documented pattern of weaponizing legal process; a Massachusetts court finding no probable cause for his DARVO-inspired campaign of retribution; his willful disregard for this Court's prior orders, upheld by the United States Court of Appeals for the First Circuit; and Plaintiff's own reasonable fear of being killed by MasMarques or the law enforcement agencies he was trying to bring to Plaintiff's doorstep, who should have arrested him again long ago.

Genuine issues of material fact pervade every element of every claim. Either the Court should grant summary judgment based on Plaintiff's yet-to-be-presented list of undisputed facts, or a jury must resolve these factual disputes. The Court should emphatically deny MasMarques's motion and refer him to the United States Attorney's Office for criminal prosecution now that all of the evidence has been laid bare.

Some things may indeed deserve to be forgotten. The criminal career of Diego MasMarques, Jr. and its trail of innocent victims spanning the globe, women and men alike, are not among them. People are entitled to second chances—but not as they commit ever more crimes.

Dated: December 8, 2025                    Respectfully submitted,


Aaron Greenspan, *pro se*
440 N. Barranca Avenue #6720
Covina, CA 91723
Phone: +1 415 670 9350 x101
E-Mail: aaron.greenspan@plainsite.org

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on December 8, 2025 I filed the foregoing with the Clerk of Court

using the CM/ECF system to the following defendants and non-parties in this action:

Diego MasMarques, Jr.
Mediolex, Ltd.
Astrad, Ltd.
Sergei Igorevich Kudriavtsev
X Corp.


                                    Aaron Greenspan