## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**AARON GREENSPAN**,

     Plaintiff,

v.

**DIEGO MASMARQUES, JR. a/k/a DIEGO MAS HOWARD a/k/a RICKY MAS MARQUES a/k/a JACK JONES**, **SERGEI IGOREVICH KUDRIAVTSEV**, **MEDIOLEX, LTD.**, and **ASTRAD, LTD.**,

     Defendants.

Case No.: 1:23-cv-10134-DJC

## AMENDED DECLARATION OF AARON GREENSPAN IN SUPPORT OF OPPOSITION TO DEFENDANT DIEGO MASMARQUES, JR.'S MOTION FOR SUMMARY JUDGMENT

I, Aaron Greenspan, declare as follows:

1.     I am the plaintiff in this action. I am a resident of the State of California and am competent to testify. I make this declaration based on my personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2.     I incorporated Think Computer Foundation as a non-profit corporation in 2000 as a senior in high school. On August 10, 2001, the Internal Revenue Service granted Think Computer Foundation tax-exempt status under section 501(c)(3) of the Internal Revenue Code. In late 2011, Think Computer Foundation began supporting PlainSite's efforts to provide access to court records to the general public free of charge where possible.

3.     In my experience over a period of approximately 25 years since incorporating my own non-profit organization, I have not heard non-profit organizations commonly referred to as

1

"501c" organizations.  It is more accepted to explicitly specify the numeric sub-sub-section, typically (3) or (4), after the reference to section (c), since the different numbers refer to different types of non-profit organizations.

4.     I do not consider myself a public figure, and the question of whether I could even be considered a limited-purpose public figure is debatable.  I do not have and have never had a dedicated page in my name on the English-language version of Wikipedia.  As best as I can recall, a page on the Spanish-language version of Wikipedia in my name that existed years ago was deleted soon after it was created by an unknown third party on the basis that I was not prominent enough to merit a Wikipedia page.  As of today, the English-language version of Wikipedia redirects to the "Criticism of Facebook" page for the query "Aaron Greenspan".

5.     CourtListener is a website located at https://www.courtlistener.com that, like PlainSite, stores millions of court records.  In 2017 and thereafter, CourtListener stored records regarding Mr. MasMarques's criminal conviction in Spain.

6.     For a time, https://www.unitedstatescourts.org was a website that, like PlainSite, also stored a large number of court records.  It was run by an attorney, Jeffrey Steinport, who was targeted by Mr. MasMarques and consequently reported Mr. MasMarques to the Federal Bureau of Investigation.  As I recall, Mr. Steinport told me that he shut down his website in large part due to Mr. MasMarques's harassment.

7.     According to the official website of the European Union at https://european-union.europa.eu/principles-countries-history/eu-countries_en, Germany and Spain are part of the European Union, often abbreviated "EU".

8.     In late 2022, Elon Musk purchased the Twitter social media platform and renamed it X.  All references to Twitter also refer to X post-acquisition.

9. On December 20, 2017, Defendant MasMarques called Plaintiff at +1 415 670 9350 from a blocked telephone number, identified himself as Diego MasMarques, and requested that Plaintiff remove his name from PlainSite. Plaintiff told Defendant MasMarques that his conduct was unacceptable, that Plaintiff had already reported Defendant MasMarques to the police, and immediately ended the call. To the best of my knowledge, I did not receive any telephone call from Diego MasMarques, Jr. after the December 20, 2017 call in which Mr. MasMarques identified himself.

10. On June 13, 2018, I received two calls at +1 415 670 9350 from an unidentified male with a New York accent using blocked telephone number generally alleging that I owned the website leagle.com, was "hiding" behind registered agents, and threatening that I was "on very, very thin ice" and to "be careful".

11. Mr. MasMarques began posting about me on a website called "Blacklist Report" (formerly located at http://www.blacklistreport.com) in or around September 2017. When it was operational, the Blacklist Report website did not identify or otherwise verify the authors of posts unless the author decided to voluntarily include their name in a post and automatically watermarked all images posted. Posts on Blacklist Report were generally derogatory and critical, no matter the targeted individual. Many of the posts on Blacklist Report about me contained embedded images. The posts on Blacklist Report about me contained false statements intended to be interpreted as factual. Many of the posts about me and my family members on Blacklist Report contained images with similar-looking speech bubbles superimposed on photographs.

12. I believe Mr. MasMarques posted on the Blacklist Report website, as opposed to other websites, because he intended to remain anonymous.

3

13.     To the best of my knowledge, Mr. MasMarques began posting pseudonymously about me on a website called "ComplaintsBoard" (located at https://www.complaintsboard.com) in or around early 2018.

14.     The posts on ComplaintsBoard about me contained false statements intended to be interpreted as factual.  For example, I do not have and never have had any person working for me or any entity I control in Indonesia.  I also do not have and never have had any affiliation with a website called PDFSR.COM.

