# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**AARON GREENSPAN**,

     Plaintiff,

  v.

**DIEGO MASMARQUES, JR. a/k/a DIEGO MAS HOWARD a/k/a RICKY MAS MARQUES a/k/a JACK JONES**, **SERGEI IGOREVICH KUDRIAVTSEV**, **MEDIOLEX, LTD.**, and **ASTRAD, LTD.**,

     Defendants.

Case No.: 1:23-cv-10134-DJC

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT DIEGO MASMARQUES, JR.</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 4

III.  ARGUMENT ....................................................................................................... 5

      A.   Legal Standard ........................................................................................... 5

      B.   Count I: No Genuine Dispute of Material Fact Exists Concerning Libel Per Se ... 6

           1.   Diego MasMarques, Jr. Is Connected To The Statements At Issue By His
                Own Admissions, His IP Address, His Mac OS Username, His E-Mail
                Addresses, and More Than a Dozen Other Factors ................................... 6

           2.   Plaintiff Is Not a Public Figure ................................................................. 9

           3.   The Statements At Issue Were Made With Actual Malice ...................... 10

           4.   Plaintiff Has Proven Falsity ................................................................... 12

      C.   Count IV: No Genuine Dispute of Material Fact Exists Concerning Abuse of
           Process ....................................................................................................... 15

      D.   Count V: No Genuine Dispute of Material Fact Exists Concerning Malicious
           Prosecution ................................................................................................. 18

      E.   Count XII: No Genuine Dispute of Material Fact Exists Concerning
           Conspiracy ................................................................................................. 20

      F.   Count XIII: No Genuine Dispute of Material Fact Exists Concerning False Light
           Invasion of Privacy ..................................................................................... 21

      G.   Count XIV: No Genuine Dispute of Material Fact Exists Concerning Intentional
           Infliction of Emotional Distress .................................................................. 22

      H.   Plaintiff Is Not Required To Prove Economic Damages and Punitive Damages
           Are Appropriate .......................................................................................... 24

IV.   CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

*Agis v. Howard Johnson Co.*,
     371 Mass. 140, 144-45 (1976) ................................................................................. 22

*Albright v. Morton*,
     321 F. Supp. 2d 130, 140 (D. Mass. 2004) .............................................................. 21

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242, 249-50, 106 S.Ct. at 2511 (1986) ....................................................... 6

*Bratt v. Int'l Business Mach. Corp.*,
     392 Mass. 508, 467 N.E.2d 126 (1984) ................................................................... 21

*Bresnahan v. McAuliffe*,
   47 Mass.App.Ct. 278, 282-283, 712 N.E.2d 1173, 1178 (1999) ............................................ 22

*Calero-Cerezo v. U.S. Dep't. of Justice*,
   355 F.3d 6, 19 (1st Cir. 2004) .................................................................................................. 5

*Carroll v. Xerox Corp.*,
   294 F.3d 231, 236 (1st Cir. 2002) ............................................................................................ 5

*Cocroft v. Smith*,
   Case No. 4:10-cv-40257-TSH (D. Mass. March 29, 2013) ...................................................... 5

*DeNovellis v. Shalala*,
   124 F. 3d 298, 306 (1st Cir. 1997) ........................................................................................... 6

*Diego Mas Marques v. Aaron Jacob Greenspan*,
   Case No. 1981CV02204 ......................................................................................................... 19

*Diego MasMarques v. Aaron J. Greenspan*,
   Case No. 1921AC000120 ........................................................................................................ 19

*Dubois v. U.S. Dept. of Agriculture*,
   102 F.3d 1273, 1284 (1996) ..................................................................................................... 6

*Dyer v. Steward Carney Hospital, Inc., et al*,
   Case No. 17-cv-11452-DJC (D. Mass. October 5, 2021) ....................................................... 22

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323, 345, 94 S.Ct. 2997 (1974) ................................................................................. 9

*Godette v. Stanley*,
   490 F. Supp. 2d 72, 81 (D. Mass. 2007) ............................................................................... 22

*Gutierrez v. Mass. Bay Transp. Auth.*,
   437 Mass. 396, 412 (2002) ..................................................................................................... 22

*Haddad v. Wal-Mart Stores, Inc.*,
   455 Mass. 91, 111, 914 N.E.2d 59 (2009) .............................................................................. 25

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657, 665, 667-68, 109 S.Ct. 2678 (1989) ................................................................ 10

*Iantosca v. Benistar Admin. Servs., Inc.*,
   738 F.Supp.2d 212 (D. Mass. 2010) ...................................................................................... 15

*Levesque v. Doocy*,
   560 F.3d 82, 90 (1st Cir. 2009) .............................................................................................. 10

*McMann v. Doe*,
   460 F. Supp. 2d 259, 261 (D. Mass. 2006) ............................................................................. 7

*Nadeau v. State*,
   395 A.2d 107, 116 (Me.1978) ................................................................................................ 18

*Pendleton v. City of Haverhill*,
   156 F. 3d 57, 67 (1st Cir. 1998) .............................................................................................. 9

*Psy-Ed Corp. v. Klein*,
    459 Mass. 697, 713 (2011) ............................................................................. 16

*Scott v. Harris*,
    550 U.S. 372, 127 S.Ct. 1769, 1776 (2007) ....................................................... 6

*Sensing v. Outback Steakhouse of Florida, LLC*,
    575 F.3d 145, 152 (1st Cir. 2009) .................................................................... 5

*Simon v. Navon*,
    71 F. 3d 9, 15 (1st Cir. 1995) ......................................................................... 15

*Sindi v. El-Moslimany*,
    896 F. 3d 1, 16 (1st Cir. 2018) ....................................................................... 10

*Tower v. Hirschhorn*,
    397 Mass. 581, 586-87, 492 N.E.2d 728 (1986) .............................................. 21

*United States of America et al v. Ukrainian Village Pharmacy, Inc. et al*,
    Case No. 1:09-cv-07891 (N.D. Illinois *filed* December 21, 2009) ...................... 14

*USA v. Jahanrakhshan*,
    Case No. 3:17-cr-00414-N (N.D. Tex. *filed* August 8, 2017) ............................ 16

*USA v. MasMarques*,
    Case No. 1:09-cr-10304-MLW (D. Mass. *filed* October 15, 2009) ..................... 15

*USA v. MasMarques*,
    Case No. 1:09-cv-10304-MLW (D. Mass. September 22, 2015) .......................... 17

*Vascular Solutions, Inc. v. Marine Polymer Tech., Inc.*,
    590 F.3d 56, 61 (1st Cir. 2009) ...................................................................... 10

*Viken Detection Corp., et al v. Doe*,
    Case No. 1:19-cv-12034-NMG (D. Mass October 17, 2019) ................................ 7

**Statutes**

18 U.S.C. § 1111 ................................................................................................... 2

California Code of Civil Procedure § 527.6(y) ....................................................... 17

Mass. Gen. Laws c. 214 § 1B ............................................................................... 21

**Rules**

Federal Rule of Civil Procedure 56(c) .................................................................... 5

<u>**MEMORANDUM OF LAW**</u>

## I.     INTRODUCTION

This is a lawsuit about the right to be forgotten—a concept that has gained some traction in Europe, but not the United States of America.  One reason for the discrepancy in legal doctrines is the American fear of the worst-case scenario: the hypothetical murderer who wants to be "forgotten" and is thus enabled to keep committing crimes that might have been prevented.

