## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AARON GREENSPAN,<br><br>            Plaintiff,<br><br>v.<br><br>DIEGO MASMARQUES JR., et. al.<br><br>            Defendants. | Case No.: 1:23-cv-10134-DJC |

## DEFENDANT DIEGO MASMARQUES, JR.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Aaron Greenspan ("Plaintiff")'s motion for summary judgment is not a bona fide Rule 56 filing. It is replete with narrative excess, grievances, and personal attacks, but devoid of anything more. Rule 56 does not permit a party to prevail by force of personality, volume of accusations, or moral posturing. It requires admissible *evidence* demonstrating the absence of a genuine dispute of material fact. Plaintiff offers none.

While Plaintiff styles himself as a data journalist and champion of legal transparency, his filing reveals the opposite. He seeks to punish dissent, suppress critics, and weaponize the courts to erase speech he dislikes. He demands absolute immunity for his own publications while insisting on absolute liability for those who question him or his affiliated entities. That is not journalism; it reflects a one-sided, authoritarian conception of speech that has no basis in law or in the First Amendment.

When stripped of its rhetoric, Plaintiff's motion collapses on its face. It fails to establish essential elements of his claims and instead asks this Court to accept Plaintiff's beliefs as facts, his speculation as proof, and his indignation as a substitute for admissible evidence. Courts do

1

not function that way. Unlike Defendant Diego MasMarques ("Defendant")—who properly moved for summary judgment first (*see* Doc. Nos. 257, 258) and did so based on admissible evidence—Plaintiff seeks summary judgment not because the record supports it, but because he refuses to accept the governing law or the facts.

For these reasons, and as set forth below, Defendant respectfully requests that this Honorable Court deny Plaintiff's frivolous motion in its entirety and enter judgment in favor of Defendant, together with attorneys' fees and costs.[1]

## I.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only when all of the pleadings and supporting documents, viewed in a light most favorable to the non-moving party, present no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A plaintiff who moves for summary judgment has a higher burden. The court may grant summary judgment to the plaintiff only where the evidence is conclusive and no reasonable fact-finder could find otherwise. *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009). In evaluating a summary judgment motion, the court must "view[] all facts and draw[] all reasonable inferences in the light most favorable to the nonmoving party." Estrada, 594 F.3d at 62. A court evaluating a motion for summary judgment "must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983).

---

[1] Defendant respectfully requests that the Court consider the arguments and authorities set forth in Defendant's Motion for Summary Judgment, the reply in support thereof, and Defendant's pending motion for leave to file a motion to strike, all of which are incorporated herein by reference to the extent applicable.

Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. In *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 252, 254 the Supreme Court addressed summary judgment in the context of a plaintiff's lack of proof of a material fact:

> The judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. . . . In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. . . . The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not.

## II.    ARGUMENTS

### A.  PLAINTIFF'S "EVIDENCE" VIOLATES RULE 56.

Plaintiff's evidentiary showing[2] can be reduced to a single proposition: "*Because I said so*." Once Plaintiff's motion is stripped of its improper declaration, reliance on allegations from

---

[2] In support of his summary judgment motion, Plaintiff relies on inadmissible materials that are largely unauthenticated, inflammatory, or irrelevant to the elements of his claims. These include, *inter alia,* machine-translated Spanish newspaper articles concerning Defendant's decades-old criminal history (Doc. No. 269-2); screenshots of Plaintiff's own PlainSite webpages and unrelated docket listings (Doc. Nos. 266-2, 266-3); Wikipedia entries of convicted mobsters (Doc. No. 266-4); unauthenticated communications (Doc. No. 266-5); unauthenticated internet posts from Blacklist Report, ComplaintsBoard, Reddit, and other platforms (Doc. Nos. 266-6, 266-7, 266-9); unauthenticated social media posts and forum content from Twitter/X (Doc. Nos. 266-8, 266-10); SEC FOIA log pages (Doc. No. 266-11); excerpts from Plaintiff's own deposition testimony (Doc. No. 266-12); a medical genetics journal article (Doc. No. 266-13); selected filings from prior California harassment proceedings (Doc. No. 274-2); selective correspondence with Massachusetts law enforcement and the IRS (Doc. Nos. 274-3, 274-4); and

3

the superseded pleadings, unauthorized filings, and inadmissible materials, it is devoid of competent evidence sufficient to support summary judgment. *See* Doc. No. 277-2 (incorporating Doc. No. 269-1); *see also id.* at 269-1 (citing, *inter alia,* Doc. Nos. 1–6, 54-5). *See, e.g., Horta v. Sullivan*, 4 F.3d 2, 7-8 (1st Cir. 1993) (the materials attached to the motion for summary judgment must be admissible and usable at trial); *Senra v. Town of Smithfield*, 715 F.3d 34, 42 (1st Cir. 2013) (reasoning "[s]ummary judgment motions are decided on the record as it stands, not on the pleadings").

More troubling still, Plaintiff advances irreconcilably inconsistent positions that render his summary judgment filing procedurally defective. On the one hand, Plaintiff asserts that genuine disputes remain outstanding; on the other, he asks this Court to find that no genuine dispute of material fact exists. *See* Doc. Nos. 277-1 and 277-2 (purporting to incorporate by reference Doc. No. 269-1 into his summary judgment filing); *see also* Doc. No. 269-1 (titled "Plaintiff's Corrected Statement of Material Facts As To Which There Is A Genuine Issue To Be Tried In Opposition To Defendant Diego Masmarques, Jr. 's Motion For Summary Judgment").[3]

For purposes of Plaintiff's motion and this opposition, Defendant refers the Court to the undisputed facts previously referred to by both parties. *See* Doc. No. 265-1 ("Plaintiff's Response to Defendant Diego Masmarques, Jr.'s Statement of Uncontested Material Facts in Support of Motion for Summary Judgment").

