## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AARON GREENSPAN,

Plaintiff,

v.

DIEGO MASMARQUES JR., et. al.

Defendants.

No. 1:23-cv-10134-DJC

## DEFENDANT DIEGO MASMARQUES, JR.'S MOTION AND MEMORANDUM IN SUPPORT OF SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 11 AND THE COURT'S INHERENT AUTHORITY[1]

Pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, and in the alternative, the Court's inherent authority, and following the expiration of the 21-day safe-harbor period required by Rule 11(c)(2), Defendant Diego MasMarques, Jr. ("Defendant") respectfully requests that this Honorable Court impose appropriate sanctions sufficient to deter further abuse of the judicial process, including: (1) dismissal of this action with prejudice; (2) an award of Defendant's reasonable attorneys' fees and costs incurred as a direct result of Plaintiff Aaron Greenspan's ("Plaintiff") sanctionable conduct; (3) a narrowly tailored injunction prohibiting Plaintiff from initiating or pursuing further actions against Defendant without prior leave of Court; and (4) such other relief as this Honorable Court deems just and proper. As further demonstrated below, such

---

[1] Defendant deferred service of this motion for sanctions in an effort to avoid unnecessary delay, particularly during the dispositive motion briefing in this case. *See Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 23 (1st Cir. 1999) (reasoning that courts can defer the consideration of "certain kinds of sanctions motions" until the end of trial to avoid unnecessary delay of disposition of a case). Defendant did not waive, and expressly preserves, its right to seek sanctions, including under Rule 11 of the Federal Rules of Civil Procedure.

1

relief is necessary to protect Defendant from continued vexatious litigation, conserve judicial resources, and uphold the integrity of the judicial process.

## I.    INTRODUCTION

This Motion arises from Plaintiff's persistent misuse of the judicial process through a series of filings that extend well beyond a single defective motion or an isolated procedural error. Rather, Plaintiff's conduct reflects a sustained pattern of frivolous, obstructive, and dilatory litigation practices.

Plaintiff has inundated the docket in this case with a continuous stream of filings—at least 110 submissions in this action, including no fewer than 55[2] filed in the last year alone—that are, *inter alia*, objectively unreasonable, foreclosed by the facts and settled law, unsupported by admissible evidence, and procedurally improper. When confronted with these deficiencies— through opposing submissions, meet-and-confer efforts, explicit Court rulings, and the clear procedural and evidentiary requirements governing this action—Plaintiff has failed to withdraw, correct, or meaningfully narrow his filings, as required by the Federal Rules of Civil Procedure.

Instead, Plaintiff has persisted in advancing the same rejected legal theories, submitted unauthorized amended filings after applicable deadlines, attempted to relitigate discovery disputes already resolved against him, and filed objections under Rule 72(a) that lacked any legal or factual basis and were denied in their entirety. Plaintiff has further abused the litigation process by submitting and relying on inadmissible material, including information concerning Defendant's expunged criminal conviction—material barred from use under governing law—not for any legitimate evidentiary purpose, but to improperly attack Defendant's character, place

---

[2] In contrast, Defendant has filed approximately 30 submissions over the past year, the vast majority of which were responsive filings necessitated by Plaintiff's repetitive and continuous motion practice.

2

false and misleading assertions on the public docket, and misuse these proceedings as a vehicle to defame by then republishing those filings on a website owned and controlled by Plaintiff's wholly owned entity, *plainsite.org*, *thereby making them readily searchable and publicly* accessible.

This conduct has continued despite unmistakable notice of the defects in Plaintiff's positions, the governing evidentiary rules, and the Court's prior resolution of the issues presented, resulting in unnecessary motion practice and the needless expenditure of judicial and *party resources.*

## II.   GOVERNING STANDARD

Rule 11(b) provides in pertinent part:

> "By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying *that to the best of the person's knowledge, information, and belief, formed after an* inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

*See* Fed. R. Civ. P. 11(b).

3

Under Rule 11, the Court may impose sanctions on an unrepresented party if he or she submits a pleading for an improper purpose or if the claims within it are frivolous or malicious. *See* Fed. R. Civ. P. 11(b)(1), (2); *Eagle Eye Fishing Corp. v. Department of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994) (pro se parties, like all parties and counsel, are required to comply with the Federal Rules of Civil Procedure); *Pronav Charter II, Inc. v. Nolan*, 206 F. Supp. 2d 46, 53 (D. Mass. 2002) (Rule 11 applies to pro se litigants) (citation omitted). Rule 11 exists, in part, to protect defendants and the Court from wasteful, frivolous and harassing lawsuits, and provides for sanctions as a deterrent. *See Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir. 1992).

