**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **AARON GREENSPAN**,<br><br>Plaintiff,<br><br>v.<br><br>**DIEGO MASMARQUES, JR. a/k/a DIEGO MAS HOWARD a/k/a RICKY MAS MARQUES a/k/a JACK JONES**, **SERGEI IGOREVICH KUDRIAVTSEV**, **MEDIOLEX, LTD.**, and **ASTRAD, LTD.**,<br><br>Defendants. | Case No.: 1:23-cv-10134-DJC |

**<u>PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AS TO DEFENDANT MASMARQUES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e), OR IN THE ALTERNATIVE, RULE 60(b)(1)</u>**
**[LODGED CONDITIONALLY PENDING RULING ON PLAINTIFF'S MOTION FOR LEAVE, ECF NO. 346]**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

- A. Legal Standard ..... 1
- B. The Supreme Judicial Court's COVID-19 Tolling Order Applies Here ..... 1
- C. The First Claim (Libel Per Se) ..... 3
  1. The Order Conflates Multiple Distinct Social Media Platforms ..... 3
  2. The Order Treats Authentication As Requiring Proof Of Authorship ..... 4
  3. The Rule 701 Ruling Discards Perception Testimony With The Conclusion Attached To It ..... 5
  4. The Order Applies Its Own Standard of Proof, Not Rule 56 ..... 7
  5. Defendant MasMarques's Own Filings In This Court Repeat The Content Of The Actionable Statements ..... 9
  6. The "Dispositive" Pleading Ground Was Never Raised By The Movant, And The Order Does Not Address It ..... 10
  7. The Order Faults Plaintiff For Lacking The Records His Pending Motion Sought ..... 11
  8. The Order Excuses A 156-Day Default Under A Standard Its Own Authority Does Not Support ..... 13
- D. The Second Claim (Civil Harassment Under G.L. c. 258E) ..... 14
  1. The Dismissal Leaves The Claim With No Forum Anywhere ..... 14
  2. A State Cannot Confine A Right It Creates To Its Own Courts ..... 15
- E. The Fourth and Fifth Claims (Abuse of Process / Malicious Prosecution) ..... 16
  1. Neither The R&R Nor The Order Addresses The Proceedings That Terminated Within The Limitations Period ..... 16
  2. Plaintiff Pled All Relevant Facts In The FAC and His Statement of Facts on Summary Judgment ..... 17
  3. The Malicious Prosecution Claim is Timely ..... 18
  4. The DMV Proceeding Terminated Within The Limitations Period ..... 18
- F. The Fourteenth Claim (Intentional Infliction of Emotional Distress) ..... 19

III. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

## Cases

*Addamax Corp. v. Open Software Found., Inc.*,
152 F.3d 48, 55 (1st Cir. 1998) ... 11

*Agis v. Howard Johnson Co.*,
371 Mass. 140, 145 (1976) ... 19, 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986) ... 3, 7, 8

*Banister v. Davis*,
590 U.S. 504, 508 (2020) ... 1

*Berkovitz v. Home Box Office, Inc.*,
89 F.3d 24, 29, 31 & n.8 (1st Cir. 1996) ... 11

*Bernier v. Upjohn Co.*,
144 F.3d 178, 181 (1st Cir. 1998) ... 14

*Billings v. Commerce Ins. Co.*,
458 Mass. 194, 199 (2010) ... 18

*Boyle v. Wenk*,
378 Mass. 592, 597-98 (1979) ... 20

*Calvi v. Knox County*,
470 F.3d 422, 431 (1st Cir. 2006) ... 17

*Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*,
42 F.3d 668, 682 (1st Cir. 1994) ... 6

*Castro v. United States*,
540 U.S. 375, 381-82 (2003) ... 12

*Chervin v. Travelers Ins. Co.*,
448 Mass. 95, 103 (2006) ... 18

*Commonwealth v. Purdy*,
459 Mass. 442, 451 (2011) ... 8, 10

*Desert Palace, Inc. v. Costa*,
539 U.S. 90, 100 (2003) ... 10

*Erickson v. Pardus*,
551 U.S. 89, 94 (2007) ... 12

*Foley v. Lowell Sun Publishing Co.*,
404 Mass. 9 (1989) ... 15

*Freedom Wireless, Inc. v. Boston Communications Group, Inc.*,
369 F. Supp. 2d 155, 157 (D. Mass. 2005) ... 6

*Global NAPs, Inc. v. Verizon New England, Inc.*,
489 F.3d 13, 25 (1st Cir. 2007) ... 1

*Griffin v. State*,
19 A.3d 415, 427-28 (Md. 2011) ... 12

*Hamrit v. Citigroup Glob. Mkts., Inc.*,
Case No. 1:22-cv-10443-JPC, ECF No. 121 (S.D.N.Y. Apr. 22, 2025) ... 7

*Homesavers Council of Greenfield Gardens, Inc. v. Sanchez*,
70 Mass. App. Ct. 453, 461 (2007) ... 20

*Johnson v. City of Shelby*,
574 U.S. 10, 11 (2014) ... 17, 19

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90, 99 (1991) ... 2

*Kemp v. United States*,
596 U.S. 528, 535 (2022) ... 1

*Lunan Pharmaceutical Group Co. v. Long Zhao*,
Case No. 1:21-cv-10667-MJJ, 2025 WL 5276091, at *1 (D. Mass. April 11, 2025) ... 6

*Marshall v. Marshall*,
547 U.S. 293, 314 (2006) ... 15

*Mas Marques v. Greenspan*,
Case No. H047904 (Cal. Ct. App. June 23, July 8 & Aug. 19, 2021) ... 17

*Miranda-Rivera v. Toledo-Dávila*,
813 F.3d 64, 76 (1st Cir. 2016) ... 17, 19

*Payton v. Abbott Labs*,
386 Mass. 540, 547 (1982) ... 20

*Pérez v. Volvo Car Corp.*,
247 F.3d 303, 315 (1st Cir. 2001) ... 6

*Perry v. Wolaver*,
506 F.3d 48, 56 n.10 (1st Cir. 2007) ... 13

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
507 U.S. 380, 395 (1993) ... 13