15.     In 2018, Think Computer Foundation's website was hosted on Think Computer Corporation's server, to which I have direct access.  The server logs from June 5, 2018 revealed that the first and only individual to access those URLs on that day did so from the IP address 24.60.59.25.

16.     According to the following result of the "whois" command:

```
% whois 24.60.59.25

% IANA WHOIS server
% for more information on IANA, visit http://www.iana.org
% This query returned 1 object

refer:        whois.arin.net

inetnum:      24.0.0.0 - 24.255.255.255
organisation: ARIN
status:       ALLOCATED

whois:        whois.arin.net

changed:      2001-05
source:       IANA

# whois.arin.net

NetRange:     24.60.0.0 - 24.63.255.255
CIDR:         24.60.0.0/14
NetName:      RW2-NORTHEAST-1
NetHandle:    NET-24-60-0-0-1
Parent:       NET24 (NET-24-0-0-0-0)
NetType:      Direct Allocation
OriginAS:
Organization: Comcast Cable Communications, LLC (CCCS)
RegDate:      2001-08-15
Updated:      2021-01-25
Ref:          https://rdap.arin.net/registry/ip/24.60.0.0

OrgName:      Comcast Cable Communications, LLC
OrgId:        CCCS
Address:      1800 Bishops Gate Blvd
City:         Mt Laurel
```

```
StateProv:        NJ
PostalCode:       08054
Country:          US
RegDate:          2001-09-18
Updated:          2020-11-18
Ref:              https://rdap.arin.net/registry/entity/CCCS

OrgAbuseHandle: NAPO-ARIN
OrgAbuseName:   Network Abuse and Policy Observance
OrgAbusePhone:  +1-888-565-4329
OrgAbuseEmail:  abuse@comcast.net
OrgAbuseRef:    https://rdap.arin.net/registry/entity/NAPO-ARIN

OrgTechHandle: IC161-ARIN
OrgTechName:   Comcast Cable Communications Inc
OrgTechPhone:  +1-856-792-2300
OrgTechEmail:  CNIPEO-Ip-registration@cable.comcast.com
OrgTechRef:    https://rdap.arin.net/registry/entity/IC161-ARIN

OrgRoutingHandle: ROUTI25-ARIN
OrgRoutingName:   Routing
OrgRoutingPhone:  +1-856-792-2300
OrgRoutingEmail:  routing@comcast.com
OrgRoutingRef:    https://rdap.arin.net/registry/entity/ROUTI25-ARIN
```

IP address 24.60.59.25 was and is registered to Comcast Cable Communications, LLC.

17.     In 2018, I suspected Mr. MasMarques was responsible for anonymous and/or pseudonymous posts on numerous websites despite the active temporary restraining order against him and contacted the Marlborough Police Department regarding Mr. MasMarques's unlawful activity.  Part of the reason that I was concerned enough to call the police was that Mr. MasMarques's posts seemed to be encouraging other individuals to post false and libelous statements about me on ComplaintsBoard and similar websites.  Numerous posts about me authored by other individuals contained composite pornographic images involving me and my family members and/or featured Nazi imagery.

18.     Mr. MasMarques frequently referred to my Jewish religion in his posts and once submitted a PlainSite "Contact Us" form that began with "Shalom my friends!"  "Shalom" is the Hebrew word for "Hello."

19.     I eventually learned that Mr. MasMarques communicated repeatedly with Matthew Mahgrefteh, an individual using the pseudonym "Amir Noy," who I believe was

responsible for the pornographic and/or Nazi-themed images based upon my analysis of fonts used in the images and other related factors.

20.     I made the decision to file for a restraining order on April 4, 2018, days after Mr. MasMarques submitted a PlainSite "Contact Us" form containing profanity in all capital letters—the latest in a string of threatening communications—and after being told by law enforcement in various jurisdictions that they could not take any legal action against Mr. MasMarques unless a restraining order was in place. The Form CH-100 filing fee was waived pursuant to California Code of Civil Procedure § 527.6(y) based on my accurate representation that there was a credible threat of violence against me.

21.     When I filed Form CH-100, I did not initially know Mr. MasMarques's home address, so I paid the Middlesex County Sheriff's Office to serve Mr. MasMarques, suggesting the address of 4512 Willow Trail, Marlborough, MA 01752 based on my research. The Middlesex County Sheriff's Office conducted an address search of their own and found a different match than the address I had suggested: 1 Walking Court, Apartment F, Medford, MA 02155. This turned out to be his father's address, which I did not know. Just in case, I sent the Sheriff's Office photographs of the correct person to serve, which they ignored.