In this action, the most terrifying hypothetical case is made real.  Diego MasMarques, Jr., a brilliant American citizen with dual citizenship in Germany and a Spanish passport, committed a rash of violent crimes against numerous women in the Boston area and in Miami, Florida in the late 1980s.  He thus skipped town to evade an appearance at a criminal trial, moving to Germany where his eponymous father lived and worked.  From Germany, he moved to Spain, where he almost killed a man he saw dating one of his ex-girlfriends with his car and was accordingly charged with and convicted of a misdemeanor.  Undeterred, he embarked on a new relationship with a Yugoslavian woman named Tatiana Vasic who was so concerned by his erratic behavior shortly after they began dating that she recommended he see a psychologist, broke up with him, changed her locks, and filed multiple complaints with law enforcement in Spain because she feared for her and her unborn child's life.  With a knack for bureaucracy, possibly on account of having a mother who worked for the federal government for decades (including but not limited to working in Naval intelligence), Defendant MasMarques attempted to get the police in Spain to expunge the reports about him.  They did not.  So he hired a locksmith to change the locks back, broke into his ex-girlfriend's home, and during a fight, injured her so seriously that she fell into a coma and died.  Despite chalking up her death to an accident, MasMarques was convicted of "homocidio" and a breaking-and-entering crime by a jury in Spain pursuant to Spanish law,

which he says is not "murder" to anyone who will listen. Yet the United States Department of Justice disagreed, and in the process of handling the paperwork when MasMarques wanted to serve his time here instead, they equated his most serious crime to 18 U.S.C. § 1111: "Murder". It thus follows that Diego MasMarques, Jr. is fairly characterized as a convicted murderer.

He does not see it that way. Since being let out of federal prison and enduring a traffic stop that dredged up his criminal record, Defendant MasMarques has been on an obsessive quest to erase all records of his countless crimes from the physical and the digital world, displaying not an ounce of remorse. To the contrary, he has threatened to kill again over the very fact that it is public record that he killed someone in the past. In response, criminal law enforcement agencies on the state and federal levels, very much aware of the situation, have done nothing.

This civil action is thus the result of one private party attempting to defend himself against Defendant Diego MasMarques, Jr.'s sustained libel and harassment campaign toward *numerous* proprietors of websites that maintain court records, at least one of whom gave up on account of MasMarques's determined, multi-modal harassment. Plaintiff Aaron Greenspan operates PlainSite (https://www.plainsite.org), a website that maintains a database of approximately 18 million federal and state dockets, several of which correspond to Defendant MasMarques's criminal records. When Plaintiff refused to remove MasMarques's public records on PlainSite in the process of handling one of the roughly 25,000 privacy requests that have been submitted to PlainSite over 15 years, Defendant MasMarques expanded his multi-year quest to hide evidence of his conviction and related criminal history across the entire internet to target Plaintiff *personally*. Defendant MasMarques is unparalleled in his drive and willingness to threaten violence to attempt to undo centuries of jurisprudence surrounding public records.

In his interactions with Plaintiff, Defendant MasMarques has consistently employed a tactic referred to as DARVO: Deny And Reverse Victim and Offender.  This strategy has been somewhat, but not entirely, effective at confusing prosecutors and judges in multiple jurisdictions, who have prolonged what should have been an open-and-shut case that never should have extended beyond 2018.  When Plaintiff applied for a restraining order against Defendant MasMarques because MasMarques sent him death threats in the names of murderous mob bosses, MasMarques responded by filing for a *counter*-restraining order and attending court hearings with a pointless one-man security detail, as though it were Plaintiff who had been convicted of a violent crime and making threats all along.  When Plaintiff filed for criminal charges against MasMarques for violating the restraining order that was ultimately granted, MasMarques applied for criminal charges against Plaintiff, with no legal basis whatsoever.

Although Defendant MasMarques habitually denies responsibility for his acts or claims not to remember what he has done, there is overwhelming competent evidence that Defendant MasMarques is directly responsible for a campaign of libel and harassment that has had a profound and negative impact on Plaintiff's life.  There are no genuine disputes as to material facts here, only disproven conspiracy theories and "beliefs" espoused by a fabulist and pathological liar underlying manufactured issues dreamt up by his attorney—MasMarques's at least eighth in this dispute with Plaintiff alone, and at least thirteenth overall.  Defendant MasMarques's conduct in pursuit of Plaintiff here echoes the descriptions of the Spanish newspaper articles from 25 years ago that he has desperately attempted to hide along with the rest of his grim history, describing a man who is at once "insatiable and very vengeful."

## II.    FACTUAL BACKGROUND

After this Court refused to seal his criminal case, Defendant MasMarques first contacted Plaintiff using the alias "Vincent Bellomo" on July 20, 2016, one of many aliases he has used over a period of years. Plaintiff filed for a restraining order against Defendant MasMarques in the Superior Court of California for the County of Santa Clara on April 4, 2018. The restraining order was granted on August 30, 2019 and was valid for two years, but proved ineffective.

Plaintiff filed this action on January 20, 2023 (ECF No. 1) and filed the operative First Amended Complaint (the "FAC" at ECF No. 54) on July 25, 2023. Defendant MasMarques moved to dismiss on August 21, 2023. ECF No. 66. His motion to dismiss was granted in part and denied in part on March 25, 2024. ECF No. 118. Defendant MasMarques filed an Amended Answer for the first time complying with the Federal Rules of Civil Procedure on May 17, 2025, more than a year later. ECF No. 178. Plaintiff subpoenaed two non-parties for records pertaining to Defendant MasMarques's creation of fake accounts: former Defendant Mediolex, Ltd., an alter-ego of former Defendant Sergei Igorevich Kudriavtsev—who consented to this Court's jurisdiction in his Answer at ECF No. 56 at 2—and X Corp., the entity formerly responsible for operation of the Twitter social network (later renamed X). Neither entity responded to Plaintiff's valid subpoenas. Plaintiff thus filed motions for leave for alternative service on Mediolex, Ltd. and to compel compliance as to X Corp. ECF Nos. 194, 209. Plaintiff also served Defendant MasMarques with written discovery requests, to which Defendant MasMarques provided false and misleading responses that contradicted his prior testimony before the Superior Court of California for the County of Santa Clara. ECF Nos. 1-6, 237 and attachments. Plaintiff filed motions to compel truthful responses to those requests as well. ECF Nos. 179, 237. Magistrate Judge Jennifer C. Boal granted the first motion to compel in part, issued orders denying relief as to the subpoenas, and largely denied the second motion to