---

dictionary definitions from Oxford Languages (Doc. No. 274-5). Plaintiff further incorporates by reference prior declarations that consist largely of legal conclusions, improper lay opinion— particularly on technical and scientific matters—and inadmissible, non-first-hand testimony. *See* Doc. No. 277-3 (incorporating by reference Doc. Nos. 270, 274-1, 269-3).

[3] Defendant therefore objects and respectfully requests that the Court disregard Plaintiff's filing on this basis alone. Defendant further objects to being required to respond to Plaintiff's so-called "Plaintiff's Corrected Statement of Material Facts as to Which There Is a Genuine Issue to Be Tried," which is not authorized by Federal Rule of Civil Procedure 56 or Local Rule 56.1 and has no proper role in the summary judgment motion.

4

**B. PLAINTIFF'S "FACTUAL BACKGROUND" IS ARGUMENTATIVE, SELECTIVE, AND PROCEDURALLY MISLEADING**

Plaintiff's so-called "Factual Background" is neither an accurate account of the procedural posture nor a fair recitation of the evidentiary record. *See* Doc. No. 277-1 at 8-9.[4] *Id.*

At the outset, Plaintiff asserts—without citation to admissible evidence—that Defendant contacted him in 2016 using the alias "Vincent Bellomo" and that Defendant has used "many aliases over a period of years." *Id.* at 8. These assertions are not established facts, and Plaintiff offers no competent evidence sufficient to satisfy his burden under Rule 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff also mischaracterizes Defendant's prior testimony in the Superior Court of California for the County of Santa Clara ("Santa Clara Court"). *See* Doc. No. 277-1 at 8. Plaintiff further misleadingly claims that Defendant filed an amended answer "more than a year later," while omitting that the amendment was filed pursuant to—and in compliance with—the Court's ruling on Plaintiff's motion to strike. *See* Doc. Nos. 148; 277-1 at 8–9.[5] Likewise Plaintiff's repeated accusations that Defendant provided "false and misleading" discovery responses are improper and unsupported. *See* Doc. No. 277-1 at 9. This Court has made no such findings and, to the contrary, largely denied Plaintiff's motions to compel and for sanctions. *See, e.g.,* Doc. Nos. 204, 205, 229, 251.

---

[4] It is also unclear whether Plaintiff intends this section to serve as his statement of undisputed material facts or instead purports to rely on Doc. No. 269-2, which is never cited in his summary judgment motion. *See* Doc. Nos. 277-1 at 1-30; 277-2. In either event, Defendant objects to both submissions as improper. They conflate allegations with evidence, mischaracterize the procedural history, and materially misstate the evidentiary record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1.

[5] Plaintiff then devotes attention to third-party subpoenas issued to Mediolex, Ltd. and X Corp., emphasizing that those entities did not comply. *See* Doc. No. 277-1 at 9. What Plaintiff fails to acknowledge is that the Court already denied Plaintiff's motions to compel and motions for alternative service related to those third parties. *See* Doc. Nos. 203, 229, 256.

Finally, Plaintiff suggests that the existence of the then-unresolved objections under Rule 72(a) somehow precludes summary judgment or excuses his evidentiary deficiencies. *See, e.g.,* Doc. Nos. 211, 235, 260. That suggestion is legally incoherent. Discovery closed August 29, 2025. *See* Doc. No. 140. Plaintiff did not obtain relief reopening discovery, nor did he file a proper Rule 56(d) affidavit identifying specific facts unavailable despite diligence. *See* Doc. Nos. 261, 267. Even then, it is now a moot point– as the Court denied all four of Plaintiff's frivolous objections. *See* Doc. Nos. 281-284.

## C.  PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT AND THE MASSACHUSETTS ANTI-SLAPP DOCTRINE

Plaintiff's motion only underscores that this lawsuit was initiated in retaliation for Defendant's constitutionally protected petitioning and speech regarding matters of public concern. *See* Doc. No. 277-1 at 29 (requesting Court to issue a permanent injunction ordering Defendant to "immediately stop posting about, filing complaints about, or otherwise remarking upon Plaintiff in any context referred to in this motion"). *See, e.g.,* Doc. No. 54 ¶ 99 (s-u) (libel *per se* claim is based on Defendant's statements to the Ohio Attorney General);  *id.* at ¶¶130–32, 136, 139–40 (abuse of process based on Defendant's cross-TRO in Santa Clara Court and complaints to government agencies); *id.* at ¶¶145–48 (malicious prosecution based on Defendant's application for criminal charges); *id.* at ¶¶ 188, 190–91 (civil conspiracy claim based on Defendant's purported "libelous" activity); *id*. at ¶ 200 (invasion of privacy claim based on "defamatory statements"); *id*. at ¶¶ 205, 207–10, 215–217 (intentional infliction of emotional distress claim based on Defendant's cross-TRO and contacting "[government] agencies to arrest, incarcerate...investigate, prosecute, and/or audit Plaintiff...").

Statements made in connection with judicial proceedings, reports to law enforcement, administrative complaints, and petitioning activity are absolutely or conditionally privileged

under Massachusetts law and the First Amendment. *See, e.g., Correllas v. Viveiros*, 410 Mass.

314, 319; *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976). Plaintiff attempts to relabel

Defendant's protected petitioning as a "harassment campaign" against "proprietors of websites

that maintain court records". *See* Doc. No. 277-1 at 6. Plaintiff nowhere identifies evidence of

improper conduct separate and distinct from Defendant's exercise of his petitioning rights, which

Massachusetts law requires. *See Keystone Freight Corp. v. Bartlett Consol., Inc*., 930 N.E.2d

744, 752 (Mass. App. Ct. 2010) (reasoning "'evidence of improper action, separate and distinct

from the exercise of petitioning activity, is necessary'") (citation omitted)). *See* Doc. No. 118

(dismissing civil harassment claim against Defendant).