"While *pro se* pleadings are viewed less stringently, a petitioner who elects to proceed *pro se* must comply with the applicable procedural and substantive rules of law." *Lefebvre v. Commissioner*, 830 F.2d 417, 419 (1st Cir. 1987). Under Fed. R. Civ. P. 11, this Court may impose monetary sanctions if a *pro se* party submits a pleading for an improper purpose, or which contains frivolous or malicious claims. *See, e.g.,* Fed. R. Civ. P. 11(b)(1)-(2); *Eagle Eye Fishing Corp. v. Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994).

In addition to Rule 11, "[a] district court has the power to enjoin a party from filing frivolous and vexatious lawsuits." *Azubuko v. MBNA America Bank*, 396 F.Supp.2d 1,7 (D. Mass. 2005). *Elbery v. Louison*, 201 F.3d 427 (1st Cir. 1999) (per curiam) (*citing Cok v. Family Court of Rhode Island*, 985 F.2d 32, 34 (1st Cir. 1993) for the proposition that "[f]ederal courts... possess discretionary powers to regulate the conduct of abusive litigants" and *Castro v. United States*, 775 F.2d 399, 408 (1st Cir. 1985) (per curiam) for the power to enjoin a party from filing "frivolous and vexatious lawsuits" pursuant to such authority).

Also, "it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons."

4

*Hall v. Cole*, 412 U.S. 1, 7, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973). *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *accord United States v. Kouri-Perez*, 187 F.3d 1, 6-8 (1st Cir. 1999) (same); *John's Insulation, Inc. v. L. Addison & Associates, Inc.*, 156 F.3d 101, 109 (1st Cir. 1998) (finding no abuse of discretion when district court, under inherent powers rather than Rule 41, dismissed complaint and entered default judgment as a sanction for Plaintiff's "protracted delay and repeated violation of court orders").

## III.    ARGUMENT

### A. PLAINTIFF'S CLAIMS ARE FRIVOLOUS, TIME-BARRED, AND OBJECTIVELY UNREASONABLE

This entire case is frivolous. *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990) (finding a claim is frivolous when it is "either not well-grounded in fact or unwarranted by existing law or a good faith argument for an extension, modification or reversal of existing law").

"Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." *CQ Int'l Co. v. Rochem Int'l, Inc., USA* , 659 F.3d 53, 60 (1st Cir. 2011).

As an initial matter, Plaintiff's claims are time-barred. *See* Doc. No. 257-1 at 11–13 (Defendant's statute-of-limitations argument). Once Defendant properly raised the statute of limitations as an affirmative defense and demonstrated its applicability, the burden shifted to Plaintiff to establish a legally and factually supported basis for tolling. *Id.* Plaintiff has failed to do so. *See also* Doc. No. 265 at 10–11 (Plaintiff referencing the statute of limitations only briefly and solely with respect to the defamation claim); Doc. No. 277-1 (Plaintiff not addressing the statute of limitations at all). Instead, Plaintiff offers either no explanation whatsoever or, at most, a single paragraph of conclusory assertions—unsupported by evidence or controlling law—that *all* his claims are timely. *See, e.g.*, Doc. No. 265 at 10–11; Doc. No. 277-1. Plaintiff's

failure to address this dispositive defense demonstrates that he cannot satisfy his burden and underscores that his continued pursuit of these claims lacks evidentiary support and a reasonable basis in law, in violation of Rule 11(b)(2) and (b)(3).

Even putting timeliness aside, Plaintiff lacks any admissible evidence whatsoever to support his claims.  That deficiency becomes more pronounced as the case progresses.  Rather than marshal evidence obtained through discovery, Plaintiff continues to rely on allegations from superseded pleadings and speculation untethered from the record.  As the First Circuit has made clear, "[s]ummary judgment motions are decided on the record as it stands, not on the pleadings." *Senra v. Town of Smithfield,* 715 F.3d 34, 42 (1st Cir. 2013).

Most fundamentally, Plaintiff seeks to hold Defendant liable for reports Defendant made to law enforcement, administrative agencies, and courts—conduct that is absolutely or conditionally privileged as a matter of law.  *Correllas v. Viveiros,* 410 Mass. 314, 319–24 (1991); *Sriberg v. Raymond,* 370 Mass. 105, 108 (1976).  Petitioning activity covers "all statements made to influence, inform, or at the very least, reach governmental bodies—either directly or indirectly"); *Ehrlich v. Stern,* 908 N.E.2d 797, 801 (Mass. App. Ct. 2009).  M.G.L. c. 231, § 59H.  Such claims are "prima facie subject to dismissal under the anti-SLAPP statute." *See also Hidalgo v. Watch City Construction Corp.,* 105 Mass. App. Ct. 148, 153 (2024).