*Quaranto v. Silverman*,
345 Mass. 423, 426 (1963) ... 16

*Railway Co. v. Whitton's Adm'r*,
80 U.S. (13 Wall.) 270, 286 (1872) ... 15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133, 151 (2000) ... 7

*Rodríguez v. Doral Mortg. Corp.*,
57 F.3d 1168, 1172 (1st Cir. 1995) ... 18

*Rosenblum v. Ginis*,
297 Mass. 493, 497 (1937) ... 18

*Shaw's Supermarkets, Inc. v. Melendez*,
488 Mass. 338, 342 (2021) ........ 2

*Simon v. Solomon*,
385 Mass. 91, 95 (1982) ........ 20

*State v. Brown*,
836 S.W.2d 530, 549 (Tenn. 1992) ........ 7

*Tennessee Coal, Iron & R.R. Co. v. George*,
233 U.S. 354, 360 (1914) ........ 15

*Tienda v. State*,
358 S.W.3d 633, 645 (Tex. Crim. App. 2012) ........ 8

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
524 F.3d 315, 321 (1st Cir. 2008) ........ 10

*United States v. Alicea-Cardoza*,
132 F.3d 1, 5 (1st Cir. 1997) ........ 4

*United States v. Lewisbey*,
843 F.3d 653, 658-59 (7th Cir. 2016) ........ 8

*United States v. Paulino*,
13 F.3d 20, 23 (1st Cir. 1994) ........ 4

*Van Liew v. Stansfield*,
474 Mass. 31, 34, 40 (2016) ........ 18

*Velázquez-García v. Horizon Lines of P.R., Inc.*,
473 F.3d 11, 18 (1st Cir. 2007) ........ 8

*White v. N.H. Dep't of Emp. Sec.*,
455 U.S. 445, 450 (1982) ........ 1

**Statutes**

28 U.S.C. § 1391 ........ 15

28 U.S.C. § 1391(b)(1) ........ 15

Massachusetts G.L. c. 258E, § 2 ........ 14

Massachusetts G.L. c. 258E, § 3(f) ........ 16

Massachusetts G.L. c. 260, § 2A ........ 2

**Rules**

California Rule of Court 8.140(b) ........ 17

Civil Local Rule 56.1 ........ 13, 14

Federal Rule of Civil Procedure 6(b)(1)(B) ........ 13

Federal Rule of Civil Procedure 10(c) ........ 10

Federal Rule of Civil Procedure 15(a)(2) ........ 19, 20

Federal Rule of Civil Procedure 15(b) ........ 19

Federal Rule of Civil Procedure 15(d) .......... 20
Federal Rule of Civil Procedure 19 .......... 16
Federal Rule of Civil Procedure 41(b) .......... 16
Federal Rule of Civil Procedure 56(c)(2) .......... 4
Federal Rule of Civil Procedure 56(d) .......... 12
Federal Rule of Civil Procedure 56(f) .......... 11
Federal Rule of Civil Procedure 56(f)(2) .......... 11
Federal Rule of Civil Procedure 59(e) .......... 1
Federal Rule of Civil Procedure 60(b)(1) .......... 1
Federal Rule of Evidence 701 .......... 5, 7
Federal Rule of Evidence 701(a) .......... 5
Federal Rule of Evidence 901 .......... 4
Federal Rule of Evidence 901(a) .......... 4
Federal Rule of Evidence 901(b)(1) .......... 4

**Other Authorities**

Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, No. OE-144, ¶ 13 (Mass. June 24, 2020) .......... 2

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 59(e) or, in the alternative, Rule 60(b)(1), Plaintiff Aaron Greenspan respectfully moves the Court to alter or amend the judgment entered on September 21, 2026, ECF No. 345. This motion addresses grounds that appear for the first time in the Order at ECF No. 344 ("Order"). The Order contains numerous manifest errors of law. Plaintiff also asks the Court to correct a ruling in ECF No. 118 that merged into the judgment. Plaintiff addresses the dismissal of the ComplaintsBoard Defendants separately.[1]

## II. ARGUMENT

### A. Legal Standard

Rule 59(e) "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). Relief is available where "the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." *Global NAPs, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 25 (1st Cir. 2007). The rule is the proper vehicle to request relief when a judgment rests on a misreading of the record, or on a ground the losing party had no occasion to address before judgment entered. In the alternative, Rule 60(b)(1) permits relief from "mistake," which "includes legal errors made by judges." *Kemp v. United States*, 596 U.S. 528, 535 (2022).

### B. The Supreme Judicial Court's COVID-19 Tolling Order Applies Here

The Report and Recommendation, ECF No. 338 ("R&R"), measured every claim against a single cutoff: "for a claim to survive the tort statute of limitations, the cause of action must

---

[1] Plaintiff does not waive, and expressly preserves, every objection raised in ECF No. 342. "GSOF" and "MResp." refer to Plaintiff's statement of facts and Defendant MasMarques's response, ECF No. 310; "MSOF" refers to Defendant MasMarques's statement of facts as reproduced with Plaintiff's responses at ECF No. 274, as in the R&R. R&R at 5 n.2.

have accrued typically no earlier than January 20, 2020, the date three years prior to when Greenspan filed the instant case." R&R at 10. The Order adopted that analysis. Order at 6-8. Yet this cutoff omits Massachusetts law governing the same statute, G.L. c. 260, § 2A. The Supreme Judicial Court ordered that "[a]ll civil statutes of limitations were tolled . . . from March 17, 2020, through June 30, 2020," so that the days remaining on March 17, 2020 would remain as of July 1, 2020. Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, No. OE-144, ¶ 13 (Mass. June 24, 2020). The order adds at least 106 days to every limitations period that had not expired by March 17, 2020, not only those that would have expired during the tolling window. *Shaw's Supermarkets, Inc. v. Melendez*, 488 Mass. 338, 342 (2021) ("'[a]ll' means all"). A claim that accrued on or after October 6, 2019 was therefore timely when this action was filed on January 20, 2023, assuming no further tolling applies.

The judgment cannot rest on a cutoff that Massachusetts law does not permit. Plaintiff raised the COVID-19 tolling issue prior to summary judgment. *See* ECF No. 108 at 15-16. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (applying state law although the party had "failed to advert to state law until her reply brief"). This Court is bound to apply the Supreme Judicial Court's tolling order.