22.     Mr. MasMarques's July 3, 2018 cross-request for a restraining order against me falsely represented that I owned a "gun or other weapon." On the basis of Mr. MasMarques's false representation about my purported ownership of a "gun or other weapon," his filing fee was also waived pursuant to California Code of Civil Procedure § 527.6(y).

23.     I have never owned a gun or other weapon within the meaning of California Code of Civil Procedure § 527.6.

24.     After Mr. MasMarques filed a complaint containing false allegations, the Office of the Attorney General of Ohio conducted an "investigation" into Think Computer Foundation while the PlainSite website openly criticized Donald Trump, a political ally of Ohio Attorney General Dave Yost.  During the "investigation," one of the "investigators" left after she decided to change units within the Office of the Attorney General of Ohio.  Another "investigator" could not read a balance sheet and suggested that Think Computer Foundation should have spent hundreds of thousands of dollars on Amazon Web Services (AWS) hosting for PlainSite instead of relying on Think Computer Corporation's assistance, which at the time only involved minimal costs during times of excessive bandwidth usage.  At the end of its "investigation," the Office of the Attorney General of Ohio chose not to file any charges of any kind and suggested the option of my shutting down Think Computer Foundation in order to re-incorporate in a different state.  Fearing further harassment from Mr. MasMarques and his followers, I chose to simply continue my work in a for-profit context that would be harder for others to baselessly attack.

25.     When I returned to the United States from international travel in June 2019, before Mr. MasMarques's cross-request for a restraining order before the Superior Court of California for the County of Santa Clara was ultimately denied, I was detained by United States Customs and Border Patrol at the airport on the basis of there being an active temporary restraining order against me due to Mr. MasMarques's frivolous cross-request for a restraining order, even though that temporary restraining order and its predecessors and successors were later found to be unconstitutional and void.  While I was detained, I was not free to leave the custody of the United States Customs and Border Patrol until they investigated the matter.  Eventually, I was released with no explanation.

26.     After Mr. MasMarques filed numerous complaints containing false allegations, on August 20, 2019, Think Computer Foundation was notified by the Internal Revenue Service that it had been "selected for an audit" for fiscal year 2018. The Internal Revenue Service audit of Think Computer Foundation found no issues.

27.     I later informed the Internal Revenue Service that Think Computer Foundation had been shut down, but due to its antiquated computer infrastructure, it ignored my repeated written notifications and erroneously added Think Computer Foundation to the "auto-revocation" list of Exempt Organizations that purportedly failed to file a required tax return for three years in a row in 2025. I informed the Internal Revenue Service about its compounded errors after the instant motion was filed and was told that Think Computer Foundation would be removed from the "auto-revocation" list. If and when I receive the promised letter to this effect, I will file it.

28.     Federal agencies such as the SEC make logs of the FOIA requests they receive available to the general public on a monthly basis. New SEC FOIA logs are made public after the end of the month they reflect.

29.     Once the June 2022 SEC FOIA log was made public it showed that only Mr. MasMarques, and no other person, had made a FOIA request with the SEC about me during that month. No other individual made a FOIA request specifically about me to any agency during the years 2021 or 2022 that I am aware of.

30.     I did not provide the California Department of Motor Vehicles ("CADMV") with a false address. My residential address was 500 Race Street, Apartment 4321, San Jose, CA 95126 from September 2016 through June 2018, at which point my lease ended and I decided to spend time visiting his family in Ohio for the summer. At the point when I left my residence in

California, my mail was properly forwarded to his family's home in Ohio and I did not know his next mailing address in California.

31. Section 4 of the California Driver's Handbook, available on-line at https://www.dmv.ca.gov/portal/file/california-driver-handbook-pdf/, states, "If you move, you must notify DMV of your new address within ten days" and further clarifies that the purpose is to ensure a proper "mailing address." I returned to California on September 5, 2018 and immediately moved into 956 Carolina Street, San Francisco, CA 94107. I updated my address with CADMV on September 11, 2018, within 10 days of moving to my new address within California.

32. In October 2019, I realized that I had not received the annual notification from CADMV providing the requisite information necessary to renew my vehicle registration. Nor was I able to renew my vehicle registration on-line or at a kiosk when I attempted to nonetheless.

33. The Twitter feature to reset a user's password previously disclosed a redacted form of the user's e-mail address, if available, where each redacted character in the e-mail address was replaced by an asterisk.

34. The woman with blonde hair depicted in the first part of the aforementioned thread was not the account owner of @Giza299792458N, but a pornographic actress whose photograph had been appropriated from another website.

35. In or around June 2025, after Mr. MasMarques engaged Ashley Andrade on or around May 6, 2025 as counsel, and after I repeatedly raised the issue of Mr. MasMarques's libelous attacks on social media, I noticed that the Twitter account @x13757 stopped posting.

36. I am capable of earning roughly $1 million per year at least.

37.     Mr. MasMarques has required me to spend a significant amount of time documenting and defending against his conduct each year since 2017.