compel. ECF Nos. 200, 203, 229, 251. Plaintiff filed timely objections pursuant to Federal Rule of Civil Procedure 72(a) as to the last three of these orders.[1] ECF Nos. 211, 235, 260. As of the date of this document's filing, no United States District Judge ever ruled on Plaintiff's Objections. Therefore, although written discovery formally closed on August 29, 2025 pursuant to the written Scheduling Order at ECF No. 170, there remain three outstanding discovery-related motions and one outstanding motion for sanctions. For this reason, Plaintiff filed a motion to alter the Scheduling Order on December 10, 2025. ECF No. 267. This too was not ruled upon. Plaintiff objects to the Court's declination to rule on these material filings.

## III.    ARGUMENT

### A.    Legal Standard

"Summary Judgment is appropriate where, 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). 'A `genuine` issue is one that could be resolved in favor of either party, and a `material fact` is one that has the potential of affecting the outcome of the case.' *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004))." *Cocroft v. Smith*, Case No. 4:10-cv-40257-TSH (D. Mass. March 29, 2013) (quotation marks corrected).

"Like the district court, in deciding a summary judgment motion we are obliged to view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in

---

[1] Plaintiff also filed a fourth objection regarding Magistrate Judge Boal's denial of a motion for Rule 11 sanctions against Defendant MasMarques and his counsel, who used an erroneous citation in an improper context to exaggerate Plaintiff's litigiousness.

that party's favor. *Dubois*, 102 F.3d at 1284. The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.' *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citation omitted)." *DeNovellis v. Shalala*, 124 F. 3d 298, 306 (1st Cir. 1997).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007).

**B.      Count I: No Genuine Dispute of Material Fact Exists Concerning Libel Per Se**

Defendant MasMarques authored thousands of posts about Plaintiff over a period of years, only some of which are cited in the FAC as examples since an exhaustive enumeration of his false statements would be impractical and unnecessary. Plaintiff disclosed over 6,000 pages of painstakingly-assembled documents to Defendant MasMarques's counsel, most of which were posts on various gripe sites and social media platforms. A jury could find Defendant MasMarques liable for libel.

**1.      Diego MasMarques, Jr. Is Connected To The Statements At Issue By Competent Evidence: His IP Address, His Mac OS Username, His E-Mail Addresses, His Own Admissions and More Than a Dozen Other Factors**

"To establish a defamation claim under Massachusetts law, four elements are required: (1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either

6

caused the plaintiff economic loss ... or is actionable without proof of economic loss.' *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 782 N.E.2d 508, 510-11 (2003)." *Shay v. Walters*, 702 F. 3d 76, 81 (1st Cir. 2012).

The undisputed record contains overwhelming competent evidence that Defendant MasMarques is directly responsible for the publication of thousands of posts libeling Plaintiff. "Issuing subpoenas to reveal the identity of the individual behind an IP address is prevalent in litigation surrounding copyright infringement as a result of illegally downloaded media (*citations omitted*)… It also occurs in the context of online defamation. *McMann v. Doe*, 460 F. Supp. 2d 259, 261 (D. Mass. 2006)." *Viken Detection Corp., et al v. Doe*, Case No. 1:19-cv-12034-NMG (D. Mass October 17, 2019). A subpoena was issued here and it came back identifying "MARY MASMARQUES" at Defendant MasMarques's home address as the registered subscriber of the "High Speed Internet Service" subscription in question, which had been used to post on the ComplaintsBoard gripe site.[2] ECF No. 54-3 at 2. *See also* FAC ¶¶ 74-77.

Defendant MasMarques does not deny that the IP address was his or that he has posted on ComplaintsBoard. He simply claims—after changing his story—to have only posted once *elsewhere* on ComplaintsBoard. *Compare* ECF No. 237-2 at 6 ("While I have looked at posts on ComplaintsBoard, I have never posted anything on the site myself") to ECF No. 237-3 at 3 ("I uploaded or shared a link to publicly available documents on what I believe was ComplaintsBoard"). This—and that fact in 2019 that Plaintiff recorded the ComplaintsBoard website confirming that more than one of Defendant MasMarques's e-mail addresses was already registered with the site—proves only that MasMarques had *multiple* ComplaintsBoard

---

[2] There is no dispute as to the fact that at all relevant times, Mary MasMarques was Defendant MasMarques's wife who shared a home, computer, and internet connection with Defendant MasMarques. *See* Answer to Interrogatory No. 7, ECF No. 237-2 at 7.

accounts, not none.  ECF No. 237-9 at 2-3.  *See also* ECF Nos. 237-2 at 9, 266-5 at 70 (disclosing e-mail addresses registered on ComplaintsBoard in 2019 and evasive discovery response).  Given that the ComplaintsBoard website never required an account to view posts, the only conceivable reason for having multiple accounts was to post pseudonymously under more than one alias, consistent with the pattern that Plaintiff witnessed and reported to law enforcement.  ECF No. 274-3 at 2-8.

    In addition to covering his tracks poorly on ComplaintsBoard, Defendant MasMarques also failed to cover his tracks on social media and various gripe sites.  As was established before the Superior Court of California for the County of Santa Clara, his Mac OS username appeared by accident in a libelous post on Blacklist Report, as did the name of his former probation officer Lisa Dubé.  ECF No. 1-6 at 245:5-12, 73:14-74:17.  To this day, Twitter (now X) confirms that one of Defendant MasMarques's disclosed e-mail addresses is registered to an active account.  ECF No. 237-1 at 3-4.  *See also* ECF Nos. 237-6 at 2, 274-2 at 1.

    Thanks to Defendant MasMarques's remarkable consistency, the same false and libelous statements about Plaintiff written in the same quirky style appeared all across the internet.  To distance himself from this inconvenient reality, Defendant MasMarques began by insisting that he has never used social media.  Now, that blanket denial has been walked back.  Defendant MasMarques no longer denies that he has *ever* used social media, including but not limited to Twitter.[3]  Defendant MasMarques merely "maintains" that "I do not have or use any social media accounts," as of the very moment his declaration was signed on September 26, 2025.  ECF No. 257-2 ¶ 56.  *See also* ECF No. 257-3 at ¶ 72.  Even this limited denial is false, and provably so, as Twitter/X confirmed that "56546@protonmail.com" is associated with an active user

---

[3] There is no dispute as to the fact that "social media" includes Twitter.  ECF No. 1-6 at 335:5-8.

account as of December 18, 2025, months after that declaration was signed claiming otherwise.