Plaintiff's motion therefore confirms what the record already establishes: this action is

retaliatory and aimed at punishing Defendant for exercising his petitioning rights. *See, e.g.,*

M.G.L. c. 231, § 59H (petitioning activity covers " "all statements made to influence, inform, or

at the very least, reach governmental bodies—either directly or indirectly"); *Ehrlich v. Stern*, 908

N.E.2d 797, 801 (Mass. App. Ct. 2009); *Hidalgo v. Watch City Construction Corp*., 105 Mass.

App. Ct. 148, 153 (2024) (noting that claims for abuse of process are "prima facie subject to

dismissal under the anti-SLAPP statute").

### D. PLAINTIFF'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW

#### a. <u>Plaintiff Fails to Establish the Threshold Element of Publication by Defendant</u>

Plaintiff's argument fails at the first and most fundamental step: he has not produced

admissible evidence sufficient to establish that Defendant MasMarques made the allegedly

defamatory statements. *See* Doc. No. 277-1 at 10-13. At summary judgment, Plaintiff–*not*

Defendant– bears the burden of producing evidence from which a reasonable jury could find that

Defendant was the speaker. *See, e.g., White v. Blue Cross & Blue Shield of Mass., Inc*., 442

Mass. 64, 66 (2004) (explaining a plaintiff "must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff…"); *Prop. Rights Law Group, P.C. v. Lynch*, 2014 U.S. Dist. LEXIS 74259, *44 (D.HI May 20, 2014) (granting summary judgment where plaintiff failed to show defendants played any role in publication of alleged defamatory Facebook post). No such showing exists here.

Plaintiff's showing of fault relies on speculation. *See* Doc. No. 265-1 at ¶ 58 (Plaintiff's list of purported attributions are set forth in 58(a-t). *See Serra v. Quantum Servicing, Corp.*, 747 F.3d 37, 40 (1st Cir. 2014) (holding "allegations of a merely speculative or conclusory nature are rightly disregarded").

Plaintiff's primary attribution theory rests on a 2018 subpoena response identifying Defendant's late wife, Mary MasMarques, as the registered subscriber for an internet service account associated with a particular IP address. *See* Doc. No. 277-1 at 11. However, none of this evidence establishes that Defendant authored any specific allegedly defamatory post; it shows only that the IP address was registered to a household account and that the IP "was the first non-machine IP address to access certain URLs embedded in a ComplaintsBoard post" on the same day (June 5, 2018) when a purported defamatory post appeared. Doc. No. 265-1 at ¶ 58 and 59 (Plaintiff's response set forth in ¶ 58(a)). That is it.  Even then the statute of limitation applies and Plaintiff has already conceded that he cannot attribute any post-2019 statements to Defendant. *See* Doc. No. 265-1 ¶¶ 55, 59.

Plaintiff's reliance on a Twitter post referencing a FOIA request similarly fails. *See* Doc. No. 277-1 at 17. The fact that Defendant purportedly filed a FOIA request, and that a Twitter account later referenced FOIA activity, does not establish that Defendant controlled that Twitter

account or authored the post. *See* Doc. No. 277-1 at 17; 266-8 at 74 (Twitter posts); 266-11 at 2–5 (FOIA Logs).

Plaintiff also mischaracterizes Defendant's interrogatory responses regarding ComplaintsBoard. Defendant testified under oath that he viewed posts on the site but did not author them, and later clarified—based on recollection—that he may have uploaded or shared a link to publicly available documents in April 2018. *See* Doc. No. 277-1 at 11; Doc. Nos. 237-2 at 6, 237-3 at 3. A good-faith clarification or correction of prior testimony does not constitute an admission of false testimony or perjury. *See United States v. Norris*, 300 U.S. 564, 576 (1937).

Plaintiff next relies on alleged associations between Defendant and various social media accounts, including Twitter/X, based on a purported registration of an email address and a "quirky" writing style. Doc. No. 277-1 at 11-13. Plaintiff, however, offers no expert testimony, forensic analysis, or platform authentication tying Defendant to the accounts at issue. *See* Doc. No. 277-1 at 1-31; Doc. No. 265-1 at ¶ 58 (describing "Unique Conspiracy Theories", "Unique Wording", "Numeric Obsession", "Middle Name Obsession", "Color Ink-Jet Printer", "White-Out Usage", "Matching Timeline" and "Improper Capitalization" as factors purportedly attributing certain defamatory posts to Defendant).  Nor does the existence of a purported active account associated with an email address establish that Defendant published specific posts, particularly where Plaintiff provides no admissible evidence regarding account control at the time of publication, or even what emails are associated with what posts.[6] Plaintiff's purported

---

[6] Indeed, Defendant has already indicated in his discovery responses that the email in question–"56546@protonmail.com"–has not been used by Defendant since late 2018. *See* Doc. No. 277-1 at 12-13, 277-3 1–4. To the extent Plaintiff seeks to attribute these purported registrations to Defendant, the evidence remains unauthenticated and inadmissible. In addition, the screenshots relied upon by Plaintiff are dated December 18, 2025– after Defendant produced the relevant email addresses in discovery, raising unresolved questions as to their origin. *See* Doc. No. 278 ¶¶ 5–6.

beliefs do not constitute evidence. *See, e.g., Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (explaining to be competent evidence for purposes of summary judgment, documents must be both authenticated and admissible); *Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co.*, 167 F.3d 1, 9 (1st Cir. 1999) (same). Plaintiff's assertion that "the only conceivable reason" for multiple accounts was to post pseudonymously is pure speculation and impermissible at summary judgment. *Id.*; *see also* Doc. No. 277-1 at 11-12.

### b.  Plaintiff's Public-Figure Argument Misstates the Law and the Record.

Plaintiff's assertion that he "is not a public figure," and that the issue is "moot" because Defendant's alleged malice is supposedly "overwhelming," is legally and factually incorrect. *See* Doc. No. 277-1 at 13.