Plaintiff does not confront this authority. He ignores it.  Advancing claims in defiance of settled law violates Rule 11(b)(2).

## B.  PLAINTIFF HAS ENGAGED IN CONDUCT TO HARASS, DELAY, AND NEEDLESSLY INCREASE THE COST OF LITIGATION.

Plaintiff's litigation strategy is not to prove his claims on the merits, but to overwhelm Defendant with escalating costs and exert settlement pressure through attrition. Courts have recognized that *pro se* litigants may be sanctioned for filings that "harass or . . . cause

6

unnecessary delay or needlessly increase in the cost of litigation." *See Siri v. Town of Hingham,* 662 F. Supp. 3d 44, 49 (D. Mass. 2023) (*quoting Simon v. Navon,* 71 F.3d 9, 17 (1st Cir. 1995)).

*Even after fact discovery closed, Plaintiff persisted in relying on belief, speculation, and* accusation rather than admissible evidence. This is precisely the abuse Rule 11 is designed to deter. *See* Fed. R. Civ. P. 11, Advisory Committee Notes (1993) (reasoning sanctions are only warranted if a litigant continues "insisting upon a position after it is no longer tenable"). Plaintiff has also repeatedly invoked an expunged foreign conviction—despite being repeatedly *advised of its expungement—not for any legitimate evidentiary purpose, but solely to smear* Defendant's character, inject irrelevant and highly prejudicial material into the public record, and harass Defendant. This conduct independently warrants the imposition of sanctions.

Plaintiff's delay tactics culminated during summary-judgment briefing. After being served with Defendant's motion for summary judgment in early November, Plaintiff *unsuccessfully attempted—on at least three separate occasions—to delay the dispositive-motion* deadline set for December 19, 2025 by no less than sixty days. *See* Doc. Nos. 247, 261, 267. When those efforts failed, Plaintiff proceeded to file a series of unauthorized amended and supplemental submissions after his response deadline had passed, without seeking leave of Court. These submissions were not based on newly discovered evidence, but instead relied largely—if not exclusively—on Plaintiff's own beliefs, conclusory assertions, and self-serving declarations as their purported factual foundation. Through this piecemeal supplementation of the record, Plaintiff improperly attempted to manufacture extensions for himself and to reshape the summary judgment record after the deadline, in direct contravention of the Federal Rules of Civil Procedure and this Court's scheduling orders.

7

## C. PLAINTIFF'S PERSISTENT AND NONCOMPLIANT FILINGS

In virtually every pleading Plaintiff has filed, he injects personal attacks directed at Defendant and defense counsel, escalating well beyond zealous advocacy and into harassment.

These pleadings impermissibly burden Defendant's ability to defend this action, substantially increase attorneys' fees and litigation expenses, and prejudice Defendant by forcing him to expend significant time and resources responding to vexatious and procedurally improper allegations through motions to strike, memoranda, affidavits, declarations, and other unnecessary filings.

Compounding this misconduct, Plaintiff repeatedly accuses Defendant of providing "false and misleading" discovery responses or of fraudulently concealing responsive documents based solely on Plaintiff's own belief. *See, e.g.*, Doc. Nos. 266 ¶ 17; 277-1 at 9. This Court has made no such findings and, to the contrary, has largely denied Plaintiff's motions to compel and for discovery sanctions. *See, e.g.*, Doc. Nos. 204, 205, 229, 251. Plaintiff's continued effort to relitigate these unfounded accusations—after they have been expressly rejected— demonstrates bad faith rather than any good-faith misunderstanding of the record.

## D. PLAINTIFF'S SUMMARY JUDGMENT PRACTICE—IN BOTH HIS OPPOSITION AND MOVING PAPERS—CONFIRMS BAD FAITH

Plaintiff's summary judgment practice, viewed in its entirety, independently confirms bad faith and warrants sanctions. This includes both Plaintiff's opposition filing to Defendant's motion for summary judgment and Plaintiff's own motion for summary judgment materials. *See, e.g.,* Doc. Nos. 265 at 1–31; 265-1; 265-2; 266; 266-1–18; 277; 277-1; 277-2.