Applying the correct cutoff means that *first*, FAC statement (y), published on ComplaintsBoard on November 22, 2019, is timely. FAC ¶ 99(y). *Second*, the proceeding MasMarques admits he initiated with the California Department of Motor Vehicles terminated in Plaintiff's favor after October 11, 2019 and supports a timely malicious-prosecution claim. *Infra* Part II.E.4. *Third*, the R&R held the Twelfth Claim barred because Plaintiff's notice to the

ComplaintsBoard operators came "in 2019," R&R at 14, but the notice e-mail on which that claim rests was sent October 20, 2019. FAC ¶ 191. Thus, the limitations ground cannot stand.

### C. The First Claim (Libel Per Se)

#### 1. The Order Conflates Multiple Distinct Social Media Platforms

The Order describes Plaintiff's theory as one "that establishes that MasMarques owned the Twitter account that made the posts in question," and rejects it because "the Twitter password reset screenshot" does not "prove" two "logical links." Order at 4. But three of the eight statements the R&R held capable of defamatory meaning, (aa), (bb) and (cc), were published on ComplaintsBoard in February and March 2020, not on Twitter. R&R at 17; FAC ¶ 99. Reasoning about Twitter cannot dispose of them, and the Order offers no other reasoning.

The ComplaintsBoard evidence stands on its own. Neither the R&R nor the Order addresses it. The FAC includes a Comcast subpoena response tied to both a ComplaintsBoard post and MasMarques's home IP address. FAC Exhibit C. MasMarques swore that "I have never posted anything on the site myself," ECF No. 237-2 at 6, then amended that, stating he "uploaded or shared a link to publicly available documents on what I believe was ComplaintsBoard," ECF No. 237-3 at 3. In the California proceeding he testified that he had "one account" on ComplaintsBoard. ECF No. 1-6 at 335. His summary judgment memorandum admits a ComplaintsBoard post. ECF No. 257-1 at 12. And ComplaintsBoard refused to register two e-mail addresses he used, 8587@protonmail.com and 958957z@gmail.com, because for each, the site reported the "[e]mail already exists." ECF No. 237-9 at 2-3; *see* ECF No. 237-2 at 9; ECF No. 237-9 at 10. A jury could thus infer that he wrote the posts. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**2. The Order Treats Authentication As Requiring Proof Of Authorship**

The Order rejects the password-reset exhibit as "unauthenticated" because, in the accompanying declaration, "Greenspan impermissibly expresses his belief about what it implies." Order at 4-5. This conflates two separate questions. Authentication asks only whether "the item is what the proponent claims it is." Fed. R. Evid. 901(a). The exhibit is a capture of Twitter's password reset page for the account @Giza299792458N. ECF No. 266-8 at 30 (GREENSPAN00339). Plaintiff produced it from his own files as part of Exhibit H, which he authenticated under penalty of perjury, ECF No. 270 ¶ 47, and he described the reset feature from his own use of it. *Id.* ¶ 33. That is "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). "If the court discerns enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be, then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the jury." *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994). The Order quotes the first half of that sentence and omits the clause that leaves weight to the jury. Order at 4-5.

Who stands behind an account is a different question, and the First Circuit has held that it is "a separate question not within the purview of Rule 901." *United States v. Alicea-Cardoza*, 132 F.3d 1, 5 (1st Cir. 1997) (records of pager messages authenticated; whether the defendant sent them left to the jury). Defendant MasMarques conceded the point in the very response on which the Order relies; his argument proceeded "even assuming that Plaintiff can authenticate the screenshots he identifies." ECF No. 343 at 2-3. The R&R had cited an unauthenticated copy of the page, ECF No. 237-9 at 20; Objection E.3 pointed to the *authenticated* copy in Exhibit H, ECF No. 342 at 19. The Order cites the authenticated copy but keeps the label without saying why ¶ 47 falls short. Order at 4-5. Nor does Rule 56 require more at this stage. The Order describes Rule 56(c)(2) as "requiring the material relied upon . . . to be admissible." Order at 4

n.5. The Rule permits an objection only where material "cannot be presented in a form that would be admissible in evidence," and Plaintiff, the witness who captured the page, can testify to it at trial. The Order does not address that text, which Objection E.2 quoted. ECF No. 342 at 18.

The Order's description of the exhibit also merges two different records. It refers to "the password reset message shown in the email." Order at 5. No e-mail was involved. The record reflects two separate processes that run in opposite directions. On May 11, 2021, Plaintiff entered the account name @Giza299792458N, and Twitter's own page displayed the masked address associated with that account, "85**@p*********.***." ECF No. 266-8 at 30. On August 25 and December 18, 2025, Plaintiff entered the address 56546@protonmail.com, which Defendant MasMarques disclosed under oath as his own, ECF No. 237-6 at 2, and X then asked him to "Confirm your username" rather than reporting that it "could not find your account" as it did with e-mail addresses not linked to any account, which Plaintiff demonstrated. ECF No. 237-1 at 2-4; ECF No. 277-3 at 2. Neither process depends on anything Plaintiff "believes."

### 3. The Rule 701 Ruling Discards Perception Testimony With The Conclusion Attached To It

The Order holds that Plaintiff "offers no personal knowledge of Twitter's internal records, the account's registered email or its ownership and instead offers lay opinion on technical and specialized matters." Order at 5. No knowledge of Twitter's internal records is needed. Plaintiff's declaration states what Twitter's public page displayed to anyone who used it. ECF No. 270 ¶ 33. That is testimony "rationally based on the witness's perception." Fed. R. Evid. 701(a). Counting characters requires no expertise. The R&R itself described the masked address as matching "two email addresses acknowledged by MasMarques." R&R at 19. Ownership of those addresses was not in dispute. Objection E.4 made this argument under the heading "Describing What a Website Displayed Is Not Expert Or Lay Opinion Testimony," ECF No. 342 at 20, and the Order does not address it or ECF No. 270 ¶ 33. Rather, the only

paragraph the Order cites is ¶ 47, which states that Exhibit H contains "true and correct copies of posts from Twitter/X that evidence indicates were posted by Diego MasMarques, Jr." ECF No. 270 ¶ 47. If the clause "that evidence indicates were posted by" MasMarques is lay opinion, the remedy is to disregard that specific clause. "[A] court will disregard only those portions of an affidavit that are inadmissible and consider the rest of it." *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994); *accord Pérez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001) ("The rule requires a scalpel, not a butcher knife.").