38.     I believe Mr. MasMarques's conduct has affected my health in a negative manner through the increase in stress it has caused over a period of years.

39.     ███████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████ Opposing counsel recognizes the privacy concerns at issue as she agreed to redact ████████████████ where it has arisen in this litigation.

40.     As Exhibit A, I have filed at ECF No. 269-2 true and correct copies, to the extent that any single true and correct copy of each digital article exists as described in my December 13, 2025 declaration, of Spanish-to-English Google Translate-translated and where possible the original Spanish versions of articles from Spanish-language newspapers *Última Hora* and *Periodico de Ibiza y Formentera* about crimes committed by Diego MasMarques, Jr., then known as Diego Mas Howard, in the region of Palma de Mallorca, Spain from 1997-1999. I archived some of these articles many years ago in PDF format, but only in English, before some were removed by the publisher, I believe at Mr. MasMarques's request. These versions of the articles, made using earlier versions of Google Translate, were provided to Mr. MasMarques's counsel as part of discovery. When I attempted to find the original Spanish versions in

preparation for my opposition to this motion to allay any concerns about translation, I found that many had been removed, but some were still available via the Internet Archive. Where necessary, I have standardized formatting to eliminate obstructions preventing the legibility of text from internet advertisements and programming errors affecting print rendering.

41.    As Exhibit B, I have filed at ECF No. 266-2 true and correct copies of the PlainSite home page at https://www.plainsite.org, the PlainSite "About" page, and the PlainSite "Contact Us" page, all of which are substantially similar to their respective versions from 2018-2023.

42.    As Exhibit C, I have filed at ECF No. 266-3 a true and correct copy of the PlainSite docket page for *USA v. MasMarques*, Case No. 1:09-cr-10304-MLW (D. Mass. *filed* October 15, 2009).

43.    As Exhibit D, I have filed at ECF No. 266-4 true and correct copies of the current Wikipedia pages for Liborio Bellomo and Vincent Gigante.

44.    As Exhibit E, I have filed at ECF No. 266-5 true and correct copies of requests submitted via e-mail and the PlainSite "Contact Us" form from Diego MasMarques, Jr. using a variety of aliases.

45.    As Exhibit F, I have lodged with the Court and the Court has filed under seal at ECF No. 266-15 true and correct copies of posts from Blacklist Report and/or cached Google search results therefrom that evidence indicates were posted by Diego MasMarques, Jr.

46.    As Exhibit G, I have lodged with the Court and the Court has filed under seal at ECF No. 266-16 true and correct copies of posts from ComplaintsBoard that evidence indicates were posted by Diego MasMarques, Jr.

47.     As Exhibit H, I have filed at ECF No. 266-8 true and correct copies of posts from Twitter/X that evidence indicates were posted by Diego MasMarques, Jr. from the accounts @badbadwebsites, @R62607249, @Giza299792458N, @diegomasmarque5, @Witchestoday, and @x13757.

48.     As Exhibit I, I have lodged with the Court and the Court has filed under seal at ECF No. 266-17 true and correct copies of posts from Reddit that evidence indicates were posted by Diego MasMarques, Jr. from the accounts 198412345, ManufacturerFast7523, AdPlenty5728 and Ok-Exercise-3238.

49.     As Exhibit J, I have filed at ECF No. 266-10 a true and correct copy of a technical resource explaining that the default location for user folders on Mac OS computers is represented by the text "/Users/" followed by the user name.

50.     As Exhibit K, I have filed at ECF No. 266-11 a true and correct copy of the SEC FOIA Logs page as of July 13, 2022 according to the Internet Archive's "Wayback Machine," showing that the June 2022 SEC FOIA log was not yet available to the public as of July 6, 2022.

51.     As Exhibit L, I have filed at ECF No. 266-12 a true and correct copy of relevant excerpts from the transcript of my August 19, 2025 deposition in this action which took place in Boston, Massachusetts.

52.     As Exhibit M, I have lodged with the Court and the Court has filed under seal at ECF No. 266-18 a true and correct copy of ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ .

I declare under penalty of perjury under the laws of the United States that the above statements are true and correct and that this declaration was executed on December 14, 2025 in Shaker Heights, Ohio.

Dated: December 14, 2025        Respectfully submitted,

Aaron Greenspan, *pro se*
440 N. Barranca Avenue #6720
Covina, CA 91723
Phone: +1 415 670 9350 x101
E-Mail: aaron.greenspan@plainsite.org

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on December 14, 2025 I filed the foregoing with the Clerk of Court

using the CM/ECF system to the following defendants and non-parties in this action:

Diego MasMarques, Jr.
Mediolex, Ltd.
Astrad, Ltd.
Sergei Igorevich Kudriavtsev
X Corp.


           _____
           Aaron Greenspan