ECF No. 237-1 at 3-4.  Then, as of July 6, 2022, someone with Defendant MasMarques's writing

style—and whose schedule of speaking to specific law enforcement agencies was consistent with

the schedule MasMarques disclosed in discovery—posted on a Twitter account about a ***not-yet-***

***public*** Freedom of Information Act request concerning Plaintiff.  ECF No. 266-8 at 74.  Plaintiff

obtained a copy.  ECF No. 54-5 at was 35-36.  It was filed by Defendant MasMarques.  *Id*.

### 2.      Plaintiff Is Not a Public Figure

Plaintiff is not a public figure and was not a public figure at all relevant times.  Whether

or not the designation applies to Plaintiff is moot, however, because the evidence that Defendant

MasMarques acted with "reckless disregard for the truth," or malice, is so overwhelming.

Public figure analysis is subjective and complex.  Historically, the Supreme Court has

employed a

> "defamation model that ties the constitutionally required showing in a defamation
> action to the plaintiff's status.  It contemplated that 'public figure' status usually
> would arise in one of two ways: (1) when persons 'assume[] roles of especial
> prominence in the affairs of society,' perhaps by occupying positions of 'persuasive
> power and influence,' or (2) when persons 'thrust themselves to the forefront of
> particular public controversies in order to influence the resolution of the issues
> involved.' *Gertz*, 418 U.S. at 345, 94 S.Ct. 2997.  The Court noted, however, that
> not all public figures are equal: an individual who achieves 'pervasive fame or
> notoriety,' or otherwise comes within the first category, is deemed a public figure
> for all purposes, whereas an individual who dives headfirst into troubled waters, or
> otherwise comes within the second category, 'becomes a public figure only for a
> limited range of issues.' *Id*. at 351, 94 S.Ct. 2997.  That range is identified 'by
> looking to the nature and extent of an individual's participation in the particular
> controversy giving rise to the defamation.' *Id*. at 352, 94 S.Ct. 2997" (footnotes
> omitted).

*Pendleton v. City of Haverhill*, 156 F. 3d 57, 67 (1st Cir. 1998).  Plaintiff has no "especial

prominence in the affairs of society" and occupies no position of "persuasive power and

influence."  When this lawsuit was filed, the average American had never heard of Plaintiff and

even today, most still have not.  Thus, at most, Plaintiff would be a limited-purpose public figure, but not for any purpose associated with this action.  Oddly, there is no "particular controversy" giving rise to the defamation here as it is widely accepted, Defendant MasMarques's beliefs aside, that public records are public.  It is therefore difficult to argue that Plaintiff "thrust [himself] to the forefront of [a] particular public controvers[y] in order to influence the resolution of the issues involved," because those issues were resolved hundreds of years ago.  Thus, Plaintiff does not need to show malice, but nonetheless, he can.

### 3.     The Statements At Issue Were Made With Actual Malice

"The question reduces, then, to whether the statements were made with actual malice, that is, either with knowledge of their falsity or with a reckless disregard for the truth." *Sindi v. El-Moslimany*, 896 F. 3d 1, 16 (1st Cir. 2018).  Defendant MasMarques has consistently acted with reckless disregard for the truth.  "[A]ctual malice 'may be found where a publisher fabricates an account, makes inherently improbable allegations, relies on a source where there is an obvious reason to doubt its veracity, or deliberately ignores evidence that calls into question his published statements.' *Levesque*, 560 F.3d at 90.  Although motive alone cannot suffice to prove actual malice, it is a highly relevant consideration. *See Connaughton*, 491 U.S. at 665, 667-68, 109 S.Ct. 2678; *Vascular Sols.*, 590 F.3d at 61." *Id*.

Defendant MasMarques repeatedly fabricated stories, made inherently improbable allegations, and consistently ignored evidence that called into question his published statements. Even in Defendant MasMarques's Declaration in support of the instant motion, there are fabrications.  For example, ¶ 23 of his Declaration states, "On or about March 28, 2018, I contacted Plaintiff directly through the phone number listed on plainsite.org and told him that if he did not stop the harassment, I will have no choice but to take legal action and Plaintiff hung

up." Yet Plaintiff received no such call on March 28, 2018, or ever. The only call Plaintiff received from Defendant MasMarques where Defendant MasMarques actually identified himself took place on December 20, 2017 at 4:31 P.M. Pacific Standard Time, and that call did not involve any request by Defendant MasMarques because as soon as he stated his name Plaintiff responded by saying that he had reported him to the police, that his conduct was unacceptable, and that he was ending the conversation—at which point Plaintiff hung up. ECF No. 270 ¶ 9. Moreover, Defendant MasMarques could not have contacted Plaintiff directly "through the phone number listed on plainsite.org" Contact Us page because as of March 2018, no such "phone number" was "listed" on the page. ECF No. 266-2 at 4-5. Defendant MasMarques had the opportunity to provide the existence of this supposed March 28, 2018 telephonic warning in discovery, yet zero documents validate that the call he fabricated ever took place.

Defendant MasMarques repeatedly accused Plaintiff and Plaintiff's family members of running a "fraudulent charity" and accused Plaintiff of "fraud." ECF No. 54-5. Yet in 2019, the Internal Revenue Service conducted an in-depth audit of Think Computer Foundation and found no wrongdoing. ECF No. 274-4 at 2. Even the partisan, January 6, 2021-insurrection-supporting Office of the Ohio Attorney General investigated Think Computer Foundation for years as PlainSite criticized Donald Trump openly on its home page and filed no civil or criminal charges as a result, simply suggesting to Plaintiff that the non-profit would be best incorporated elsewhere. ECF No. 258-1 at 39. This is not "tax fraud." Despite knowing his allegations were investigated and found baseless, MasMarques continued making them knowing they were false.

Defendant MasMarques also repeatedly claimed that Plaintiff owns or created the legal records website leagle.com—another one of MasMarques's targets for relentless harassment. Before the Superior Court of California for Santa Clara County, Plaintiff told Defendant

MasMarques whom he believed owned that site. ECF 1-6 at 112:11-13. In 2021, Defendant MasMarques then admitted in an e-mail to his former probation officer that he only believed that there was a "high possibility" that Plaintiff owned leagle.com. ECF No. 237-10 at 15. Yet MasMarques continued making the false claim on social media and to government agencies regardless, again recklessly disregarding the truth to falsely accuse Plaintiff of wrongdoing.