As an initial matter, Plaintiff has already admitted that he has been interviewed, on or off the record, 50 to 100 times. *See* Doc. No. 265-1 at ¶ 8. Courts have consistently held that individuals who engage in repeated media interviews are, at a minimum, limited-purpose public figures for purposes of defamation law. *See, e.g., Ellis v. Time*, 1997 WL 863267, at *6 (D.D.C. 1997) (plaintiff is limited public figure where he was the subject of five articles in newspapers ranging from the Washington Post to the Russian newspaper Izvestia); *Bell v. Associated Press*, 584 F. Supp. 128, 131 (plaintiff is a limited public figure where "over one hundred newspaper articles have appeared concerning his various activities during the course of plaintiff's career").

Second, Plaintiff's own description of the governing law undermines his position. *See* Doc. No. 277-1 at 13. As Plaintiff himself acknowledges, he is at the very least a limited-purpose public. *See Id.* A limited purpose figure is someone who has "thrust[s] [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved". *See Gertz*, 418 U.S. at 351 That is exactly what Plaintiff has done here; *see also* Doc. No. 258-21

(recent New York Times profile of Plaintiff dated in October 2025). Plaintiff is a self-described data journalist and legal transparency advocate who operates a website indexing millions of court records, publicly criticizes government officials and institutions, engages in public disputes with high-profile figures, files and publicizes litigation as a matter of course, and, as a result, affirmatively injects himself into debates over privacy, public records, and the justice system. *See* Doc. No. 265-1 at ¶¶ 1, 6-16. He does not dispute this. *Id*.

Third, Plaintiff's claim that there is "no particular controversy" because "public records are public" is a transparent sleight of hand. *See* Doc. No. 277-1 at 14. The relevant controversy is *not* whether public records exist—it is *how* they are indexed, disseminated, monetized, contextualized, and whether such publication causes harm or violates one's privacy rights, and/or violates applicable statutory protections put in place for a reason. That debate is ongoing and, as Plaintiff even admits, has resulted in at least 25,000 takedown requests and several administrative complaints against Plaintiff and/or his company. *See* Doc. No. 277-1 at 6; Doc. No. 265-1 ¶¶ 11–17.

Fourth, Plaintiff's attempt to declare actual malice "overwhelming" and that he "does not need to show malice, but nonetheless, he can"—is simply nonsensical because Plaintiff already admits that he is *at least* a limited public figure and whether Plaintiff is a public or limited-purpose public figure, it is *he* who must prove actual malice by clear and convincing evidence. *See* Doc. No. 277-1 at 13–14; *see also Levinsky's, Inc.,* 127 F.3d at 127; *Sindi v. El-Moslimany*, 896 F.3d 1, 14 (1st Cir. 2018).

In short, Plaintiff's public-figure argument is not merely weak; it misstates governing law, ignores the undisputed record, and improperly asks the Court to accept Plaintiff's self-

11

serving conclusion that he is not a public figure notwithstanding substantial evidence to the contrary. *See* Doc. No. 265-1 at ¶¶ 1, 6-16.

   **c.** **Plaintiff Fails to Present Clear and Convincing Evidence of Actual Malice**

   Much of Plaintiff's argument reduces to conclusory assertions that Defendant "consistently ignored evidence", "made inherently improbable allegations," or "fabricated stories". *See* Doc. No. 277-1 at 14. But generalized accusations of hostility, bias, or animus are legally insufficient to establish actual malice. *See, e.g., Franchini v. Bangor Publ'g Co. Inc.*, 2020 U.S. Dist. LEXIS 66200, 2020 WL 1879012, at *4 (D. Me. Apr. 15, 2020) ("[A] bare assertion of bias, without further facts demonstrating that the alleged bias was accompanied by knowledge of or reckless disregard for falsehood, has little purchase in the actual malice assessment . . .").

   Actual malice is a demanding constitutional standard, requiring proof that the Defendant published a statement with knowledge of its falsity or with reckless disregard for its truth. *See Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 23 (1st Cir. 2018) (defining Actual malice as "knowledge of the statement's falsity or reckless disregard for its truth"); *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967) (applying that standard to public figures). Plaintiff offers none. There is no clear and convincing evidence that Defendant knew any statement was false when made. *Id.*; *Sindi v. El-Moslimany*, 896 F.3d 1, 16–17 (1st Cir. 2018).

   Plaintiff's reliance on disputes over whether a phone call occurred, whether it was received, or whether corroborating documentation exists does not establish actual malice, nor is in any way relevant to his remaining claims. *See* Doc. No. 277-1 at 14-15; *see also Lemelson*, 903 F.3d at 23. At most, Plaintiff identifies ill will, which is legally insufficient. *Harte-Hanks*

*Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (finding it is not enough to show "ill will or malice in the ordinary sense of the term") (internal citations removed).[7]

Plaintiff argues that because an IRS audit and state-level complaints did not cause further enforcement action, Defendant must have acted with actual malice in making those complaints. That argument fails on multiple levels. First, Plaintiff offers no evidence that Defendant knew—or had any reason to know—that the complaints had been resolved in Plaintiff's favor at the time they were made. Absent such knowledge, Plaintiff cannot establish that Defendant acted with knowledge of falsity or reckless disregard for the truth. Second, even assuming *arguendo* that Defendant failed to verify the ultimate outcome of the audits or complaints, a failure to investigate, standing alone, does not establish actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ("[F]ailure to investigate does not in itself establish bad faith."). Finally, when pressed to articulate Defendant's alleged motive, Plaintiff could offer only conclusory assertions that Defendant was a "sick person" whose actions were "not rational." Such speculation is legally insufficient to establish actual malice. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989); Doc. No. 265-1 at ¶ 49.