Plaintiff's opposition filings were pervasively noncompliant with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and Local Rule 56.1. *See generally,* Doc. Nos. 265 at 1–31; 265-1; 265-2; 266; 266-1–18; *see generally* Doc. No. 279 (Defendant's Motion for

8

Leave to File a Motion to Strike). Plaintiff submitted a declaration and eighteen accompanying exhibits (Doc. Nos. 266; 266-1–18), a defective response to Defendant's Statement of *Uncontested Material Facts (Doc. No. 265-1), and an unauthorized "Statement of Material Facts in Genuine Dispute"* (Doc. No. 265-2), all of which suffer from systemic evidentiary and procedural defects rendering substantial portions inadmissible at summary judgment. These are precisely the types of submissions courts in this District disregard or strike when parties attempt to substitute narrative advocacy, speculation, and inadmissible material for competent proof. *See Setterlund v. Potter*, 597 F. Supp. 2d 167, 170 (D. Mass. 2008); *Goguen v. Textron*, Inc., 234 F.R.D. 13, 16 (D. Mass. 2006); *See, e.g., Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 796 (1st Cir. 1992); *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991).

More troubling still, Plaintiff did not confine this misconduct to his opposition papers. In the days following the opposition deadline—and even after Defendant filed his reply pointing *out the fatal deficiencies of Plaintiff's materials*[3]—*Plaintiff submitted a series of unauthorized* amended and supplemental filings without leave of Court, including Doc. Nos. 269, 269-1, 269-2, 269-3, 270, 274, and 274-1–5. These filings repeatedly altered and supplemented Plaintiff's purported factual assertions in an apparent effort to cure fatal evidentiary defects and evade summary judgment. Such conduct violates Rules 6(b) and 56, as well as Local Rules 7.1 and 56.1, and *"cannot be cured through piecemeal supplementation of the record." Mehic v. Dana-Farber Cancer Inst., Inc.*, 2018 U.S. Dist. LEXIS 149564, at *40 (D. Mass. Aug. 31, 2018).

---

[3] More specifically, Defendant's reply brief in support of his motion for summary judgment pointed out that Plaintiff's Response to Defendant's Statement of Uncontested Material Facts contained no citations to the record, in direct violation of Local Rule 56.1. *See, e.g.,* Doc. Nos. 272 at 2; 265-1 at 1–43.

9

Equally troubling, Plaintiff admits that he relied exclusively on "Google Translate" to translate certain Spanish-language materials and personally "standardized formatting to eliminate *obstructions preventing the legibility of the text from internet advertisements and programming* errors," while simultaneously certifying—under the pains and penalties of perjury—that said materials are "true and correct copies," further qualified only "to the extent that any single true and correct copy of each digital article exists." *See* Doc. No. 270 ¶ 40. Aside from being irrelevant to this litigation and submitted solely for harassing purposes, Plaintiff is not a certified *Spanish translator and nonetheless concedes that he altered both the content and presentation of* these materials. Such conduct renders the submissions unreliable and inadmissible under the Federal Rules of Evidence, including Rules 901, 1002, 1003, and 403, and further violates Rule 11(b)(3) by certifying factual contentions without evidentiary support and without a reasonable inquiry, as required by the Federal Rules of Civil Procedure.

*Plaintiff then carried these same defects forward into his own motion for summary* judgment, incorporating by reference inadmissible declarations and materials, unauthorized amended filings, and allegations drawn from superseded pleadings. *See* Doc. Nos. 277; 277-1; 277-2.

As an initial matter, Plaintiff's summary judgment motion is legally incoherent: Plaintiff *seeks summary judgment as a matter of law while simultaneously asserting—by incorporation—* that genuine disputes of material fact remain to be tried. Rule 56 does not permit such contradiction. *See* Doc. Nos. 277-1 and 277-2 (purporting to incorporate by reference Doc. No. 269-1 into his summary judgment filing); *see also* Doc. No. 269-1 (titled "Plaintiff's Corrected Statement of Material Facts as to Which There **is a Genuine Issue to be Tried** in Opposition to *Defendant Diego MasMarques, Jr.'s Motion for Summary Judgment") (emphasis added).*

10

Substantively, Plaintiff's dispositive motion relies on the same inadmissible and improper declarations and materials submitted in opposition.[4] *See generally* Doc No. 279; *see also* Doc. No. 285 at 1–30 *(Defendant's opposition to Plaintiff's summary judgment filing).* Such materials violate multiple provisions of the Federal Rules of Evidence and cannot be considered at the summary judgment stage. *See, e.g., Carmona v. Toledo,* 215 F.3d 124, 131 (1st Cir. 2000); *Murphy v. Nat'l Grange Mut. Ins.* Co., No. 13-11363-FDS, 2014 U.S. Dist. LEXIS 147576, at *11–12 (D. Mass. Oct. 16, 2014). Nevertheless, Plaintiff proceeds without regard for *the governing rules and offers no argument—legal or factual—as to how or why the documents* submitted in support of his opposition and summary judgment filings are admissible or capable of being presented in admissible form, and Plaintiff's failure to do so here is fatal. *See* Fed. R. Civ. P. 56(c)(2), (c)(4) (requiring that materials cited at summary judgment be admissible or capable of being presented in admissible form, and declarations must be based on personal knowledge and set forth facts admissible in evidence).