The authority the Order relies on confirms the point. The Order quotes *Lunan Pharmaceutical Group Co. v. Long Zhao*, Case No. 1:21-cv-10667-MJJ, 2025 WL 5276091, at *1 (D. Mass. April 11, 2025) as follows:

> "[A]n individual 'may not opine as to how [a process works], where such testimony requires specialized knowledge outside of the purview of lay witnesses.'"

Order at 5. The original reads:

> "Liu's testimony is allowed to the extent that it arises from common knowledge or his personal knowledge and experience. However, he may not opine as to how ***competitors could use specific pieces of financial information to their advantage***, where such testimony requires specialized knowledge outside of the purview of lay witnesses" (emphasis added).

*Lunan*, *supra*. *Lunan* excluded a prediction about how competitors might exploit financial data. The portion the Order omits *admitted* the same witness's testimony "to the extent that it arises from common knowledge or his personal knowledge and experience." *Id.* That describes Plaintiff's ¶ 33. Plaintiff offered no opinion about how any process works. He described what a public web page showed him. The Order's other authority, *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 369 F. Supp. 2d 155, 157 (D. Mass. 2005), excluded opinions "based on his highly technical and specialized knowledge of telecommunications," and in the passage the Order quotes approves lay opinion "based upon common knowledge or experience."

The line Rule 701 draws is whether testimony "results from a process of reasoning familiar in everyday life" or one "which can be mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee's note to 2000 amendment (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). Resetting a password is the former. *See Hamrit v. Citigroup Glob. Mkts., Inc.*, Case No. 1:22-cv-10443-JPC, ECF No. 121 (S.D.N.Y. Apr. 22, 2025) (crediting a fact witness's description of "a standard password recovery process").

### 4. The Order Applies Its Own Standard of Proof, Not Rule 56

The Order holds that "[t]he screenshot does not prove the first link and the affidavit improperly assumes the second." Order at 4. On summary judgment, the question is not what the screenshot proves, but whether the record as a whole would let a reasonable jury infer authorship where "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Anderson*, 477 U.S. at 250-51.

The only evidence on the other side is Defendant MasMarques's denial. R&R at 18 (citing ECF No. 274 ¶ 56). A jury would not be required to believe it. He swore that "I do not have or use any social media accounts," ECF No. 257-3 ¶ 72, yet an address he admits using was tied to an active X account in both August and December 2025. ECF Nos. 237-1 at 4; 277-3 at 2. Through counsel, he told this Court that 56546@protonmail.com "has not been used by Defendant since late 2018," ECF No. 285 at 9, but he signed and filed a California Notice of Appeal using and listing that address on February 4, 2020. ECF No. 287-1 at 15. And this Court has already recognized that the accuracy of his denials is a factual dispute on which "Greenspan may well be right," to be tested "during cross-examination." ECF No. 251 at 4. The Order cites neither *Reeves* nor *Anderson* nor ECF No. 251, nor does it address or cite the nineteen attribution

factors set out at ECF No. 274 at 27-34. Whether the denial is credible is for a jury. *Velázquez-García v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 18 (1st Cir. 2007) ("it is for the jury, not the judge, to determine his credibility"). Even at the stricter threshold for admitting electronic messages in a criminal case, a defendant's "uncorroborated testimony that others used his computer regularly and that he did not author the e-mails [is] relevant to the weight, not the admissibility, of these messages." *Commonwealth v. Purdy*, 459 Mass. 442, 451 (2011).

The Order rejects the inference from address to account on the ground that Plaintiff's affidavit "improperly assumes" that "the person who owns the email also owns the account and authored the statements." Order at 4. Neither the Order nor the R&R cites any authority requiring independent proof of that inference. It is the ordinary inference from control of a means of communication, and a jury may draw it. *Purdy*, 459 Mass. at 450-51. Here, it is unrebutted. Defendant MasMarques has never claimed that anyone else had access to any of his e-mail addresses. In fact, he has said the opposite: after his MSN account was allegedly compromised in 2017, he "decided to search for a more secure email account and decided on protonmail, ***which is encrypted***" (emphasis added). ECF No. 28 at 10. His bare denial that he has never had social media accounts, ECF No. 257-3 ¶ 72, is contradicted by the record and his former attorney. ECF Nos. 237-1 at 4; 277-3 at 2. The relevant question is not whether the evidence "prove[s]" each link, Order at 4, but whether a reasonable jury could draw it, with "all justifiable inferences . . . drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255.

Where an account's registration is tied to the defendant's own identifiers, courts have found the link sufficient. *United States v. Lewisbey*, 843 F.3d 653, 658-59 (7th Cir. 2016) (account whose e-mail addresses matched the defendant's, together with photographs and the account's link to the application on his phone); *Tienda v. State*, 358 S.W.3d 633, 645 (Tex. Crim. App. 2012) (subscriber records listing the defendant's nickname and e-mail address, together

with distinctive content). The address associated with @Giza299792458N matches addresses MasMarques admits are his, while the circumstances described in Part II.C.5 confirm the link.

#### 5. Defendant MasMarques's Own Filings In This Court Repeat The Content Of The Actionable Statements

The Order states that "Greenspan assumes that the account belongs to MasMarques and that MasMarques authored the imputed statements." Order at 5. The inference of authorship does not rest on assumption or technical opinion. It rests in part on what Defendant MasMarques has written, over his own signature, on this Court's docket.

FAC Statement (ii) accuses Plaintiff and another individual of making "a death threat towards President Trump" and closes, "Reported this to Twitter nothing was done? Reported this to @SecretService." R&R at 18; FAC ¶ 99(ii). MasMarques told this Court,

> "[I]n September of 2020, I went to the FBI in Chelsea, MA and then to the Secret Service in Boston, where I informed them of all the online doxxing, harassment and threats, that Aaron Jacob Greenspan had been committing towards myself and my immediate family, and where he threatened to kill President Trump on his Twitter accounts."