Reckless disregard for the truth is also evident from Defendant MasMarques's constantly-shifting story in his limited responses to Plaintiff's discovery requests. Again and again, Defendant MasMarques was forced to amend his Answer and discovery responses because they conflicted with each other and with his earlier testimony in California. ECF Nos. 178, 237-3, 237-4, 237-6, 237-8. When Plaintiff asked if he had ever posted on ComplaintsBoard, Defendant MasMarques initially denied it. Then, after Plaintiff filed a motion to compel, he "remembered" that he had posted just once, but refused to identify the account he used to make the post. Similarly, for months, Attorney Andrade insisted that her client had never used social media. Now, her declaration and the Statement of Uncontested Facts based thereupon is far more careful, noting that Defendant MasMarques merely "maintains" that he does not use social media. Most recently, Attorney Andrade insisted that Defendant MasMarques never had a landline telephone number at his house, which he why he did not disclose it in discovery after being ordered to by the Court. ECF No. 251 at 5-6. The only problem is that his landline telephone number, "774-843-2996," is part of the operative complaint. ECF No. 54-3 at 2. Reckless disregard for the truth has pervaded this litigation.

### 4.    Plaintiff Has Proven Falsity

On May 11, 2021, the Twitter account @Giza299792458N posted, "I too am a victim for many years of Aaron Greenspan." FAC ¶ 93 depicts an October 26, 2021 thread from that

account containing an image of woman captioned by the text (as though she is speaking),

> "Aaron Greenspan is a complete meddling little be***h. This creep uploaded my employer's address, phone number, other personal identifying info online. Can a doctor plead *[sic]* put this creep exactly where he belongs! In a Psychiatric Facility. The sooner the better for all of humanity[.]"

The following paragraph, FAC ¶ 94, points out that the image of the woman is not the account owner, but an actress in a pornographic video. On July 5, 2022, the same @Giza299792458N Twitter account published a post stating with regard to Plaintiff, "FOIA requests have also been sent out and there is lots of great information." In fact, seventeen days prior, according to Freedom of Information Act ("FOIA") request logs from the United States Securities and Exchange Commission, as well as the request itself, "Mr Diego Mas Marques" filed FOIA Request No. 22-02308-FOIA dated June 19, 2022 on the subject of "Aaron Jacob Greenspan/Think Computer Corporation/Think Computer Foundation". ECF No. 54-5 at 35-36. No other individual filed any FOIA request about Plaintiff during 2022 or even 2021. Moreover, no other individual would have known about the request because as of July 6, 2022 when the @Giza299792458N post was published, the SEC's FOIA log for June 2022 was not yet public or visible on the SEC website. ECF No. 266-11. Thus, the owner of the @Giza299792458N Twitter account was, in fact, Defendant MasMarques. It is false that the owner of the account was the pornographic actress, it is false that Plaintiff ever took *any* action related to her, and it is defamatory per se to falsely suggest that Plaintiff belongs in a "Psychiatric Facility."

The example statements in FAC ¶ 99 are statements capable of being proven true or false, and they are false. For example, Plaintiff identified the person he believed to be the creator of leagle.com to Defendant MasMarques (*see* ECF No. 1-6 at 112:11-13) and a list of domain names under Plaintiff's control does not include leagle.com; therefore "Aaron Greenspan aka Aaron Jacob Greenspan creator and owner of leagle.com" is a provably false characterization.

13

FAC ¶ 99(i).  No judicial ruling in existence anywhere in the world—and such rulings are searchable—states that Plaintiff "is a serious danger and menace to society," rendering the statement "the Judges realized that this Sociopath is a serious danger and menace to society" provably false.  FAC ¶ 99(l).  Plaintiff has provably won and/or settled several court cases, rendering "Aaron Greenspan loses all his cases in US Courts" false.  FAC ¶ 99(m).  Neither Plaintiff nor Think Computer Foundation has ever received donations from any person other than Plaintiff himself in an amount greater than $1,000, rendering "Aaron has collectved *[sic]* donations from his friends and colleagues, myself included in the amount of $100,000, and to date we have not seen a single dime used in the manner described to us when he requested the donation" false.  FAC ¶ 99(p).  A search of PACER is not even necessary to ascertain that the letters "CV" in the quote "Aaron was charged in connection with a criminal complaint for False Claims Violations and Fraud in United States v. Yurygrenadyor, Case No. 09-CV-7891" stands for *civil*, rendering the suggestion that Plaintiff was charged with a crime in that proceeding false; moreover, Plaintiff was not a named party at all.  FAC ¶ 99(q).  Nor did Plaintiff "lie[] under Oath" in court in Santa Clara County, California.  FAC ¶ 99(u).

### 5.     Statute of Limitations

Defendant MasMarques's posts were continuous through June 2025—shortly after Attorney Andrade was retained—across various platforms with various usernames.  Plaintiff filed suit in January 2023.  The following table shows the progression of accounts on various websites and internet platforms known to be associated with Defendant MasMarques over time:

| Account Name | Platform | FAC Example(s) | Approximate Dates Active |
|---|---|---|---|
| [Anonymous] | Blacklist Report | ¶ 99(e) | September 2017-2018 |
| Abraham 7 | ComplaintsBoard | | December 2017 |
| Basil 6 | ComplaintsBoard | | April 2018 |
| 198412345 | Reddit | ¶ 99(q+) | April 27, 2018 - Present |

| Expose 501(c)(3) Fraud | ComplaintsBoard | ¶ 74 | June 2018 |
|---|---|---|---|
| @R62607249 | Twitter | | August 2018 - 2019 |
| @LiarsStalkers | Twitter | | October 2018 - 2019 |
| @JohnFuenchem | Twitter | ¶ 86 | October 2018 |
| @badbadwebsites | Twitter | ¶ 61 | March 2018 - 2021 |
| Online cyber stalkers working together | ComplaintsBoard | | February 2021 |
| @Giza299792458N | Twitter | ¶¶ 93, 99(gg) | February 23, 2021 - 2023 |
| @WitchesToday | Twitter | ¶¶ 99(ii), 99(mm) | September 23, 2021 - 2023 |
| @Diegomasmarque1 | Twitter | | 2022 - 2023 |
| @Diegomasmarque5 | Twitter | ¶ 94 | April 13, 2022 - 2023 |
| [Redacted] Cyber Stalker | ComplaintsBoard | | March 2022 |
| ManufacturerFast7523 | Reddit | | March 19, 2022 - Present |
| AdPlenty5728 | Reddit | | April 7, 2022 - Present |
| Ok-Exercise-3238 | Reddit | | March 11, 2023 - Present |
| lola crum | Google Groups | | June 2022 - 2023 |
| @x13757 | Twitter | | February 2025 - June 2025 |

Defendant MasMarques has not given Plaintiff a moment's rest since 2017.