Moreover, even assuming Defendant published the statements (which he denies), there is no basis from which a jury could reasonably infer that he seriously doubted their truth. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Because Plaintiff fails to adduce evidence sufficient to meet the constitutional standard of actual malice, his defamation claim fails as a matter of law. *Sindi*, 896 F.3d at 14.

---

[7] Plaintiff appears to forget that much of the unauthenticated material he relies upon in support of his motion—if it supports anything at all—relates to a purported civil harassment theory, a claim that was previously dismissed and that Defendant denies in any event. *See* Doc. No. 114. Such materials do not support, and are largely irrelevant to, a defamation claim.

### d. **Plaintiff Offers No Admissible Evidence Establishing Falsity**

Plaintiff's assertion that he has "proven falsity" rests largely on recycled allegations from the First Amended Complaint and his declaration—rather than admissible evidence in the summary-judgment record. At summary judgment, Plaintiff bears the burden of establishing falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (holding that, where the speech at issue is a matter of public concern, there is a "constitutional requirement that the plaintiff bear the burden of showing falsity").

Even setting attribution aside, many of the statements Plaintiff labels "false" are plainly non-actionable opinion or rhetorical hyperbole, including statements asserting that Plaintiff is a "menace," "belongs in a psychiatric facility," or is morally or professionally unfit. Doc. No. 277-1 at 18; Doc. No. 54 ¶ 99. *See also King v. Globe Newspaper Co*., 400 Mass. 705, 720 (1987); *Phantom Touring, Inc*, v. Affiliated Publ'ns, 953 F.2d 724, 728 (1st Cir. 1992) (describing theater production as "a rip-off, a fraud, a scandal, a snake oil job" was not actionable defamation); *Mullane v. Breaking Media, Inc*., 433 F. Supp. 3d 102, 107 (D. Mass. 2020) (finding "rude," "dumb," "unethical," a "little entitled ponce," or a "dauphin" are "insufficiently fact-based"). Such expressions are not provably true or false and therefore cannot support a defamation claim as a matter of law. *See, e.g., Levinsky's, Inc. v. Wal-Mart Stores, Inc*., 127 F.3d 122, 127 (1st Cir. 1997); *Milkovich v. Lorain J. Co*., 497 U.S. 1, 20 (1990) (reasoning "statements that cannot reasonably be interpreted as stating actual facts about an individual are protected, thus assuring that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation.").

Plaintiff's disagreement with these statements—or his view that they are unfair or offensive—does not transform them into actionable factual assertions. Even assuming, *arguendo*,

14

that Defendant authored the online posts (which he denies), expressions of opinion, rhetorical condemnation, or value judgments remain protected speech.

Because Plaintiff has failed to establish falsity—much less falsity attributable to Defendant—his defamation claim cannot be resolved in his favor as a matter of law, and "[d]isposing of a plaintiff's case at the summary judgment stage is especially favored in the defamation context because allowing a trial to take place in a meritless case would put an unjustified and serious damper on freedom of expression. Even if a defendant in a libel case is ultimately successful at trial, the costs of litigation may induce an unnecessary and undesirable self-censorship." *Butcher v. Univ. of Mass.*, 111 N.E.3d 294 (Mass. App. 2018) (internal citations and quotations removed).

### E. PLAINTIFF'S CLAIMS ARE TIME-BARRED

Defendant has raised the statutes of limitations as an affirmative defense. Plaintiff *must* therefore demonstrate a reasonable expectation of proving that the claims were timely filed within the three-year limitations period. Mass. Gen. Laws c. 260, § 2A; *Koe v. Mercer,* 450 Mass. 97, 101, 876 N.E.2d 831 (2007). Because the underlying action was filed on January 20, 2023, Plaintiff must demonstrate the cause of action accrued on or after January 20, 2020. *Id.*; Doc. No. 1. He fails to do that.

Here, the record demonstrates that Plaintiff can link only one post ever made by Defendant—an April 3, 2018 ComplaintsBoard post sharing publicly available records—which Defendant has admitted to and denies was defamatory and which is indisputably outside the three-year limitations period.[8] FAC ¶¶ 61–63; M.G.L. c. 260, § 2A.

---

[8] Instead of addressing the statute of limitations, Plaintiff attempts to amend the allegations in his First Amended Complaint by now purportedly attributing additional posts to Defendant.  *See* Doc. No. 271 at 18-19; *see also* Doc. No. 54, at ¶ 99. For instance he now attributes the following account names to Defendant when not included in the First Amended Complaint:

As to Plaintiff's remaining claims—malicious prosecution, abuse of process, intentional infliction of emotional distress, civil conspiracy, and violation of the Massachusetts Privacy Act—Plaintiff does not address the statute of limitations at all. Under Massachusetts law, "[t]he plaintiff bears the burden of presenting facts sufficient to take the case outside the statute of limitations." *Franklin v. Albert*, 381 Mass. 611, 617 (1980). Plaintiff has failed to meet that burden. Even accepting Plaintiff's allegations as true, those claims accrued no later than 2019 and were therefore time-barred by August 2022.

## F.  PLAINTIFF'S ABUSE OF PROCESS CLAIM FAILS

Plaintiff's abuse-of-process claim rests on rhetoric, hindsight, and character attacks—not on evidence establishing the essential elements of an abuse of process. *See* Doc. No. 277-1 at 19–22. Under Massachusetts law, abuse of process requires proof that the defendant used a specific legal process for an ulterior purpose for which the process was not designed, and that the plaintiff suffered resulting harm. *Iantosca v. Benistar Admin. Servs., Inc.*, 738 F.Supp.2d 212, 222 (D. Mass. 2010); *Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995). Contrary to Plaintiff's assertions, it is not enough to allege bad motive, hostility, or the mere resort to legal channels. *See* Doc. No.  277-1 at 19-22; *see also Dish Network, LLC v. Llinas*, 310 F. Supp. 3d 310, 312 (D.P.R. 2018).