---

[4] Plaintiff relies on inadmissible materials that are largely unauthenticated, inflammatory, improper, or irrelevant to the elements of his claims. These include, *inter alia*, uncertified and machine-translated Spanish newspaper articles concerning Defendant's immaterial decades-old criminal history being offered as improper character evidence (Doc. No. 269-2); screenshots of Plaintiff's own PlainSite webpages and unrelated docket listings (Doc. Nos. 266-2, 266-3); Wikipedia entries of convicted mobsters (Doc. No. 266-4); unauthenticated communications (Doc. No. 266-5); unauthenticated internet posts from Blacklist Report, Complaints Board, Reddit, and other platforms (Doc. Nos. 266-6, 266-7, 266-9); unauthenticated social media posts and forum content from Twitter/X (Doc. Nos. 266-8, 266-10); SEC FOIA log pages (Doc. No. 266-11); cherry-picked excerpts from Plaintiff's own deposition testimony (Doc. No. 266-12); a medical genetics journal article (Doc. No. 266-13); selected filings from prior California harassment proceedings (Doc. No. 274-2); unauthenticated and selective correspondence with Massachusetts law enforcement and the IRS (Doc. Nos. 274-3, 274-4); and dictionary definitions from Oxford Languages (Doc. No. 274-5). Plaintiff further incorporates by reference prior declarations that consist largely of legal conclusions, improper lay opinion— particularly on technical and scientific matters—and inadmissible, non-first-hand testimony. *See* Doc. No. 277-3 (incorporating by reference Doc. Nos. 270, 274-1, 269-3).

11

Once these improper materials are stripped away, Plaintiff's summary judgment motion—like his opposition—contains no competent evidence capable of supporting judgment as a matter of law. *See, e.g., Horta v. Sullivan*, 4 F.3d 2, 7-8 (1st Cir. 1993) (the materials attached to the motion for summary judgment must be admissible and usable at trial).

Indeed, no reasonable litigant would believe that this evidentiary approach complies with Rule 56. Presenting it as though it does is a violation of Rule 11(b)(3). *See Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (finding that to be competent evidence for purposes of summary judgment, documents must be both authenticated and admissible); *see also Serra v. Quantum Servicing Corp.*, 747 F.3d 37, 40 (1st Cir. 2014) (finding "allegations of a merely speculative or conclusory nature are rightly disregarded").

Taken together, Plaintiff's opposition to Defendant's summary judgment motion and Plaintiff's own summary judgment motion confirm a single, consistent pattern: the use of *dispositive motion practice not to resolve genuine issues on a proper evidentiary record, but to* relitigate rejected allegations, harass Defendant, and delay adjudication through an ever-expanding and inadmissible record. *See, e.g.,* Doc. Nos. 265 at 1–31; 265-1; 265-2; 266; 266-1–18; 277; 277-1; 277-2. That conduct falls squarely within Rule 11(b) and independently warrants sanctions.

## E. PLAINTIFF'S PERSISTENT REFUSAL TO COMPLY WITH COURT ORDERS AND REFUSAL TO ACCEPT ADVERSE JUDICIAL RULINGS

Plaintiff has demonstrated a persistent and deliberate refusal to accept adverse judicial rulings or comply with court orders. This conduct is not isolated to a single order or procedural dispute; rather, it reflects a pattern of defiance that predates this action and continues unabated *throughout this litigation.*

12

Plaintiff's refusal to accept adverse rulings predates this action and extends back to proceedings in the California Superior Court for Santa Clara County ("Santa Clara Court"), where his requests for attorneys' fees and costs were denied—twice. *See* Doc. No. 265-1 at ¶ 44. Plaintiff acknowledges those denials, yet nevertheless continues to press this Court to revisit the same fee demands, notwithstanding their finality and notwithstanding that Plaintiff is not an attorney. *See* Doc. No. 265-1 at ¶ 72 (admitting material fact that Plaintiff admits his claimed "costs" include costs and fees that the Santa Clara Court rejected twice); *see also Sykes v. Dish Network*, 2005 Mass. App. Div. 58, 60 n. 5 (concluding "[g]enerally, a party proceeding without legal counsel is not entitled to recover legal fees.").

While Plaintiff characterizes those denials as erroneous, disagreement with a court's decision or order does not entitle a litigant to endless re-litigation. *Montoyo-Rivera v. Pall Life Scis. PR, LLC*, 245 F.Supp.3d 337, 346 (D. P.R. 2017) (*quoting Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (explaining a later-filed action is generally found duplicative of an earlier-filed suit "if the 'claims, parties, and available relief do not significantly differ between the two actions'"). *See* Doc. No. 265-1 at ¶ 44 (Plaintiff describing Santa Clara Court order as an "erroneous decision"); *see also* Andrade Decl., Ex. 1 (Pl. Dep. 210:2–211:9) (Plaintiff testifying that court's decision was "the sloppiest court order [he has] ever seen").