ECF No. 300 at 13. He added that he has "been keeping the FBI and the Secret Service updated..." about Plaintiff. *Id.* Similarly, statement (ll) states that "Aaron Jacob Greenspan & [another person] together run @aarongreenspan & @plainsite to promote their datamining monetized website plainsite.org since 2011." R&R at 18; FAC ¶ 99(ll). MasMarques's Answer states: "Since Plaintiff first created plainsite.org with [another person] in 2011," and describes "data mining, monetized and weaponized website plainsite.org." ECF No. 143 at 4. Statements (jj) and (ll) use the distinctive triad of "doxing," "cyber stalking" and "harass[ment]," and statement (ll) attaches it to a "monetized website plainsite.org." FAC ¶ 99(jj), (ll). MasMarques admits authoring a private e-mail containing "cyberstalking, doxxing and harassing monetized website plainsite.org." MResp. ¶ 253. The @Giza299792458N account posted "1996 Decency

Act 230 needs to be thrown out," GSOF ¶ 214. MasMarques admits using "Decency Act 230" in private e-mails, MResp. ¶ 254, and in his own filings. *See* ECF Nos. 34 at 9, 143 at 4.[2]

No expertise or "speculation" is needed to compare these texts. A reasonable jury could find that the person who publicly claimed to have reported Plaintiff to the Secret Service, using the defendant's own phrasing, was the defendant. Circumstantial evidence may carry a case as well as direct evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

### 6. The "Dispositive" Pleading Ground Was Never Raised By The Movant, And The Order Does Not Address It

The R&R held that Plaintiff "fails to name the exact Twitter or ComplaintsBoard account that authored the subject posts," and that "[t]his failure is dispositive in and of itself." R&R at 18. The FAC names the accounts and alleges their registration at ¶¶ 61, 74, 89 and 91-94, which ¶ 95 incorporates into the First Claim. The FAC also attaches, as Exhibit B, reproductions of posts from @badbadwebsites, @Giza299792458N and @Witchestoday that display those account names. ECF No. 54-2 at 46-51. An exhibit to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). The identity of a specific posting account is not an element of a libel claim in Massachusetts or any jurisdiction, nor does the Court cite any authority saying otherwise. The FAC properly alleges that Defendant MasMarques "authored and/or published" the statements, FAC ¶ 96, and identifies each by its words, date and platform, FAC ¶ 99.

---

[2] Plaintiff's statement of facts cited these filings, GSOF ¶ 254 (citing ECF Nos. 28, 34, 143). ECF No. 300 is also part of the record of this action. Fed. R. Civ. P. 56(c)(3) ("the court . . . may consider other materials in the record"). MasMarques's own statements are admissible against him. Fed. R. Evid. 801(d)(2)(A). Distinctive content, knowledge and phrasing are recognized means of identifying an author. Fed. R. Evid. 901(b)(4) ("[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances"); *Purdy*, 459 Mass. at 450-51 (an account linked to the defendant, together with "confirming circumstances" such as distinctive content, suffices for a reasonable jury to find authorship by a preponderance of the evidence).

MasMarques himself cited ¶¶ 91-92 as identifying "the Twitter handles Plaintiff speculates belong to Defendant—@giza299792458N and @witchestoday." ECF No. 257-1 at 22. He never moved for judgment on the ground that the pleading failed to name accounts, and his response to the objections did not defend it. ECF No. 343 at 2.

Objection A raised both points and invoked Rule 56(f)(2). ECF No. 342 at 7-11. The Order describes Objection A as "dissatisfaction." Order at 3 n.3. The same footnote's authority for not responding to each contention, *Addamax Corp. v. Open Software Found., Inc.*, 152 F.3d 48, 55 (1st Cir. 1998), reviewed findings of fact entered after a bench trial. A court ruling on summary judgment makes no findings of fact; it decides whether a genuine dispute exists. But Objection A concerned what the FAC says, and the Order does not address Rule 56(f). A court may grant summary judgment "on grounds not raised by a party" only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29, 31 & n.8 (1st Cir. 1996). If the Order rests on a purportedly defective pleading, the judgment should say so, but then that ground was reached without the notice Rule 56(f) requires.[3]

### 7. The Order Faults Plaintiff For Lacking The Records His Pending Motion Sought

The Order holds that Plaintiff "offers no personal knowledge of Twitter's internal records, the account's registered email or its ownership." Order at 5. Those are the records Plaintiff sought while both summary judgment motions were pending. On January 26, 2026, he asked to reopen discovery for seven days to obtain account-owner metadata for eleven named Twitter accounts, including @Giza299792458N and @Witchestoday, eight Gmail addresses, a

[3] The R&R also faulted Plaintiff for adding statements by argument rather than by amendment. R&R at 11 n.21, 19 n.25. Plaintiff did move to amend, ECF Nos. 102, 108-2 through -6, and leave was denied on the ground that the amendments "do not allege new facts that would change the Court's analysis as to the two claims against MasMarques that the Court is dismissing." ECF No. 118 at 38. That ruling did not address the new statements.

Google Group and four Reddit accounts. ECF No. 286 at 1-4. He explained why that discovery could not be completed before the August 29, 2025 deadline, and that it "may provide dispositive evidence of authorship." *Id.* at 2. That is the showing Rule 56(d) contemplates: that "for specified reasons, [the nonmovant] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A *pro se* filing is judged by its substance, not its label, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), as this Court has already recognized in this case. ECF No. 118 at 32 (construing Plaintiff's claim under *Castro v. United States*, 540 U.S. 375, 381-82 (2003)). The request was instead treated as an untimely motion to extend fact discovery. ECF No. 303.