## C. Count IV: No Genuine Dispute of Material Fact Exists Concerning Abuse of Process

"The two basic elements of abuse of process are a bad motive, and the use of a legal process for an improper, collateral objective." *Simon v. Navon*, 71 F. 3d 9, 15 (1st Cir. 1995). Defendant MasMarques cites a district court case, *Iantosca v. Benistar Admin. Servs., Inc.*, 738 F.Supp.2d 212 (D. Mass. 2010), to add a third element: resulting damage. ECF No. 257-1 at 15. Whether there are two elements or three, Plaintiff's pleading easily satisfies all of them.

First, Defendant MasMarques made his motive quite clear on July 16, 2013, when he filed a motion to seal records detailing his criminal conviction before this court in Case No. 1:09-cr-10304-MLW, and clearer still on March 19, 2018, when posing as a murderous mafia don, he stated, "Shut this site down!" ECF No. 237-9 at 13. Shutting down PlainSite or any public records website is not a valid motive, and not good cause to issue violent threats or instantiate sham legal proceedings. In fact, it is the kind of motive that when paired with this type of fact pattern typically leads to an indictment. *USA v. Jahanrakhshan*, Case No. 3:17-cr-00414-N

(N.D. Tex. *filed* August 8, 2017).

Defendant MasMarques admits in his purported "Statement of Uncontested Facts" that he used the legal process repeatedly, via a rejected application for a restraining order against Plaintiff, multiple dismissed civil and criminal complaints, multiple administrative complaints, and public records requests.  ECF No. 257-2 at ¶ 27.  The only question is whether he used these processes properly.  "To sustain the claim, 'the fact finder must find that process was used `to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'"  *Psy-Ed Corp*. *v*. *Klein*, 459 Mass. 697, 713 (2011).  Yet these "multiple written complaints to state and/or federal agencies" were not all actually "regarding the publication of his court records."  It is difficult to fathom, for example, how filing a complaint with the California Department of Motor Vehicles ("CAMDV") over Plaintiff's mailing address, even if based in fact—which Defendant MasMarques's complaint was not—could have anything to do with "the publication of his court records."  However, Defendant MasMarques was able to achieve his real goal: inflicting damage.  For a time, he prevented Plaintiff from being able to drive legally or renew his driver's license.

Similarly, filing a FOIA request with the United States Securities and Exchange Commission, or a complaint with the Attorney General of Arkansas—a state where Plaintiff has never lived, never done business, *and never even set foot in*—or false complaints with the Internal Revenue Service regarding Plaintiff's non-profit organization, or a complaint with the State Bar of California about Plaintiff's attorney, could not possibly have any kind of impact on the publication of Defendant MasMarques's records, unless the goal was to extort Plaintiff using the machinery of the state, or simply crush him under its bureaucratic weight.  This is entirely consistent with the translated description of Defendant MasMarques from December 1999 by

16

those who knew his prior victims: "Both Tatiana's father and friends describe the man responsible for this tragedy as 'intelligent and cultured, but insatiable and vindictive.'"  ECF No. 269-2 at 6.  It is not at all consistent with the behavior of a reasonable person who simply wanted to take actions that would result in a federal court order denying a motion to seal being reversed.

Nor did Defendant MasMarques use the California Code of Civil Procedure properly. California Code of Civil Procedure § 527.6(y) waives the filing fee when a petition for a civil restraining order "alleges that a person has inflicted or threatened violence against the petitioner, stalked the petitioner, or acted or spoken in any other manner that has placed the petitioner in reasonable fear of violence."  Plaintiff did none of these things, despite Defendant MasMarques's incessant and false refrain that publishing public records amounts to "stalking." Of course, this is nonsense, and Defendant MasMarques knows it because this Court told him so in no uncertain terms *ten years ago*: "The public availability of the records of MasMarques's conviction under the PACER, CORI, and NCIS system is not a 'punishment' in violation of the Double Jeopardy Clause."  *USA v. MasMarques*, Case No. 1:09-cv-10304-MLW (D. Mass. September 22, 2015).  Knowing all of this, he nonetheless answered the question "Did the person in (2) use or threaten to use *a gun or any other weapon*?" (emphasis added) on Judicial Council of California Form CH-100 by checking the "Yes" box, which exempted him from the filing fee and resulted in the automatic, rolling grant of *nine* void, unconstitutional, purported temporary restraining orders, all seeking and purporting to enforce an unconstitutional prior restraint on Plaintiff's speech that Plaintiff spent approximately $10,000 to defend against as he simultaneously pursued and was ultimately granted a legitimate restraining order against

Defendant MasMarques.[4]  Thus, not only was Defendant MasMarques able to evade the filing

fee which he owed, but he was further able to inflict financial damage and emotional distress on

Plaintiff by weaponizing California law through his lies.  He then repeated this general dynamic

in Massachusetts by abusing Massachusetts law, in Ohio by abusing Ohio law, and on the federal

level by abusing the Internal Revenue Code, which led to legal expenses for Think Computer

Foundation and Plaintiff's ultimate decision to dissolve the non-profit organization he founded

rather than continue to be continuously subject to such abuse.  There can be no question that

Plaintiff was damaged by Defendant MasMarques's abuse of process.

### D.     Count V: No Genuine Dispute of Material Fact Exists Concerning Malicious Prosecution

"To establish a claim for malicious prosecution, a party must show that the challenged

litigation was initiated without probable cause and with malice, and that it terminated in the

plaintiff's favor.  *See*, *e.g.*, *Nadeau v. State*, 395 A.2d 107, 116 (Me.1978)."  *Simon*, *supra*, at 15.

These requirements are clearly met.

Spanish records show Ms. Vasic filed four (4) complaints with the Civil Guard in Spain

against MasMarques and changed her locks four (4) times before he finally killed her as she

feared he might—and all were "ineffective" at stopping him.  ECF No. 269-2 at 6-7.  Thereafter,

MasMarques learned a new tactic: reverse the dynamic.  Rather than simply ignoring complaints

(as with Vasic), he now files *counter*-complaints to paint himself as the victim.  This strategy—

---

[4] In the Superior Court of California for Santa Clara County, Judge Carol Overton issued new
Temporary Restraining Orders against each side as she proceeded with evidentiary hearings from
July 2018 through August 2019.  Each TRO expired at the next hearing until she made her final
decision.  Thus, Plaintiff was subject to nine serial unconstitutional TROs obtained under false
pretenses on July 3, 2018; October 9, 2018; December 12, 2018; February 28, 2019; May 2,
2019; July 1, 2019; July 22, 2019; August 7, 2019; and August 22, 2019, after which Defendant
MasMarques's fraudulent cross-request was finally denied by Judge Overton.

one of many examples—shows consciousness of wrongdoing and establishes malice.