---

ComplaintsBoard usernames ("Abraham 7," "Basil 6," "Expose 501(c)(3) Fraud," and a redacted "Cyber Stalker"), numerous Twitter/X handles (@badbadwebsites, @R62607249, @LiarsStalkers, @JohnFuenchem, @Giza299792458N, @WitchesToday, @Diegomasmarque1, @Diegomasmarque5, and @x13757), several Reddit usernames (198412345, ManufacturerFast7523, AdPlenty5728, and Ok-Exercise-3238), and a Google Groups account ("lola crum"). *See* Doc. Nos. 269-1 at paragraphs 101, 148–149, 195–196, 198–211, 213–215, 217, 219–225, 227–240, 242–245, 252–259,  261; *see also* FAC ¶¶ 91–92 (referring to posts by @giza299792458N and @witchestoday).

Plaintiff's theory collapses most clearly on the second element: improper use of process. *Boyle v. Barnstable Police Dep't*, 818 F. Supp. 2d 284, 304 (D. Mass. 2011) (explaining abuse of process requires showing that the defendant used the process "to accomplish some ulterior purpose for which it was not designed or intended, or which was the legitimate purpose of the particular process employed"). Plaintiff points to a variety of actions—requests for restraining orders, administrative complaints, FOIA request to the United States Securities and Exchange Commission, and reports to agencies to the Attorney General of Arkansas and California Department of Motor Vehicles—and asserts that they must have been improper because Plaintiff believes Defendant's true goal was to "shut[] down" PlainSite. *See* Doc. No. 277-1 at 19–22. But the lawful use of available legal and administrative processes—even repeatedly or unsuccessfully—does not constitute abuse of process. *Kelley v. Stop & Shop Co.*, 26 Mass. App. Ct. 557, 558, 530 N.E.2d 190, 191 (1988) ("'It is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person . . . initiating them.'" (quoting Restatement (Second) of Torts § 682 comment a (1977))).

Even assuming, *arguendo*, that Defendant hoped Plaintiff would change his mind and remove Defendant's information from Plainsite, an improper motive alone is insufficient. *Empire Today, LLC v. Nat'l Floors Direct, Inc.*, 788 F.Supp. 2d 7, 23 (D. Mass 2011). *See also Fishman v. Brooks*, 396 Mass. 643, 652, 487 N.E.2d 1377, 1383 (1986) ("Proof of the groundlessness of an action is not an essential element for an action for abuse of process.");.[9]

---

[9] Likewise, unsupported assertions that Defendant sought to "crush" Plaintiff under "bureaucratic weight" does not constitute an admissible–much less rational–argument. *Baker v. Monga*, 32 Mass. App. Ct. 450, 454, 590 N.E.2d 1162, 1165 (1992) (dismissing claim for abuse of process when alleged solely "upon information and belief"). These allegations are also internally inconsistent with Plaintiff's remaining arguments, which rely on Defendant's prior foreign

Furthermore, Plaintiff's disagreement with any purported decisions does not change that there was a legal and factual basis for having instituted it and only further confirms it. *See* Doc. no 277-1 at 4; Doc. No. 265-1 at ¶¶ 44, 52. *See also Wenger v. Aceto*, 451 Mass. 1, 2-3, 6-8 (2008) (finding abuse of process and malicious prosecution claims dismissed under anti-SLAPP statute where the subject of the claims, an unsuccessful application for a criminal complaint, was not without reasonable basis in fact or law).

Plaintiff's reliance on *USA v. Jahanrakhshan*, No. 3:17-cr-00414-N (N.D. Tex. filed August 8, 2017)– a case involving a defendant who engaged in cyberattacks against news sites that published information about his past fraud, attempting to censor unfavorable online content through threats, extortion, and large-scale cyberattacks and convicted of federal crimes as a result—is equally nonsensical and not in any way relevant here. *Id.; see* Doc. no 277-1 at 19-20.

### G. PLAINTIFF'S MALICOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW[10]

Plaintiff's malicious-prosecution claim fails as a matter of law because he cannot establish the required elements of initiation without probable cause, malice, *and* favorable termination for any of the proceedings he cites. *Millennium Equity v. Mahlowitz*, 73 Mass. App. Ct. 29, 35–36, 895 N.E.2d 33 (2008). *See Chervin v. Travelers Ins. Co*., 448 Mass. 95, 103–04

---

conviction to portray him as untrustworthy, while simultaneously suggesting that Defendant possessed sufficient influence to exert bureaucratic pressure. *Id.*

[10] Plaintiff's reliance on noncertified translated Spanish articles, and his theory that Defendant "learned a new tactic" from those events has no bearing on whether Defendant lacked probable cause and acted with malice in any particular proceeding involving Plaintiff. *See Beecy v. Pucciarelli,* 387 Mass. 589, 595 (1982) (finding that malice standard here "is not necessarily revenge or other base and malignant passion...[w]hatever is done willfully and purposely, if it be at the same time wrong and unlawful, and that known to the [accuser], is in legal contemplation malicious") (internal citations removed).

(2006) (describing malicious prosecution as a disfavored tort, narrowly construed to avoid chilling access to courts and administrative processes).

Nothing in the record establishes sufficient evidence to support a claim for malicious prosecution. Contrary to Plaintiff's assertions, a finding of "no probable cause" at the complaint-application stage does not, by itself, establish lack of probable cause for purposes of the tort, nor does it establish malice. *See Correllas v. Viveiros*, 410 Mass. 314, 323–24 (1991) (holding the "mere transmission of information to a police officer" is insufficient to support an action for malicious prosecution"). "The case law requires that 'the defendant must have, in some sense, initiated the prosecution.' *Correllas*, 572 N.E.2d at 10… a party may 'initiate' a prosecution not only by conducting the prosecution him or herself, but also by 'tak[ing] an active part in continuing or procuring the continuation of criminal proceedings initiated … by another ....' *Limone I*, 271 F.Supp.2d at 358 (*citing Mitchell v. City of Boston*, 130 F.Supp.2d at 215)."The same is true of Plaintiff's reference to a complaint filed with the California Department of Motor Vehicles. The mere fact that an agency declined to proceed is not enough. *See also Ripley v. McBarron*, 125 Mass. 272, 274 (1878) (holding "[i]f the defendant, in making the complaint, acted in good faith and with the honest purpose of bringing an offender to justice, the prosecution, even if it can be held to be without probable cause, was not malicious").