Plaintiff exhibits the same refusal to accept judicial determinations with respect to the Marlborough District Court's dismissal and expungement of the criminal complaint Plaintiff himself initiated. In dismissing the complaint, the Marlborough District Court expressly found that there was no "good faith basis" for the charges, that it could not be "prove[n] [that] the D[efendant] was behind the posts at issue," and that Defendant had been the subject of a "false identification." *See* Doc. No. 265-1 at ¶ 45. Plaintiff does not dispute this order (*id.*), he just

13

will not accept it. Rather than acknowledge that reality, Plaintiff doubles down, asserting—without evidentiary support—that Defendant was somehow "communicating" with the *individual who actually published the posts at issue. See id. at ¶ 38. Even more outrageous,* Plaintiff admitted during his deposition that he had learned about this other individual while the criminal action was still ongoing but never corrected the police report he had made and instead allowed Defendant to continue incurring attorneys' fees defending against accusations Plaintiff knew—or should have known—were unfounded. *See id.* at ¶ 45. Still, Plaintiff attempts to *recast his own misconduct by claiming that, although he filed a criminal complaint against* Defendant, he was not actually accusing Defendant of publishing pornographic and anti-Semitic material because he merely provided police with digital copies of posts he "believed" were associated with Defendant. *Id.* That distinction is nonsensical and underscores Plaintiff's effort to evade responsibility for the false accusations he affirmatively set in motion.

*Plaintiff's refusal to accept adverse rulings or orders is further demonstrated by his* repeated objections under Rule 72(a) to the Magistrate Judge's nondispositive orders. Plaintiff filed multiple Rule 72(a) objections, all of which were denied outright. *See* Doc. Nos. 281–284. Those objections did not present close questions of law or identify clear error. Instead, they merely recycled the same discovery grievances and accusations previously rejected.

*Rule 72(a) is not a vehicle for reargument, yet Plaintiff used it precisely for that purpose.* The District Judge's categorical rejection of those objections confirms that Plaintiff's filings were not borderline disputes, but improper attempts to override the Court's management of this case. *See* Doc. Nos. 281–284. Plaintiff's wholesale failure under Rule 72(a) further demonstrates that his objections are based on his willful defiance of the Court's authority, not *misunderstanding of the law or procedure. Id.*

14

Plaintiff's continued relitigation of settled issues—after explicit judicial rejection—demonstrates that his filings are not aimed at resolving legitimate disputes, but at prolonging the case, burdening Defendant, and undermining the orderly administration of justice. Such delay-oriented motion practice, repetitive filings, and the refusal to accept final rulings are hallmarks of sanctionable abuse. *See CQ Int'l Co. v. Rochem Int'l, Inc.*, 659 F.3d 53, 61 (1st Cir. 2011).

## F. PLAINTIFF'S FILINGS WERE SUBMITTED FOR AN IMPROPER PURPOSE

Viewed collectively, Plaintiff's filings reveal a single, consistent objective: to delay resolution of this action, burden Defendant with unnecessary expense, and use the pendency of litigation as leverage.

Plaintiff's claims themselves underscore this improper purpose. Each cause of action is premised on Defendant's constitutionally protected petitioning activity—statements to law enforcement, courts, and governmental agencies—rather than any actionable misconduct. *See, e.g.,* Doc. No. 54 ¶ 99 (s-u) (libel *per se* claim is based on Defendant's statements to the Ohio Attorney General); *id.* at ¶¶130–32, 136, 139–40 (abuse of process based on Defendant's cross-TRO in Santa Clara Court and complaints to government agencies); *id.* at ¶¶145–48 (malicious prosecution based on Defendant's application for criminal charges); *id.* at ¶¶ 188, 190–91 (civil conspiracy claim based on Defendant's purported "libelous" activity); *id.* at ¶ 200 (invasion of privacy claim based on "defamatory statements"); *id.* at ¶¶ 205, 207–10, 215–217 (intentional infliction of emotional distress claim based on Defendant's cross-TRO and contacting "[government] agencies to arrest, incarcerate...investigate, prosecute, and/or audit Plaintiff...").