The Order is the first ruling to rest on the absence of these particular records, so this is Plaintiff's first occasion to raise the point.[4] Courts recognize three principal ways to tie a social media account to a person: ask the purported creator, search the creator's computer, or obtain records from the platform. *Griffin v. State*, 19 A.3d 415, 427-28 (Md. 2011). Plaintiff pursued all three. In California, Defendant MasMarques first could not remember which social media accounts were his; years later, he denied under oath having any social media accounts at all. ECF No. 257-3 ¶ 72. His own counsel, however, had written to Plaintiff that he "hasn't had a Twitter account in years," acknowledging that he once had one. *See* Declaration of Aaron Greenspan ¶ 3 & Ex. 1. The platform subpoena was not enforced, and its re-issuance was denied. ECF Nos. 229, 303. MasMarques, for his part, opposed Plaintiff's request for "the appointment of a neutral technical expert to examine Defendant's devices," ECF No. 242 at 6, and then argued that Plaintiff "offers no expert testimony, forensic analysis, or platform

---

[4] The records were not missing for lack of effort. Plaintiff e-mailed a subpoena to X Corp.'s in-house and outside counsel, both of whom received it, and sent it by certified mail to X Corp.'s mailbox in Bastrop, Texas ***pursuant to X Corp.'s own written instructions***—instructions which have since been modified—from which it was returned. ECF No. 229 at 3. X Corp. opposed enforcement on service grounds alone. ECF No. 215 at 1-2. The motion to compel was denied because the subpoena had not been personally served and because the Court misread Rule 45. ECF No. 229 at 1-4.

authentication tying Defendant to the accounts at issue." ECF No. 285 at 9. A party that resists discovery should not obtain judgment because that discovery never occurred.

### 8. The Order Excuses A 156-Day Default Under A Standard Its Own Authority Does Not Support

The Order holds that the magistrate judge acted within her discretion in accepting Defendant MasMarques's response to Plaintiff's statement of facts, ECF No. 310, because he filed it within the fourteen days allowed by ECF No. 306. Order at 4 n.4. The response was initially due January 20, 2026. ECF No. 170 ¶ 7(b); L.R. 56.1. It was filed on June 25, 2026, 156 days late, only after the Court noticed the default on its own. ECF No. 306. MasMarques had never asked for more time. Previously, he filed his first valid Answer over a year late.

*Perry v. Wolaver*, 506 F.3d 48, 56 n.10 (1st Cir. 2007) does not support the Court's finding that it was within the Magistrate Judge's discretion to allow a months-late response. The response in *Perry* was filed "approximately 7 days late." The First Circuit deferred because the district court had applied the excusable-neglect standard and found that the late party "had not missed any previous deadlines," had "responded promptly upon learning of [its] error," showed no "bad faith or intent to delay," and caused no prejudice. 506 F.3d at 56 n.10. A deadline that has passed may be extended only "on motion" and only for "excusable neglect," Fed. R. Civ. P. 6(b)(1)(B), weighed under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). No motion was made and no such finding was entered. Further, the extension was expressly premised on "MasMarques' pro se status." ECF No. 309. ***MasMarques was represented by counsel when the deadline passed***: his counsel filed his opposition brief on January 21, 2026, without the required response, ECF No. 285. He did not move to discharge her until February 2, 2026, ECF No. 289, and that motion remained pending when ECF No. 309 entered on June 23, 2026. It was granted six days later, *nunc pro tunc*. ECF No. 313.

Absent a valid extension, the facts in Plaintiff's statement are "deemed for purposes of the motion to be admitted." L.R. 56.1. When no timely response is filed, the Court decides the motion "taking the movant's facts as uncontested, just as the governing rules warn will occur absent an opposition." *Bernier v. Upjohn Co.*, 144 F.3d 178, 181 (1st Cir. 1998) (citing D. Mass. L.R. 56.1). They include that Defendant MasMarques "registered multiple accounts on ComplaintsBoard and used them to author[] multiple posts about Plaintiff." GSOF ¶ 121. The same latitude was not extended to Plaintiff, whose request for seven days of discovery was denied as untimely. ECF No. 303.

### D. The Second Claim (Civil Harassment Under G.L. c. 258E)

#### 1. The Dismissal Leaves The Claim With No Forum Anywhere

The Court dismissed the Second Claim because G.L. c. 258E, § 2 requires that "[p]roceedings . . . be filed, heard and determined" in the courts of the Commonwealth. ECF No. 118 at 25. That dismissal merged into the judgment, which enters "judgment for the defendant" without distinguishing it. ECF No. 345. The Order quotes only the first half of the operative sentence. The second half decides the question. Section 2 provides that proceedings under the chapter "shall be filed, heard and determined in the superior court department or the respective divisions of the district court department or the Boston municipal court department *having venue over the plaintiff's residence*." G.L. c. 258E, § 2 (emphasis added).

Plaintiff resides in California. FAC ¶ 20. That fact is the premise of this Court's diversity jurisdiction. FAC ¶ 17. No court of the Commonwealth has venue over a California residence. If § 2 governs where the claim may be heard, the Second Claim may be heard nowhere. It cannot be heard here, because the Order holds that § 2 excludes federal courts. It cannot be heard in any Massachusetts court, because § 2 confines each proceeding to the court for the plaintiff's residence. The Order does not address that consequence, although Defendant

MasMarques read the entire sentence to the Court at the hearing. ECF No. 116-1 at 14 (Tr. 11:5-11). A construction that leaves a statutory claim with no forum is not a plausible one, and the text shows why. Section 2 allocates proceedings among the courts of the Commonwealth according to where the plaintiff lives. That is a venue rule. A state venue rule does not govern a federal court sitting in diversity. Venue here is governed by 28 U.S.C. § 1391, and it was proper under § 1391(b)(1) because Defendant MasMarques resides in this District. FAC ¶ 19.

### 2. A State Cannot Confine A Right It Creates To Its Own Courts

Even if § 2 were read to reserve harassment proceedings to the courts of the Commonwealth, it could not remove jurisdiction here. "Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation." *Railway Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270, 286 (1872). Federal jurisdiction is determined "by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute…, even though it created the right of action." *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (quoting *Tennessee Coal, Iron & R.R. Co. v. George*, 233 U.S. 354, 360 (1914)). "Texas may not reserve to its probate courts the exclusive right to adjudicate a transitory tort." *Id.* at 313-14.

Massachusetts may not reserve to its courts the exclusive right to adjudicate harassment, and especially interstate internet harassment. The Court said as much at the hearing: "if there's diversity, can be brought in federal court. . . . I'm not aware of any caselaw that would bar the claim from being brought here." ECF No. 116-1 at 14 (Tr. 11:12-17). Plaintiff made the same argument. ECF No. 68 at 16. The only case cited in response, *Foley v. Lowell Sun Publishing Co.*, 404 Mass. 9 (1989), was decided more than twenty years before chapter 258E was enacted. St. 2010, c. 23. No authority cited involved a plaintiff who lives outside Massachusetts.