ECF No. 54-5, Exhibit E to the First Amended Complaint, states on page 26 regarding *Diego MasMarques v. Aaron J. Greenspan*, Case No. 1921AC000120 before the Marlborough District Court in Massachusetts, "After complete review of the above matter, I find there is No Probable Cause for the complaint to issue." Similarly, in *Diego Mas Marques v. Aaron Jacob Greenspan*, Case No. 1981CV02204 before the Middlesex County Superior Court in Massachusetts, Justice Michael D. Ricciuti dismissed Defendant MasMarques's claims immediately after holding a hearing in which Defendant MasMarques was unable to identify a single fact supporting his claims. *Id.* at 32. Both of these proceedings were "initiated without probable cause and with malice," and both "terminated in the plaintiff's favor."

Similarly, Defendant MasMarques's failed attempt to secure a restraining order against Plaintiff in California was initiated without probable cause, as there was no threat to him whatsoever, and it terminated in Plaintiff's favor. Opposing counsel suggests that the non-binding, factually erroneous, citationless, two-paragraph January 28, 2020 Order of the Superior Court of California for the County of Santa Clara forecloses any possibility of liability, but this is false. In addition to failing to cite any legal authority whatsoever, that Order also fails to cite a single piece of evidence that would suggest that Plaintiff threatened Defendant MasMarques with violence, or that Defendant MasMarques was reasonably placed in fear of violence. That is because such events never transpired. The argument that "[t]he record likewise shows no wrongful or unlawful acts by Mr. MasMarques" is belied by Defendant MasMarques's false representation that Plaintiff had used a "gun or other weapon" against him. Taking Defendant MasMarques's explanation on page 3 of California Form CH-100 that "THIS INDIVIDUAL'S WEAPON IS HIS COMPUTER" literally, Plaintiff would have had to physically beat Defendant

19

MasMarques with his laptop's aluminum frame for this to be true. Yet that never took place, because Plaintiff was thousands of miles away from Defendant MasMarques at all relevant times and had never met him before. Nor are Plaintiff's purported "HACKING SKILLS" Defendant MasMarques also complained of on Form CH-100 tantamount to a "gun or any other weapon."

Defendant MasMarques also filed a false complaint about Plaintiff with the CADMV. That proceeding, too, was dismissed in Plaintiff's favor. ECF No. 54-5 at 18.

### E.     Count XII: No Genuine Dispute of Material Fact Exists Concerning Conspiracy

Massachusetts law recognizes two types of conspiracy claims. "The second type of conspiracy, based on section 876 of the Restatement, is a form of vicarious liability for the tortious conduct of others. *See Mass. Laborers'*, 62 F.Supp.2d at 244; Restatement (Second) of Torts § 876 (1979). Because it is vicarious liability, this type of civil conspiracy requires an underlying tort. Mass. Laborers', 62 F.Supp.2d at 244. The conspiracy consists in agreeing to, or assisting in, this underlying tort. Massachusetts courts have recognized two theories of liability under section 876:(1) 'concert of action,' and (2) 'substantial assistance' or 'aiding and abetting.' *See Maruho Co., Ltd. v. Miles, Inc.*, 13 F.3d 6, 9 (1st Cir.1993); *Payton v. Abbott Labs*, 512 F.Supp. 1031, 1035 (D.Mass.1981)." *Taylor v. American Chemistry Council*, 576 F. 3d 16, 35 (2009). Here, Plaintiff has pled and proven both concert of action and an underlying tort: libel, in furtherance of extortion. Specifically, Plaintiff alleges that Defendant MasMarques conspired with the operators of the ComplaintsBoard website (former Defendants Mediolex, Ltd., Astrad, Ltd., and/or Kudriavtsev, together "ComplaintsBoard Defendants") to libel Plaintiff. FAC ¶¶ 188-196. It is clear that both Defendant MasMarques and the ComplaintsBoard Defendants had overt animus toward Plaintiff, which were expressed as threats by those parties at different points in time. FAC ¶ 82. ComplaintsBoard Defendants were aware

of Defendant MasMarques's crusade against Plaintiff both because he kept openly posting about

Plaintiff on their website using various accounts and because Plaintiff contacted them to warn

them that Defendant MasMarques's posts were unlawful.  Nonetheless, the ComplaintsBoard

Defendants took no action to stop him and even enhanced his posts, such as by adding fabricated

statistics about how many readers found his posts useful.  Defendant MasMarques and the

ComplaintsBoard Defendants worked in concert to defame Plaintiff, forming a conspiracy.

Defendant MasMarques denies these allegations by pointing exclusively to ¶ 64 of his

purported Statement of Undisputed Facts, which in turn depends on a non-denial of Plaintiff's

allegations.  Defendant MasMarques has thus failed to present any evidence creating a genuine

dispute as to any material fact relevant here.  His conclusory denial, unsupported by any

documentary or testimonial evidence, is insufficient to defeat summary judgment.

### F.    Count XIII: No Genuine Dispute of Material Fact Exists Concerning False Light Invasion of Privacy

"Mass. Gen. Laws c. 214 § 1B does provide a cause of action for invasion of privacy.

The statute provides '[a] person shall have a right against unreasonable, substantial or serious

interference with his privacy.'  The statute has been interpreted to prevent the revelation of an

individual's private information.  *See Tower v. Hirschhorn*, 397 Mass. 581, 586-87, 492 N.E.2d

728 (1986)(disclosure without patients' consent of confidential medical information would be

sufficient to warrant finding of invasion of privacy); *Bratt v. Int'l Business Mach. Corp.*, 392

Mass. 508, 467 N.E.2d 126 (1984)(disclosure of private information regarding employees could

constitute invasion of privacy)."  *Albright v. Morton*, 321 F. Supp. 2d 130, 140 (D. Mass. 2004).

Defendant MasMarques has attempted for years to ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

██████████████████████████████

███████████████████ He clearly intended to violate Plaintiff's privacy.

### G.     Count XIV: No Genuine Dispute of Material Fact Exists Concerning Intentional Infliction of Emotional Distress

Plaintiff has shown that Defendant MasMarques's conduct—a convicted killer threatening to kill again by using the names of murderous mafia bosses as well as hundreds if not thousands of fake on-line accounts and dozens of false government complaints to libel and harass someone for nearly a decade—is "extreme and outrageous" and "goes beyond all possible bounds of decency." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). Plaintiff's distress does even not have to manifest in a physical form to be actionable.

> "Dr. Reily argues that Dyer has 'provided no evidence of any physical injury or symptom as a result of emotional distress.' *Id*. at 4. The 'scope of physical harm required to sustain a negligent infliction of emotional distress claim has `expanded [to a] range of symptoms that may provide the type of objective evidence to prove physical harm [including] symptoms that could be classified as more mental than physical.`' *Godette v. Stanley*, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) (alterations in original) (quoting *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 412 (2002)); *see Bresnahan*, 47 Mass. App. Ct. 278 at 282-83 (denying summary judgment where plaintiff alleged that her emotional distress manifested as uncontrollable crying spells, stomach pain, severe headaches, loss of concentration, depression, anger, anxiety, loss of sexual relationship and attendance at grief-counseling sessions)."