Indeed, the Santa Clara Court found–whether Plaintiff agrees with it or not— that Defendant's case was not frivolous or baseless or "devoid of factual basis/evidentiary support". *See* Doc. No. 265-1 at ¶ 44.

## H.  PLAINTIFF'S CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.

Massachusetts recognizes two types of civil conspiracy: true/coercive conspiracy and conspiracy based on a concerted action. *See Taylor v. American Chemistry Council*, 576 F.3d 16, 34–35 (1st Cir.2009). Plaintiff has established neither.

To establish true conspiracy, Plaintiff must show that 'defendants, acting in unison, had some power of coercion over Plaintiff that they would not have had if acting independently.' *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir.1994)." No such facts are alleged here. A concerted conspiracy collapses under even minimal scrutiny because Plaintiff has been unable to establish an agreement existed between the ComplaintsBoard parties and Defendant. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (reasoning "plaintiff must demonstrate that the participants acted pursuant to an agreement" to establish civil conspiracy). *See also United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021)) (alteration in original) (reasoning "plaintiff must provide evidence that the defendants agreed together to commit an underlying tort." *Id*. (internal quotations and citations omitted).[11] Plaintiff's theory rests almost entirely on the assertion that ComplaintsBoard "did nothing" in response to his complaints and allegedly "enhanced" posts by adding automated engagement metrics. That is not conspiracy. That conduct, even if assumed, does not constitute agreement, concerted action, or substantial assistance in an underlying tort. Mere inaction, content moderation decisions, or the operation of automated platform features are insufficient as a matter of law to establish civil conspiracy. Absent proof of an underlying tort, Plaintiff's conspiracy claim necessarily fails. See Mass.

---

[11] In fact, the evidence he relies upon in support of his motion shows that Plaintiff does not even know who these purported co-conspirators are. *See* Doc. No. 278-3 (relying on Doc. No. 274-3); Doc. No. 274-3 at 5, 14 (emailing Victim/Witness Specialist in Middlesex District Attorney's Office that he thinks a Matthew Mahgrefteh filed complaint with the Ohio Attorney General at Defendant's urging and is posting about Plaintiff on various sites "acting at least in part at the behest of Mr. MasMarques, likely to help him evade the restraining order…But the two individuals may very well be collaborating at this point").

Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999).

In short, Plaintiff's conspiracy claim relies on conclusory allegations and fails to present any evidence from which a reasonable jury could infer the requisite agreement or coercive power. *See Grant v. John Hancock Mut. Life Ins. Co.*, 183 F.Supp.2d 344, 363-64 (D. Mass. 2002); *Echavarria v. Roach*, 565 F.Supp.3d 51, 90 (D. Mass. 2021).

## I.    FALSE LIGHT / INVASION OF PRIVACY (MASS. GEN. LAWS C. 214 § 1B) FAILS AS A MATTER OF LAW

Plaintiff's false light and invasion of privacy claim fails as a matter of law because it is premised on a fundamental misstatement of what Mass. Gen. Laws c. 214 § 1B protects; the statute does not create a generalized "false light" tort, nor does it provide a backdoor remedy for reputational harm or offensive speech. *See Dasey,* 304 F.3d at 153-54. Rather, it is narrowly aimed at the disclosure of "highly personal or intimate [facts] when there exists no legitimate, countervailing interest." *See* Mass. Gen. Laws c. 214, § 1B; *Dasey v. Anderson*, 304 F.3d 148, 153–54 (1st Cir. 2002). Such disclosure must be "both unreasonable and either substantial or serious." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 382 (2005);

Plaintiff identifies no such private information here. *See Dasey*, 304 F.3d at 153-54. Instead, he relies on the same alleged statements that underlie his defamation claims—criticisms, accusations, and commentary concerning Plaintiff's conduct, litigation history, and activities relating to public records and public-facing projects. Even if such statements (which Defendant disputes he published) were untrue or unflattering, they do not constitute an invasion of privacy under § 1B. *Dasey v. Anderson*, 304 F.3d 148, 153 (1st Cir. 2002). Massachusetts does not recognize a "false light" cause of action, and the Privacy Act provides no cause of action for disclosure of information alleged to be false. *Id.*

Plaintiff's conclusory assertion that Defendant "clearly intended to violate Plaintiff's privacy" is legally irrelevant absent evidence of a qualifying disclosure. Plaintiff cites no medical records, confidential communications, personal identifiers, or "other highly personal or intimate [facts]" by Defendant. *Dasey v. Anderson*, 304 F.3d 148, 153 (1st Cir. 2002). Instead, he relies almost entirely on allegations from the First Amended Complaint and rhetorical characterizations unsupported by admissible evidence.

Because Plaintiff has failed to identify any disclosure of private facts—let alone an unreasonable, substantial, or serious interference with privacy—Count XIII fails as a matter of law and cannot support summary judgment. Mass. Gen. Laws c. 214, § 1B; *Ayash v. Dana-Farber Cancer Inst*., 443 Mass. 367, 382 (2005).