Plaintiff's misuse of the judiciary is further underscored by his demand for sweeping injunctive relief barring Defendant from speaking or petitioning government authorities—relief that is not only legally unavailable, but constitutionally suspect. *See* Doc. No. 277-1 at 29

15

(requesting Court to issue a permanent injunction ordering Defendant to "immediately stop posting about, filing complaints about, or otherwise remarking upon Plaintiff in any context referred to in this motion"). Such relief would directly contravene settled First Amendment principles and underscores that Plaintiff's filings are designed to silence and punish, not to vindicate legitimate legal rights.

This conduct falls squarely within Rule 11(b)(1) and (b)(2), which prohibits filings submitted for the purpose of harassment, delay, the needless increase in the cost of litigation, or when unwarranted by existing law. See Fed. R. Civ. P. 11(b)(1)–(2). All are present here.

## G. SANCTIONS ARE NECESSARY.

Defendant respectfully submits that lesser sanctions would be inadequate given Plaintiff's demonstrated litigation history, repeated warnings, and continued misconduct. Plaintiff is a vexatious litigant who persists in asserting claims and allegations that he knows, or reasonably should know, lack any factual or legal foundation, and flooding the docket with needless motions already denied once before. Vexatious conduct exists where a party's actions are frivolous, unreasonable or without foundation. *Local 285 Service Employees Intern'tl v. Nontuck Resources Assoc., Inc.*, 64 F.3d 735, 737 (1st Cir. 1995). Subjective bad intent is not necessary to justify an award for vexatious conduct (*id.*) and bad-faith behavior in this context is equivalent to bringing suit on a frivolous claim, meaning a claim that no reasonable person could suppose to have any merit. *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000).

Plaintiff is *not* an unsophisticated litigant. He admits that he has been involved in several lawsuits. Given his extensive litigation history and repeated filings across multiple jurisdictions, a reasonable person in Plaintiff's position would have known that these claims were frivolous, lacked evidentiary support, and were advanced for an improper purpose. *Chaturvedi v.*

16

*Siddharth*, No. 20-cv-11880-FDS, 2021 WL 664129, at *8 (D. Mass. Feb. 19, 2021).  Courts assessing Rule 11 sanctions properly consider a pro se litigant's sophistication and experience. *Id.*

Here, Plaintiff's experience weighs decisively in favor of sanctions. *Id.*  A reasonable person in the *pro se* litigant's circumstances—considering his demonstrated litigation experience—would have known that the claims asserted in the First Amended Complaint, as well as the positions advanced in his summary judgment and opposition filings lacked factual or legal support and were submitted for an improper purpose (i.e., namely to punish Defendant for exercising his right to petition and deter him from making further complaints).  *Mello v. Rocchio,* 23-cv-480-JJM-PAS, C.A. 23-cv-479-JJM-PAS (D. R.I. Jan 23, 2026); *Hw Lee v. Volumetric Holdings GP LLC*, 23-cv-11197-DJC (D. Mass. Sep 09, 2024)).  As discussed in Defendant's motion for summary judgment, the claims and damages raised by Plaintiff in this action are either time barred, already been rejected by a prior Court, or based on Defendant's speculations. Rule 11 sanctions are therefore warranted.

As addressed above, Plaintiff has repeatedly asserted substantially identical allegations against Defendant over the course of nearly a decade in multiple state and federal courts, including this Court as well as the Santa Clara Court.  Plaintiff has also initiated criminal complaints against Defendant, forcing Defendant to defend against a criminal action in Marlborough District Court that was ultimately dismissed and expunged in 2021 based on Plaintiff's false identification. Despite those rulings, Plaintiff nevertheless filed this action in January 2023, asserting many of the same claims yet again.

Plaintiff's inclusion of false and misleading depictions relating to Defendant's purported foreign conviction—based on hearsay and other inadmissible materials rather than any formal

17

record, which Plaintiff admits he has not reviewed—together with the submission of numerous exhibits wholly unrelated to proving the essential elements of his claims, constitutes vexatious litigation conduct designed to harass and prejudice Defendant and independently warrants the imposition of sanctions. *See Adams v. Gissell,* No. 20-cv-11366-PBS, 2022 WL 2387881, at *3- 6 (D. Mass. Apr. 19, 2022), *report and recommendation adopted*, No. 20-cv-11366-PBS, 2022 WL 16702407 (D. Mass. Aug. 24, 2022) (sanctioning *pro se* plaintiff for filing baseless complaints laden with irrelevant allegations intended to harass and embarrass defendants); *Cruz v. Savage,* 896 F.2d 626, 634 (1st Cir. 1990) *(finding vexatious and unreasonable conduct where* a litigant attempted to introduce irrelevant evidence despite repeated admonitions and engaged in "obfuscation of the issues, hyperbolism, and groundless presumptions").