Reinstating the Second Claim would not be futile.[5] Much of the conduct on which it rests was undertaken in MasMarques's own name. FAC ¶¶ 112-116. The Order's holding about pseudonymous accounts does not reach that conduct. Nor does the limitations cutoff: a complaint under chapter 258E may not be denied "solely because it was not filed within a particular time period after the last alleged incident of harassment." G.L. c. 258E, § 3(f).

### E. The Fourth and Fifth Claims (Abuse of Process / Malicious Prosecution)

#### 1. Neither The R&R Nor The Order Addresses The Proceedings That Terminated Within The Limitations Period

The Fourth and Fifth Claims rest on at least five proceedings, three of which terminated within the limitations period. Each later misuse of process, including the February 4, 2020 notice of appeal, is separately actionable. *Quaranto v. Silverman*, 345 Mass. 423, 426 (1963).

| Event Description | Citations | Initiated | Terminated |
|---|---|---|---|
| Frivolous Cross-Civil Harassment Order (California) | ECF No. 258-9 | July 3, 2018 | January 28, 2020 (Decl. ¶ 4 & Ex. 2) |
| False Report To California DMV Triggering Investigation/"Stop" | ECF No. 54-5 at 17-18 | October 4, 2018 | Between October 11-17, 2019 |
| Application for Criminal Charges in Marlborough, MA District Court | ECF No. 54-5 at 24-26 | April 8, 2019 | May 15, 2019 |
| Middlesex County, MA Superior Court Civil Harassment Lawsuit | ECF No. 54-5 at 27-34 | July 29, 2019 | September 19, 2019 |
| Frivolous Cross-Civil Harassment Order Denial Appeal (California) | ECF Nos. 5 at 2, 287-1 at 15 | February 4, 2020 | October 28, 2021 |

Neither the R&R nor the Order addresses the timeliness of MasMarques's cross-request for a civil harassment order in the Superior Court of California. FAC ¶¶ 118, 131, 208; GSOF ¶¶ 136-138; MResp. ¶¶ 136-138. The California court denied that cross-request on August 30, 2019. GSOF ¶ 140; MResp. ¶ 140. It did not deny MasMarques's motion for reconsideration

[5] The Order dismissed the Second Claim because it held that the claim belongs in another court, not because it lacks merit. The judgment, however, enters "judgment for the defendant" without qualification. ECF No. 345. "Unless the dismissal order states otherwise, . . . any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). The Order does not state otherwise, but should. Otherwise the judgment could be invoked to bar the very proceeding the Order directed Plaintiff to bring elsewhere.

until January 28, 2020, within three years of Plaintiff filing the instant action. Defendant MasMarques then appealed. The Court of Appeal twice dismissed the appeal because MasMarques "failed to procure the record on appeal within the time limits allowed." *Mas Marques v. Greenspan*, Case No. H047904 (Cal. Ct. App. June 23, July 8 & Aug. 19, 2021) (citing Cal. R. Ct. 8.140(b)); GSOF ¶¶ 141-142; MResp. ¶ 141. It issued the remittitur in 2021.[6]

### 2. Plaintiff Pled All Relevant Facts In The FAC and His Statement of Facts on Summary Judgment

The Order incorrectly implies that Plaintiff first raised relevant facts "in his opposition to summary judgment, but not pled in his complaint," citing *Miranda-Rivera v. Toledo-Dávila*, 813 F.3d 64, 76 (1st Cir. 2016). Order at 6. That ground first appeared in MasMarques's response to Plaintiff's objections. ECF No. 343 at 4.[7] *First*, the facts were pleaded. The FAC alleges the cross-request, the temporary orders issued on it, and its denial. FAC ¶¶ 118, 131, 208. FAC ¶ 144 incorporates "each of the foregoing allegations" into the Fifth Claim. The Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (reversing summary judgment). *Johnson* also holds that such a plaintiff "should be accorded an opportunity" to amend. *Id.* at 12. *Second*, the facts were not first raised in opposition. They appear in the Plaintiff's statement of facts, GSOF ¶¶ 136-142, and MasMarques did not dispute the operative events. MResp. ¶¶ 136-142. *Third*, nothing was "unadvertised."[8]

---

[6] Plaintiff requests that the Court take judicial notice of the docket of *Mas Marques v. Greenspan*, No. H047904 (Cal. Ct. App., 6th Dist.). Fed. R. Evid. 201(b), (d).

[7] The Order cites ECF No. 342 at 10-12 for the argument it rejects. Order at 6. Those pages address the First Claim. Plaintiff's Fifth Claim objection appears at ECF No. 342 at 15-16.

[8] The rule of *Calvi v. Knox County*, 470 F.3d 422, 431 (1st Cir. 2006), protects a defendant from unfair surprise. *Miranda-Rivera* itself declined to apply it where a new theory rested on the same facts as the pleaded claim and caused no prejudice. 813 F.3d at 73-74 n.5. Here, MasMarques put the cross-request at issue himself. There was no surprise here. *See Rodríguez*

### 3. The Malicious Prosecution Claim is Timely

Massachusetts recognizes malicious prosecution of civil proceedings. *Rosenblum v. Ginis*, 297 Mass. 493, 497 (1937) ("The action for malicious prosecution lies for abuse of civil as well as criminal process."); *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 103 (2006). That also includes an application for a harassment prevention order. *Van Liew v. Stansfield*, 474 Mass. 31, 34, 40 (2016). Under Massachusetts law, "the termination of the underlying action is the event that ripens a malicious prosecution claim and starts the clock on the statute of limitations." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 199 (2010). In addition to COVID-19 adjustments, ***the Order does not take into account that Defendant MasMarques's motion for reconsideration was not ruled upon until January 28, 2020, which the appellate court notes as the trial court's "judgment" date***. Then, it was appealed by Defendant MasMarques. Yet the proceeding gives rise to a timely claim regardless of whether its appeal is considered.