*Dyer v. Steward Carney Hospital, Inc., et al*, Case No. 1:17-cv-11452-DJC (D. Mass. October 5, 2021). Despite these relaxed standards, Plaintiff's harm has undoubtedly been physical. First, there can be no question that Plaintiff has lost countless hours of sleep due to Defendant MasMarques, and not just in the metaphorical sense. Plaintiff has effectively been required to document Defendant MasMarques's misconduct—a *monumental* task that should have been handled by criminal law enforcement. The timestamps visible on many of the printed copies of

posts attributable to Defendant MasMarques show that Plaintiff was often concerned late at night about the libel constantly spreading across the internet, and as such they read "10:45 P.M." (GREENSPAN00208, ECF No. 266-8 at 18), "10:57 P.M." (GREENSPAN00740, ECF No. 266-8 at 26), "11:05 P.M." (GREENSPAN00514, ECF No. 266-8 at 32), "12:30 A.M" (GREENSPAN00587, ECF No. 266-8 at 46), "12:11 A.M." (GREENSPAN00635, ECF No. 266-8 at 48), "10:57 P.M." (GREENSPAN00740, ECF No. 266-8 at 26), etc. Sleep is vital to overall physical and mental health. This is especially true for Plaintiff as ██████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ So, although Plaintiff has not suffered from crying spells or depression, there is copious evidence of emotional distress in physical form.[5] It is not an exaggeration to say that Defendant MasMarques has stolen nearly a decade of Plaintiff's life.

Plaintiff's fear of Defendant MasMarques and stress from worrying about his behavior is quite reasonable. Defendant MasMarques killed one of his last harassment victims. Like Tatiana Vasic, Plaintiff filed multiple police reports, to no avail. He added an extra bolt to his

---

[5] Plaintiff profoundly distrusts the psychotherapy profession after years of counterproductive results involving his disabled brother, but he did consult an endocrinologist regarding the effects of the stress he was under, a process which itself took years just to get an appointment.

front door. He began using a mail forwarding service to mask his home address. Plaintiff has further testified to a racing heart and elevated blood pressure when discovering posts (Transcript at 134:23-135:6), a credible fear that FBI might arrive "with guns drawn" based on MasMarques's false complaints,[6] which MasMarques admits to having made to the FBI on more than one occasion, and loss of sleep due to the need to document MasMarques's unending posts for litigation purposes. *Id*. at 137. A jury could award substantial damages based on the objective reasonableness of Plaintiff's fear of a convicted, obsessed, and deranged killer.

### H.  Plaintiff Is Not Required To Prove Economic Damages and Punitive Damages Are Appropriate

Defendant MasMarques's statements constitute libel per se because they accuse Plaintiff of criminal conduct, *e.g.* "fraudulent charity," "fraud," "extortion," etc. and injure Plaintiff in his profession. For libel per se, damages are presumed and no expert testimony or economic proof is required. The jury may award damages based on the nature and extent of publication.

To the extent that Plaintiff may be required to show damages for other claims, he has done so. Plaintiff has estimated that he spent approximately 1,375 hours defending himself from and responding to MasMarques's years-long campaign. Some of this time was spent on litigation,[7] but most of it was spent on actively monitoring and documenting a dangerous situation—time for which Plaintiff is unquestionably entitled to compensation. ECF No. 216. At this point, Plaintiff has spent considerably more time just handling summary judgment alone. Plaintiff testified to a reasonable hourly rate of $750.00 per hour given his extensive experience

---

[6] It is unclear how many false complaints exist. On July 28, 2021, Defendant MasMarques claimed he "twice" attempted to file a "5150 motion" which the Santa Clara County Clerk of Court rejected. Plaintiff has never seen the motion; it was not produced during discovery.
[7] Plaintiff's time is valuable and Plaintiff is entitled to be compensated for the opportunity cost of his time as a *pro se* party litigating an issue so clear-cut that it never should have even needed to see the inside of courtroom.

as a software developer with legal knowledge that rivals or surpasses that of attorneys charging twice as much who do not have any computer skills.  This is sufficient for a jury to calculate damages, and no damages expert is required given that Plaintiff's IRS Form W-2 shows that he paid himself a salary of nearly $1 million in 2018, equivalent to an hourly rate of $450/hour.

In addition, Plaintiff incurred approximately $10,000 in attorney's fees and costs.  The California court denied Plaintiff's request for these fees and costs based upon incorrect analysis that lacked citation to any precedent at all.  ECF No. 274-1 ¶ 14.  *See also* ECF No. 274-2 at 25.

Punitive damages are appropriate here to deter future conduct and punish past conduct.

"'In determining whether the defendant's conduct was so outrageous or egregious that punitive damages [in a discrimination claim] are warranted, the fact finder should consider all of the factors surrounding the wrongful conduct' including: (1) whether there was a conscious or purposeful effort to demean or diminish the class of which the plaintiff is a part; (2) whether the defendant recklessly disregarded the likelihood of serious harm; (3) the nature of the defendant's conduct after learning that the initial conduct would likely cause harm; (4) the actual harm to the plaintiff; and (5) the duration of the wrongful conduct and any concealment of that conduct by the defendant.  *Haddad*, 455 Mass. at 111."

*Santos v. United Network for Organ Sharing, et al*, Case No. 1:24-cv-11692-IT (D. Mass. September 15, 2025).  Though this is not a discrimination case, there can be no question as to the fact that Defendant MasMarques's conduct has been "outrageous."

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant summary judgment on First Amended Complaint Counts I, IV-V, XII-XIII and XIV; award damages in accordance with the evidence, including punitive damages; issue a permanent injunction ordering Defendant MasMarques to immediately stop posting about, filing complaints about, or otherwise remarking upon Plaintiff in any context referred to in this motion; and grant such other relief as the Court deems just and proper.  Eight years of relentless harassment and litigation is enough.

Dated: December 19, 2025        Respectfully submitted,

Aaron Greenspan, *pro se*
440 N. Barranca Avenue #6720
Covina, CA 91723
Phone: +1 415 670 9350 x101
E-Mail: aaron.greenspan@plainsite.org

## CERTIFICATE OF SERVICE

 I hereby certify that on December 19, 2025 I filed the foregoing with the Clerk of Court

using the CM/ECF system to the following defendants and non-parties in this action:

Diego MasMarques, Jr.
Mediolex, Ltd.
Astrad, Ltd.
Sergei Igorevich Kudriavtsev
X Corp.


Aaron Greenspan