## J.  PLAINTIFF'S CLAIM FOR  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW.

As an initial matter, Plaintiff's IIED claim against Mr. MasMarques stems from the same set of facts as his defamation claims and necessarily fails for this reason alone. *Shay v. Walters*, 702 F.3d 76, 83 (1st Cir. 2012) (*citing Hustler Mag., Inc. v. Falwell,* 485 U.S. 46, 56–57 (1988)) (holding "plaintiff's claim for negligent infliction of emotional distress grows out of the same nucleus of operative facts that spawn her defamation claim...are premised upon the same conduct and harm...[and] seek the same relief...[and so] the failure of the plaintiff's defamation claim pretermits continued prosecution of her...negligent infliction of emotional distress").

Even on its own terms, Plaintiff's IIED claim fails under Massachusetts law. *Agis v. Howard Johnson Co*., 355 N.E.2d 315, 318–19 (Mass. 1976). To prevail, Plaintiff must show conduct that is "extreme and outrageous," going beyond all possible bounds of decency, and emotional distress that is severe, supported by objective evidence. *Agis v. Howard Johnson Co*., 371 Mass. 140, 144–45 (1976).  Plaintiff satisfies neither requirement.

Moreover, the only conduct Plaintiff can directly attribute to Mr. MasMarques are his petitioning activities, including TRO filings and agency complaints—actions that had legal and factual bases and cannot be "extreme and outrageous." *Vittands,* 730 N.E.2d at 333–36; Doc. No. 265-1 ¶¶ 4, 27, 44, 51–53, 79, 80. Nor would any such complaints be enough to constitute "extreme and outrageous" conduct. *See also Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 466 (1997) (internal quotations omitted) (reasoning "[l]iability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities...").

Plaintiff's purported loss of sleep, stress, and anxiety associated with monitoring alleged misconduct and litigating this case is insufficient. Massachusetts courts have repeatedly held that such experiences—while unpleasant—are ordinary incidents of contentious disputes and litigation, not the kind of severe emotional distress required to sustain an IIED claim. *Kennedy v. Town of Billerica*, 617 F.3d 520, 530 (1st Cir. 2010); *See also Quinn v. Walsh,* 732 N.E.2d 330, 338 (Mass. App. Ct. 2000) (holding "emotional responses including anger, sadness, anxiety, and distress" are insufficient).

Ultimately, Plaintiff has failed to establish either extreme and outrageous conduct or severe emotional distress. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (citations omitted) (reasoning "situations where only bad manners and mere hurt feelings are involved" do not suffice).

## K. PLAINTIFF'S DAMAGES AND PUNITIVE DAMAGES DEMANDS CONFIRM THE IMPROPRIETY OF SUMMARY JUDGMENT

Plaintiff's damages arguments are misplaced. For a public-figure plaintiff, *libel per se* does not permit presumed damages absent clear and convincing evidence of actual malice (which Plaintiff completely fails to show). Even where actual malice is alleged, "[d]amages are limited to actual damages, which are compensatory for the wrong that has been done." *Draghetti v.*

*Chmielewski*, 416 Mass. 808, 626 N.E.2d 862, 868 (Mass. 1994) (finding "[a]ctual injury includes… out-of-pocket expenses, …harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering").

As an initial matter, Plaintiff– a non-attorney *pro se* litigant– is not entitled to attorney's fees for his purported 1,375 hours defending himself in this action. *See* Pl. Opp. at 23; *Sykes v. Dish Network*, 2005 Mass. App. Div. 58, 60 n. 5 ("Generally, a party proceeding without legal counsel is not entitled to recover legal fees."). Even if he could, Plaintiff asks the Court to accept his self-assessed hourly rate, self-estimated time expenditures, presumed emotional distress, and entitlement to punitive damages. A plaintiff may not rely on self-assigned hourly rates or unsupported opportunity-cost theories to defeat summary judgment. *Hendricks & Assocs., Inc. v. Daewoo Corp.*, 923 F.2d 209, 217 (1st Cir. 1991) (holding "damages for loss of prospective profits must be 'capable of ascertainment upon some definite standard, either of market value, established experience, or direct inference from known circumstances,'" and a plaintiff must "demonstrate[] 'with a fair degree of certainty what the profits would have been'"). Conjecture, hypothetical numbers, and self-valorizing valuations are not proof; they do not satisfy the "reasonable degree of certainty" standard. *Hendricks,* 923 F.2d at 217; *Augat,* 631 N.E.2d at 998, n.4. Summary judgment is unwarranted as Plaintiff has failed to show damages..

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied in its entirety. Plaintiff has not carried—nor even tries to carry—his burden under Rule 56 to demonstrate the absence of genuine disputes of material fact, much less his entitlement to judgment as a matter of law. Instead, he relies on rhetoric, repetition of allegations from the First

Amended Complaint, speculation as to intent, and conclusory assertions unsupported by admissible evidence.

Plaintiff's demand for a permanent injunction barring Defendant from speech, complaints to governmental authorities, or participation in public discourse is particularly untenable. It is unsupported by the record and would constitute an impermissible prior restraint in direct contravention of the First Amendment. Plaintiff—a self-described data journalist and legal transparency advocate—asks this Court to do precisely what his professed principles reject: silence speech through injunction and punish lawful petitioning activity.

Accordingly, Defendant respectfully requests that the Court deny Plaintiff's summary judgment motion and rule in Defendant's favor on all claims, with prejudice, award his reasonable attorneys' fees and costs, together with such other and further relief the Honorable Court deems just and proper.

Respectfully submitted,

DEFENDANT, DIEGO MASMARQUES, JR.,

By his Attorney,

/s/ Ashley A. Andrade

Ashley A. Andrade, Esq.
ANDRADE LEGAL, LLC
867 Boylston Street, 5th Floor #1119
Boston, MA 02116
BBO# 697189
Phone: 617.206.1822
Email: ashley@andrade-legal.com

Dated: January 20, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was filed electronically on January 20, 2025, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Ashley A. Andrade*
_____
Ashley A. Andrade
BBO # 697189