Plaintiff's misconduct has not been confined to written filings. He has repeatedly threatened Defendant's counsel with complaints to professional licensing authorities and accusations of disbarment unless filings are amended or withdrawn. Such conduct is not advocacy; it is coercive intimidation designed to influence the litigation through extrajudicial pressure. *See McGarry v. Geriatric Facilities of Cape Cod, Inc.,* No. 10-cv-11343-GAO, 2011 WL 344751, at *2 (D. Mass. Feb. 1, 2011) (sanctioning *pro se* plaintiff because plaintiff "is continuing to engage in a pattern of filing baseless documents that harass defense counsel" and "has already been warned that the Court will impose sanctions" should that conduct continue).

Accordingly, dismissal with prejudice and an injunction barring Plaintiff from reasserting these same allegations are warranted. In determining the appropriate sanction, courts consider factors including, *inter alia,* whether the conduct was willful, whether it reflects a pattern rather than an isolated event, whether it infected the entire pleading, whether the litigant has engaged in

18

similar conduct in other litigation, the effect on the litigation process in terms of time and expense, and what sanction is necessary to deter repetition. *Azubuko*, 396 F.Supp.2d at 7.

*Each of those factors weighs decisively in favor of sanctions here. Plaintiff's conduct was* willful, patterned, and pervasive. He has already been warned regarding his conduct in this action, yet persisted unabated. *See Cruz*, 896 F.2d at 634. *See* Doc. No. 205 (Court "den[ying] a request for sanctions based on [Plaintiff's] pleading" and further cautioning that the filing of a frivolous Rule 11 motion may itself be sanctionable under Rule 11); *See* Doc. Nos. 233 (denying *Defendant's motion for sanctions "at this stage" while generally cautioning the parties "to tone* down the rancor in their pleadings and discourse with one another"). His misconduct infected the entire case, caused an extraordinary escalation of costs, and reflects a longstanding practice of abusive litigation. Where lesser measures have failed, courts have recognized that meaningful monetary sanctions—and, where appropriate, dismissal and filing restrictions—are necessary to deter repetition. *See Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir. 1992) (reasoning that Rule 11 exists to protect litigants and the Court from precisely this type of wasteful, frivolous, and harassing litigation).

Absent meaningful sanctions, the record makes clear that Plaintiff will continue to pursue Defendant through repetitive, meritless, and harassing litigation as he has the last nine years. *See, e.g., Fusco v. Medeiros*, 965 F.Supp. 230, 237 (D. R.I. 1996) (sanctioning respondent's attorney in the amount of $95,834.86); *Giangrasso v. Kittatinny Reg. High Sch. Bd. of Educ.*, 865 F.Supp. 1133, 1142 (D.N.J.1994) (awarding $100,000 in attorneys' fees to movants, on grounds that large sum is necessary "[to] satisfy the requirement that sanctions be sufficient to deter repetition."); *Kramer v. Tribe*, 156 F.R.D. 96, 111 (D.N.J.1994), aff'd 52 F.3d 315 (3rd

19

Cir.1995) (awarding $70,289.00 in attorneys' fees and costs under the new Rule 11 and 28U.S.C. § 1927).

## IV. CONCLUSION

WHEREFORE, Defendant respectfully requests that this Honorable Court impose appropriate sanctions sufficient to deter further abuse, including: (1) dismissal of this action with prejudice; (2) an award of Defendant's reasonable attorneys' fees and costs incurred as a result of Plaintiff's sanctionable conduct; (3) an injunction prohibiting Plaintiff from initiating or pursuing further actions against Defendant without prior leave of Court; and (4) such other relief as this Honorable Court deems just and proper. Such relief is necessary to protect Defendant, conserve judicial resources, and uphold the integrity of the judicial system. To the extent dismissal with prejudice and filing restrictions extend beyond the remedies enumerated in Rule 11(c), Defendant seeks such relief pursuant to the Court's inherent authority to curb abusive litigation conduct.

Dated July 3, 2026

/s/ Diego Mas Marques, Jr.

Diego Mas Marques, Jr.
PO Box 301
Marlborough, MA 01752
dmas5@protonmail.com

20

## <u>CERTIFICATE OF SERVICE (RULE 11 SAFE HARBOR SERVICE)</u>

I hereby certify that a copy of Defendant Diego Mas Marques, Jr.'s Motion for Memorandum in Support of Sanctions Pursuant to Federal Rule of Civil Procedure Rule 11 and the Court's Inherent Authority was served on Plaintiff Aaron Jacob Greenspan on January 25, 2026, via electronic mail.


Dated July 3, 2026

/s/ Diego Mas Marques, Jr.

Diego Mas Marques, Jr.
PO Box 301
Marlborough, MA 01751
dmas5@protonmail.com

21