### 4. The DMV Proceeding Terminated Within The Limitations Period

On or about October 4, 2018, MasMarques complained to the California Department of Motor Vehicles that Plaintiff had used false residence addresses to obtain his driver's license. The Department's Investigations Division opened Case No. 18B3D30150 and placed a "stop" on Plaintiff's vehicle registration without notice to him. FAC ¶¶ 136-138. Plaintiff learned of the stop on October 11, 2019, and the Division then "concluded the matter and found no violations or wrongdoing" that month. GSOF ¶¶ 180-183; MResp. ¶¶ 180-183 (undisputed for purposes of the motion). FAC ¶ 144 incorporates those allegations into the Fifth Claim; both parties briefed the proceeding as a malicious-prosecution predicate. MasMarques even admitted "Defendant filed a DMV complaint…" ECF No. 310 at 57. Plaintiff answered in his Count V argument that "[t]he CADMV dismissed that proceeding, too, in Plaintiff's favor." ECF No. 265 at 25. As that

---

*v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995) (an issue may be tried by consent through the opposing party's "effective engagement of the claim").

termination came after October 6, 2019, a claim based on it was timely. *Supra* Part II.B.

At a minimum, if the Court concludes the Fifth Claim as pleaded does not encompass the Santa Clara or DMV proceedings, Plaintiff requests that the judgment be vacated to that extent and that he be permitted to amend to conform the pleading to facts both parties litigated. Fed. R. Civ. P. 15(a)(2), (b); *Johnson*, 574 U.S. at 12; *Miranda-Rivera*, 813 F.3d at 73-74 n.5.

**F. The Fourteenth Claim (Intentional Infliction of Emotional Distress)**

The Order holds that, "[e]ven if categorized as ongoing," Plaintiff "does not overcome the dispositive requirement that MasMarques's alleged conduct must 'go beyond all possible bounds of decency.'" Order at 8. That element concerns the defendant's *conduct*. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976). The R&R made no finding on it; it said that Defendant MasMarques's actions "were no doubt distressing." R&R at 13 n.23. The R&R's finding concerned a different element, the severity of the *distress*, which it described as "so severe that it went beyond all possible bounds of decency." *Id.* The Order adopts that formulation. Order at 8. Distress cannot exceed the bounds of decency; conduct can. *Agis* keeps the two elements distinct. 371 Mass. at 145.

On the conduct element, this Court has already held that the pattern alleged here—years of accusations of crimes, reports to dozens of agencies, attempts to have Plaintiff involuntarily committed, a process resulting in the inability to drive legally, repeated audits, and detention by federal agents—may be assessed in its totality, because "[r]epeated harassment . . . may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme." ECF No. 118 at 35. Having assumed that the continuing-violation doctrine applies, Order at 8, the Court was required to assess that totality. It includes a public accusation that Plaintiff threatened to kill the President, coupled with the statement that it was reported to the Secret Service—a report Defendant MasMarques admits he made. FAC ¶ 99(ii); ECF No. 300 at

13. Whether such conduct is outrageous is a question on which "reasonable men could differ," and so "it is for the jury." *Agis*, 371 Mass. at 145; *Boyle v. Wenk*, 378 Mass. 592, 597-98 (1979).

On the distress element, the Order describes Plaintiff's evidence as "lost sleep and worry…unsupported by any evidence…" Order at 8. The record shows more, undisputed by MasMarques: "episodic anxiety with a racing heart and elevated blood pressure" and Plaintiff's fear that federal agents would arrive "with guns drawn and kill [him]." ECF No. 257-1 at 27; ECF No. 274 at 43-44. Massachusetts does not require medical treatment for this tort; liability attaches "even though no bodily harm may result." *Agis*, 371 Mass. at 144; *Simon v. Solomon*, 385 Mass. 91, 95 (1982). For intentional conduct, "[t]he outrageous and reckless or intentional nature of a defendant's conduct permits a jury to infer that the plaintiff suffered genuine emotional distress." *Payton v. Abbott Labs*, 386 Mass. 540, 547 (1982); *see Homesavers Council of Greenfield Gardens, Inc. v. Sanchez*, 70 Mass. App. Ct. 453, 461 (2007). Plaintiff was also detained on the basis of a temporary order issued on the frivolous cross-request. GSOF ¶ 161; MResp. ¶ 161. Neither the R&R nor the Order addresses this evidence.[9]

## III. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court alter or amend the judgment, ECF No. 345, and the Order, ECF No. 344, to deny Defendant MasMarques's motion for summary judgment, ECF No. 257, as to the First, Fourth, Fifth, and Fourteenth Claims. Plaintiff further requests that the Court vacate the dismissal of the Second Claim and reinstate it, or at a minimum amend the judgment to state that it is dismissed without prejudice and without adjudication of its merits. Plaintiff also requests leave to file the proposed Second Amended and Supplemental Complaint attached as Exhibit A. Fed. R. Civ. P. 15(a)(2), (d).

[9] The Order omits half of Objection G. The R&R's primary ground for the Fourteenth Claim was that Plaintiff identified no component acts within the limitations period, R&R at 14, although the same R&R found thirteen defamatory statements timely. R&R at 12. With the tolling order applied, the timely acts include the DMV "stop" and statement (y). *Supra* Part II.B.

Dated: October 18, 2026

Respectfully submitted,

Aaron Greenspan, *pro se*
440 N. Barranca Avenue #6720
Covina, CA 91723
Phone: +1 415 670 9350 x101
E-Mail: aaron.greenspan@plainsite.org

**CERTIFICATION PURSUANT TO CIVIL LOCAL RULE 7.1(a)(2)**

Plaintiff conferred with Defendant Diego MasMarques, Jr. regarding this filing on September 23, 2026. He did not respond.

Aaron Greenspan

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2026 I filed the foregoing with the Clerk of Court using the CM/ECF system to the following defendants and non-parties in this action:

Diego MasMarques, Jr.
X Corp.

I further certify that on October 18, 2026, I delivered the foregoing via e-mail to ivestules@gmail.com, editor.complaintsboard@gmail.com, editor@complaintsboard.com, legal@complaintsboard.com, support@complaintsboard.com, and by international first-class mail addressed to each of the following former defendants in this action at Darzauglu 1-303, Riga, LV-1012, Latvia:

Sergei Igorevich Kudriavtsev
Mediolex, Ltd.
Astrad, Ltd.

Aaron Greenspan